legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**§ 17.3.4** A loss insured under the Owner's property insurance shall be adjusted by the Owner on behalf of all insureds and made payable to the Owner on behalf of the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause. Owner shall pay the Contractor the shares of insurance proceeds of the Contractor and all subcontractors. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their sub-subcontractors in similar manner.

*(Paragraphs deleted)*
## ARTICLE 18   CORRECTION OF WORK
**§ 18.1** The Contractor shall correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed but in no event later than thirty (30) days after being notified of defective work. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

**§ 18.2** In addition to the Contractor's obligations under Section 9.4, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 15.4.3, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty.

**§ 18.3** If the Contractor fails to correct nonconforming Work within a reasonable time, the Owner may correct it in accordance with Section 8.3.

**§ 18.4** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 18.5** The one-year period for correction of Work shall be extended for a period of six (6) months from the completion of corrective Work performed by the Contractor pursuant to this Article 18, but only with respect to the particular items of corrective Work.

**§ 18.6** Notwithstanding the one-year period for correction of Work, the Owner may commence an action under the terms of this Agreement against the Contractor in accordance with the applicable statute of limitations.

## ARTICLE 19   MISCELLANEOUS PROVISIONS
### § 19.1 ASSIGNMENT OF CONTRACT
The Contractor may not assign the Contract without written consent of the Owner.  Owner may assign the Contract at its sole discretion and such assignment shall relieve Owner of any and all obligations it may have under the Contract.

### § 19.2 GOVERNING LAW
The Contract shall be governed by the law of the state where the Project is located.

**AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
User Notes: Canyon Ranch/EBL                                                                                                (1848792917)

### § 19.3 TESTS AND INSPECTIONS

Tests, inspections and approvals of portions of the Work required by the Contract Documents or by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating the costs to the Contractor.

*(Paragraphs deleted)*

### ARTICLE 20    TERMINATION OF THE CONTRACT
### § 20.1 TERMINATION BY THE CONTRACTOR

If the Owner fails to make payment of approved amounts in accordance with Article 15, the Contractor may, upon ten (10) additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner payment for Work executed, and demobilization costs incurred by reason of such termination. The Contractor's notice shall (a) inform the Owner that payment of approved amounts has not been received, and (b) state the intent of the Contractor to suspend performance for nonpayment. If, after the tenth (10th) calendar day following written notice, the Owner has not cured the deficiency, the Contractor may terminate the Contract. In the event the Contractor terminates the Contract, the Owner may hire another Contractor to complete the Work.

### § 20.2 TERMINATION BY THE OWNER FOR CAUSE

**§ 20.2.1** The Owner may terminate the Contract if the Contractor

- .1    repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
- .2    fails to make payment to the Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
- .3    repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of a public authority; or
- .4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

**§ 20.2.2** When any of the above reasons exists, the Owner may, without prejudice to any other remedy the Owner may have and after giving the Contractor seven days' written notice, terminate the Contract and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor and may finish the Work by whatever reasonable method the Owner may deem expedient, and may accept assignment of those Subcontracts the Owner elects to assume. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 20.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 20.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**§ 20.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or the Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

**§ 20.2.5** In the event it is judicially determined that the Owner was not entitled to terminate the Contract for cause, the Owner's termination shall be deemed a termination for convenience.

### § 20.3 TERMINATION BY THE OWNER FOR CONVENIENCE

In addition to the foregoing, the Owner, upon seven (7) days' written notice to the Contractor, may terminate the Contract for its convenience, in which event the Contractor shall be paid for all work performed (as calculated in accordance with Article 4) as of the effective date of termination, together with the retainage then due.

**AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**® **Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                                                                                      (1848792917)

## ARTICLE 21    CLAIMS AND DISPUTES

**§ 21.1** Claims, disputes and other matters in question arising out of or relating to this Contract, including those alleging an error or omission by the Architect but excluding those arising under Section 16.2, shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 21.2** If a claim, dispute or other matter in question relates to or is the subject of a mechanic's lien, the party asserting such matter may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

**§ 21.3** Any claim, subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association, in accordance with the Construction Industry Arbitration Rules in effect on the date of this Agreement. Demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**§ 21.4** Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation; (2) the arbitrations to be consolidated substantially involve common questions of law or fact; and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

**§ 21.5** Any party to an arbitration may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described in the written Consent.

**§ 21.6** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**§ 21.7** If a dispute shall arise between the parties to this Agreement, or related thereto, the Contractor shall continue during the pendency of such dispute to perform its services hereunder as if no dispute shall have arisen. During the pendency of any such dispute the Contractor shall be entitled to payments from the Owner only for non-disputed items, and payments shall be deferred only for that portion of the items that are disputed, until final resolution of the dispute.

**§ 21.8** Claims by the Contractor (including claims for Change Orders) must be initiated by written notice to the Owner. Claims must be initiated within ten (10) days after occurrence of the event giving rise to such claim or within ten (10) days after the Contractor first recognizes the condition giving rise to the claim, whichever is later.

### § 21.9 CLAIMS FOR CONSEQUENTIAL DAMAGES

The Contractor and the Owner waive claims against each other for consequential damages for delay arising out of or relating to this Contract. For the purposes hereof "consequential damages" shall only be

   .1    damages incurred by the Owner for occupancy expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

   .2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit or business opportunities.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 20. Nothing contained in this Section 21.9 shall be deemed to preclude an award of actual damages, incurred under the terms of this Agreement.

## ARTICLE 22    OTHER CONDITIONS OR PROVISIONS

**§ 22.1.** All Applications for Payment and notices and communications hereunder shall be delivered electronically or by reputable overnight courier and shall be deemed effective on the date sent.

**AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL

**18**

(1848792917)

**§ 22.2** The failure of Owner to insist upon the strict performance of any provision of this Agreement, or the failure of Owner to exercise any right, option or remedy hereby reserved, shall not be construed as a waiver in the future of any such provision, right, option or remedy or as a waiver of a subsequent breach thereof. The consent or approval by Owner of any act by Contractor requiring Owner's consent or approval shall not be construed to waive or render unnecessary the requirement for Owner's consent or approval of any subsequent similar act by Contractor. The payment by Owner of any amount due hereunder with knowledge of a breach of any provision of this Agreement shall not be deemed a waiver of such breach. No provision of this Agreement shall be deemed to have been waived unless such waiver shall be in writing signed by the party to be charged.

This Agreement entered into as of the day and year first written above.

FL 6801 COLLINS NORTH LLC                    EBL CONSTRUCTION

By: FL 6801 Spirits LLC, its Managing Member

By: _____              By: _____
**OWNER** *(Signature)*                        **CONTRACTOR** *(Signature)*

_____                  _____
*(Printed name and title)*                    *(Printed name and title)*

**AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
User Notes: Canyon Ranch/EBL                                                      (1848792917)

# *Additions and Deletions Report for*

## *AIA® Document A107™ – 2007*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 16:47:14 on 05/22/2014.

**PAGE 1**

AGREEMENT made as of the [      ] day of [      ] in the year
~~(In words, indicate day, month and year.)~~2014

...

~~(Name, legal status, address and other information)~~FL 6801 Collins North LLC
c/o Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 39th Floor
New York, New York 10020

...

~~(Name, legal status, address and other information)~~
EBL Construction
1482 Rail Head Boulevard
Naples, Florida 34110

...

~~(Name, location and detailed description)~~
Stucco remediation, Canyon Ranch North Tower, 6900 Collins Avenue, Miami Beach, Florida

...

The ~~Architect:~~Architect:*
~~(Name, legal status, address and other information)~~
NV5 Structures/Vertical V – Southeast, Inc.
200 South Park Road, Suite 350
Hollywood, Florida 33021

...

The Owner and the Contractor agree as follows.

*The term "Architect" herein shall mean NV5 Structures/Vertical V – Southeast, Inc., a professional and technical consulting firm.

THSH DRAFT 5/22/2014

**PAGE 2**

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL

1

(1848792917)

~~The Contractor shall execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.~~

**§ 1.1** The Contractor shall execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

**§ 1.2** The Contractor shall perform the work required by the Contract Documents, and all work which is reasonably inferable therefrom, and provide all labor, materials, equipment, tools, scaffolding and other facilities and services necessary for the proper execution and completion of the work for the Project (the "Work") and shall perform all related work made necessary by a visual inspection of the Project. The Contractor shall also be responsible to Owner for assuring that the Work is performed in strict accordance and as required by the Contract Documents. Materials which are not shown on the Drawings shall be suitable for the intended use, and shall be subject to review and approval by Owner and Architect for consistency with the intent of the Contract Documents. Where installation techniques are not specified, they shall be in accordance with manufacturer's current instructions, industry standards and all applicable laws, rules and regulations.

**§ 1.3** The documents comprising the Drawings and the other Contract Documents shall be deemed to be cumulative, and if there shall be a conflict or ambiguity between or among the Drawings or if a discrepancy shall arise between the Specifications and existing conditions at the Project, the Contractor shall immediately notify Architect of such fact when it becomes aware of same and, thereafter, the Owner, in consultation with the Architect and the Contractor, shall determine the appropriate course of action to follow and advise the Contractor accordingly. In the event any provision in this Agreement conflicts with or is inconsistent with any provision contained in the Contract Documents, the Contractor shall immediately notify Architect and Owner and the parties will endeavor to reach agreement as to the applicable provision. Any Work relating to such conflict, ambiguity or discrepancy which is knowingly performed by the Contractor prior to the Owner's resolution thereof shall be at the Contractor's sole risk and expense.

**§ 1.4** The Contractor has carefully examined the Contract Documents and the premises and, from the Contractor's own investigations, is satisfied as to the nature and location of the Work, the character, quality and quantity of materials likely to be encountered, the character of equipment and other facilities needed for the performance of the Work, and all other conditions or items which may affect the Work. The Contractor accepts full responsibility for all conditions at the premises that may affect the Contractor's performance.

**§ 1.5** The Contractor warrants and guarantees that the performance of the Work (i.e. means and methods) will be in conformance with all applicable codes and other applicable rules, regulations and ordinances of all governmental and administrative agencies having jurisdiction over the Project.

**§ 2.1** The date of commencement of the Work shall ~~be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.~~
*~~(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)~~*

be_____.

**PAGE 3**

**§ 2.3** The Contractor shall achieve Substantial Completion of the entire Work not later than    (    ) days from the date of commencement, ~~or as follows:~~
*~~(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)~~*

| ~~Portion of Work~~ | ~~Substantial Completion Date~~ |
|---|---|
| | |

~~,~~subject to adjustments of this Contract Time as provided in the Contract Documents.

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®** Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
User Notes: Canyon Ranch/EBL                                    (1848792917)

2

(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)

**§ 2.4** The Contractor agrees to perform the Work or cause the performance of Work by others in a prompt and diligent manner so as to ensure the uninterrupted progress of the Project and in accordance with a project schedule approved by the Owner and the Architect and furnished by the Contractor upon the execution of this Agreement. The Contractor agrees to complete the Work as rapidly as field conditions permit, proceeding in a skillful and expeditious manner, with sufficient labor, materials, tools, equipment, supplies and all things necessary to ensure uniform and efficient progress, so that the Work will be completed by the Substantial Completion Date. THE SUBSTANTIAL COMPLETION DATE ESTABLISHED BY THIS AGREEMENT SHALL BE DEEMED OF THE ESSENCE OF THIS AGREEMENT. By executing the Agreement, the Contractor confirms that the Substantial Completion Date is a reasonable period for completing the Work.

**§ 2.5** If the Work is not progressing timely and the delays are caused by the Contractor, the Contractor shall at its own cost and expense be responsible to work additional shifts and cause at its own cost and expense its Subcontractors involved in the Work to work additional shifts and to take other reasonable measures in order to bridge the gap between the delay and the time requirement, all at no additional cost to Owner. Nothing contained in this or any other provision of this Agreement shall limit Owner's right to seek other and further remedies which may be allowed by this Agreement or in law or equity.

...

(Check the appropriate box.)

[ ]    Stipulated Sum, in accordance with Section 3.2 below

[ ]    Cost of the Work [ X ]    Cost of the Work based on Contractor's Proposal (Exhibit A) plus the Contractor's Fee, in accordance with Section 3.3 below

[ ]    Cost of the Work plus the Contractor's Fee with a Guaranteed Maximum Price, in accordance with Section 3.4 below

(Based on the selection above, complete Section 3.2, 3.3 or 3.4 below.)

**§ 3.2** The Stipulated Sum shall be ($ ), subject to additions and deductions as provided in the Contract Documents.

**§ 3.2.1** The Stipulated Sum is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

**§ 3.2.2** Unit prices, if any:
*(Identify and state the unit price, and state the quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|
|      |                      |                        |

**§ 3.2.3** Allowances included in the stipulated sum, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Allowance |
|------|-----------|
|      |           |

**§ 3.3.1** The Cost of the Work is as defined in Exhibit A, Determination of the Cost of the Work shall mean the Contractor costs identified in Exhibit A and as may be modified by Changes in the Work (Article 13).

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
User Notes: Canyon Ranch/EBL                                                                                (1848792917)

**PAGE 4**

*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee and the method of adjustment to the Fee for changes in the Work.)*

Ten percent (10%) of the Cost of the Work. The Contractor's Fee shall be inclusive of mobilization costs, general conditions costs, profit and overhead.

**§ 3.3.3** Unit Prices, if any:

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|
| See Exhibit A. | | |

**§ 3.4 COST OF THE WORK PLUS CONTRACTOR'S FEE WITH A GUARANTEED MAXIMUM PRICE**
**§ 3.4.1** The Cost of the Work is as defined in Exhibit A, Determination of the Cost of the Work.

**§ 3.4.2** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee and the method of adjustment to the Fee for changes in the Work.)*

**§ 3.4.3 GUARANTEED MAXIMUM PRICE**
**§ 3.4.3.1** The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed   ($ ), subject to additions and deductions by changes in the Work as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner. *(Insert specific provisions if the Contractor is to participate in any savings.)*

**§ 3.4.3.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:

**§ 3.4.3.3** Unit Prices, if any:
*(Identify and state the unit price, and state the quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|

**§ 3.4.3.4** Allowances included in the Guaranteed Maximum Price, if any:
*(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)*

| Item | Allowance |
|------|-----------|

**§ 3.4.3.5** Assumptions, if any, on which the Guaranteed Maximum Price is based:

...

**§ 4.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                                                                                     (1848792917)

month

§ 4.1.3 ~~Provided that an Application for~~ Payment ~~is received by the Architect not later than the __ day of a month, the Owner shall make payment of the certified amount~~ to the Contractor ~~not later than the __ day of the __ month. If an Application for Payment is received by the Architect after the date fixed above, payment~~ shall be made by the Owner ~~not later than __ ( __ ) days after the Architect receives the Application for Payment.~~
*~~(Federal, state or local laws may require payment within a certain period of time.)~~* pursuant to Article 15.

...

Ten percent (10%) until Substantial Completion. (See Section 15.4.2.)

...

~~(Insert rate of interest agreed upon, if any.)~~

~~__ %~~ Six percent (6%)        per annum

...

   .2     the ~~contractor~~ Contractor has submitted a final accounting for the Cost of the Work, where payment is on the basis of the Cost of the Work with or without a guaranteed maximum price;
   .3     all sign offs which are the responsibility of the Contractor or its Subcontractors are submitted to the Owner; and
   ~~.3~~ .4   a final Certificate for Payment has been issued by the Architect.

§ 4.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for ~~Payment, or as follows:~~ Payment.

§ 4.3 The Contractor shall without delay cause the discharge of any mechanics' liens filed against the Project by any of its laborers, Subcontractors or materialmen, and shall cause any such lien to be discharged of record within fifteen (15) days after the notice of filing thereof by bond, order or deposit provided the Owner has paid the Contractor for the Work in question. If the Contractor shall fail to cause such lien to be discharged of record within such period, the Owner may do so. Any amount paid by the Owner for such purpose, including all costs and expenses, including reasonable attorneys' fees shall be paid by the Contractor to the Owner on demand. The Owner may at any time also require the Contractor to furnish a bond or other security, in a form and amount satisfactory to Owner as security for the payment of any such liens. The filing of a lien by the Contractor, unless the Owner is in default of its payment obligations hereunder, shall be deemed a default under the terms of the Contract.

§ 4.4 In the event payments are withheld as a result of the failure of the Contractor to make payments to a Subcontractor or materialman or by reason of other defaults of the Contractor, the Owner may, at its option, make payment directly to said Subcontractor or materialman, in lieu of making payment to the Contractor.

**PAGE 5**

For any claim subject to, but not resolved by, mediation pursuant to Section 21.3, the method of binding dispute resolution shall be ~~as follows:~~
*~~(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, claims will be resolved in a court of competent jurisdiction.)~~*

   [ __ ]     ~~Arbitration pursuant to Section 21.4 of this Agreement~~

   [ X ]     ~~Litigation in a court of competent jurisdiction~~

   [ __ ]     ~~Other (Specify)~~

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                                                                                                                              (1848792917)

arbitration.

...

§ 6.1.1 The Agreement is this executed AIA Document A107–2007, Standard Form of Agreement Between the Owner and the Contractor for a Project of Limited Scope.

§ 6.1.2 The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
| | | | |

*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

Title of Specifications exhibit:  See Drawings and Specifications (Exhibit C).

| Section | Title | Date | Pages |
|---|---|---|---|
| | | | |

...

*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

Title of Drawings exhibit:  See Drawings and Specifications (Exhibit C).

| Number | Title | Date |
|---|---|---|
| | | |

...

N/A

...

.1  Exhibit A, ~~Determination of the Cost of the Work, if applicable.~~Proposal
.2  ~~AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed, or the following:~~Other documents:

Exhibit B, Indemnity and Insurance Requirements
Exhibit C, Drawings and Specifications
.3  ~~Other documents:~~
*(List here any additional documents that are intended to form part of the Contract Documents.)*

Exhibit D, Forms of Final and Progress Lien Waivers

**PAGE 6**

§ 7.5.1 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, the Subcontractors, the Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

§ 7.5.2 ~~The Contractor, Subcontractors,~~ Pursuant to Owner's exclusive license to use the Architect's Instruments of Service solely and exclusively for purposes of constructing, using, maintaining, altering and adding to the Project, the

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL

(1848792917)

Contractor, the Subcontractors, the Sub-subcontractors and material or equipment suppliers are authorized <u>by the Owner</u> to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, ~~Subcontractors,~~ <u>the</u> Subcontractors, the Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

PAGE 7

**§ 9.1.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 8.1.1, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating ~~coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the~~ <u>coordination, and reviewing for constructability by the Contractor. The</u> Contractor shall promptly report to the Architect any errors, inconsistencies, or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents.

...

**§ 9.2.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, <u>the</u> Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

<u>**§ 9.2.3** The Contractor shall employ a full-time construction supervisor at the Project for the coordination and supervision of the Work, and who shall not, while in the Contractor's employ, be replaced without the Owner's consent. The Contractor shall remove any employee from the Project upon reasonable objection from the Owner.</u>

<u>**§ 9.2.4** The Contractor shall hold regularly scheduled job meetings attended by the Contractor and its Subcontractors, the Owner and the Architect to discuss procedures, progress, problems, scheduling and open items.</u>

PAGE 8

**§ 9.3.2** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them. <u>The Contractor shall maintain labor peace and harmony on the Project and shall adopt and implement policies and practices designed to avoid work stoppages, slowdowns, disputes or strikes.</u>

...

**§ 9.6.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, ~~rules~~ <u>rules,</u> and regulations, and lawful orders of public authorities applicable to performance of the Work. If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

...

**§ 9.8.1** ~~The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information~~ <u>Upon execution, the Contractor shall submit for the Owner's and the Architect's approval</u> a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL

(1848792917)

PAGE 9

§ 9.9.2 Shop Drawings, Product Data, Samples and similar ~~submittals are not~~ submittals, when approved by the Architect, are Contract Documents.

...

§ 9.15 INDEMNIFICATION See Contractor's Indemnity and Insurance Requirements (Exhibit B).
~~§ 9.15.1 To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 9.15.1.~~

§ 9.15.2 In claims against any person or entity indemnified under ~~this Section 9.15~~ Exhibit B by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under ~~Section 9.15.1~~ Exhibit B shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or the Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

PAGE 10

§ 10.3 On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, the Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

...

§ 10.7 The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or the Contractor. The Architect will make initial decisions on all claims, disputes and other matters in question between the Owner and the Contractor but will not be liable for results of any interpretations or decisions rendered in good faith.

~~§ 10.8 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.~~

§ 10.9 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, the Contractor and the Architect. Consent shall not be unreasonably withheld.

...

§ 11.2 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through the Architect the names of the~~ all contracts ("Subcontracts") and purchase orders with Subcontractors or suppliers for each of the principal portions of the ~~Work.~~ Work, together with names of all manufacturers proposed to be used. The Contractor shall not contract with any Subcontractor or supplier to whom the Owner or Architect has made reasonable written objection within ten days after receipt of the ~~Contractor's list of Subcontractors and suppliers.~~ Subcontracts and purchase orders. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL
(1848792917)

be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ **11.3** Contracts between the Contractor and the Subcontractors shall (1) require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by the Contract Documents, assumes toward the Owner and Architect, ~~and~~ (2) allow the Subcontractor the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Contract Documents, has against the Owner, and (3) be conditionally assigned to the Owner.

§ **11.4** The Owner may communicate with the Subcontractors and suppliers for the purpose of verifying amounts due and paid for work performed. At the request of the Owner, the Contractor shall provide the Owner with evidence of payments made to the Subcontractors and suppliers.

**PAGE 11**

§ **13.1** By appropriate Modification, changes in the Work may be accomplished after execution of the Contract. The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, with the Contract Sum and Contract Time being adjusted accordingly. Such changes in the Work shall be authorized by written Change Order signed by the Owner, the Contractor and the Architect, or by written Construction Change Directive signed by the Owner and the Architect. NO WORK SHALL BE PERFORMED (INCLUDING OVERTIME WORK) AND THE CONTRACTOR SHALL MAKE NO CLAIM FOR ADDITIONAL COMPENSATION UNLESS A CHANGE ORDER OR CONSTRUCTION CHANGE DIRECTIVE, CONTAINING EITHER THE ACTUAL COST OF THE WORK OR THE METHOD FOR DETERMINING THE COST, IS SIGNED BY THE OWNER AND THE CONTRACTOR.

§ **13.2** Adjustments in the Contract Sum ~~and Contract Time~~ resulting from a change in the Work shall be determined ~~by mutual agreement of the parties or, in the case of a Construction Change Directive signed only by the Owner and Architect, by the Contractor's cost of labor, material, equipment, and reasonable overhead and profit, unless the parties agree on another method for determining the cost or credit. Pending final determination of the total cost of a Construction Change Directive, the Contractor may request payment for Work completed pursuant to the Construction Change Directive.~~ in accordance with Exhibit A, inclusive of the Contractor's general conditions costs, overhead and profit. The Architect will make an interim determination of the amount of payment due for purposes of certifying the Contractor's monthly Application for Payment. ~~When the Owner and Contractor agree on adjustments to the Contract Sum and Contract Time arising from a Construction Change Directive, the Architect will prepare a Change Order.~~

§ **13.3** The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and the Contractor. The Contractor shall carry out such written orders promptly.

§ **13.4** If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Documents or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be equitably adjusted as mutually agreed between the Owner and the Contractor; provided that the Contractor provides notice to the Owner and the Architect promptly and before conditions are disturbed.

**PAGE 12**

§ **14.5** If the Contractor is delayed at any time in the commencement or progress of the Work by changes ordered in the Work, by labor disputes, fire, unusual delay in deliveries, abnormal adverse weather conditions not reasonably anticipatable, unavoidable casualties or any causes beyond the Contractor's control, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine, subject to the provisions of Article 21. An extension of the Contract Time shall be the Contractor's sole remedy for delay.

...

Additions and Deletions Report for AIA Document A107™ – 2007. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL
(1848792917)

9

**§ 15.1.1** ~~Where the Contract is based on a Stipulated Sum or the Cost of the Work with a Guaranteed Maximum Price, the~~ The Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values, allocating the entire Contract Sum to the various portions of the Work, ~~prepared in such form~~ utilizing AIA forms G702 and G703, and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used in reviewing the Contractor's Applications for Payment.

**§ 15.1.2** With each Application for Payment ~~where the Contract Sum is based upon the Cost of the Work, or the Cost of the Work with a Guaranteed Maximum Price, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor, less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.~~ the Contractor and its subcontractors shall submit progress lien waivers in the forms attached as Exhibit D.

...

**§ 15.2.1** The Architect will, ~~within seven~~ with approval of the Owner, within ten (10) business days after receipt of the Contractor's Application for Payment, ~~either~~ issue ~~to the Owner~~ a Certificate for Payment, ~~with a copy~~ to the Contractor, for such amount as the Architect ~~determines is properly due, or notify the Contractor and Owner in writing of the Architect's~~ and Owner determines is properly due, based upon the quality and progress of the Work.  The Architect will also notify the Contractor in writing of the Architect's and/or the Owner's reasons for withholding certification in whole or in part as provided in Section ~~15.2.3.~~15.2.3 and (a) set forth the amount to be paid to the Contractor, and (b) describe those items in the Application for Payment which are not approved.  ~~In determining the amount to be paid to the Contractor, the Owner may either withhold (a) sums that are sufficient to pay the costs and expense the Owner reasonably expects to incur in order to cure any items described in the Certificate for Payment or (b) an amount not to exceed the line item amount appearing in the agreed schedule of values, including change orders, relating to the disapproved Work (together with an amount sufficient to cover liquidated damages, if any and such other damages as the Owner may incur as a result of the items described in Subsection 15.2.3).~~

**§ 15.2.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluations of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation by the Architect that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from the Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 15.2.3** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 15.2.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and the Owner as provided in Section 15.2.1. If the Contractor and the Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 9.2.2, because of

**PAGE 13**

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                                                     (1848792917)

**10**

.2    third party claims (including mechanic's liens) and municipal violations filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

.3    failure of the Contractor to make payments properly to the Subcontractors or for labor, materials or equipment;

...

.7    repeated failure to carry out the Work in accordance with the Contract Documents.

The Owner may also disapprove payment on the foregoing grounds.

...

**§ 15.2.5** The Owner shall pay the Contractor the approved amount set forth in the Certificate for Payment within thirty (30) days after the issuance of the Certificate for Payment.

...

**§ 15.3.2** Neither the Owner nor Architect shall have an obligation to pay or see to the payment of money to a Subcontractor except as may otherwise be required by law.  In the event that Contractor fails to pay to any Subcontractor the amount to which such Subcontractor is entitled, Owner may elect to make payment to the Subcontractor to satisfy the Contractor's obligation and such payment by the Owner to the Subcontractor will not preclude Owner from any rights to obtain reimbursement from the Contractor for the amount paid.

## PAGE 14

**§ 15.4.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the ~~Contractor~~ Architect shall prepare and submit to the ~~Architect~~ Contractor a comprehensive list of items to be completed or corrected prior to final ~~payment.~~ payment but in no event more than thirty (30) days after receipt of the list. Pending completion of the items, a sum equivalent to two hundred percent (200%) of the cost to complete the items, as determined by the Architect, shall be withheld from the Contractor in lieu of the retainage pursuant to Section 4.1.4. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 15.4.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. When the Architect determines that the Work or designated portion thereof is substantially complete, the Architect will issue a Certificate of Substantial Completion which shall establish the date of Substantial Completion, establish responsibilities of the Owner and the Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 15.4.4** The Certificate of Substantial Completion shall be submitted to the Owner and the Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

...

**§ 15.5.2** Final payment shall ~~not become due until the Contractor has delivered to the Owner a complete release of all liens arising out of this Contract or receipts in full covering all labor, materials and equipment for which a lien could be filed, or a bond satisfactory to the Owner to indemnify the Owner against such lien.~~ be made in accordance with Subsection 15.2.5.  Neither final payment nor any remaining retained percentage shall become due until the Contractor complies with the provision of Subsection 4.2.1 and submits to the Owner (i) final lien waivers and releases in the

Additions and Deletions Report for AIA Document A107™ – 2007. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                        (1848792917)

forms attached as Exhibit D for itself and its Subcontractors; (ii) such other documentation specified by the Owner including, if applicable, a certificate of occupancy for the Project; and (iii) as-built drawings in CADD format prepared by the Contractor and, as applicable, the HVAC plumbing, sprinkler and electrical Subcontractors.  If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor shall furnish a bond satisfactory to the Owner.  If such lien remains unsatisfied after payments are made, the Contractor shall indemnify and hold the Owner harmless from all claims and damages, and refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

§ 15.5.3 ~~The making of final payment shall constitute a waiver of claims by the Owner except those arising from~~
~~.1    liens, claims, security interests or encumbrances arising out of the Contract and unsettled;~~
~~.2    failure of the Work to comply with the requirements of the Contract Documents; or~~
~~.3    terms of special warranties required by the Contract Documents.~~

§ 15.5.4 Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment. In no event shall the Contractor commence an action against the Owner more than one year following Final Payment or the termination of this Agreement, whichever is earlier.

**PAGE 15**

.2    the Work and materials and equipment to be incorporated ~~therein,~~ therein (including the Contractors equipment), whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

...

§ 16.2.1 The Contractor is responsible for compliance with the requirements of the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents, and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and the Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shutdown, delay and start-up.

§ 16.2.2 ~~To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area, if in fact, the material or substance presents the risk of bodily injury or death as described in Section 16.2.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.~~

**ARTICLE 17    INSURANCE AND BONDS** See Contractor's Indemnity and Insurance Requirements (Exhibit B).
§ 17.1 ~~The Contractor shall purchase from, and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, insurance for protection from claims under workers' compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations and completed operations under the Contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater, and shall include contractual liability insurance applicable to the Contractor's obligations under Section 9.15. Certificates of Insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the~~

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                                                                                                (1848792917)

~~Work. Each policy shall contain a provision that the policy will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. The Contractor shall cause the commercial liability coverage required by the Contract Documents to include: (1) the Owner, the Architect and the Architect's Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.~~

...

**§ 17.3.1** Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance ~~on an "all-risk" or equivalent policy form, including builder's risk, in the amount of the initial Contract Sum, plus the value of subsequent modifications and cost of materials supplied and installed by others,~~ comprising total value for the entire Project at the site on a replacement cost ~~basis without optional deductibles.~~ basis. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 15.5 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 17.3.1 to be covered, whichever is later. ~~This~~ At the election of the Owner, this insurance shall include interests of the Owner, the Contractor, the Subcontractors and the sub-subcontractors in the Project.

**§ 17.3.2** ~~The Owner shall file a copy of each policy with the Contractor before an exposure to loss may occur. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.~~

**§ 17.3.3** The Owner and the Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, the Architect's consultants, separate contractors described in Article 12, if any, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to Section 17.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or the Contractor, as appropriate, shall require of the Architect, the Architect's consultants, separate contractors described in Article 12, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**§ 17.3.4** A loss insured under the Owner's property insurance shall be adjusted by the Owner ~~as fiduciary~~ on behalf of all insureds and made payable to the Owner ~~as fiduciary for~~ on behalf of the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause. Owner shall pay the Contractor the shares of insurance proceeds of the Contractor and all subcontractors. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their sub-subcontractors in similar manner.

**§ 17.4 ~~PERFORMANCE BOND AND PAYMENT BOND~~**
**§ 17.4.1** ~~The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.~~

**§ 17.4.2** ~~Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.~~

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL
(1848792917)

**§ 18.1** The Contractor shall ~~promptly~~ correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or ~~completed.~~ completed but in no event later than thirty (30) days after being notified of defective work. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's ~~expense, unless compensable under Section A.2.7.3 in Exhibit A, Determination of the Cost of the Work.~~ expense.

**PAGE 16**

**§ 18.5** The one-year period for correction of Work shall ~~not be extended by~~ be extended for a period of six (6) months from the completion of corrective Work performed by the Contractor pursuant to this Article ~~18.~~ 18, but only with respect to the particular items of corrective Work.

**§ 18.6** Notwithstanding the one-year period for correction of Work, the Owner may commence an action under the terms of this Agreement against the Contractor in accordance with the applicable statute of limitations.

...

~~Neither party to the Contract shall~~ The Contractor may not assign the Contract without written consent of the ~~other, except that the Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.~~ Owner.  Owner may assign the Contract at its sole discretion and such assignment shall relieve Owner of any and all obligations it may have under the Contract.

...

The Contract shall be governed by the law of the ~~place where the Project is located, except, that if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 21.4.~~ state where the Project is located.

**PAGE 17**

~~**§ 19.4 COMMENCEMENT OF STATUTORY LIMITATION PERIOD**~~
~~The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 19.4.~~

...

If the ~~Architect fails to certify payment as provided in Section 15.2.1 for a period of 30 days through no fault of the Contractor, or if the~~ Owner fails to make payment ~~as provided in Section 4.1.3 for a period of 30 days, the Contractor may, upon seven~~ of approved amounts in accordance with Article 15, the Contractor may, upon ten (10) additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner payment for Work executed, ~~including reasonable overhead and profit, and~~ demobilization costs incurred by reason of such ~~termination, and damages.~~ termination. The Contractor's notice shall (a) inform the Owner that payment of approved amounts has not been received, and (b) state the intent of the Contractor to suspend performance for nonpayment.  If, after the tenth (10th) calendar day following written notice, the Owner has not cured the deficiency, the Contractor may terminate the Contract.  In the event the Contractor terminates the Contract, the Owner may hire another Contractor to complete the Work.

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                                                                                    (1848792917)

...

> .2    fails to make payment to the Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

...

**§ 20.2.2** When any of the above reasons exists, the ~~Owner, upon certification by the Architect that sufficient cause exists to justify such action,~~ Owner may, without prejudice to any other remedy the Owner may have and after giving the Contractor seven days' written notice, terminate the Contract and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor and may finish the Work by whatever reasonable method the Owner may deem ~~expedient.~~ expedient, and may accept assignment of those Subcontracts the Owner elects to assume. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

...

**§ 20.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or the Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

**§ 20.2.5** In the event it is judicially determined that the Owner was not entitled to terminate the Contract for cause, the Owner's termination shall be deemed a termination for convenience.

...

~~The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause. The Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.~~In addition to the foregoing, the Owner, upon seven (7) days' written notice to the Contractor, may terminate the Contract for its convenience, in which event the Contractor shall be paid for all work performed (as calculated in accordance with Article 4) as of the effective date of termination, together with the retainage then due.

**PAGE 18**

**§ 21.1** Claims, disputes and other matters in question arising out of or relating to this Contract, including those alleging an error or omission by the Architect but excluding those arising under Section 16.2, shall be ~~referred initially to the Architect for decision. Such matters, except those waived as provided for in Section 21.8 and Sections 15.5.3 and 15.5.4, shall, after initial decision by the Architect or 30 days after submission of the matter to the Architect, be~~ subject to mediation as a condition precedent to binding dispute resolution.

...

**§ 21.3** ~~The parties shall endeavor to resolve their disputes by mediation.~~ Any claim, subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration ~~Association~~ Association, in accordance with ~~their~~ the Construction Industry ~~Mediation Procedures~~ Arbitration Rules in effect on the date of ~~the Agreement. A request for mediation~~ this Agreement. Demand for arbitration shall be made in writing, delivered to the other party to ~~this Agreement,~~ the Contract, and filed with the person or entity administering the ~~mediation. The request may be made concurrently with the binding dispute resolution but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.~~arbitration. The award

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL                                                                                                (1848792917)

rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

§ 21.4 ~~If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any claim, subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association, in accordance with the Construction Industry Arbitration Rules in effect on the date of this Agreement. Demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation; (2) the arbitrations to be consolidated substantially involve common questions of law or fact; and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

§ 21.5 ~~Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation; (2) the arbitrations to be consolidated substantially involve common questions of law or fact; and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).~~Any party to an arbitration may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described in the written Consent.

§ 21.6 ~~Any party to an arbitration may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described in the written Consent.~~The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ 21.7 ~~The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.~~If a dispute shall arise between the parties to this Agreement, or related thereto, the Contractor shall continue during the pendency of such dispute to perform its services hereunder as if no dispute shall have arisen. During the pendency of any such dispute the Contractor shall be entitled to payments from the Owner only for non-disputed items, and payments shall be deferred only for that portion of the items that are disputed, until final resolution of the dispute.

§ 21.8 ~~CLAIMS FOR CONSEQUENTIAL DAMAGES~~Claims by the Contractor (including claims for Change Orders) must be initiated by written notice to the Owner. Claims must be initiated within ten (10) days after occurrence of the event giving rise to such claim or within ten (10) days after the Contractor first recognizes the condition giving rise to the claim, whichever is later.

## § 21.9 CLAIMS FOR CONSEQUENTIAL DAMAGES
The Contractor and the Owner waive claims against each other for consequential damages for delay arising out of or relating to this Contract. ~~This mutual waiver includes~~For the purposes hereof "consequential damages" shall only be

    .1    damages incurred by the Owner for ~~rental~~occupancy expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity ~~or of the services of such persons~~; and

    .2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit ~~except anticipated profit arising directly from the Work.~~or business opportunities.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 20. Nothing contained in this Section ~~21.8~~21.9 shall be deemed to preclude an award of

**Additions and Deletions Report for AIA Document A107™ – 2007.** Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
**User Notes:** Canyon Ranch/EBL

(1848792917)

~~liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.~~actual damages, incurred under the terms of this Agreement.

## ARTICLE 22    OTHER CONDITIONS OR PROVISIONS

§ 22.1. All Applications for Payment and notices and communications hereunder shall be delivered electronically or by reputable overnight courier and shall be deemed effective on the date sent.

§ 22.2 The failure of Owner to insist upon the strict performance of any provision of this Agreement, or the failure of Owner to exercise any right, option or remedy hereby reserved, shall not be construed as a waiver in the future of any such provision, right, option or remedy or as a waiver of a subsequent breach thereof.  The consent or approval by Owner of any act by Contractor requiring Owner's consent or approval shall not be construed to waive or render unnecessary the requirement for Owner's consent or approval of any subsequent similar act by Contractor.  The payment by Owner of any amount due hereunder with knowledge of a breach of any provision of this Agreement shall not be deemed a waiver of such breach.  No provision of this Agreement shall be deemed to have been waived unless such waiver shall be in writing signed by the party to be charged.

This Agreement entered into as of the day and year first written above.

FL 6801 COLLINS NORTH LLC                         EBL CONSTRUCTION

By:  FL 6801 Spirits LLC, its Managing Member

By:                                                By:

Additions and Deletions Report for AIA Document A107™ – 2007. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:47:14 on 05/22/2014 under Order No.4438793819_1 which expires on 05/03/2015, and is not for resale.
User Notes: Canyon Ranch/EBL                                                              (1848792917)

**EXHIBIT A**

**CONTRACTOR'S PROPOSAL**

| Item | Quantity | Units | Price Per Unit | Total |
|---|---|---|---|---|
| Mobilization* | 1 | Lump Sum | _____ | _____ |
| Crack Repair** | _____ | Linear Feet | _____ | _____ |
| Debonded Stucco Repairs*** | _____ | Square Feet | _____ | _____ |
| | _____ | Linear Feet | _____ | |
| Waterproofing Repairs**** | _____ | Square Feet | _____ | _____ |
| Glazing Perimeter Repairs***** | _____ | Linear Feet | _____ | _____ |
| Painting****** | 1 | Lump Sum | _____ | _____ |
| Total | | | | _____ |

*Mobilization shall include General Conditions, Supervision, Staging, Protection, and any and all charges not otherwise included in this Exhibit.

**Create a separate line item entry for each type and area of crack repair such as "Crack repair on Supergrid; Crack repair < 1/16"; Crack repair 1/16" to 3/16"; Crack repair > 3/16"."

***Create a separate line item entry for each type and area of stucco repair such as "Square Feet of stucco repairs" and "Linear Feet of stucco repairs per detail at Supergrid 2.1a-2.1C)" and "Square Feet at Detail 2.2 @ Terrace."

****Create a separate line item entry for each type and area of Waterproofing Repair such as "Repair at Supergrid" and "Repair at Parapet."

*****Create a separate line item entry for each type and area of Glazing Perimeter repair such as "Remove and replace Perimeter Sealant (Details at Supergrid 2.1a–2.1c)" and "Remove and Replace Perimeter Sealant (at Slabs as necessary)."

******Painting costs shall include all repairs listed above as a lump sum.

[998578-1]

## EXHIBIT B

### CONTRACTOR'S INDEMNITY AND INSURANCE REQUIREMENTS

1.    Indemnification and Hold Harmless

(a)    To the fullest extent permitted by law Contractor agrees for itself, and to cause its subcontractors, to indemnify, defend and hold harmless FL 6801 Collins North LLC, FL 6801 Spirits LLC, their lenders (if applicable), and their respective affiliates, principals, partners, members, stockholders, officers, directors, agents, employees, servants, successors and assigns (hereinafter collectively referred to as "Owner Parties") from and against any and all claims of third parties resulting in liabilities, losses, obligations, fines, liens, penalties, actions, judgments, damages, costs (including, without limitation, reasonable attorneys' fees and expenses incurred in connection therewith and in the enforcement of this indemnification), charges, expenses and demands of whatever kind (collectively, "Claims") in connection with and/or arising from or out of the following ("Indemnified Matters"):

(i)    any negligent, willful or wrongful act resulting in bodily injury (including death), personal injury or property damage by Contractor, Contractor's sub-contractors, their respective officers, employees, servants, agents, suppliers, invitees, successors and assigns (hereinafter collectively referred to as "Contractor Parties");

(ii)    the Work or any breach of this Agreement or infringement of any patent right, by any Contractor Party; or

(iii)    any statutorily imposed liability for injury to employees or failure to comply with any laws or regulations affecting the Work.

(b)    The indemnity contained herein shall survive the termination of this Agreement. Contractor shall advise Owner promptly, in writing of any incident that might give rise to a Claim or the service upon any Contractor Party of any summons, notices, letters or other communications alleging any Claim against any Owner Party or with respect to the Building or its surrounding area, upon which any Contractor Party is supplying services.

(c)    In claims against any person or entity indemnified hereunder by an employee of Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation hereunder shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for  Contractor or its subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

[997725-1]

2.    <u>Insurance</u>

(a)    Contractor shall secure and keep in full force and effect and shall cause any subcontractor to secure and keep in full force and effect, until the Work is finally completed and Contractor and all subcontractors have left the premises and removed all of their property therefrom, the following insurance coverage at Contractor's sole cost and expense.  Such insurance shall be primary and noncontributory, notwithstanding any other insurance that might be in effect for any Owner Party:

(i)    commercial general liability insurance, including contractual liability (to specifically include coverage for the indemnification clause in Section 1(a)(i) relating to bodily injury, death or property damage), independent subcontractors liability, products and completed operations liability personal and advertising injury liability, all written on an occurrence form, with combined bodily injury and property damage limits of liability of no less than $2,000,000 per occurrence, $4,000,000 per project general aggregate, $2,000,000 personal and advertising injury and $2,000,000 products and completed operations liability with a $4,000,000 aggregate limit applied on a  per project basis;

(ii)    completed operations coverage under their liability insurance for ten (10) years after the Work is completed;

(iii)    worker's compensation insurance providing statutory benefits for employees and employer's liability coverage in an amount that is no less than $1,000,000 per employee/$1,000,000 each accident/$1,000,000 each disease;

(iv)    commercial automobile liability insurance, including owned, non-owned and hired car liability insurance for combined limits of liability of $1,000,000 per occurrence;

(v)    umbrella/excess liability insurance on an occurrence basis with limits of not less than $10,000,000 per occurrence in excess of the limits provided by the employer's liability, commercial general liability and automobile liability insurance.  The coverage terms of the umbrella/excess insurance must be on a no less than follow form basis.   Contractor and its subcontractors shall secure, pay for and maintain whatever insurance they may deem necessary for protection against loss of owned or rented capital equipment and tools. The requirement to secure and maintain such insurance is solely for the benefit of Contractor and its subcontractors. Failure of Contractor or its subcontractors to secure such insurance and maintain adequate levels of coverage shall not obligate Owner or its agents and employees for any losses of owned or rented equipment.

(b)    All required insurance policies shall be maintained with insurance companies licensed or permitted within the State of Florida and holding an AM Best Rating of no

less than A-, VIII.  Said policies shall contain a provision that coverage will not be canceled or non-renewed until at least thirty (30) days prior written notice has been provided to Contractor (or ten (10) days in the case of nonpayment of premium). Contractor shall provide Owner with a copy of such notice within one (1) business day of the receipt thereof and within five (5) business days thereafter cause the policy to be reinstated or a like-kind policy to be issued by an insurance company meeting the requirements of this exhibit. At any time during the term of this Agreement, when requested by Owner, Contractor and its subcontractors shall promptly produce complete copies of all insurance policies required herein and evidence of payment of premiums thereon unless Owner assumes responsibility for payment of such premium.  If not so produced, Owner shall have the immediate right to procure the required insurance on behalf of Contractor and to charge and deduct the cost thereof from the within price, but Owner shall not be under any obligation to do so.

(c)      In the event that any Contractor Party sustains a loss by fire or other casualty the Contractor agrees to waive all rights of recovery against the Owner Parties and no third party shall have any right of recovery against any Owner Party by way of subrogation or assignment or otherwise.

(d)      The Owner Parties, along with their subsidiaries and affiliated entities, now or hereafter formed, all as their interests may appear, and such other parties in interest as Owner may designate in writing from time to time (collectively, "Additional Insureds"), shall be named as Additional Insureds, including during the period that completed operations coverage is to be maintained, except with respect to workers compensation and Contractor's property insurance. The Additional Insureds are to be included as a loss payee with regard to any commercial crime insurance.

(e)      Certificates in the customary form, i.e., Acord 25, except Acord 28 for property and commercial crime insurance, evidencing all lines of coverage required hereunder shall be delivered to the Owner or Owner's managing agent, or their agent together with general liability additional insured endorsements CG 2010 (11/85) or its equivalent, or CG 2010 (10/01) and CG 2037 (07/04), or broader and to be attached to and referenced in the certificate of insurance, prior to commencement of any Work.  Similar certificates shall be delivered evidencing the renewal or replacement of such insurance, at least ten (10) days prior to the effective date of such renewal or change of insurer.

3.    Work Safety/OSHA

(a)      Contractor expressly agrees and understands, and will cause its subcontractors to expressly agree and understand, that Contractor is primarily and solely responsible for the safety conditions of the work areas.  Contractor agrees that it is fully responsible for the compliance with all current and hereinafter enacted requirements and provisions under the Occupational Safety and Health Act of 1970 ("OSHA") and/or any special standards and/or requirements promulgated by Owner with regard to the Work, work areas or any contractors.

(b)      Contractor is hereby notified and shall advise all subcontractors, that there may be a potential for exposure to asbestos containing material ("ACM") and/or presumed asbestos containing material ("PACM") as defined in the OSHA Regulations, in the building, especially when working behind columns, in chases, etc. and when work is in contact with floor tile.  Contractor and each subcontractor shall be required to perform such work with personnel who have been properly trained per OSHA regulations.  Each subcontractor shall promptly notify both the Contractor and the Owner in the event any asbestos, ACM, or PACM is encountered.  Any removal thereof shall be in accordance with all applicable laws, rules and regulations.

(c)      Contractor agrees to and shall indemnify, defend and hold harmless all Owner Parties from any and all Claims arising out of Contractor's failure to comply with the above subparagraphs (a) and (b) or imposed or sought to be imposed against Owner Parties without regard to fault and solely by reason of statute or operation of law.

# EXHIBIT C

## DRAWINGS AND SPECIFICATIONS

**(To be provided)**

[998665-1]

## EXHIBIT D

### CONTRACTOR'S PROGRESS LIEN WAIVER AND RELEASE OF CLAIMS

Period Ending ("Payment Date"): _____, 20___

| | |
|---|---|
| Owner: _____ | Original Contract Sum: $_____ |
| Project/Premises: _____ | Approved Change Orders: $_____ |
| Contractor: _____ | Contract Sum to Date: $_____ |
| | Total Completed to Date: $_____ |
| | Retainage: $_____ |
| | Total Earned Less Retainage: $_____ |
| | Total Payments Received to Date: $_____ |
| | Progress Payment: $_____ |

Contractor hereby acknowledges that the Progress Payment, upon clearance by Contractor's bank, together with Total Payments Received To Date, represents payment in full for all work, labor, services, equipment and materials furnished on the Project by Contractor and its subcontractors, laborers and materialmen through the Payment Date and for which payment is now due (the "Work").

In consideration of the sums previously received, and the Progress Payment, Contractor hereby waives and releases Owner from any and all claims for payment for the Work and liens and rights of liens in connection with the Project, other than with respect to the Retainage, the pending claims (if any) listed on the attached schedule (the "Listed Claims"), notice of which has been timely provided in accordance with the provisions of the Contract, and any potential claims for which the time to provide notice in accordance with the provisions of the Contract has not expired. [_____ Initial here if schedule is attached.]

Contractor represents and warrants that it has paid for all labor, materials, equipment and services that it has used or supplied in the amounts set forth on Contractor's Applications for Payment or, upon clearance of the Progress Payment, will pay for same in accordance with applicable law. Contractor further represents and warrants that it has no other outstanding and unpaid applications, invoices, or unbilled work or materials against Owner other than the Listed Claims and any potential claims for which the time to provide notice in accordance with the provisions of the Contract has not expired. Contractor agrees to defend, indemnify and hold harmless Owner for any losses or expenses (including without limitation reasonable attorneys' fees) should any claim, lien or right of lien be asserted against Owner by Contractor or any of its subcontractors, laborers or materialmen in connection with payment for the Work. Contractor acknowledges that (a) amounts received from Owner are trust funds under applicable law and (b) the making and delivery of this waiver is a substantial inducement to Owner in making payments to Contractor under the Contract.

_____

By:_____
    Name:
    Title:

Sworn to before me this
_____ day of _____, 20___

_____
Notary Public

[957596-1]

## CONTRACTOR'S FINAL LIEN WAIVER AND RELEASE OF CLAIMS

| | |
|---|---|
| Owner: _____ | Original Contract Sum: $_____ |
| Project/Premises: _____ | Approved Change Orders: $_____ |
| Contractor: _____ | Contract Sum to Date: $_____ |
| | Total Completed to Date: $_____ |
| | Total Payments Received to Date: $_____ |
| | Final Payment: $_____ |

Contractor hereby acknowledges that the Final Payment, upon clearance by Contractor's bank, together with Total Payments Received To Date, represents payment in full for all work, labor, services, equipment and materials furnished on the Project by Contractor and its subcontractors, laborers and materialmen (the "Work").

In consideration of the sums previously received, and the Final Payment, Contractor hereby waives and releases Owner from any and all claims for payment for the Work and liens and rights of liens in connection with the Project as well as any other claims, rights or causes of action in equity or law whatsoever arising out of, through or under the Contract for the Work on the Project or otherwise in connection with the Project.

Contractor represents and warrants that it has paid for all labor, materials, equipment and services that it has used or supplied in the amounts set forth on Contractor's Applications for Payment or, upon clearance of the Final Payment, will pay for same in accordance with applicable law.  Contractor further represents and warrants that it has no other outstanding and unpaid applications, invoices, or unbilled work or materials against Owner. Contractor agrees to defend, indemnify and hold harmless Owner for any losses or expenses (including without limitation reasonable attorneys' fees) should any claim, lien or right of lien be asserted against Owner by Contractor or  any of its subcontractors, laborers or materialmen in connection with payment for the Work.  Contractor acknowledges (a) amounts received from Owner are trust funds under applicable law and (b) the making and delivery of this waiver is a substantial inducement to Owner in making payments to Contractor under the Contract.

_____

By: _____
    Name:
    Title:

Sworn to before me this
_____ day of _____, 20__

_____
Notary Public

2

**SUBCONTRACTOR'S PROGRESS LIEN WAIVER AND RELEASE OF CLAIMS**

Period Ending ("Payment Date"): _____, 20__

Owner: _____
Project/Premises: _____
Contractor: _____
Subcontractor: _____
Percentage of Work Completed: _____

Subcontractor hereby acknowledges that the payment for the Percentage of Work Completed (the "Progress Payment"), upon clearance by Subcontractor's bank, together with Total Payments Received To Date, represents payment in full for all work, labor, services, equipment and materials furnished on the Project by Subcontractor and its sub-subcontractors, laborers and materialmen through the Payment Date (the "Work") and for which payment is now due.

In consideration of the sums previously received, and the Progress Payment, Subcontractor hereby waives and releases Contractor and Owner from any and all claims for payment for the Work and liens and rights of liens in connection with the Project, other than with respect to Retainage, the Claims (if any) listed on the attached schedule (the "Listed Claims"), notice of which has been timely provided in accordance with the provisions of the Contract for the Project, and any potential claims for which the time to provide notice in accordance with the provisions of the Contract has not expired. [_____ Initial here if schedule is attached.]

Subcontractor represents and warrants that it has paid for all labor, materials, equipment and services that it has used or supplied in the amounts set forth on Subcontractor's Applications for Payment or, upon clearance of the Progress Payment, will pay for same in accordance with applicable law. Subcontractor further represents and warrants that it has no other outstanding and unpaid applications, invoices, or unbilled work or materials against Contractor other than the Listed Claims and any potential claims for which the time to provide notice in accordance with the provisions of the Contract has not expired. Subcontractor agrees to defend, indemnify and hold harmless Contractor and Owner for any losses or expenses (including without limitation reasonable attorneys' fees) should any claim, lien or right of lien be asserted against Contractor or Owner by Subcontractor or any of its sub-subcontractors, laborers or materialmen in connection with payment for the Work. Subcontractor acknowledges (a) amounts received from Contractor are trust funds under applicable law and (b) the making and delivery of this waiver is a substantial inducement to Contractor in making payments to Subcontractor.

_____

By:_____
      Name:
      Title:

Sworn to before me this
_____ day of _____, 20__


_____
Notary Public

[957596-1]

## SUBCONTRACTOR'S FINAL LIEN WAIVER AND RELEASE OF CLAIMS

Owner: _____

Project/Premises: _____

Contractor: _____

Subcontractor: _____

Percentage of Work Completed: _____

Subcontractor hereby acknowledges that the payment for the Percentage of Work Completed (the "Final Payment"), upon clearance by Subcontractor's bank, together with Total Payments Received To Date, represents payment in full for all work, labor, services, equipment and materials furnished on the Project by Subcontractor and its sub-subcontractors, laborers and materialmen.

In consideration of the sums previously received, and the Final Payment, Subcontractor hereby waives and releases Contractor and Owner from any and all claims for payment for the Work and liens and rights of liens in connection with the Project as well as any other claims, rights or causes of action in equity or law whatsoever arising out of, through or under the Subcontract for the Work on the Project or otherwise in connection with the Project.

Subcontractor represents and warrants that it has paid for all labor, materials, equipment and services that it has used or supplied in the amounts set forth on Subcontractor's Applications for Payment or, upon clearance of the Final Payment, will pay for same in accordance with applicable law. Subcontractor further represents and warrants that it has no other outstanding and unpaid applications, invoices, or unbilled work or materials against Contractor. Subcontractor agrees to defend, indemnify and hold harmless Contractor and Owner for any losses or expenses (including without limitation reasonable attorneys' fees) should any claim, lien or right of lien be asserted against Contractor or Owner by Subcontractor or any of its sub-subcontractors, laborers or materialmen in connection with payment for the Work. Subcontractor acknowledges that (a) amounts received from Contractor are trust funds under applicable law and (b) the making and delivery of this waiver is a substantial inducement to Contractor in making payments to Subcontractor.

_____

By:_____
    Name:
    Title:

Sworn to before me this
_____ day of _____, 20__

_____
Notary Public

## SCHEDULE 1
## ASSESSMENTS

1. City of Miami Beach North Shore Resolution Number 94-21437 dated, December 21, 1994

2. Perpetual Non-Exclusive Easement Agreement between NORTH CARILLON, L.L.C., and the CITY OF MIAMI BEACH dated, April 4, 2008

## SCHEDULE 2
## PURCHASE PRICE ALLOCATION

| SELLER | ALLOCATION OF PURCHASE PRICE |
|---|---|
| FL 6801 COLLINS NORTH LLC | $4,000,000.00 |
| FL 6801 COLLINS SOUTH LLC | $200,000.00 |
| FL 6801 COLLINS CENTRAL LLC | $7,800,000.00 |

## SCHEDULE 3
## RENTAL PROGRAM AGREEMENTS

| Floor | Hotel Unit & Contract Unit | Owner Name | RPA PROGRAM / BENEFITS ACCEPTED | DATE OF AGREEMENT TERMINATION DATE |
|---|---|---|---|---|
| 2 | 210 C211 | JLE PROPERTIES LLC - ELLEN WINDHEIM&LEONARD ZACKON | B - NO | 7/6/2012 7/5/2014 |
| 2 | 212 C210 | DRM ASSETS CORP, RAFAEL LAURO | C - NO | 6-25-12 6-24-14 |
| 2 | 214 C209 | SCALITTI LLC - Carlos DiCarlo | B - NO | 12/16/2013 12/15/15 |
| 2 | 216 C208 | P&R PROPERTY LLC, DANIEL OZAN and CLAUDIA  GOMEZ | A - YES | 3/5/2011 3/4/2016 |
| 2 | 217 C204 | DAVID HAMAMOTO | A - NO | 5/2/2012 5/1/2017 |
| 2 | 220 C206 | DAVID HAMAMOTO | A - NO | 5/2/2012 5/1/2017 |
| 2 | 222 C205 | SEASIDE CITY LLC, FRANCINE LEFRAK& RICK FRIEDBERG | C -YES | 2/25/2009 2/24/2015 |
| 3 | 301 C316 | WILLIAM FRIEDBERG | C -YES | 9/26/2011 9/26/2014 |
| 3 | 310 C311 | LANCASHIRE GROUP LLC - DIEGO STERMAN | C - NO | 6/12/2012 6/11/2014 |
| 3 | 314 C309 | PETER FREY & CAROLINE SHAPIRO | C - NO | 2/1/2014 1/31/2015 |
| 3 | 315 C303 | LODEWIJK DE LAERE & PASCALE CLEMENT | C - YES | 11/4/2009 11/3/2014 |
| 3 | 316 C308 | OCCELLI INVESTMENTS LLC. OCCELLI, Dario | B - YES | 07/22/11 07/21/2015 |
| 3 | 317 C304 | TIPY FLORIDA INC.  GLAUCIA RODRIGUES | C - NO | 02/20/2012 02/19/2015 |
| 3 | 320 C306 | YOUNG MEE KANG & IRVIN BRADY | C - YES | 1/29/2010 1/28/2015 |

| 3 | 322<br>C305 | SUSAN TAWIL | C - YES | 6/30/2009<br>6/29/2014 |
|---|---|---|---|---|
| 4 | 409<br>C401 | MD Real Property LLC, DANIELOZAN | A - YES | 10/29/2010<br>10/28/2015 |
| 4 | 410<br>C411 | RAIN CASTLE CANYON - LANA CALLEN | B - NO | 8/24/2012<br>8/23/2014 |
| 4 | 411<br>C402 | ERIC WALLBERG | D* - YES | 12/22/2008<br>12/21/2015 |
| 4 | 412<br>C410 | HELEN YARMAK | C - NO | 1/5/2009<br>1/4/2015 |
| 4 | 414<br>C409 | S & E HOTEL MANAGEMENT, LLC | B - YES | 10/26/2010<br>10/25/2014 |
| 4 | 415<br>C403 | IGNACIO G. PAKCIARZ & SUSANA HERNANDEZ | B - YES | 7/15/2010<br>7/14/2014 |
| 4 | 416<br>C408 | JANE COE STOKER | B - NO | 02/21/12<br>02/20/16 |
| 4 | 418<br>C407 | MARGARET ROSENFELD | A - YES | 8/10/2009<br>8/9/2014 |
| 4 | 420<br>C406 | PETER FREY & CARRIE SHAPIRO | C- NO | 5/19/2014<br>5/18/2015 |
| 4 | 422<br>C405 | SANDY MONTAG | A- YES | 12/12/2008<br>12/11/2018 |
| 5 | 501<br>C516 | EVAN MICHAELS | B - YES | 12/22/2008<br>12/21/2014 |

| 5 | 502 C515 | STIVELMAN , CLAUDIO JACQUES | B-NO | 11-29-11 11/28/2015 |
|---|---|---|---|---|
| 5 | 503 C517 | EMANUEL & CAROL FITZGERALD | B - YES | 4/29/2014 4/28/2016 |
| 5 | 509 C501 | LAS CONDES, LLC - JUAN PABLO CAPPELLO | C - YES | 4/30/2010 4/29/2014 |
| 5 | 510 C511 | NAJM, JAMAL | B - NO | 6/13/2012 6/12/2014 |
| 5 | 515 C503 | OTELLO SORATO & FABIANA BERNARDI | B - NO | 12/10/2008 12/9/2015 |
| 5 | 516 C508 | DUBOURG, Julian | B-NO | 6/26/13 6/25/2015 |
| 5 | 518 C507 | SUKRU AND INCI CAKIRCA | C - YES | 7/20/2010 7/19/2014 |
| 6 | 601 C616 | SOJAMA LLC - Gustavo Sterman | C-NO | 7/3/2013 7/2/2014 |
| 6 | 603 C617 | NEWBLATT FAMILY LLC, ROBERT NEWBLAT | B -YES | 10/31/2008 10/30/2014 |
| 6 | 604 C614 | JAMES WALESA | A -YES | 1/16/2009 1/15/2019 |
| 6 | 605 C618 | BHATIA VENTURES/Susan Bhatia | A-NO | 8/20/2013 8/19/2018 |
| 6 | 606 C613 | SAUDE INVESTMENTS, LLC - BETTINA CISNEROS | C-NO | 1/22/2014 1/21/2015 |
| 6 | 608 C612 | JANE COE STOKER | B -NO | 6/12/2013 6/12/2015 |
| 6 | 610 C611 | BRIAN GORDON, PAUL SILITSKY, ANDREA LUBELL | B -YES | 12/2/2009 12/1/2015 |
| 6 | 611 C602 | LLOYD HERSHMAN & ELIZABETH WELCH | A - YES | 1/8/2009 1/7/2019 |
| 6 | 612 C610 | CISNEROS, WILLIAM&BETTINA | C-NO | 12/17/13 12/16/2014 |
| 6 | 614 C609 | TIM OUELLETTE | B -YES | 6/17/2009 6/16/2015 |

| 6 | 615 C603 | ARI RUBENSTEIN | A -YES | 6/17/2009 6/16/2018 |
| 6 | 616 C608 | BARRY AND DONNA ZUCKER | B -YES | 12/22/2008 12/21/15 |
| 6 | 617 C604 | SOJAMA LLC - GUSTAVO STERMAN | C-NO | 11/30/2012 11/30/2014 |
| 6 | 620 C606 | JAY PARKER | B - NO | 5/1/2009 4/30/2015 |
| 6 | 622 C605 | YOEL & CAROL HALLER | B -YES | 10/30/2008 10/29/2014 |
| | | | | |
| 7 | 701 C716 | FIDEO LLC - ROBERTO STERMAN | C - NO | 5/29/2012 5/28/14 |
| 7 | 702 C715 | GLEICHER, ISAAC | B -NO | 11/21/2011 11/20/2015 |
| 7 | 704 C714 | CIPORA FRAIMAN | B -YES | 8/27/2009 8/26/2015 |
| 7 | 706 C713 | DRM ASSETS CORP, RAFAEL LAURO | C - NO | 6-25-12 6-24-14 |
| 7 | 708 C712 | ACBS Florida Investments LLC / Robert and Mary Ellen Fettig | B-NO | 3-1-13 3-1-15 |
| 7 | 710 C711 | ALEXEY VOLOKHOV | B- NO | 10/21/2013 10/20/2015 |
| 7 | 711 C702 | JENINE RENZULLI & JEFF ROSENBERG | B -YES | 4/3/2009 4/2/2015 |
| 7 | 714 C709 | LUIS SOUZA FIDELIX | C -YES | 9-20-11 9/20/14 |
| 7 | 715 C703 | PAUL BOGUTSKY | B -YES | 11/7/2008 11/6/2014 |
| 7 | 716 C708 | STEVEN STANLEY LEVY & MICHELLE DE LOS SANTOS | C -YES | 5/23/2011 5/22/2014 |

| 7 | 717<br>C704 | KOHANN YEE | B-NO | 3/12/2013<br>3/12/2015 |
|---|---|---|---|---|
| 8 | 801<br>C816 | PHILOMENA D LLC/ ANTHONY DELLA SALLA | C- YES | 10/10/2011<br>10/09/2014 |
| 8 | 802<br>C815 | MAXINE BASS | B - YES | 11/12/2008<br>11/11/2014 |
| 8 | 803<br>C817 | STUART LEVINE | A - YES | 11/12/2008<br>11/11/2018 |
| 8 | 804<br>C814 | BALLRIRSM & LEELA MAHARAJ | A - NO | 12/15/2008<br>12/14/2018 |
| 8 | 805<br>C818 | DOUGLAS SCHOEN | A - NO | 11/26/2008<br>11/25/2018 |
| 8 | 806<br>C813 | PJAS SUSAN KUNREUTHER & PETER SMITH | A - YES | 12/4/2008<br>12/03/2018 |
| 8 | 809<br>C801 | MARENGO INTERNATIONAL GROUP CORP | C - NO | 12/20/2011<br>12/19/2014 |
| 8 | 811<br>C802 | GEORGE LUFT | B -YES | 8/17/2009<br>8/16/2015 |
| 8 | 812<br>C810 | ROBERT WATMAN | C -YES | 6/23/2009<br>6/22/2014 |
| 8 | 816<br>C808 | PETROESTE - EDUARDO ESTIVIL | B - NO | 7/5/2012<br>7/4/2014 |
| 8 | 817<br>C804 | JAY PARKER  (REP) / GIOVANNI FIOCCHI ( OWNER) | B -YES | 5/18/2009<br>5/17/2015 |
| 8 | 820<br>C806 | SUGLIA REALTY MIAMI LLC | C -YES | 5/17/2010<br>5/16/2014 |
| 8 | 822<br>C805 | UNIT 822 PROPERTIES | B - NO | 11/06/2012<br>11/05/2014 |
| 9 | 901<br>C916 | CR901 LLC - Roberto Garcia & Francisco Gonzalez | A- NO | 6/12/2012<br>6/11/2017 |

| 9 | 902<br>C915 | FIDEO LLC - ROBERTO STERMAN | C- NO | 5/29/12<br>5/28/15 |
| 9 | 903<br>C917 | ZINA SHERMAN | B -YES | 11/6/2008<br>11/5/2014 |
| 9 | 905<br>C918 | HANK KATZEN | A -YES | 11/4/2008<br>11/03/2018 |
| 9 | 906<br>C913 | Montag Canyon LLC / RODNEY MONTAG | A-NO | 04/07/2013<br>04/07/2018 |
| 9 | 910<br>C911 | QING HUANG and JIA XIE | B -NO | 3/21/2012<br>3/20/14 |
| 9 | 914<br>C909 | NANCY FUSCO BALDWIN | B -YES | 11/26/2008<br>11/25/2014 |
| 9 | 915<br>C903 | STEPHEN & ROSALEE SIMENSKY TRUST | A - YES | 1/4/2010<br>1/3/2015 |
| 9 | 916<br>C908 | LANCASHIRE GROUP LLC - DIEGO STERMAN | C - NO | 6/29/2012<br>6/28/2014 |
| 9 | 917<br>C904 | Plate West, In., a Florida corporation | C -YES | 11/1/2010<br>10/31/2014 |
| 9 | 918<br>C907 | CR907 LLC. Caffarro, Mr. A and Mr. S | C -YES | 6/7/2011<br>6/6/2014 |
| 9 | 920<br>C906 | MARY KAY FALISE | B -YES | 12/4/2008<br>12/03/2014 |
| 9 | 922<br>C905 | BARRY AND DONNA ZUCKER | A - YES | 1/13/2009<br>1/12/2019 |
| 10 | 1001<br>C1016 | BARBARA SILBER | C -NO | 12/21/2011<br>12/20/2014 |
| 10 | 1002<br>C1015 | DICCE, VINCENT | B -YES | 4/15/2010<br>4/14/2014 |
| 10 | 1003<br>C1017 | WINDSOR INVESTMENT CR LLC, RONALD DIGASBARRO | B -YES | 4/30/2010<br>4/29/2014 |
| 10 | 1004<br>C1014 | GUSTAVO, EDURADO, OSCAR RUBIO | C -YES | 6/1/2010<br>5/30/2014 |
| 10 | 1006<br>C1013 | BERNICE BARSTEIN | C -YES | 3/19/2009<br>3/18/2014 |

| 10 | 1008<br>C1012 | QING HUANG and JIA XIE | B - NO | 6/22/2012<br>6/21/2014 |
|----|---------------|------------------------|--------|-------------------------|
| 10 | 1010<br>C1011 | ANA & JAMIE A. DAVIDSON | C - NO | 7/10/2012<br>7/9/2014 |
| 10 | 1011<br>C1002 | FEDERICO GREYEB | B -YES | 8/26/2009<br>8/25/2015 |
| 10 | 1012<br>C1010 | MR. MANBIR SINGH | B - NO | 5/22/2014<br>5/21/2016 |
| 10 | 1017<br>C1004 | SHAWYIN AND KWASI ARMAH | B -YES | 9/1/2011<br>8-31-15 |
| 10 | 1018<br>C1007 | CR 1018 LLC (MRS. PAOLA GARZONI) | B- NO | 12/10/2012<br>09/3/14 |
| 10 | 1020<br>C1006 | DR. BRIAN HOYLE | B -YES | 6/21/11<br>6/20/2015 |
| 10 | 1022<br>C1005 | HELEN YARMAK | A - NO | 1/25/2009<br>1/24/2019 |

## SCHEDULE 4
## PREVIOUSLY USED UNITS

Units 204 and 205, North Tower

Unit 109, South Tower

Units 207, 307, 319, 519, 619, 719, 819, 919, and 1019, Central Tower

## SCHEDULE 5
## LEASES AND CONTRACTS

1. Construction Manager Agreement between FL 6801 SPIRITS, LLC and BENSON ENGINEERING & CONSTRUCTION COMPANY, CGC LIC #062411 and EBL PARTNERS, LLC dated January 4, 2010

2. Amendment #1 of the Construction Management Agreement between FL 6801 SPIRITS, LLC AND BENSON ENGINEERING & CONSTRUCTION COMPANY, CGC LIC#062411 and EBL PARTNERS, LLC dated June 2, 2010

3. Amendment #2 of the Construction Manager Agreement between FL 6801 SPRITS, LLC and BENSON ENGINEERING & CONSTRUCTION COMPANY, CGC LIC# 062411 and EBL PARTNERS, LLC LIC#1518857 dated March 18, 2011

4. Amendment #3 of the Construction Manager Agreement between FL 6801 SPRITS, LLC and EBL PARTNERS, LLC LIC#1518857 dated November 21, 2011

5. Amendment #4 of the Construction Manager Agreement between FL 6801 SPRITS, LLC and EBL PARTNERS, LLC LIC#1518857 dated June 21, 2012

6. Amendment #5 of the Construction Manager Agreement between FL 6801 SPRITS, LLC and EBL PARTNERS, LLC LIC#1518857 dated September 7, 2012

7. Amendment #6 of the Construction Manager Agreement between FL 6801 SPRITS, LLC and EBL PARTNERS, LLC LIC#1518857 dated January 16, 2013 (NOT EXECUTED)

8. Association Management Agreement between CARILLON HOTEL AND SPA MASTER ASSOCIATION, INC. and ATLANTIC & PACIFIC ASSOCIATION MANAGEMENT, INC. dated December 10, 2010

9. User License Agreement between LB CARILLON LLC and COTTON AND COMPANY, dated May, 2009 (NOT DATED)

10. Marketing Agreement between FL 6801 COLLINS SOUTH LLC and COTTON AND COMPANY, dated March 19, 2011

## SCHEDULE 6
## LITIGATION

1. North Carillon Beach Condominium Association, Inc. Complaint for Declaratory Relief against FL 6801 COLLINS NORTH LLC, FL 6801 COLLINS SOUTH LLC and FL 6801 Collins Central dated February 19, 2014

2. Central Carillon Beach Condominium Association, Inc. and South Carillon Beach Condominium Association, Inc., Complaint against FL 6801 Collins Central LLC, Carillon Hotel and Spa Master Association, Inc., and North Carillon Beach Condominium Association, Inc., dated, March 11, 2014

3. Broad and Cassel letter addressed to Carillon Hotel and Spa Master Association, Inc. regarding "Request for Records" dated December 27, 2013

4. Broad and Cassel letter addressed to FL6801 Collins Central, LLC c/o FL 6801 Spirits LLC regarding "Request for Records" dated December 27, 2013

5. Siegfried Rivera Hyman Lerner De La Torre Mars Sobel ("SRHL") letter addressed to SHUTTS & BOWEN, LLP regarding South Carillon Beach Condominium Association, Inc. Heat Exchange System dated November 19, 2013

6. SRHL letter addressed to SHUTTS & BOWEN, LLP regarding South Carillon Beach Condominium Association, Inc. Certificate of Occupancy dated September 26, 2013

7. SRHL letter addressed to SHUTTS & BOWEN, LLP regarding South Carillon Beach Condominium Association, Inc. Heat Exchange System dated September 25, 2013

8. SRHL letter addressed to SHUTTS & BOWEN, LLP regarding South Carillon Beach Condominium Association, Inc. Vibration and Noise from Hydraulic Elevator Pumps dated September 27, 2013

9. HYMAN and MARS LLP letter addressed to SHUTTS AND BOWEN, LLP regarding South Carillon Beach Condominium Association, Inc. Units S-212 and Units S-312 dated April 26, 2013

10. HYMAN and MARS LLP letter addressed to SHUTTS AND BOWEN, LLP regarding South Carillon Beach Condominium Association, Inc. Units S-212 and Units S-312 dated May 3, 2013

11. HYMAN and MARS LLP letter addressed to SHUTTS AND BOWEN, LLP regarding South Carillon Beach Condominium Association, Inc. Units S-212 and Units S-312 dated June 3, 2013

12. GURSKEY RAGAN PA letter addressed to SHUTTS AND BOWEN, LLP regarding Building Records dated February 5, 2013

13. GURSKEY RAGAN PA letter addressed to SHUTTS AND BOWEN, LLP regarding Request for Records dated January 21, 2013

14. Notice of Claim by South Carillon Beach Condominium Association, Inc. pursuant to Chapter 558 Florida Statues dated May 22, 2012

15. RUMBERGER KIRK & CALDWELL letter addressed to GURSKY & RAGAN PA regarding South Carillon Beach Condominium Association, Inc. 558 Notice dated May 29, 2013

16. Pardo & Gainsburg LLP letter to FL 6801 Collins South, LLC regarding NOTICE OF CLAIM FOR UNIT 507 PURSUANT TO SECTION 558.004, FLORIDA STATUTES dated November 4, 2010

17. Pardo & Gainsburg LLP letter to FL 6801 Collins South, LLC regarding NOTICE OF CLAIM FOR UNIT 508 PURSUANT TO SECTION 558.004, FLORIDA STATUTES dated November 4, 2010