TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Lara R. Sheikh

*Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re:                                                      :     Chapter 11
                                                            :     Case No. _____
FL 6801 SPIRITS LLC, *et al.*,                              :
                                                            :
                                          Debtors.          :
                                                            :
------------------------------------------------------------x

**ORDER (A) APPROVING (i) BIDDING PROCEDURES, (ii) FORM AND MANNER
OF NOTICES, AND (iii) FORM OF ASSET PURCHASE AGREEMENT,
INCLUDING BID PROTECTIONS; (B) SCHEDULING THE TIME, DATE AND
PLACE FOR THE AUCTION AND HEARING TO CONSIDER FINAL APPROVAL
OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

> Upon that portion (the "Procedures Motion") of the motion (the
"Motion"), dated [_____], 2014 of FL 6801 Spirits LLC, *et al.* (collectively, the
"Debtors")[1], for entry of an order pursuant to sections 105 and 363 of title 11 of the
United States Code (the "Bankruptcy Code") and Rules 2002(a)(2) and 6004 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the
proposed bidding procedures (the "Bidding Procedures") to be used in connection with

---

[1]   The Debtors consist of the following entities:  FL 6801 Spirits LLC ("Spirits"), FL 6801 Collins North
      LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), FL 6801 Collins South LLC ("6801
      South," together with 6801 North and 6801 Central, the "Collins Subsidiaries").

the proposed sale (the "Sale") of the Assets[2] to 360 Miami Hotel & Spa LLC (the

"Purchaser"), or to any competing bidder (the "Successful Bidder") that submits or

collectively submit a higher or better offer for the Assets, (ii) scheduling an auction (the

"Auction") for the Assets and a hearing (the "Sale Hearing") to consider approval of the

Sale, and (iii) approving the form and manner of notice of the Auction and the Sale

Hearing;  and this Court having reviewed the Procedures Motion;  and this Court

having held a hearing on the Procedures Motion on [_____], 2014 (the

"Procedures Hearing");  and, based on the Procedures Motion and the record of the

Procedures Hearing, it now appearing that the relief requested in the Procedures

Motion is in the best interest of the Debtors' estates and all parties in interest;  and after

due deliberation thereon and good cause appearing therefore an no further notice being

required, it is hereby:

### FOUND AND DETERMINED THAT:[3]

A.    This Court has jurisdiction over the Procedures Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the

Procedures Motion and the relief requested therein is a core proceeding pursuant to

28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

B.    Good and sufficient notice of the relief sought in the Procedures

Motion has been given and no further notice is required.  A reasonable opportunity to

object or be heard regarding the relief requested in the Procedures Motion has been

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the
Bidding Procedures and/or the Purchase Agreement (defined below).

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as
findings of fact, when appropriate.  See Fed. R. Bankr. P. 7052.

afforded to all interested persons and entities, including (i) counsel for the Purchaser, Fulbright & Jaworski LLP, 98 San Jacinto Blvd., Suite 1100, Austin, Texas 78701-4255, Attn: Jane Snoddy Smith, Esq. and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, Attn: Kristian W. Gluck, Esq.; (ii) all applicable federal, state, and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Assets, are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the Debtors' ownership of the Assets or have any known interest in the relief requested by the Motion, including (a) the Internal Revenue Service, P.O. Box 21126, Philadelphia, Pennsylvania 19114, (b) the Florida Licensing Authorities, and (c) the City of Miami Beach, City Hall, 1700 Convention Center Drive, Miami Beach, Florida 33139; (iii) the Debtors' known secured creditors and lien holders, including all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Assets; (iv) the United States Attorney for the Southern District of New York; (v) the Office of the United States Trustee for Region 2, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; (vi) the Debtors' Secured Lender, PAMI ALI LLC, c/o Weil, Gotshal & Manges LLP, Attn: Jacqueline Marcus, Esq., 767 Fifth Avenue, New York, New York 10153; (vii) CR Miami, LLC, Attn: Jerry Cohen and Gary Milner, 8600 East Rockcliff Road, Tucson, Arizona 85750; W. James Harrison, Esq., W.J. Harrison & Associates, P.C., 3561 East Sunrise, Suite 201, Tucson, Arizona 85718 (counsel to CR Miami, LLC); (viii) parties to executory contracts and unexpired leases proposed to be assumed and assigned, or rejected as part of the Proposed Sale; (ix) counsel to the North Tower Association; (x) counsel to the Central and South Tower Associations; (xi) all owners of

3

units at the Assets; (xii) the creditors listed as holding the 20 largest unsecured claims against the Debtors' estates (on a consolidated basis); (xiii) all entities that have expressed an interest to the Debtors' or their advisors in purchasing the assets subject to this Order;  (xiv) all parties listed on Schedule 6 to the Purchase Agreement;  and (xv) all other parties that filed notices of appearance in the Chapter 11 cases ((i)-(xv) shall be collectively referred to herein as the "Notice Parties").

C.      The proposed notice of the Sale and the Bidding Procedures, as set forth in the Procedures Motion and the Purchase Agreement, is good, appropriate, sufficient and is reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice of the Sale of the Assets, the assumption and assignment of the Assigned Contracts (as defined herein), or the Bidding Procedures, as set forth herein and in the Procedures Motion, is required.

D.      The Cure Notice (as defined herein) attached hereto as **Exhibit C** is reasonably calculated to provide all non-Debtor counterparties (the "Contract Parties") to the Debtors' executory contracts and unexpired leases (each a "Contract or Lease" and, collectively, the "Contracts and Leases") with proper notice of the potential assumption and assignment of their Contract or Lease and any cure amounts relating thereto and will be served on such Contract Parties in accordance with paragraph 17 hereof; provided, however, that the mere listing of any Contract or Lease on the Cure Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors with respect to such Contracts and Leases are reserved.

E.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Procedures Motion, including this Court's

approval of (i) the Bidding Procedures, attached hereto as **Exhibit A**, (ii) the form and manner of service of the notice of the Auction, the Motion and Sale Hearing, attached hereto as **Exhibit B** (the "Notice of Auction and Sale Hearing"), (iii) the procedures for the assumption and assignment of certain Contracts and Leases (collectively, the "Assigned Contracts"), including notice of the proposed cure amounts, and (iv) the Break-Up Fee.

F.    The Debtors have articulated good and sufficient reasons for, and the best interests of the Debtors' estates will be served by, this Court scheduling a subsequent hearing to consider whether to grant the remainder of the relief requested in the Motion, including approval of the proposed Sale in accordance with either (i) the Purchase Agreement, or (ii) such other agreement by and between the Debtors and the Successful Bidder, in each case, free and clear of, among other things, all liens, claims, encumbrances, and interests, other than permitted exceptions (collectively, "Liens, Claims and/or Interests") (with the same to attach to the proceeds therefrom) pursuant to section 363 of the Bankruptcy Code.

G.    The entry of this Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

H.    The Debtors have exercised sound business judgment and presented sound business reasons for approval of the Bid Procedures and Break-Up Fee.   The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets.

I.    The Break-Up Fee set forth in the Asset Purchase Agreement shall be paid in accordance with the Purchase Agreement, and (i) if triggered, shall be deemed an actual and necessary cost and superpriority administrative expense of preserving the Debtors' estates, within the meaning of sections 364(c)(1) and 503(b)(1) of

the Bankruptcy Code, (ii) is reasonable and appropriate, particularly in light of the size and nature of the sale and the efforts that have been or will be expended by the Purchaser notwithstanding that the proposed sale is subject to higher or otherwise better offers for the Assets, (iii) was negotiated by the parties at arm's length and in good faith, and (iv) is necessary to ensure that the Purchaser will continue to pursue its proposed acquisition of the Assets contemplated by the Purchase Agreement.  The Break-Up Fee is commensurate with the real and substantial post-petition benefits conferred upon the Debtors' estates by the Purchaser and constitute actual and necessary costs and expenses incurred by the Debtors in preserving the value of their estates within the meaning of section 503(b) of the Bankruptcy Code.

J.     The proposed sale of the Assets is consistent with section 363(b)(1)(A) of the Bankruptcy Code and the Debtors' existing privacy policy, and no consumer privacy ombudsman is necessary in connection with the sale of the Assets.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Procedures Motion is GRANTED to the extent provided in this Order.

2.     Any and all objections to entry of this Order or to the relief provided herein and requested in the Procedures Motion that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled in their entirety.

## The Bidding Procedures

3.     The Bidding Procedures, as set forth on **Exhibit A** and incorporated herein by reference as if fully set forth herein, are hereby approved in all respects and

shall govern all bids and bid proceedings relating to the Assets.  Notwithstanding the

above, any party in interest may object at the Sale Hearing to the criteria used by the

Debtors to select the highest or otherwise best offer for the Assets, and this Order shall

not be construed as approving or disapproving of the criteria set forth in the Bidding

Procedures.

4.      The deadline for submitting bids for the Assets (the "Bid

Deadline") shall be **[insert date 45 days from date of Bid Procedures Order]**, 2014, at

4:00 p.m., unless otherwise extended by the Debtors, in consultation with the Purchaser.

In the event the Bid Deadline is extended, the Debtors may adjourn the dates for:

(i) the Auction and (ii) the Sale Hearing, provided that such adjourned dates are

consistent with the Purchase Agreement.

5.      Except as may be limited by the Purchase Agreement, the Debtors

are authorized to extend the deadlines set forth in this Order and/or adjourn, continue

or suspend the Auction and/or the Sale Hearing for any reason, without further order

of this Court, by filing a notice with this Court and serving such notice on all Notice

Parties and Potential Bidders.

6.      The Debtors are authorized to take any and all actions necessary or

appropriate to implement the Bidding Procedures.

## The Auction

7.      The Auction shall commence at [_____] a.m. [**New York**]

Time on **[INSERT DATE AT LEAST 3 BUSINESS DAYS FROM BID DEADLINE]**,

2014, at a location to be determined in New York, New York, or such later date and time

as the Debtors shall notify all Qualified Bidders and counsel for the Purchaser;

provided, however, in the event that no Qualified Bids (other than that submitted by

the Purchaser) are received by the Bid Deadline, the Debtors shall not be required to conduct an Auction, and in such event the Debtors shall proceed with the approval of the Purchase Agreement.

### Sale Hearing

8.      The Sale Hearing shall be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, on **[INSERT DATE 2 BUSINESS DAYS AFTER AUCTION]**, 2014 at __:__ _.m. at the United States Bankruptcy Court, Courtroom 621, One Bowling Green, New York, New York 10004, at which time this Court shall (i) consider approval of the Sale to the Purchaser or other Successful Bidder; (ii) consider the entry of the proposed sale order, substantially in the form attached to the Motion as **Exhibit 3** (the "Sale Order"); (iii) consider any issues or objections that are timely interposed by any parties;  and (iv) grant such other or further relief as this Court may deem just or proper.

9.      Except as may be limited by the Purchase Agreement, the Sale Hearing may be adjourned by the Debtors, after consultation with the Purchaser or other Successful Bidder, as applicable, from time to time without further order of this Court, by filing a notice with this Court and serving such notice on all Qualified Bidders and counsel for the Purchaser.

### Notice

10.     The Notice of Auction and Sale Hearing substantially in the form attached hereto as **Exhibit B** is hereby approved.

11.     Within two (2) business days after the entry of this Order, the Debtors shall cause a copy of the Bidding Procedures, the Notice of Auction and Sale

Hearing, and this Order to be served upon the Notice Parties as well as the parties that toured and/or made offers for the Assets via first class mail if they could be located.

12.    As soon as practicable after entry of this Order, the Debtors shall cause the Notice of Auction and Sale Hearing, in substantially the form attached to the Bid Procedures Order as **Exhibit B**, to be published once in the New York Times pursuant to Bankruptcy Rule 2002(l).

13.    The notice and publication as set forth in the preceding paragraphs shall constitute good and sufficient notice of the Motion, the Auction, the Sale Hearing and the proposed Sale Order, and no other or further notice of the Motion, the Auction, the Sale Hearing and/or the proposed Sale Order shall be necessary or required.

### Objections to the Sale

14.    Objections, if any, to the sale of the Assets, or the relief requested in the Motion, other than with respect to the relief granted herein, shall: (i) be in writing; (ii) comply with the Bankruptcy Rules; (iii) be filed with this Court and served so as to be **received** no later than 4:00 p.m. prevailing Eastern Time on [**INSERT DATE 7 DAYS BEFORE SALE HEARING**], 2014 (the "Objection Deadline"), by (a) Togut, Segal & Segal LLP, attorneys for the Debtors, One Penn Plaza, Suite 3335, New York, New York 10119, Attention:  Frank A. Oswald, Esq.; (b) the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq.; and (c) counsel for Purchaser, Fulbright & Jaworski LLP, 98 San Jacinto Blvd., Suite 1100, Austin, Texas 78701-4255, Attn: Jane Snoddy Smith, Esq. and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, Attn:  Kristian W. Gluck, Esq.  Only timely filed and

served responses, objections, and other pleadings will be considered by this Court at the Sale Hearing.

15.    The failure of any person or entity to timely file their objection to the Motion shall forever bar any objection to the Motion or the relief requested therein, or to the consummation of the Sale contemplated by the Purchase Agreement or agreement with the Successful Bidder, if any (including the transfer of the Assets free and clear of Liens, Claims and/or Interests).

### Assigned Contracts

16.    The notice of potential assumption and assignment of the Contracts and Leases, substantially in the form attached hereto as Exhibit C (the "Cure Notice"), is hereby approved.

17.    On or before ten (10) business days after the entry of this Order, the Debtors shall file with the Bankruptcy Court and serve by first-class postage-prepaid the Cure Notice on all Contract Parties and their counsel who have filed notices of appearance in the Chapter 11 Cases.  The Cure Notice shall identify each of the Contracts and Leases and provide the corresponding cure amounts that the Debtors believe must be paid to cure all defaults under the Contracts and Leases to the extent required by section 365 of the Bankruptcy Code (the "'Cure Amounts").  The Cure Notice that the Debtors shall file with the Bankruptcy Court will include a comprehensive list of the Contracts and Leases with the corresponding Cure Amounts and the Cure Notice that the Debtors shall serve on Contract Parties shall be personalized.

18.    Unless the Contract Party to any Contract or Lease files an objection to its scheduled Cure Amount or to the assumption and assignment of a Contract or

Lease, and serves a copy of the such objection so as to be actually received by the Notice
Parties no later than the Objection Deadline, such Contract Party shall be forever
barred, estopped, and enjoined from objecting (i) to the Cure Amount and from
asserting that any additional amounts are due or defaults exist, (ii) that any conditions
to assumption and assignment must be satisfied under such Contract or Lease before it
can be assumed and assigned or that any required consent to assumption or assignment
has not been given, or (iii) that the Successful Bidder (including the Purchaser) has not
provided adequate assurance of future performance.

19.    In the event of a timely filed objection and dispute regarding: (a)
any Cure Amount with respect to any of the Contracts and Leases; (b) the ability of the
Successful Bidder (including the Purchaser) to provide adequate assurance of future
performance as required by section 365 of the Bankruptcy Code, if applicable, under
any of the Contracts and Leases; or (c) any other matter pertaining to assumption or
assignment of any of the Contracts and Leases, the Cure Amount shall be paid by the
Sellers as soon as reasonably practicable after the Closing, in accordance with the
applicable asset purchase agreement following the entry of a final order resolving the
dispute and approving the assumption and assignment of such Contract or Lease;
provided, however, that the Debtors are authorized to consensually resolve with an
applicable counterparty any dispute regarding the amount of any Cure Amount or
assignment to the Successful Bidder (including the Purchaser), without any further
notice to or action, order, or approval of the Bankruptcy Court.

20.    No later than five (5) business days after the Closing Date, the
Debtors will file a complete list of the Contracts and Leases that were assumed and
assigned as Assigned Contracts as of the Closing Date in connection with the sale of the
Assets.

**Break-Up Fee**

21.    The Break-Up Fee is hereby approved, authorized, and binding upon the Debtors and their estates as a "superpriority" administrative expense. The Debtors' obligation to pay the Bid Protections shall survive termination of the Purchase Agreement and shall be payable as provided in the Purchase Agreement. The Debtors are authorized and directed to pay the Break-Up Fee to the Purchaser in accordance with the terms of the Purchase Agreement without further order of the Bankruptcy Court.

22.    Except for the Purchaser, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement or breakup, termination, or similar fee, or postpetition claim, including any administrative expense claim or substantial contribution claim under section 503 of the Bankruptcy Code or otherwise, and by submitting a Bid, a Bidder (other than the Purchaser) shall be deemed to waive any right with respect thereto.

23.    The Debtors' obligations under this Order, the provision of this Order, and the portions of the Purchase Agreement pertaining to the obligations to pay the Break-Up Fee shall survive confirmation of any chapter 11 plan or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted Debtors, as the case may be, after the effective date of a confirmed plan or plans in the Chapter 11 Cases (including any order entered after any dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code).

24. The full amount of the Break-Up Fee may be included in each bid by the Purchaser for the purposes of comparison to any Overbid (as defined in the Bid Procedures) in connection with each round of bidding in the Auction.

### Additional Provisions

25.     The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

26.     The stays provided for in Bankruptcy Rules 6004(h) and 6006( d) are hereby waived, and this Order shall be effective immediately upon its entry.

27.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

DATED:  New York, New York
_____, 2014

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                      :
In re:                     :     Chapter 11
                     :     Case No. _____
FL 6801 SPIRITS LLC, *et al.*,   :
                     :
           Debtors.   :
                     :
-------------------------------------------------------------x

## BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures")[1] have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on [_____ __,] 2014 [Docket No. __] (the "Bidding Procedures Order") on the docket in the above-captioned jointly administered cases of FL 6801 Spirits LLC, *et al.*, (the "Debtors").[2] The Bidding Procedures set forth the process by which the Debtors are authorized to conduct the sale (the "Sale") by auction of the Assets, as defined in that certain Purchase and Sale Agreement (the "Purchase Agreement") by and between the Collins Subsidiaries as Sellers and 360 Miami Hotel & Spa LLC, as stalking horse purchaser (the "Purchaser").

### Notice

The Debtors shall provide notice of the Bidding Procedures and the date for a hearing to approve the sale of the Assets (the "Sale Hearing"), together with a copy of the Purchase Agreement, to all parties identified by the Debtors as potentially having an interest in acquiring the Assets.

### Due Diligence

Parties interested in conducting due diligence should contact the Debtors' real estate brokers, CBRE Inc. ("CBRE") attention Christian Charre at (305) 381-6427 or Christian.Charre@cbre.com. Prospective bidders that have executed an appropriate confidentiality agreement with CBRE will be afforded access to a virtual proprietary data room that contains information relating to the Assets. The Debtors and CBRE maintain the right to deny access to the proprietary data room to any party, in their discretion, including, without limitation, on the basis that such party might use such proprietary information in a competitive manner to the detriment of the Debtors, Canyon Ranch, the Purchaser or the Successful Bidder (as defined below). The Debtors

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Purchase Agreement.

[2] The Debtors consist of the following entities: FL 6801 Spirits LLC ("Spirits"), FL 6801 Collins North LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), FL 6801 Collins South LLC ("6801 South," together with 6801 North and 6801 Central, the "Collins Subsidiaries").

and CBRE shall not be obligated to furnish any due diligence information other than that information contained in the virtual data room or after the Bid Deadline (as defined below).

Each party submitting a bid (each, a "Potential Bidder") and Qualified Bidder (as defined herein) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors.  Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is not a Qualified Bidder.  Failure by a Qualified Bidder (other than the Purchaser) to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine that a bid made by such Qualified Bidder is not a Qualified Bid.

## Qualified Bid Requirements

To be considered, any bid submitted by a Potential Bidder for the Assets must include language:

a.  stating that the bid is irrevocable through the Auction, provided, however, that (a) if the Qualified Bid (defined below) becomes the Successful Bid, such bid shall be irrevocable through the Closing Date or such earlier date as the Purchase Agreement may be terminated in accordance with its terms and (b) in the case of the Second Highest Bid (defined below), such bid shall remain irrevocable through the closing of the sale of the Assets to the Successful Bidder, unless the Successful Bidder fails to close and the Debtors shall have given notice to the Second Highest Bidder that it has decided to consummate the transaction contemplated by the Second Highest Bid in which case the Second Highest Bid shall remain open through the closing with such Second Highest Bidder;

b.  stating that the Potential Bidder (i) has had an opportunity to conduct due diligence regarding the Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures;

c.  stating that the Potential Bidder has obtained all necessary organizational approvals to make its competing bid and to enter into and consummate the transaction set forth in the Purchase Agreement and to acquire the Assets; and

d. be submitted in writing to (a) counsel for the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119 (Attn: Frank A. Oswald); and (b) CBRE, 777 Brickell Avenue, Suite 900, Miami, Florida 33131 (Attn: Christian Charre), real estate broker for Debtors, so as to be received no later than **[INSERT DATE – 45 days from entry of Bid Procedures Order]**, 2014 at __ PM (Prevailing Eastern time) (the "Bid Deadline") or such other date established by the Bankruptcy Court in the Bidding Procedures Order. Upon receipt of a bid, the Debtors shall deliver a copy to counsel for the Purchaser: Fulbright & Jaworski LLP, 98 San Jacinto Boulevard, Suite 1100, Austin, Texas 78701 (Attn: Jane Snoddy Smith) and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201 (Attn: Kristian W. Gluck).

In addition to the foregoing, a "Qualified Bidder" is a Potential Bidder that delivers a binding bid ("Qualified Bid") that satisfies the following:

1)      the bid must be based on the Purchase Agreement and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternative Transaction (the "Modified Purchase Agreement"). The bid must also include a copy of the Purchase Agreement marked against the Modified Purchase Agreement to show all changes requested by the Bidder (a Word document of the Purchase Agreement will be made available for this purpose);

2)      the bid must offer to purchase all of the Assets;

3)      the bid must be on the same (or better) terms and conditions as those set forth in the Purchase Agreement, including without limitation, with respect to certainty of closing;

4)      includes a bid for a price and under terms which the Debtors believe to be higher or better than the Purchaser's bid in cash without any financing conditions, the value of which is determined by the Debtors to be equal to or greater than the sum of: (a) the purchase price set forth in the stalking horse Purchase Agreement; (b) the Break-Up Fee; and (c) $100,000 (the sum of which shall be the incremental bid amount);

5)      is accompanied by a deposit (the "Bid Deposit") in an amount equal to at least 10% of the purchase price proposed by the Potential Bidder, in the form of a certified check or cash deposit;

6)      is accompanied by sufficient information, including to demonstrate, in the Debtors' sole discretion, that the Potential Bidder has the financial ability to timely consummate the Alternative Transaction, including, but not limited to, current bank account statements, current audited financial statements, commitments or other proof of available financing, and such other forms of financial disclosure and credit quality in support of such Potential Bidder (including financial information from any entities that will finance or guarantee the obligations of such Potential Bidder);

7)    is firm and unconditional and not subject to any contingencies that are not also applicable to the Purchase Agreement including, without limitation, further due diligence review or financing contingencies.

The Debtors shall not consider any Bids received after the Bid Deadline. Following entry of the Bidding Procedures Order, the Debtors, in their sole and absolute discretion after consultation with their professionals, may reject any competing bid that is on terms that are more burdensome or conditional than the terms of the Purchase Agreement;  requires any indemnification of the Potential Bidder other than as set forth in the Purchase Agreement; includes non-cash consideration;  is contingent on receiving uncommitted funds from a governmental authority;  entitles the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment; is not in conformity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Bankruptcy Rules of the Bankruptcy Court;  is from an entity that the Debtors, in their sole and absolute discretion, conclude does not have the financial ability to consummate the transaction or fulfill financial commitments under their proposal; or is contrary to the best interests of the Debtors' estates.

The Debtors may, in their sole and absolute discretion, communicate prior to the Auction or Sale Hearing with any Potential Bidder and may request any additional information reasonably required by the Debtors in connection with the Debtors' evaluation of such Potential Bidder's bid.

Within three (3) business days after the Bid Deadline, the Debtors shall inform each Potential Bidder that has submitted a bid whether it is a Qualified Bidder and shall contemporaneously advise the Purchaser of such determination(s).  As soon as reasonably practicable after the Bid Deadline, but in any case no later than two (2) days prior to the Auction (as defined below), the Debtors shall give all Qualified Bidders a copy of all Qualified Bid(s) received to date.

The Purchase Agreement executed by the Purchaser is a Qualified Bid and the Purchaser is a Qualified Bidder for all purposes, provided, however, notwithstanding anything herein to the contrary, the bid of the Purchaser shall terminate only in accordance with the Purchase Agreement.

## Sale to The Purchaser

If (i) no Qualified Bids have been submitted (other than that submitted by the Purchaser) by the Bid Deadline or (ii) the aggregate value of the highest Qualified Bid submitted by the Bid Deadline for the Assets is for a price and under terms which the Debtors believe to not be higher or better than the purchase price in the Purchase Agreement, the Debtors may report the same to the Bankruptcy Court and shall proceed to seek approval of the Purchase Agreement and the transaction contemplated thereby.

## Auction

If the value of the highest or best Qualified Bid submitted (other than that submitted by the Purchaser) by the Bid Deadline for the Assets (as determined by the

Debtors in their sole and absolute discretion) is for a price and under terms the Debtors believe to be higher or better than the purchase price set forth in the Purchase Agreement or the Debtors determine (in their sole and absolute discretion) that it is in the best interests of the Debtors' estates, an auction (the "Auction") for the Assets will take place on a date to be determined by the Bankruptcy Court and set forth in the Bidding Procedures Order. Subject to the terms of the Purchase Agreement, the Debtors may extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing for any reason without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Potential Bidders.

Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. The Debtors will evaluate all Qualified Bids received and, after consultation with their professionals, will select the Qualified Bid that reflect the highest or best offer for the Assets as the "Starting Auction Bid." In considering which Qualified Bid shall be the Starting Auction Bid, the Debtors will consider, among other things, the Qualified Bid, the changes to the Purchase Agreement required by the Qualified Bid, and the Qualified Bidder's ability to finance and timely consummate the purchase of Assets.

For the avoidance of doubt, the Purchaser shall be permitted to include the full amount of the Break-Up Fee in each bid by the Purchaser for the purposes of comparison to any overbid in connection with each round of bidding in the Auction.

The following rules shall apply at the Auction: (i) the minimum initial overbid(s) must be, in the aggregate, at least $100,000 greater than the Starting Auction Bid(s), (ii) subsequent overbids must be, in the aggregate, in increments of at least $100,000 unless otherwise defined by the Debtors in their sole discretion. From time to time, the Debtors will, in an open forum, advise Qualified Bidders participating in the Auction of their determination as to the terms of the then highest or otherwise best bid for the Assets. The Debtors shall also consider the impact of the Break-Up Fee and the potential costs of satisfying the conditions of any bid.

An overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher or otherwise better overbid from such Bidder. To the extent not previously provided, a Bidder submitting an overbid at the Auction must submit, as part of its overbid, written evidence (in the form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Alternative Transaction proposed by such overbid.

Subject to the Purchase Agreement, the Debtors, in their sole and absolute discretion after consultation with their professionals, may adopt other rules for the Auction at the Auction that, in their reasonable judgment, will better promote the goals of the Auction. All such rules will provide that: (i) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder and (ii) all bids shall be made and received in

one room, on an open basis, and all bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Qualified Bid shall be fully disclosed to all other bidders throughout the entire Auction. Nothing herein shall prohibit the Debtors from meeting privately with any Qualified Bidder to negotiate the terms of a bid or overbid.

During the Auction, the Debtors will review each bid or overbid submitted by a Qualified Bidder in order to identify, in their sole and absolute discretion after consultation with their professionals, the bid or overbid that constitutes the highest or otherwise best bid for the Assets. The Debtors will consider, among other things, (i) the amount of consideration offered under the Qualified Bid; (ii) the changes to the Purchase Agreement required by the Qualified Bid; and (iii) the Qualified Bidder's ability to finance and timely consummate the purchase of the Assets. The Debtors will also consider the Qualified Bid's impact on the ability to minimize the Debtors' losses incurred before the Closing Date based on the terms and timing provided in the bid.

The Auction shall continue until there is only one Qualified Bid for the Assets that the Debtors determine, in their reasonable business judgment, after consultation with their advisors, is the highest or otherwise best Qualified Bid at the Auction for the Assets. The bid that is selected by the Debtors as the highest or otherwise best bid for the Assets will be considered the "Successful Bid" and such bidder the "Successful Bidder." Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction (and in no event later than one (1) business day after the close of the Auction), the Debtors shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

Any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered, and neither the Debtors nor any other person shall have any obligation to seek such an order from the Bankruptcy Court.

The second highest or otherwise best bid (the "Second Highest Bid" and such bidder, the "Second Highest Bidder"), as determined by the Debtors at the conclusion of the Auction and approved by the Bankruptcy Court at the Sale Hearing, shall remain open and irrevocable through the closing of the sale of the Assets to the Successful Bidder. In the event that, for any reason, the Successful Bidder fails to close the transaction contemplated by its Successful Bid, the Debtors, in their sole and absolute discretion, may elect to regard the Second Highest Bid as the highest or best bid for the Assets, and the Debtors will be authorized to consummate the transaction contemplated by the Second Highest Bid without further order of the Bankruptcy Court. The Debtors may not compel the Purchaser to serve as the Second Highest Bidder without the Purchaser's express written consent.

## The Sale Hearing and Return of Deposits

The Sale Hearing will be held at a date and time established by the Bankruptcy Court in the Bidding Procedures Order. At the Sale Hearing, the Debtors will seek entry of a Sale Order, among other things, authorizing and approving the sale of the Assets: (i) if no Auction is held or if the Purchase Agreement is the Successful Bid, with the Purchaser pursuant to the terms and conditions set forth in the Purchase Agreement, or (ii) if a Qualified Bid other than the Purchase Agreement is determined by the Debtors after the Auction to be the Successful Bid, with the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid. Subject to the Purchase Agreement and the terms of the Successful Bid, the Sale Hearing may be adjourned or rescheduled at the Debtors' sole and absolute discretion, and the Debtors will notify all relevant parties of such adjournment or rescheduling in an appropriate manner, including by an announcement of the adjourned date at the Sale Hearing.

The Debtors, the Purchaser, and any other Qualified Bidder, in each case, along with their representatives, advisors and counsel, shall attend the Auction in person, and only the Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

No offer shall be deemed accepted by the Debtors unless and until it is approved by the Bankruptcy Court.

In the event the Purchaser or any Successful Bidder fails to consummate the purchase of the Assets because of a breach or failure to perform on the part of such bidder, the bidder's Bid Deposit shall be forfeited to the Debtors provided that the Debtors reserve the right to seek all available damages from the defaulting bidder, provided, however, that in the case of the Purchaser's Bid Deposit, the treatment thereof shall be governed by the terms of the Purchase Agreement and the Debtors' right to seek additional damages will be subject to the terms of the Purchase Agreement.

All Bid Deposits, other than the Bid Deposit of the Successful Bidder and the Second Highest Bidder, will be returned within five (5) business days following entry of the Sale Order. The Bid Deposit of the Second Highest Bidder will be returned as soon as practicable following the closing of the sale with the Successful Bidder pursuant to the Successful Bid, unless the Debtors have elected to regard the Second Highest Bid as the highest or best bid for the Assets, as described above. Except as otherwise provided in the Purchase Agreement, the Debtors will not be required to maintain any Bid Deposit in an interest-bearing account, but any interest earned on any Bid Deposit will be remitted to the appropriate Qualified Bidder if the Bid Deposit is returned to the Qualified Bidder pursuant to the above. Subject to the Purchase Agreement in the case of the Purchaser's Bid Deposit, Bid Deposits may only be used in accordance with the terms of these Bidding Procedures. Neither the Debtors nor the Purchaser shall have any liability with respect to any Bid Deposit.

## Break-Up Fee

Pursuant to the Bidding Procedures Order, the Purchaser is entitled to the Break-Up Fee in accordance with the terms of the Purchase Agreement and the Bidding Procedures Order.

Pursuant to the Bidding Procedures Order, except for the Purchaser, no other party submitting an offer or bid or a Qualified Bid shall be entitled to any expense reimbursement or breakup, termination, or similar fee, or postpetition claim, including any administrative expense claim or substantial contribution claim under section 503 of the Bankruptcy Code or otherwise, and by submitting a bid, a Bidder (other than the Purchaser) shall be deemed to waive any right with respect thereto.

## Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Purchase Agreement, and/or any other matter that in any way relates to the foregoing.

FL 6801 SPIRITS LLC, *et al.*,
Debtors and Debtors in Possession,
By their Proposed Counsel,
TOGUT, SEGAL & SEGAL LLP
By:


_____
ALBERT TOGUT
FRANK A. OSWALD
LARA R. SHEIKH
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000

8

Exhibit "B" to Bid Procedures Order

## NOTICE OF AUCTION

| | |
|---|---|
| **AUCTION DATE AND TIME:** | **_____, 2014 at 11:00 a.m. (New York Time)** |
| **BID DEADLINE DATE AND TIME:** | **_____, 2014 at 11:00 a.m. (New York Time)** |
| **SALE HEARING DATE AND TIME:** | **_____, 2014 at 11:00 a.m. (New York Time)** |
| **OBJECTION DEADLINE DATE AND TIME:** | **_____, 2014 at 4:00 p.m. (New York Time)** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:     
In re:      :      Chapter 11
:      Case No. _____
FL 6801 SPIRITS LLC, *et al.,*      :
:
           Debtors.      :
:
------------------------------------------------------------x

## NOTICE OF AUCTION AND HEARING TO CONSIDER
## APPROVAL OF SALE OF THE DEBTORS' PROPERTY

**NOTICE IS HEREBY GIVEN**, that:

     1.      On _____, 2014, FL 6801 Spirits LLC, *et al.,* (the "Debtors")[1]

filed a motion (the "Motion") with the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") requesting, among other things, (i) the

approval of bidding procedures (the "Bidding Procedures") in connection with the sale

of the Assets, as defined in the Purchase and Sale Agreement attached to the Motion as

Exhibit A, to 360 Miami Hotel & Spa LLC, as stalking horse purchaser (the "Purchaser")

and (ii) the scheduling of a bid deadline, auction date, and sale hearing (the "Bidding

Schedule"). On _____ ___, 2014, the Bankruptcy Court entered an order (the

"Bidding Procedures Order") approving, among other things, the Bidding Procedures,

and establishing the Bidding Schedule.

---

[1]     The Debtors consist of the following entities:  FL 6801 Spirits LLC ("Spirits"), FL 6801 Collins North
LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), FL 6801 Collins South LLC ("6801
South," together with 6801 North and 6801 Central, the "Collins Subsidiaries").

2.      A copy of each of the Motion, the Bidding Procedures, and the
Bidding Procedures Order may be obtained by:  (i) accessing the Bankruptcy Court's
website at www.nysb.uscourts.gov, (ii) accessing the website maintained by the
Debtors' claims and noticing agent at [www._____.com], or (iii) contacting
Frank A. Oswald, Esq. at Togut, Segal & Segal LLP, attorneys for the Debtors, at (212)
594-5000.  Note that a PACER password is needed to access documents on the Court's
website.

3.      The Debtors and the Purchaser have entered into the Purchase and
Sale Agreement (the "Purchase Agreement") for the sale of the Assets, but as set forth in
the Bidding Procedures, the sale of the Assets remains subject to higher or better offers
and Bankruptcy Court approval.

4.      All interested parties are invited to make competing offers for the
Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures
Order.  The deadline to submit competing offers (the "Bid Deadline") is _____, 2014
at 4:00 p.m. New York time.  Pursuant to the Bidding Procedures Order, the Debtors
may conduct an auction (the "Auction") for the sale of the Assets on _____, 2014 at
__:00 a.m. New York time.  The Auction may be adjourned from time to time.

5.      The Bidding Procedures Order further provides that a Sale Hearing
will be held on _____, 2014, at __:__ a.m. New York time before the Honorable
Shelley C. Chapman, United States Bankruptcy Judge, in Room 610 of the Bankruptcy
Court, One Bowling Green, New York, New York 10004.  The hearing may be
adjourned from time to time.

6.      At the Sale Hearing, the Debtors will request that the Bankruptcy
Court enter an order, among other things, approving the highest or best bid for the
Assets, or the Purchase Agreement (which will be determined as described in the

Bidding Procedures), pursuant to which the Debtors will transfer the Assets. In addition, the Debtors will request that the Bankruptcy Court provide that the transfer of the Assets be free and clear of all liens, claims and interests, including possessory leasehold interests (other than certain permitted exceptions as expressly set forth in the Purchase Agreement).

7.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 case. Objections, if any, to the sale of the Assets pursuant to the terms of the agreement reached between the Debtors and the successful bidder for the Assets, or the Purchase Agreement, as applicable, must be in writing and filed with the Bankruptcy Court on or before _____, 2014, and received by the Chambers of the Honorable Shelley Chapman, United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green, Room 610, New York, New York 10004-1408, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates, the basis for the objection and the specific grounds therefor, and must be served upon: (i) Togut, Segal & Segal LLP, attorneys for the Debtors, One Penn Plaza, Suite 3335, New York, New York 10119, Attention: Frank A. Oswald, Esq.; (ii) the Office of the United States Trustee for Region 2, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; and (iii) counsel for the Purchaser, Fulbright & Jaworski LLP, 98 San Jacinto Blvd., Suite 1100, Austin, Texas 78701-4255, Attn: Jane Snoddy Smith, Esq. and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, Attn: Kristian W. Gluck, Esq.

3

8.      All requests for information concerning the sale of the Assets should be directed by written request to counsel for the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attention:  Frank A. Oswald, Esq. or by contacting CBRE, Inc., Attention:  Christian Charre at (305) 381-6427 or Christian.Charre@cbre.com, 777 Brickell Avenue, Suite 900, Miami, Florida 33131, real estate brokers to the Debtors' estates.

DATED:  New York, New York
        _____, 2014

                                          FL 6801 SPIRITS LLC, *ET AL.*,
                                          Debtors and Debtors in Possession,
                                          By their attorneys,
                                          TOGUT, SEGAL & SEGAL LLP
                                          By:


                                          _____
                                          ALBERT TOGUT
                                          FRANK A. OSWALD
                                          LARA R. SHEIKH
                                          One Penn Plaza, Suite 3335
                                          New York, New York  10119
                                          (212) 594-5000

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Lara R. Sheikh

*Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re:                                                      :      Chapter 11
                                                            :      Case No. _____
FL 6801 SPIRITS LLC, *et al.*,                              :
                                                            :
                                      Debtors.              :
                                                            :
------------------------------------------------------------x

### NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THE DEBTORS MAY ASSUME AND ASSIGN AS PART OF SALE OF SUBSTANTIALLY ALL OF THE PROPERTY

**PLEASE TAKE NOTICE THAT** on [_____], 2014, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors")[1] filed a motion [Docket No. __] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which seeks, among other things, approval of key dates, times, and procedures related to the sale of the "Assets," as defined in the Purchase and Sale Agreement (the "Agreement"), to 360 Miami Hotel & Spa LLC (the "Purchaser") pursuant to the Agreement. On [_____], 2014, the Bankruptcy Court approved the Bidding Procedures. On [_____], 2014 at [_____] __.m. prevailing Eastern time, the Debtors intend to seek approval of, among other things, the sale of the Assets, including the assumption and assignment of certain executory contracts and unexpired leases.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.[2]**

---

[1] The Debtors consist of the following entities: FL 6801 Spirits LLC, FL 6801 Collins North LLC, FL 6801 Collins Central LLC and FL 6801 Collins South LLC.

[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Bidding Procedures, the Debtors may assume and assign to the Purchaser or other Successful Bidder the executory contract(s) or unexpired lease(s) listed on <u>Exhibit A</u> attached hereto (each, an "Assigned Contract") to which you are a counterparty. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contract is as set forth on Exhibit A attached hereto (the "Cure Amount"). If you disagree with the proposed Cure Amount, object to the proposed assignment to the Purchaser or other Successful Bidder of the Assigned Contract(s) or object to the Purchaser's or other Successful Bidder's ability to provide adequate assurance of future performance with respect to any Assigned Contracts, you must file an objection with the Bankruptcy Court so as to be actually received no later than [___] __.m. (prevailing Eastern time) on [_____], 2014 (the "Objection Deadline") and serve such objection on (i) Togut, Segal & Segal LLP, attorneys for the Debtors, One Penn Plaza, Suite 3335, New York, New York 10119, Attention:  Frank A. Oswald, Esq. and Lara R. Sheikh, Esq.; (ii) the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq.; and (iii) counsel for Purchaser, Fulbright & Jaworski LLP, 98 San Jacinto Blvd., Suite 1100, Austin, Texas 78701-4255, Attn: Jane Snoddy Smith, Esq. and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, Attn: Kristian W. Gluck, Esq.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors propose that if no objection to (a) the Cure Amount(s), (b) the proposed assignment of the Assigned Contract(s) to the Purchaser or other Successful Bidder or (c) adequate assurance of the Purchaser's or other Successful Bidder's ability to perform is filed by Objection Deadline, (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) you shall be forever barred, estopped, and enjoined from asserting any additional cure amount under the Assigned Contract(s), and (iii) you will be forever barred from objecting to the assumption or assignment of the Assigned Contract(s) to the Purchaser or other Successful Bidder or the Purchaser's or other Successful Bidder's adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE THAT** with respect to any Assigned Contract assumed and assigned to the Purchaser or other Successful Bidder, all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after closing of the sale to the Purchaser or other Successful Bidder or on such other terms as the parties to each such Assigned Contract and the Purchaser or other Successful Bidder may otherwise agree without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, the assumption or assignment of each such Assigned Contract may be conditioned upon the disposition of all issues with respect to such Assigned Contract.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Bidding Procedures, with respect to any Assigned Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Debtors to assume or assign to the Purchaser or other Successful Bidder such Assigned Contracts; (c) the ability of the Purchaser or other Successful Bidder to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable,

2

under such Assigned Contract; or (d) any other matter pertaining to assumption or assignment, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption and assignment of such Assigned Contract; provided, however, that the Debtors may settle any such dispute without any further notice to or action, order, or approval of the Bankruptcy Court.

PLEASE THAT FURTHER NOTICE THAT notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection, or termination of any of the Assigned Contracts. Moreover, the Debtors explicitly reserve their rights, in their sole discretion, to seek to reject or assume or assume and assign any Assigned Contract pursuant to section 365(a) of the Bankruptcy Code, and nothing herein (a) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to an Assigned Contract against the Debtors that may arise under such Assigned Contract, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of any counterparty to an Assigned Contract against the Debtors that may arise under such Assigned Contract.

DATED:  New York, New York
_____, 2014

> FL 6801 SPIRITS LLC, *ET AL.*,
> Debtors and Debtors in Possession,
> By their attorneys,
> TOGUT, SEGAL & SEGAL LLP
> By:
>
> _____
> ALBERT TOGUT
> FRANK A. OSWALD
> LARA R. SHEIKH
> One Penn Plaza, Suite 3335
> New York, New York 10119
> (212) 594-5000

3

## Exhibit A

| Counterparty Name | Executory Contract or Unexpired Lease | Cure Amount |
|---|---|---|
|  |  |  |