Assessments, and monthly (or quarterly) installments on such Assessments shall be due upon each installment payment date until changed by amended Assessments. In the event the annual Assessments prove to be insufficient, the budget and Assessments may be amended at any time by the Board of Directors, subject to the provisions of Section 10.1 hereof, if applicable. Unpaid Assessments for the remaining portion of the fiscal year for which amended Assessments are made shall be payable in as many equal installments as there are full months (or quarters) of the fiscal year left as of the date of such amended Assessments, each such monthly (or quarterly) installment to be paid on the first day of the month (or quarter), commencing the first day of the next ensuing month (or quarter). If only a partial month (or quarter) remains, the amended Assessments shall be paid with the next regular installment in the following year, unless otherwise directed by the Board in its resolution.

10.3    Special Assessments and Assessments for Capital Improvements. Special Assessments and Capital Improvement Assessments (as defined in the Declaration) shall be levied as provided in the Declaration and shall be paid in such manner as the Board of Directors of the Association may require in the notice of such Assessments. The funds collected pursuant to a Special Assessment shall be used only for the specific purpose or purposes set forth in the notice of adoption of same. However, upon completion of such specific purpose or purposes, any excess funds will be considered Common Surplus, and may, at the discretion of the Board, either be returned to the Unit Owners or applied as a credit towards future assessments.

10.4    Depository. The depository of the Association shall be such bank or banks in the State of Florida, which bank or banks must be insured by the FDIC, as shall be designated from time to time by the Directors and in which the monies of the Association shall be deposited. Withdrawal of monies from those accounts shall be made only by checks signed by such person or persons as are authorized by the Directors. All sums collected by the Association from Assessments or otherwise may be commingled in a single fund or divided into more than one fund, as determined by a majority of the Board of Directors. In addition, a separate reserve account should be established for the Association in such a depository for monies specifically designated as reserves for capital expenditures and/or deferred maintenance. Reserve and operating funds of the Association shall not be commingled unless combined for investment purposes, provided that the funds so commingled shall be accounted for separately and the combined account balance of such commingled funds may not, at any time, be less than the amount identified as reserve funds in the combined account.

10.5    Acceleration of Installments Upon Default. If a Unit Owner shall be in default in the payment of an installment upon his Assessments, the Board of Directors or its agent may accelerate the balance of the current budget years' Assessments upon thirty (30) days' prior written notice to the Unit Owner and the filing of a claim of lien, and the then unpaid balance of the current budget years' Assessments shall be due upon the date stated in the notice, but not less than five (5) days after delivery of the notice to the Unit Owner, or not less than ten (10) days after the mailing of such notice to him by certified mail, whichever shall first occur.

10.6    Fidelity Insurance or Fidelity Bonds. The Association shall obtain and maintain adequate insurance or fidelity bonding of all persons who control or disburse Association funds, which shall include, without limitation, those individuals authorized to sign Association checks and the president, secretary and treasurer of the Association. The insurance policy or fidelity bond shall be in such amount as shall be determined by a majority of the Board, but must be sufficient to cover the maximum funds that will be in the custody of the Association or its management agent at any one time. The premiums on such bonds and/or insurance shall be paid by the Association as a Common Expense

10.7    Accounting Records and Reports. The Association shall maintain accounting records in the State, according to accounting practices normally used by similar associations. The records shall be open to inspection by Unit Owners or their authorized representatives at reasonable times and written summaries of them shall be supplied at least annually. The records shall include, but not be limited to, (a) a record of all receipts and expenditures, and (b) an account for each Unit designating the name and current mailing address of the Unit Owner, the amount of Assessments, the dates and amounts in which the Assessments come due, the amount paid upon the account and the dates so paid, and the balance due. Written summaries of the records described in clause (a) above, in the form and manner specified below, shall be supplied to each Unit Owner annually.

Within ninety (90) days following the end of the fiscal year, the Association shall prepare and complete, or contract for the preparation and completion of a financial report for the preceding fiscal year (the "Financial Report"). Within twenty-one (21) days after the final Financial Report is completed by the Association, or received from a third party, but not later than one hundred twenty (120) days following the end of the fiscal year, the Board shall mail, or furnish by personal delivery, a copy of the Financial Report to each Unit Owner, or a notice that a copy of the

Financial Report will be mailed or hand delivered to the Unit Owner, without charge, upon receipt of a written request from the Unit Owner.

The Financial Report shall be prepared in accordance with the rules adopted by the Division. The type of Financial Report to be prepared shall, unless modified in the manner set forth below, be based upon the Association's total annual revenues, as follows:

(a)     REPORT OF CASH RECEIPTS AND EXPENDITURES – if the Association's revenues are less than $100,000.00 or if the Association operates less than fifty (50) Units (regardless of revenue) [or, if determined by the Board, the Association may prepare any of the reports described in subsections (b), (c) or (d) below in lieu of the report described in this section (a)].

(b)     COMPILED FINANCIAL STATEMENTS – if the Association's revenues are equal to or greater than $100,000.00, but less than $200,000.00 [or, if determined by the Board, the Association may prepare any of the reports described in subsections (c) or (d) below in lieu of the report described in this section (b)].

(c)     REVIEWED FINANCIAL STATEMENTS – if the Association's revenues are equal to or greater than $200,000.00, but less than $400,000.00 [or, if determined by the Board, the Association may prepare the report described in subsection (d) below in lieu of the report described in this section (c)].

(d)     AUDITED FINANCIAL STATEMENTS – if the Association's revenues are equal to or exceed $400,000.00.

A report of cash receipts and expenditures must disclose the amount of receipts by accounts and receipt classifications and the amount of expenses by accounts and expense classifications, including, but not limited to, the following, as applicable: costs for security, professional and management fees and expenses, taxes, costs for recreation facilities, expenses for refuse collection and utility services, expenses for lawn care, costs for building maintenance and repair, insurance costs, administration and salary expenses, and reserves accumulated and expended for capital expenditures, deferred maintenance, and any other category for which the association maintains reserves.

If approved by a majority of the voting interests present at a properly called meeting of the Association, the Association may prepare or cause to be prepared: (i) a report of cash receipts and expenditures in lieu of a compiled, reviewed, or audited financial statement; (ii) a report of cash receipts and expenditures or a compiled financial statement in lieu of a reviewed or audited financial statement; or (iii) a report of cash receipts and expenditures, a compiled financial statement or a reviewed financial statement in lieu of an audited financial statement. Such meeting and approval must occur prior to the end of the fiscal year and is effective only for the fiscal year in which the vote is taken. Prior to the time that control of the Association has been turned over to Unit Owners other than the Developer, all Unit Owners, including the Developer, may vote on issues related to the preparation of financial reports for the first two (2) fiscal years of the Association's operation. Thereafter, until control of the Association has been turned over to Unit Owners other than the Developer, all Unit Owners except for the Developer may vote on such issues.

10.8     Application of Payment. All payments made by a Unit Owner shall be applied as provided in these By-Laws and in the Declaration or as otherwise determined by the Board.

10.9     Notice of Meetings. Notice of any meeting where Assessments against Unit Owners are to be considered for any reason shall specifically contain a statement that Assessments will be considered and the nature of any such Assessments.

11.     Roster of Unit Owners. Each Unit Owner shall file with the Association a copy of the deed or other document showing his ownership. The Association shall maintain such information. The Association may rely upon the accuracy of such information for all purposes until notified in writing of changes therein as provided above. Only Unit Owners of record on the date notice of any meeting requiring their vote is given shall be entitled to notice of and to vote at such meeting, unless prior to such meeting other Owners shall produce adequate evidence, as provided above, of their interest and shall waive in writing notice of such meeting.

12.     Parliamentary Rules. Except when specifically or impliedly waived by the chairman of a meeting (either of members or directors), Robert's Rules of Order (latest edition) shall govern the conduct of the Association meetings when not in conflict with the Act, the Declaration, the Articles or these By-Laws; provided, however, that a strict or technical reading of said Robert's Rules shall not be made so as to frustrate the will of the persons properly participating in said meeting.

13. <u>Amendments</u>. Except as may be provided in the Declaration to the contrary, these By-Laws may be amended in the following manner:

   13.1 <u>Notice</u>. Notice of the subject matter of a proposed amendment shall be included in the notice of a meeting at which a proposed amendment is to be considered.

   13.2 <u>Adoption</u>. A resolution for the adoption of a proposed amendment may be proposed either by a majority of the Board of Directors or by not less than one-third (1/3) of the members of the Association. Directors and members not present in person or by proxy at the meeting considering the amendment may express their approval in writing, provided that such approval is delivered to the Secretary at or prior to the meeting. The approval must be:

      (a) by not less than a majority of the votes of all members of the Association represented at a meeting at which a quorum has been attained and by not less than 66-2/3% of the entire Board of Directors; or

      (b) after control of the Association has been turned over to Unit Owners other than the Developer, by not less than 80% of the votes of the members of the Association represented at a meeting at which a quorum has been attained.

   13.3 <u>Proviso</u>. No amendment may be adopted which would eliminate, modify, prejudice, abridge or otherwise adversely affect any rights, benefits, privileges or priorities granted or reserved to the Developer or mortgagees of Units without the consent of said Developer and mortgagees in each instance. No amendment shall be made that is in conflict with the Articles or Declaration. No amendment to this Section shall be valid.

   13.4 <u>Execution and Recording</u>. A copy of each amendment shall be attached to a certificate certifying that the amendment was duly adopted as an amendment of these By-Laws, which certificate shall be executed by the President or Vice-President and attested by the Secretary or Assistant Secretary of the Association with the formalities of a deed, or by the Developer alone if the amendment has been adopted consistent with the provisions of the Declaration allowing such action by the Developer. The amendment shall be effective when the certificate and a copy of the amendment is recorded in the Public Records of the County with an identification on the first page of the amendment of the Official Records Book and Page of said Public Records where the Declaration is recorded.

14. <u>Rules and Regulations</u>. The Board of Directors may, from time to time, create rules and regulations concerning the use of portions of the Condominium and Association Property, and thereafter modify, amend or add to such rules and regulations, except that subsequent to the date control of the Board is turned over by the Developer to Unit Owners other than the Developer, Owners of a majority of the Units may overrule the Board with respect to any such modifications, amendments or additions. Copies of any such rules and regulations shall be furnished by the Board of Directors to each affected Unit Owner not less than thirty (30) days prior to the effective date thereof. At no time may any rule or regulation be adopted which would prejudice the rights reserved to the Developer.

15. <u>Official Records</u>. From the inception of the Association, the Association shall maintain for the condominium, a copy of each of the following, where applicable, which shall constitute the official records of the Association:

   (a) The plans, permits, warranties, and other items provided by the Developer pursuant to Section 718.301(4) of the Act;

   (b) A photocopy of the recorded Declaration of Condominium and all amendments thereto;

   (c) A photocopy of the recorded By-Laws of the Association and all amendments thereto;

   (d) A certified copy of the Articles of Incorporation of the Association or other documents creating the Association and all amendments thereto;

   (e) A copy of the current Rules and Regulations of the Association;

   (f) A book or books containing the minutes of all meetings of the Association, of the Board of Directors, and of Unit Owners, which minutes shall be retained for a period of not less than 7 years.

   (g) A current roster of all Unit Owners, their mailing addresses, Unit Identifications, voting certifications, and if known, telephone numbers. The Association shall also maintain the electronic mailing addresses and the numbers designated by Unit Owners for receiving notices sent by electronic transmission of those Unit Owners consenting to receive notice by electronic transmission. The electronic mailing addresses and numbers provided by Unit Owners to receive

notice by electronic transmission shall be removed from Association records when consent to receive notice by electronic transmission is revoked. However, the Association shall not be liable for an erroneous disclosure of the electronic mail address or the number for receiving electronic transmission of notices;

(h)   All current insurance policies of the Association and of all Condominiums operated by the Association;

(i)   A current copy of any management agreement, lease, or other contract to which the Association is a party or under which the Association or the Unit Owners have an obligation or responsibility;

(j)   Bills of Sale or transfer for all property owned by the Association;

(k)   Accounting records for the Association and the accounting records for the Condominium. All accounting records shall be maintained for a period of not less than 7 years. The accounting records shall include, but not be limited to:

    (i)   Accurate, itemized, and detailed records for all receipts and expenditures.

    (ii)   A current account and a monthly, bimonthly, or quarterly statement of the account for each Unit designating the name of the Unit Owner, the due date and amount of each Assessment, the amount paid upon the account, and the balance due.

    (iii)   All audits, reviews, accounting statements, and financial reports of the Association or Condominium.

    (iv)   All contracts for work to be performed. Bids for work to be performed shall also be considered official records and shall be maintained for a period of 1 year;

(l)   Ballots, sign-in sheets, voting proxies and all other papers relating to elections which shall be maintained for a period of 1 year from the date of the meeting to which the document relates.

(m)   All rental records where the Association is acting as agent for the rental of Units.

(n)   A copy of the current Question and Answer Sheet, in the form promulgated by the Division, which shall be updated annually.

(o)   All other records of the Association not specifically listed above which are related to the operation of the Association.

The official records of the Association shall be maintained in the County in which the Condominium is located, or if in another county, then within twenty five (25) miles of the Condominium.

The official records of the Association shall be open to inspection by any Association member or the authorized representative of such member and shall be made available to a Unit Owner within five (5) working days after receipt of a written request by the board or its designees. The right to inspect the records includes the right to make or obtain copies, at a reasonable expense, if any, of the Association member. The Association may adopt reasonable rules regarding the time, location, notice and manner of record inspections and copying. The failure of an Association to provide official records to a Unit Owner or his authorized representative within ten (10) working days after receipt of a written request therefor shall create a rebuttable presumption that the Association willfully failed to comply with this paragraph. Failure to permit inspection of the Association records as provided herein entitles any person prevailing in an enforcement action to recover reasonable attorneys' fees from the person in control of the records who, directly or indirectly, knowingly denies access to the records for inspection. The Association shall maintain on the Condominium Property an adequate number of copies of the Declaration, Articles, By-Laws and rules, and all amendments to the foregoing, as well as the Question and Answer Sheet and year-end financial information required by the Act, to ensure their availability to Unit Owners and prospective purchasers. The Association may charge its actual costs for preparing and furnishing these documents to those persons requesting same. Notwithstanding the provisions of this Section 15, the following records shall not be accessible to Unit Owners:

(i)   Any record protected by the lawyer-client privilege as described in Section 90.502, Florida Statutes, and any record protected by the work-product privilege including any record prepared by an Association attorney or prepared at the attorney's express direction, which reflects a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the Association, and which was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or which was prepared in anticipation or imminent civil or criminal litigation or imminent adversarial administrative proceedings until the conclusion of the litigation or adversarial administrative proceedings.

(ii) Information obtained by an Association in connection with the approval of the lease, sale or other transfer of a Unit.

(iii) Medical records of Unit Owners.

16. <u>Certificate of Compliance</u>. A certificate of compliance from a licensed electrical contractor or electrician may be accepted by the Association's Board as evidence of compliance of the Units to the applicable condominium fire and life safety code.

17. <u>Provision of Information to Purchasers or Lienholders</u>. The Association or its authorized agent shall not be required to provide a prospective purchaser or lienholder with information about the Condominium or the Association other than information or documents required by the Act to be made available or disclosed. The Association or its authorized agent shall be entitled to charge a reasonable fee to the prospective purchaser, lienholder, or the current Unit Owner for its time in providing good faith responses to requests for information by or on behalf of a prospective purchaser or lienholder, other than that required by law, provided that such fee shall not exceed $150.00 plus the reasonable cost of photocopying and any attorney's fees incurred by the Association in connection with the Association's response.

18. <u>Electronic Transmission</u>. For purposes hereof, "electronic transmission" means any form of communication, not directly involving the physical transmission or transfer of paper, which creates a record that may be retained, retrieved, and reviewed by a recipient thereof and which may be directly reproduced in a comprehensible and legible paper form by such recipient through an automated process. Examples of electronic transmission include, but are not limited to, telegrams, facsimile transmissions of images, and text that is sent via electronic mail between computers. Notwithstanding the provision for electronic transmission of notices by the Association, same may be only be sent to Unit Owners that consent to receipt of Association notices by electronic transmission (and only for long as such consent remains in effect). Further, in no event may electronic transmission be used as a method of giving notice of a meeting called in whole or in part regarding the recall of a Director.

19. <u>Construction</u>. Wherever the context so permits, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be deemed to include all genders.

20. <u>Captions</u>. The captions herein are inserted only as a matter of convenience and for reference, and in no way define or limit the scope of these By-Laws or the intent of any provision hereof.

The foregoing was adopted as the By-Laws of **CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.**, a corporation not for profit under the laws of the State of Florida, as of the _25_ day of _August_, 2008.

Approved:

Eric Sheppard, President

Mark Burgin, Secretary



RECEIVED
08 APR -9 PM 1:43

DIVISION OF CORPORATION

### Florida Department of State
Division of Corporations
Public Access System

Electronic Filing Cover Sheet

**Note: Please print this page and use it as a cover sheet. Type the fax audit
number (shown below) on the top and bottom of all pages of the document.**

(((H08000091187 3)))



H080000911873ABC1

Note: DO NOT hit the REFRESH/RELOAD button on your browser from this
page. Doing so will generate another cover sheet.

```
To:
    Division of Corporations
    Fax Number      : (850)617-6381

From:
    Account Name    : CORPDIRECT AGENTS, INC.
    Account Number  : 110450000714
    Phone           : (850)222-1173
    Fax Number      : (850)224-1540
```

08 APR -9 AM 10: 31
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

000150. 85031

## FLORIDA PROFIT/NON PROFIT CORPORATION

### NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.

| | |
|---|---|
| Certificate of Status | 0 |
| Certified Copy | 0 |
| Page Count | 15 |
| Estimated Charge | $70.00 |

MRD 4/10

Electronic Filing Menu          Corporate Filing Menu          Help

04/09/2008 12:37:52 PM

H08000091187 3

## ARTICLES OF INCORPORATION
### FOR
### NORTH CARILLON BEACH
### CONDOMINIUM ASSOCIATION, INC.

The undersigned incorporator, for the purpose of forming a corporation not for profit pursuant to the laws of the State of Florida, hereby adopts the following Articles of Incorporation:

## ARTICLE 1
### NAME

The name of the corporation shall be NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC. For convenience, the corporation shall be referred to in this instrument as the "Association", these Articles of Incorporation as the "Articles", and the By-Laws of the Association as the "By-Laws".

## ARTICLE 2
### OFFICE

The principal office and mailing address of the Association shall be 400 Arthur Godfrey Boulevard Suite 200 Miami Beach, Florida 33140, or at such other place as may be subsequently designated by the Board of Directors. All books and records of the Association shall be kept at its principal office or at such other place as may be permitted by the Act.

## ARTICLE 3
### PURPOSE

The purpose for which the Association is organized is to provide an entity pursuant to the Florida Condominium Act as it exists on the date hereof (the "Act") for the operation of that certain condominium located in Miami-Dade County, Florida, and known as NORTH CARILLON BEACH, A CONDOMINIUM (the "Condominium").

H08000091187 3

H08000091187 3

## ARTICLE 4
### DEFINITIONS

The terms used in these Articles shall have the same definitions and meanings as those set forth in the Declaration of the Condominium to be recorded in the Public Records of Miami-Dade County, Florida, unless herein provided to the contrary, or unless the context otherwise requires.

## ARTICLE 5
### POWERS

The powers of the Association shall include and be governed by the following:

5.1 General. The Association shall have all of the common-law and statutory powers of a corporation not for profit under the Laws of Florida, except as expressly limited or restricted by the terms of these Articles, the Declaration, the By-Laws or the Act.

5.2 Enumeration. The Association shall have all of the powers and duties set forth in the Act, except as limited by these Articles, the By-Laws and the Declaration (to the extent that they are not in conflict with the Act), and all of the powers and duties reasonably necessary to operate the Condominium pursuant to the Declaration and as more particularly described in the By-Laws, as they may be amended from time to time, including, but not limited to, the following:

(a) To make and collect Assessments and other charges against members as Unit Owners (whether or not such sums are due and payable to the Association), and to use the proceeds thereof in the exercise of its powers and duties.

(b) To buy, accept, own, operate, lease, sell, trade and mortgage both real and personal property in accordance with the provisions of the Declaration.

(c) To maintain, repair, replace, reconstruct, add to and operate the Common Elements and/or Association Property, and other property acquired or leased by the Association.

(d) To purchase insurance upon the Common Elements and Association Property and insurance for the protection of the Association, its officers, directors and Unit Owners.

Articles
-2-

H08000091187 3

(e) To make and amend reasonable rules and regulations for the maintenance, conservation and use of the Common Elements and Association Property and for the health, comfort, safety and welfare of the Unit Owners.

(f) To approve or disapprove the leasing, transfer, ownership and possession of Units as may be provided by the Declaration.

(g) To enforce by legal means the provisions of the Act, the Declaration, these Articles, the By-Laws, and the rules and regulations for the use of the Common Elements and Association Property.

(h) To contract for the management and maintenance of the Common Elements and/or Association Property and/or to authorize a management agent (which may be an affiliate of the Developer) to assist the Association in carrying out any and all of the Association's powers and duties. The Association and its officers shall, however, retain at all times the powers and duties granted by the Condominium Act, including, but not limited to, the making of Assessments, promulgation of rules and execution of contracts on behalf of the Association.

(i) To employ personnel to perform the services required for the proper operation of the Common Elements and the Association Property.

(j) To execute all documents or consents, on behalf of all Unit Owners (and their mortgagees), required by all governmental and/or quasi-governmental agencies in connection with land use and development matters (including, without limitation, plats, waivers of plat, unities of title, covenants in lieu thereof, etc.), and in that regard, each Unit Owner, by acceptance of the deed to such Owner's Unit, and each mortgagee of a Unit Owner by acceptance of a lien on said Unit, appoints and designates the President of the Association as such Unit Owner's and mortgagee's agent and attorney-in-fact to execute, any and all such documents or consents.

5.3 Association Property. All funds and the title to all properties acquired by the Association and their proceeds shall be held for the benefit and

Articles
-3-

H08000091187 3

H08000091187 3

use of the members in accordance with the provisions of the Declaration, these Articles and the By-Laws.

5.4     Distribution of Income; Dissolution. The Association shall not pay a dividend to its members and shall make no distribution of income to its members, directors or officers, and upon dissolution, all assets of the Association shall be transferred only to another non-profit corporation or a public agency or as otherwise authorized by the Florida Not For Profit Corporation Act (Chapter 617, Florida Statutes).

5.5     Limitation. The powers of the Association shall be subject to and shall be exercised in accordance with the provisions hereof and of the Declaration, the By-Laws and the Act, provided that in the event of conflict, the provisions of the Act shall control over those of the Declaration and By-Laws.

## ARTICLE 6
## MEMBERS

6.1     Membership. The members of the Association shall consist of all of the record title owners of Units in the Condominium from time to time, and after termination of the Condominium, shall also consist of those who were members at the time of such termination, and their successors and assigns.

6.2     Assignment. The share of a member in the funds and assets of the Association cannot be assigned, hypothecated or transferred in any manner except as an appurtenance to the Unit for which that share is held.

6.3     Voting. On all matters upon which the membership shall be entitled to vote, there shall be only one vote for each Residential Unit and thirty (30) votes for the Shared Components Unit. All votes shall be exercised or cast in the manner provided by the Declaration and By-Laws. Any person or entity owning more than one Unit shall be entitled to cast the aggregate number of votes attributable to all Units owned.

6.4     Meetings. The By-Laws shall provide for an annual meeting of members, and may make provision for regular and special meetings of members other than the annual meeting.

Articles
- 4 -

H08000091187 3

H08000091187 3

## ARTICLE 7
## TERM OF EXISTENCE

The Association shall have perpetual existence.

## ARTICLE 8
## INCORPORATOR

The name and address of the Incorporator of this Corporation is:

### NAME

### ADDRESS

Eric Sheppard

400 Arthur Godfrey Boulevard
Suite 200 Miami Beach, Florida
33140

## ARTICLE 9
## OFFICERS

The affairs of the Association shall be administered by the officers holding the offices designated in the By-Laws. The officers shall be elected by the Board of Directors of the Association at its first meeting following the annual meeting of the members of the Association and shall serve at the pleasure of the Board of Directors. The By-Laws may provide for the removal from office of officers, for filling vacancies and for the duties and qualifications of the officers. The names and addresses of the officers who shall serve until their successors are designated by the Board of Directors are as follows:

President:

Eric Sheppard

400 Arthur Godfrey Boulevard
Suite 200
Miami Beach, Florida 33140

Vice President:

Phil Wolman

400 Arthur Godfrey Boulevard
Suite 200
Miami Beach, Florida 33140

Articles
-5-

H08000091187 3

H08000091187 3

Secretary/Treasurer:

Mark Burgin

400 Arthur Godfrey Boulevard
Suite 200
Miami Beach, Florida 33140

## ARTICLE 10
## DIRECTORS

10.1  Number and Qualification. The property, business and affairs of the Association shall be managed by a board consisting of the number of directors determined in the manner provided by the By-Laws, but which shall consist of not less than three (3) directors. Directors need not be members of the Association.

10.2  Duties and Powers. All of the duties and powers of the Association existing under the Act, the Declaration, these Articles and the By-Laws shall be exercised exclusively by the Board of Directors, its agents, contractors or employees, subject only to approval by Unit Owners when such approval is specifically required.

10.3  Election; Removal. Directors of the Association shall be elected at the annual meeting of the members in the manner determined by and subject to the qualifications set forth in the By-Laws. Directors may be removed and vacancies on the Board of Directors shall be filled in the manner provided by the By-Laws.

10.4  Term of Developer's Directors. The Developer of the Condominium shall appoint the members of the first Board of Directors and their replacements who shall hold office for the periods described in the By-Laws.

10.5  First Directors. The names and addresses of the members of the first Board of Directors who shall hold office until their successors are elected and have taken office, as provided in the By-Laws, are as follows:

### NAME:

Eric Sheppard

### ADDRESS

400 Arthur Godfrey Boulevard
Suite 200
Miami Beach, Florida 33140

Articles
-5-

H08000091187 3

H08000091187 3

Phil Wolman

400 Arthur Godfrey Boulevard
Suite 200
Miami Beach, Florida 33140

Mark Burgin

400 Arthur Godfrey Boulevard
Suite 200
Miami Beach, Florida 33140

10.6 Standards. A Director shall discharge his duties as a director,
including any duties as a member of a Committee: in good faith; with
the care an ordinary prudent person in a like position would exercise
under similar circumstances; and in a manner reasonably believed to
be in the best interests of the Association. Unless a Director has
knowledge concerning a matter in question that makes reliance
unwarranted, a Director, in discharging his duties, may rely on
information, opinions, reports or statements, including financial
statements and other data, if prepared or presented by: one or more
officers or employees of the Association whom the Director
reasonably believes to be reasonable and competent in the manners
presented: legal counsel, public accountants or other persons as to
matters the Director reasonably believes are within the persons'
professional or expert competence; or a Committee of which the
Director is not a member if the Director reasonably believes the
Committee merits confidence. A Director is not liable for any action
taken as a director, or any failure to take action, if he performed the
duties of his office in compliance with the foregoing standards.

## ARTICLE 11
## INDEMNIFICATION

11.1 Indemnitees. The Association shall indemnify any person who was or
is a party to any proceeding (other than an action by, or in the right of,
the Association) by reason of the fact that he is or was a director,
officer, employee or agent (each, an "Indemnitee") of the Association,
against liability incurred in connection with such proceeding,
including any appeal thereof, if he acted in good faith and in a manner
he reasonably believed to be in, or not opposed to, the best interests of
the Association and, with respect to any criminal action or proceeding,
had no reasonable cause to believe his conduct was unlawful. The
termination of any proceeding by judgment, order, settlement, or
conviction or upon a plea of nolo contendere or its equivalent shall

Articles
-7-

H08000091187 3

H080000911873

not, of itself, create a presumption that the person did not act in good
faith and in a manner which he reasonably believed to be in, or not
opposed to, the best interests of the Association or, with respect to any
criminal action or proceeding, had reasonable cause to believe that his
conduct was unlawful.

11.2 Indemnification. The Association shall indemnify any person, who
was or is a party to any proceeding by or in the right of the
Association to procure a judgment in its favor by reason of the fact
that he is or was a director, officer, employee, or agent of the
Association against expenses and amounts paid in settlement not
exceeding, in the judgment of the board of directors, the estimated
expense of litigating the proceeding to conclusion, actually and
reasonably incurred in connection with the defense or settlement of
such proceeding, including any appeal thereof. Such indemnification
shall be authorized if such person acted in good faith and in a manner
he reasonably believed to be in, or not opposed to, the best interests of
the Association, except that no indemnification shall be made under
this subsection in respect of any claim, issue, or matter as to which
such person shall have been adjudged to be liable unless, and only to
the extent that, the court in which such proceeding was brought, or
any other court of competent jurisdiction, shall determine upon
application that, despite the adjudication of liability but in view of all
circumstances of the case, such person is fairly and reasonably
entitled to indemnity for such expenses which such court shall deem
proper.

11.3 Indemnification for Expenses. To the extent that a director, officer,
employee, or agent of the Association has been successful on the
merits or otherwise in defense of any proceeding referred to in
subsection 11.1 or 11.2. or in defense of any claim, issue, or matter
therein. he shall be indemnified against expenses actually and
reasonably incurred by him in connection therewith.

11.4 Determination of Applicability.          Any indemnification under
subsection 11.1 or subsection 11.2, unless pursuant to a determination
by a court, shall be made by the Association only as authorized in the
specific case upon a determination that indemnification of the
director, officer, employee, or agent is proper under the circumstances
because he has met the applicable standard of conduct set forth in
subsection 11.1 or subsection 11.2. Such determination shall be
made:

Articles
- 8 -

H080000911873

H08000091187 3

(a) By the board of directors by a majority vote of a quorum consisting of directors who were not parties to such proceeding;

(b) If such a quorum is not obtainable or, even if obtainable, by majority vote of a Committee duly designated by the Board of Directors (in which directors who are parties may participate) consisting solely of two or more Directors not at the time parties to the proceeding;

(c) By independent legal counsel:

1. selected by the Board of Directors prescribed in paragraph 11.4(a) or the committee prescribed in paragraph 11.4(b); or

2. if a quorum of the Directors cannot be obtained for paragraph 11.4(a) and the Committee cannot be designated under paragraph 11.4(b). selected by majority vote of the full Board of Directors (in which Directors who are parties may participate): or

(d) By a majority of the voting interests of the members of the Association who were not parties to such proceeding.

11.5 Determination Regarding Expenses. Evaluation of the reasonableness of expenses and authorization of indemnification shall be made in the same manner as the determination that indemnification is permissible. However, if the determination of permissibility is made by independent legal counsel, persons specified by paragraph 11.4(c) shall evaluate the reasonableness of expenses and may authorize indemnification.

11.6 Advancing Expenses. Expenses incurred by an officer or director in defending a civil or criminal proceeding may be paid by the Association in advance of the final disposition of such proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if he is ultimately found not to be entitled to indemnification by the Association pursuant to this section. Expenses incurred by other employees and agents may be paid in advance upon such terms or conditions that the Board of Directors deems appropriate.

Articles
-9-

H08000091187 3

H08000091187 3

11.7  Exclusivity; Exclusions. · The indemnification and advancement of
expenses provided pursuant to this section are not exclusive, and the
Association may make any other or further indemnification or
advancement of expenses of any of its directors, officers, employees,
or agents, under any bylaw, agreement, vote of shareholders or
disinterested directors, or otherwise, both as to action in his official
capacity and as to action in another capacity while holding such
office.  However, indemnification or advancement of expenses shall
not be made to or on behalf of any director, officer, employee, or
agent if a judgment or other final adjudication establishes that his
actions, or omissions to act, were material to the cause of action so
adjudicated and constitute:

    (a)    A violation of the criminal law, unless the director, officer,
employee, or agent had reasonable cause to believe his conduct
was lawful or had no reasonable cause to believe his conduct
was unlawful;

    (b)    A transaction from which the director, officer, employee, or
agent derived an improper personal benefit; or

    (c)    Willful misconduct or a conscious disregard for the best
interests of the Association in a proceeding by or in the right of
the Association to procure a judgment in its favor or in a
proceeding by or in the right of the members of the Association.

11.8  Continuing Effect. Indemnification and advancement of expenses as
provided in this section shall continue as, unless otherwise provided
when authorized or ratified, to a person who has ceased to be a
director, officer, employee, or agent and shall inure to the benefit of
the heirs, executors, and administrators of such a person, unless
otherwise provided when authorized or ratified.

11.9  Application to Court. Notwithstanding the failure of a Association to
provide indemnification, and despite any contrary determination of
the Board or of the members in the specific case, a director, officer,
employee, or agent of the Association who is or was a party to a
proceeding may apply for indemnification or advancement of
expenses, or both, to the court conducting the proceeding, to the
circuit court, or to another court of competent jurisdiction. On receipt
of an application, the court, after giving any notice that it considers
necessary, may order indemnification and advancement of expenses,

Articles
-10-

H08000091187 3

H08000091187 3

including expenses incurred in seeking court-ordered indemnification
or advancement of expenses, if it determines that:

(a) The director, officer, employee, or agent is entitled to
mandatory indemnification under subsection 11.3, in which case the court
shall also order the Association to pay the director reasonable expenses
incurred in obtaining court-ordered indemnification or advancement of
expenses;

(b) The director, officer, employee, or agent is entitled to
indemnification or advancement of expenses, or both, by virtue
of the exercise by the Association of its power pursuant to
subsection 11.7; or

(c) The director, officer, employee, or agent is fairly and
reasonably entitled to indemnification or advancement of
expenses, or both, in view of all the relevant circumstances,
regardless of whether such person met the standard of conduct
set forth in subsection 11.1, subsection 11.2, or subsection 11.7,
unless (a) a court of competent jurisdiction determines, after all
available appeals have been exhausted or not pursued by the
proposed indemnitee, that he did not act in good faith or acted
in a manner he reasonably believed to be not in, or opposed to,
the best interest of the Association, and, with respect to any
criminal action or proceeding, that he had reasonable cause to
believe his conduct was unlawful, and (b) such court further
specifically determines that indemnification should be denied.
The termination of any proceeding by judgment, order,
settlement, conviction or upon a plea of nolo contendere or its
equivalent shall not, of itself, create a presumption that the
person did not act in good faith or did act in a manner which he
reasonably believed to be not in, or opposed to, the best interest
of the Association, and, with respect to any criminal action or
proceeding, that he had reasonable cause to believe that his
conduct was unlawful.

11.10 Definitions. For purposes of this Article 11, the term "expenses" shall
be deemed to include attorneys' fees, including those for any appeals;
the term "liability" shall be deemed to include obligations to pay a
judgment, settlement, penalty, fine, and expenses actually and
reasonably incurred with respect to a proceeding; the term
"proceeding" shall be deemed to include any threatened, pending, or

Article
-11-

H08000091187 3

H08000091187 3

completed action, suit, or other type of proceeding, whether civil, criminal, administrative or investigative, and whether formal or informal; and the term "agent" shall be deemed to include a volunteer; the term "serving at the request of the Association" shall be deemed to include any service as a director, officer, employee or agent of the Association that imposes duties on such persons.

11.11 Amendment. Anything to the contrary herein notwithstanding, no amendment to the provisions of this Article 11 shall be applicable as to any party eligible for indemnification hereunder who has not given his prior written consent to such amendment.

## ARTICLE 12
### BY-LAWS

The first By-Laws of the Association shall be adopted by the Board of Directors and may be altered, amended or rescinded in the manner provided in the By-Laws and the Declaration.

## ARTICLE 13
### AMENDMENTS

Amendments to these Articles shall be proposed and adopted in the following manner:

13.1 Notice. Notice of a proposed amendment shall be included in the notice of any meeting at which the proposed amendment is to be considered and shall be otherwise given in the time and manner provided in Chapter 617, Florida Statutes. Such notice shall contain the proposed amendment or a summary of the changes to be affected thereby.

13.2 Adoption. Amendments shall be proposed and adopted in the manner provided in Chapter 617, Florida Statutes and in the Act (the latter to control over the former to the extent provided for in the Act).

13.3 Limitation. No amendment shall make any changes in the qualifications for membership, nor in the voting rights or property rights of members, nor any changes in 5.3, 5.4 or 5.5, without the approval in writing of all members and the joinder of all record owners of mortgages upon Units. No amendment shall be made that is in conflict with the Act, the Declaration or the By-Laws, nor shall

Articles
·12·

H08000091187 3

H08000091187 3

any amendment make any changes which would in any way affect any of the rights, privileges, powers or options herein provided in favor of or reserved to the Developer and/or Institutional First Mortgagees, unless the Developer and/or the Institutional First Mortgagees, as applicable, shall join in the execution of the amendment.     No amendment to this paragraph 13.3 shall be effective.

13.4     Developer Amendments.    Notwithstanding anything herein contained to the contrary, to the extent lawful, the Developer may amend these Articles consistent with the provisions of the Declaration allowing certain amendments to be effected by the Developer alone.

13.5     Recording.    A copy of each amendment shall be filed with the Secretary of State pursuant to the provisions of applicable Florida law, and a copy certified by the Secretary of State shall be recorded in the public records of Miami-Dade County, Florida with an identification on the first page thereof of the book and page of said public records where the Declaration was recorded which contains, as an exhibit, the initial recording of these Articles.

## ARTICLE 14
### INITIAL REGISTERED OFFICE;
### ADDRESS AND NAME OF REGISTERED AGENT

The initial registered office of this corporation shall be at 400 Arthur Godfrey Boulevard, Suite 200 Miami Beach, Florida 33140, with the privilege of having its office and branch offices at other places within or without the State of Florida. The initial registered agent at that address shall be Eric Sheppard.

IN WITNESS WHEREOF, the Incorporator has affixed his signature the day and year set forth below.

Eric Sheppard, Incorporator

DATED this 25th day of August, 2007.

Articles
- 13 -

H08000091187 3

H08000091187 3

CERTIFICATE DESIGNATING PLACE OF BUSINESS OR DOMICILE
FOR THE SERVICE OF PROCESS WITHIN THIS STATE,
NAMING AGENT UPON WHOM PROCESS MAY BE SERVED

In compliance with the laws of Florida, the following is submitted:

First -- That desiring to organize under the laws of the State of Florida with
its principal office, as indicated in the foregoing articles of incorporation, in the
County of Miami-Dade, State of Florida, the Association named in the said articles
has named Eric Sheppard located at 400 Arthur Godfrey Boulevard, Suite 200
Miami Beach, Florida 33140, as its statutory registered agent.

Having been named the statutory agent of said Association at the place
designated in this certificate, I am familiar with the obligations of that position, and
hereby accept the same and agree to act in this capacity, and agree to comply with
the provisions of Florida law relative to keeping the registered office open.

Eric Sheppard, Registered Agent
DATED this _25th_ day of August,
2007.

Articles
-14-

H08000091187 3

# **Amendments**



CFN 2009R0736361
OR Bk 27044 Pgs 0308 - 311; (4pgs)
RECORDED 10/09/2009 15:54:29
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This instrument prepared by and return to:
Howard J. Vogel, Esq.
Berman Rennert Vogel & Mandler, P.A.
100 Southeast Second Street, Suite 2900
Miami, FL 33131

**FIRST AMENDMENT TO**
**DECLARATION**
**OF**
**NORTH CARILLON BEACH, A CONDOMINIUM**

THIS FIRST AMENDMENT ("Amendment") is executed as of the _____ day of October, 2009, but effective as of August 27th, 2008, by NORTH CARILLON, L.L.C., a Florida limited liability company (the "Developer").

WHEREAS, the Developer is the developer of that certain condominium known as North Carillon Beach, a Condominium (the "Condominium"), as further described in the Declaration of North Carillon, a Condominium, recorded August 27, 2008, in Official Records Book 26542, Page 0015, of the Public Records of Miami-Dade County, Florida (the "Declaration" or the "Declaration of Condominium");

WHEREAS, the Developer desires to amend the Declaration of Condominium to correct certain scrivener's errors in the signature page appearing on page 44 thereof.

WHEREAS, the Developer currently has the right to elect a majority of the Board of Directors of the Association and, pursuant to Section 6.5 of the Declaration of Condominium, is entitled to, and desires to, amend the Declaration of Condominium to correct such scrivener's errors, as further set forth below.

NOW, THEREFORE, in consideration of the premises set forth above, the Developer, for itself, its successors and assigns, hereby amends the Declaration of Condominium as follows:

1.      The foregoing recitals are true and correct.

2.      All initially capitalized terms not defined herein shall have the meaning set forth in the Declaration of Condominium. The defined term "Declaration" or "Declaration of Condominium" shall mean the Declaration of Condominium and this Amendment, together with all amendments and modifications thereof.

3.      Page 44 of the Declaration of Condominium, as originally recorded, is hereby replaced in its entirety with the revised Page 44 attached as Exhibit "A" to this Amendment.

4.      Except as modified by this Amendment, the Declaration of Condominium shall remain in full force and effect and the execution and delivery thereof, and all actions taken by Developer in connection therewith, are hereby ratified and affirmed and the terms thereof, as modified by this Amendment, are incorporated and restated herein. Although executed on the date set forth above, the terms set forth in this Amendment shall be deemed effective as of the date of recordation of the Declaration of Condominium, as originally recorded.

IN WITNESS WHEREOF, the Developer has caused this Amendment to be duly executed and its corporate seal to be hereunto affixed on the date and year written on the first page of this Amendment.

Witnessed by:                    NORTH CARILLON, L.L.C., a Florida limited liability
                                 company

Name: ELLYN CHERNIN

                         By: _____
                                 Eric D. Sheppard, as Manager

Name: Jeffrey Grant

                                 (Corporate seal)

                         Address: 400 Arthur Godfrey Road
                                  Suite 200
                                  Miami Beach, FL 33140

STATE OF FLORIDA     )

                             ) SS:

COUNTY OF MIAMI-DADE  )

The foregoing Amendment was acknowledged before me, this _____ day of October, 2009, by Eric D. Sheppard, as Manager of North Carillon, L.L.C., a Florida limited liability company, on behalf of said company. He is personally known to me or produced a driver's license as identification.

Print Name: _____

Notary Public, State of Florida

My Commission Expires: _____

Serial Number (if any) _____

Notary Seal

DENISE P. SORIANO
Notary Public - State of Florida
My Comm. Expires Jun 30, 2013
Commission # DD 903830

**IN WITNESS WHEREOF**, the Developer has caused this Declaration to be duly executed and its corporate seal to be hereunto affixed as of the __ day of October, 2009, but effective as of August 27th, 2008.

| Witnessed by: | NORTH CARILLON, L.L.C., a Florida limited liability company |
|---|---|
| Print Name: ELLYN P CHERNIN | By: _____<br>Eric D. Sheppard, as Manager |
| Print Name: Jeremy Gulk | (Corporate seal)<br><br>Address: 400 Arthur Godfrey Rd<br>Suite 200<br>Miami Beach FL 33140 |

STATE OF FLORIDA      )
                          ) SS:
COUNTY OF MIAMI-DADE   )

The foregoing instrument was acknowledged before me, this ____ day of October, 2009, by Eric D. Sheppard, as Manager of North Carillon, L.L.C., a Florida limited liability company, on behalf of said company. He is personally known to me or produced a driver's license as identification.

| | |
|---|---|
| Notary Seal:<br><br>**DENISE P. SORIANO**<br>Notary Public - State of Florida<br>My Comm. Expires Jun 30, 2013<br>Commission # DD 903830 | Print Name: _____<br>Notary Public, State of Florida<br>My Commission Expires:_____<br>Serial Number (if any)_____ |

## JOINDER

Carillon South Joint Venture, L.L.C., a Florida limited liability company ("Carillon South"), is joining in this Amendment to acknowledge and agree that, due to a scrivener's error, the execution sheet attached as page 44 to the Declaration of Condominium incorrectly reflected it as the Developer thereunder, rather than North Carillon, LLC ("North Carillon"), and that Carillon South does not claim to be the Developer under the Declaration of Condominium and it recognizes and agrees that North Carillon is the sole Developer thereunder.

IN WITNESS WHEREOF, the undersigned has caused this Joinder to be duly executed and its corporate seal to be hereunto affixed on the date and year set forth below.

| Witnessed by: | Carillon South Joint Venture, L.L.C., a Florida limited liability company |
|---|---|
| Print Name: ELLYN P CHERNIN | By: _____ |
| | Eric D. Sheppard, as Manager |
| Print Name: Jeffrey Gulf | (Corporate Seal) |
| | Address: 400 Arthur Godfrey Rd Suite 200 Miami Beach, FL 33140 |

STATE OF FLORIDA      )
                                       ) SS:
COUNTY OF MIAMI-DADE  )

The foregoing Joinder was acknowledged before me, this _____ day of October, 2009, by Eric D. Sheppard, as Manager of Carillon South Joint Venture, L.L.C., a Florida limited liability company, on behalf of said company. He is personally known to me or produced a driver's license as identification.

| | |
|---|---|
| Notary Seal | Print Name: _____ |
| DENISE P. SORIANO | Notary Public, State of Florida |
| Notary Public - State of Florida | My Commission Expires: _____ |
| My Comm. Expires Jun 30, 2013 | Serial Number (if any) _____ |
| Commission # DD 903830 | |

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that this is a true copy of the
original filed in this office on
OCT - 1 09 A.D 20___
WITNESS my hand and Official Seal.
HARVEY RUVIN, CLERK, of Circuit and County Courts
By_____ D.C.


CFN 2010R0331937
OR Bk 27288 Pgs 0187 - 191; (5pgs)
RECORDED 05/18/2010 09:48:47
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

**Record & Return to:** Sandra E. Krumbein, Esquire
Ruden McClosky P.A.
P. O. Box 1900
Fort Lauderdale, FL 33302

**Prepared By:** Sandra E. Krumbein, Esquire
Ruden McClosky P.A.
P.O. Box 1900
Fort Lauderdale, FL 33302

Miami-Dade County Recording Office:

*Cross Reference to Declaration recorded in Official Records Book 26542, Page 0015, of the Public Records of Miami-Dade County, Florida*

**SPACE ABOVE THIS LINE FOR PROCESSING DATA**          **SPACE ABOVE THIS LINE FOR RECORDING DATA**

**DOCUMENT TITLE:**          Certificate and Amendment to Articles of Incorporation
of North Carillon Beach Condominium Association, Inc.

RM:7390904:1



# State of Florida

## Department of State

I certify from the records of this office that NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC. is a corporation organized under the laws of the State of Florida, filed on April 9, 2008.

The document number of this corporation is N08000003496.

I further certify that said corporation has paid all fees due this office through December 31, 2010, that its most recent annual report/uniform business report was filed on March 2, 2010, and its status is active.

I further certify that said corporation has not filed Articles of Dissolution.

I further certify that this is an electronically transmitted certificate authorized by section 15.16, Florida Statutes, and authenticated by the code, 110A00011674-051010-N08000003496-1/1, noted below.

Authentication Code: 110A00011674-051010-N08000003496-1/1



Given under my hand and the Great Seal of the State of Florida, at Tallahassee, the Capital, this the Tenth day of May, 2010

*Dawn K. Roberts*
*Dawn K. Roberts*
*Secretary of State*



## State of Florida

### Department of State

I certify the attached is a true and correct copy of the Articles of Amendment, filed on May 7, 2010, to Articles of Incorporation for NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., a Florida corporation, as shown by the records of this office.

I further certify the document was electronically received under FAX audit number H10000112024. This certificate is issued in accordance with section 15.16, Florida Statutes, and authenticated by the code noted below.

The document number of this corporation is N08000003496.

Authentication Code: 110A00011674-051010-N08000003496-1/1

Given under my hand and the
Great Seal of the State of Florida,
at Tallahassee, the Capital, this the
Tenth day of May, 2010



*Dawn K. Roberts*
*Secretary of State*

Book27288/Page189   CFN#20100331937                    Page 3 of 5

# CERTIFICATE AND AMENDMENT TO
## ARTICLES OF INCORPORATION
## OF NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.

The undersigned, pursuant to Section 617.1002, Florida Statutes, and the provisions of Article 13.4 of the Articles of Incorporation of NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation (the "Corporation"), do hereby certify as follows:

FIRST: The name of the Corporation is NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.

SECOND: The Articles of Incorporation of the Corporation were filed with the Secretary of State of Florida on April 9, 2008 under Document Number N08000003496.

THIRD: North Carillon, L.L.C., a Florida limited liability company (the "Creating Developer") executed that certain Declaration of Condominium of North Carillon Beach, a Condominium, which was recorded August 27, 2008 in Official Records Book 26542, Page 0015 of the Public Records of Miami-Dade County, Florida, as same may have been amended and supplemented (the "Declaration");

FOURTH: Pursuant to that certain Assignment of Declarant and Developer Rights recorded in Official Records Book 27124, Page 2060, of the Public Records of the County ("Assignment"), Creating Developer assigned all of its rights under the Declaration to FL 6801 Collins North, LLC, a Delaware limited liability company ("FL 6801 North");

FIFTH: Pursuant to the Assignment, FL 6801 North is entitled to exercise the rights and privileges of the "Developer," under and as defined in the Declaration (the "Developer Rights");

SIXTH: Section 6.3 is hereby amended in its entirety to read as follows:

6.3. Voting. On all matters upon which the membership shall be entitled to vote, there shall be only one vote for each Residential Unit. All votes shall be exercised or cast in the manner provided by the Declaration and By-Laws. Any person or entity owning more than one Unit shall be entitled to cast the aggregate number of votes attributable to all Units owned.

SEVENTH: The Articles of Amendment were adopted as of the date set forth below.

RM:7316686:2

EIGHTH: These Articles of Amendment were adopted by FL 6801 North, as holder of the Developer Rights, pursuant to Article 13.4 of the Articles of Incorporation and no members of the Corporation are entitled to vote on this Amendment.

Dated this 29 day of April , 2010.

FL 6801 COLLINS NORTH, LLC, a Delaware limited liability company

By: FL 6801 SPIRITS LLC, a Delware limited liability company, Managing Member

By: _____

Name: Jeffrey Fitts

Title: Authorized Signatory

RM:7316686:2



CFN 2012R0651730
OR Bk 28270 Pgs 3665 - 3668; (4pgs)
RECORDED 09/13/2012 11:37:21
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

**This instrument prepared by and return to:**

Sandra E. Krumbein, Esq.
Shutts & Bowen LLP
200 East Broward Boulevard, Suite 2100
Fort Lauderdale, Florida 33301

*Cross Reference to Declaration of Condominium recorded in Official Records Book 26542, Page 0015, of the Public Records of Miami-Dade County, Florida*

SPACE ABOVE THIS LINE FOR PROCESSING DATA     SPACE ABOVE THIS LINE FOR PROCESSING DATA

## SECOND AMENDMENT TO DECLARATION OF CONDOMINIUM OF
## NORTH CARILLON BEACH, A CONDOMINIUM

THIS SECOND AMENDMENT (this "Amendment") is executed as of the ___7th___ day of September 2012 by FL 6801 Collins North LLC, a Delaware limited liability company ("FL 6801").

WHEREAS, North Carillon, L.L.C., a Florida limited liability company (the "Creating Developer") executed that certain Declaration of Condominium of North Carillon Beach, a Condominium ("Condominium"), which was recorded August 27, 2008 in Official Records Book 26542, Page 0015 of the Public Records of Miami-Dade County ("County"), Florida, as same may have been amended and supplemented (the "Declaration");

WHEREAS, pursuant to that certain Assignment of Developer's Rights recorded in Official Records Book 27124, Page 2060, of the Public Records of the County ("Assignment"), Creating Developer assigned all of its rights under the Declaration to FL 6801;

WHEREAS, pursuant to the Assignment, FL 6801 is entitled to exercise the rights and privileges of the "Developer," under and as defined in the Declaration (hereinafter, the "Developer Rights");

WHEREAS, Section 6.5 of the Declaration provides that during the time the Developer has the right to elect a majority of the "Board of Directors" of the "Association," the Declaration may be amended by the Developer alone (joined by the holder of any mortgages securing "Units" then owned by the Developer), without requiring the consent of any other party to effect any change whatsoever, except for an amendment: (i) to permit time-share estates; or, (ii) to effect a "Material Amendment" (all such terms as defined in the Declaration);

WHEREAS, FL 6801, as holder of the Developer Rights, still retains the right to elect a majority of the Board of Directors of the Association;

WHEREAS, this Amendment is not to permit time-share estates nor is it a Material Amendment;

WHEREAS, LB Carillon Construction LLC, a Delaware limited liability company, as the holder of mortgages securing Units owned by FL 6801 in the Condominium is joining in this Amendment to acknowledge its consent thereto; and

WHEREAS, FL 6801, as holder of the Developer Rights, desires to amend the Declaration pursuant to Section 6.5 of the Declaration as more particularly set forth herein.

FTLDOCS 6021127 1

NOW, THEREFORE, FL 6801, pursuant to its Developer Rights, hereby declares that the Declaration is amended as follows:

1. The recitations set forth herein are true and correct and are incorporated herein by reference

2. Unless otherwise defined herein, each term defined in the Declaration and used herein shall have its meaning as defined in the Declaration.

3. Notwithstanding anything in the Declaration to the contrary, Unit 204 and Unit 205 shall not be subject to the residential occupancy restriction set forth in the first paragraph of Section 15.1 of the Declaration and in such regard, Unit 204 and Unit 205 may be used for any lawful purpose; provided; however, the use of such Units is in accordance with all applicable laws and regulations, including zoning laws, imposed by any governmental or quasi-governmental body.

4. Notwithstanding anything in the Declaration to the contrary, additions, alterations or improvements to Unit 204 and/or Unit 205 by the Unit Owner(s) thereof, respectively, shall not require the prior written consent of the Association; provided, however, any such additions, alterations or improvements are made in compliance with all applicable laws and regulations imposed by any governmental or quasi-governmental body and further provided that the Unit Owners of such Units have received prior written approval from the Hotel Lot Owner of any desired additions, alterations or improvements, which such approval may be given or withheld in the Hotel Lot Owner's sole and absolute discretion.

5. Notwithstanding anything in the Declaration to the contrary, including without limitation Section 15.10 thereof, Unit 204 and/or Unit 205 may be leased without Association approval. Additionally, there shall be no minimum lease term applicable to, or any maximum number of times that, Unit 204 and/or Unit 205 may be leased or rented; provided, all applicable laws, zoning ordinances and regulations of all governmental or quasi-governmental bodies with jurisdiction thereover are observed.

6. This Amendment shall become effective upon recording amongst the Public Records of the County, Florida.

7. Except as modified hereby, the Declaration shall remain in full force and effect in accordance with the terms thereof. In the event of a conflict between the terms and provisions of this Amendment, and the terms and provisions of the Declaration, the Articles of Incorporation, the By-Laws or the Rules and Regulations, if any, the terms and provisions of this Amendment shall control to the extent of such conflict

IN WITNESS WHEREOF, FL 6801, as holder of the Developer Rights, has executed this Amendment the day and year first above written.

*[Signatures appear on following page]*

FTLDOCS 6021127 1

SIGNATURE PAGE TO AMENDMENT TO DECLARATION OF CONDOMINIUM OF NORTH CARILLON BEACH, A CONDOMINIUM

Witnessed by:

_Nancy Shaperson_ (signature)

Name: _Nancy Shape rson_

_Jennifer Park_ (signature)

Name: _Jennifer Park_

FL 6801 COLLINS NORTH LLC,
a Delaware limited liability company

By: FL 6801 SPIRITS LLC, a Delaware
limited liability company, its managing
member

By: PAMI LLC, a Delaware limited
liability company, its managing
member

By: _____
Name: ___Jeffrey Fitts___
Title: __Authorized Signatory__

(Corporate Seal)

STATE OF ___New York___ )
                                                  ) SS:
COUNTY OF ___New York___ )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _____Jeffrey Fitts_____, the AUTHORIZED SIGNATORY of PAMI LLC, a Delaware limited liability company, as managing member of FL 6801 SPIRITS LLC, a Delaware limited liability company, as managing member of FL 6801 COLLINS NORTH LLC, a Delaware limited liability company, on behalf of the company. He/she is personally known to me or who has produced _____ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this __7th__ day of _September_, 2012.

_Deanna Emilio_ (signature)

Notary Public State of _____ at Large

_____
Typed, printed or stamped name of Notary Public

My Commission Expires:

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in New York County [Richmond]
Term Expires July 23, 2015

3

## CONSENT OF MORTGAGEE

This Consent of Mortgagee ("Consent") is given as of the 7 day of September 2012, on behalf of LB Carillon Construction LLC, a Delaware limited liability company ("Mortgagee"), being the owner and holder of a mortgage (as same may be amended or modified from time to time, and including any and all other documents securing the indebtedness referenced in the mortgage, collectively, the "Mortgage") securing Units in North Carillon Beach, a Condominium ("Condominium") owned by FL 6801.

WHEREAS, Mortgagee has been requested to consent to the recording of the foregoing Amendment.

NOW, THEREFORE, Mortgagee hereby consents to the foregoing Amendment.

Mortgagee makes no warranty or any representation of any kind or nature concerning the foregoing Amendment, any of its terms or provision, or the legal sufficiency thereof, and disavows any such warranty or representation and does not assume and shall not be responsible for any of the obligations or liabilities contained in the foregoing Amendment, Declaration or other documents used in connection with the promotion of the Condominium. None of the representations contained in the foregoing Amendment, Declaration or other documents shall be deemed to have been made by Mortgagee, nor shall they be construed to create any obligations on Mortgagee to any person relying thereon. Nothing contained herein shall affect or impair the rights and remedies of Mortgagee as set forth in the Mortgage in connection with Condominium or in the Declaration.

Made as of the day and year first above written.

Signed, sealed and delivered
in the presence of :

LB CARILLON CONSTRUCTION LLC, a
Delaware limited liability company

Print Name: Jennifer Park

By: _____
Print Name: Jeffrey Fitts
Its: Authorized Signatory

Print Name: _____

STATE OF New York )
                          ) SS:
COUNTY OF New York )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _____Jeffrey Fitts____, the AUTHORIZED SIGNATORY of LB CARILLON CONSTRUCTION LLC, a Delaware limited liability company, freely and voluntarily under authority duly vested in him/her by said entity. He/She is personally known to me or who has produced _____ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this 7th day of September 2012.

_____
Notary Public State of _____ at Large

_____
Typed, printed or stamped name of Notary Public

My Commission Expires:

DEANNA EMILIO
Notary Public, State of New York
No. 01EM6171082
Qualified in New York County Richmond
Term Expires July 23, 2016

4

FTLDOCS 6021127 1