# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



UNIT #406
UNDER CONSTRUCTION
10-1-07

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT)
NOT A PART OF CONDOMINIUM PROPERTY

UNITS #106 THRU #406

# TYPE "A1a"

EXHIBIT 2

SHEET 28 OF 48

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.
2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.
3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per
architectural drawings



GRAPHIC SCALE

0   5   10

( IN FEET )
1 inch = 10   ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



UNIT ENTRY →

**LEGEND:**

——— CONDOMINIUM UNIT BOUNDARY LINE

▱ (HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNIT #506

# TYPE "A1a"

**EXHIBIT 2**

**SHEET 29 OF 48**

Cad No. 03018\4U   Drawn By: R&M  Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**GRAPHIC SCALE**

0    5    10         20

( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.

**DIMENSION NOTE:**

(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings



**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNITS #1802 THRU #PH02

# TYPE "A2"

EXHIBIT 2                    SHEET 30 OF 48

Col No. 030184U    Drawn By: R&M Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

### GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

UNIT #405
UNDER CONSTRUCTION
10-1-07



OCCURS AT UNITS #205 THRU #505 ONLY



OCCURS AT UNIT #105 ONLY



↑
UNIT
ENTRY

**LEGEND:**

———  CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT)
NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNITS #105 THRU #505

# TYPE "B1"

EXHIBIT 2

SHEET 31 OF 48

Cad No. 030184U    Drawn By: RJM  Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

**GRAPHIC SCALE**



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



**LEGEND:**

———— CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN. SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNITS #101

# TYPE "B2"

EXHIBIT 2

Cad No. 030184U    Drawn By: RJM  Date Printed: 11/9/07  8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



Cad No: 0001B4U    Drawn By: RJM  Date Printed: 11/9/07 8:35a

**LEGEND:**

— CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**UNITS #201 THRU #501**

# TYPE "B2"

**EXHIBIT 2**

**SHEET 33 OF 48**

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

### GRAPHIC SCALE



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



UNIT ENTRY

OCCURS AT UNIT #102 ONLY

**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN. SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNITS #102 THRU #502

# TYPE "B2" Rev.

EXHIBIT 2     SHEET 34 OF 48

Cad No.: 0301B4U   Drawn By: RsM  Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.
2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.
3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements constructed.



UNIT ENTRY

19.95'
(20.2')

(0.9')
0.58'

2.33'
(2.2')

1.00'
(1.2')

27.46'
(27.4')

(2.8')

5.66'
(5.6')

2.83'

(2.1')

2.83'
(2.8')

25.50
(25.8')

(25.5')

(49.8')

(25.8')

(17.7')
18.01'

(2.3')
2.42'

1.84'
(1.9')

(0.8')
0.92

(0.2')

(15.6')
16.16'

(0.7')
0.58'

(8.9')
8.92

0.50'
(0.5')

(9.7')
9.91

(3.4')
3.42

3.42

(11.9')
11.83'

(0.6')

0.50'
0.00'

(1.9')

(0.8')

**LEGEND:**

─────── CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

## UNITS #103 THRU #503

# TYPE "B2a"

**EXHIBIT 2**

**SHEET 35 OF 48**

Cad No. 0301B4U    Drawn By: RJM    Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**GRAPHIC SCALE**



( IN FEET )
1 inch = 10 ft.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



OCCURS AT UNIT #705 ONLY

OCCURS AT UNITS #805 – #PH05

ONLY AT #605

UNIT ENTRY →

ENTRY DOOR MOVED AT UNIT #605 ONLY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

CORNER JOG OCCURS AT UNITS #605 – #905, #1105, #1605 – #1805 ONLY

**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

UNITS #605 THRU #PH05
# TYPE "B3a"

**EXHIBIT 2**            **SHEET 36 OF 48**

Cad No. 03018-4U   Drawn By: RJM   Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNIT ENTRY

UNIT #602 ONLY

**LEGEND:**

——— CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

UNITS #602 THRU #1702

# TYPE "B3b"

**EXHIBIT 2**

**SHEET 37 OF 48**

Cod No. 0301040    Drawn By: RAM Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

DIMENSION NOTE:
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

NOTE:

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



UNIT ENTRY

LEGEND:

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT)
NOT A PART OF
CONDOMINIUM PROPERTY

NOTE:
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNITS #704 THRU #PH04

# TYPE "B4"

EXHIBIT 2

SHEET 38 OF 48

Cad No. 0001B4U    Drawn By: RJM  Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

### GRAPHIC SCALE



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundar[ ]s as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.

OCCURS AT UNIT #212 ONLY

UNIT ENTRY

(8.8')
(1.3')
(3.0')
(9.4')
(0.3')
(9.9')
(3.0')
(3.5')
(3.4')
(4.0')
(1.5')
(1.3')
7.75'
(7.7')
2.25'
(2.4')
(2.5')
(2.6')
(0.4')
(9.2')
9.33'
7.33'
(7.3')
2.00'
(2.1')
6.04'
(6.1')
3.21'
(3.5')
(0.4')
(28.8')
(28.8')
6.75'
(6.7')
(18.5')
18.50'
(12.50')
(11.5')
(39.5')
(0.2')
(1.0')
(23.7')
(0.2')
(2.6')
(1.5')
2.71'
(2.8')
(1.8')
1.67'
2.71'
(12.8')
12.75'

**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN. SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNITS #212 THRU #512
UNITS #606 THRU #PH06

# TYPE "B5"

**EXHIBIT 2**
**SHEET 39 OF 48**

Cod No. 030164U   Drawn By: RJM   Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

**GRAPHIC SCALE**



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



OCCURS AT UNIT #109 THRU #509 ONLY

UNIT ENTRY →

**NOTE:**

BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**LEGEND:**

──────  CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT)
NOT A PART OF
CONDOMINIUM PROPERTY

UNITS #109 THRU #509
AND
UNITS #107 THRU #507

# TYPE "C1"

**EXHIBIT 2**                    **SHEET 40 OF 48**

Cad No. 030184U   Drawn By: RAM   Date Printed: 11/9/07 6:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

**GRAPHIC SCALE**

( IN FEET )
1 inch = 10  ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements a. constructed.



UNIT ENTRY →

OCCURS AT UNIT #108 ONLY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION,

**LEGEND:**

—— CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

UNITS #108 THRU #508

# TYPE "C1"
## Rev.

**EXHIBIT 2**

**SHEET 41 OF 48**

Cad No. C00184U     Drawn By: RJW  Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



DETAIL "A"

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**UNITS #210 THRU #510**

# TYPE "C2"

**EXHIBIT 2**

**SHEET 42 OF 48**

Drawn By: RJM Date Printed: 11/9/07 8:35a   Cad No. 03018AU

# SOUTH CARILLON BEACH,

## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

**GRAPHIC SCALE**



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundari as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements a constructed.



UNIT ENTRY →

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**LEGEND:**

——— CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

UNITS #211 THRU #511

# TYPE "C3"

**EXHIBIT 2**

**SHEET 43 OF 48**

Cad No. 030184U    Drawn By: RAM  Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



↑
UNIT
ENTRY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**LEGEND:**

——— CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

UNIT #604

# TYPE "C6"

EXHIBIT 2                              SHEET 44 OF 48

Drawn By: RJM   Data Printed: 11/9/07 8:35a   Cad No. 0301840

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

## GRAPHIC SCALE



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



UNIT ENTRY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**LEGEND:**

——— CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

UNIT #603

Cad No. 030164U    Drawn By: RJM Date Printed: 11/9/07 8:35a

## TYPE "C4a"

**EXHIBIT 2**    **SHEET 45 OF 48**

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.
2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.
3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured, Dimension
9.00' = Indicates Dimension per architectural drawings

## GRAPHIC SCALE



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



CORNER JOG OCCURS AT UNITS #803, #903, #1203, #1503 AND #1603 ONLY

CORNER JOG OCCURS AT UNITS #803, #1003 THROUGH #1403, #1603 ONLY

### DETAIL "A"
OCCURS ONLY
AT UNITS
#703, #903, #1003, #1103, #1203, #1403, #1503 AND #1603

### DETAIL "B"
OCCURS ONLY
AT UNITS
#803 AND #1703

UNIT ENTRY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT)
NOT A PART OF CONDOMINIUM PROPERTY

## UNITS #703 THRU #1703

# TYPE "C4"

Cad No. 030184U    Drawn By: RJM  Date Printed: 11/9/07 8:35a

**EXHIBIT 2**                    **SHEET 46 OF 48**

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.

UNIT
ENTRY



**LEGEND:**

—————  CONDOMINIUM UNIT
BOUNDARY LINE

(HOTEL LOT)
NOT A PART OF
CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

UNIT #601

## TYPE "C5a"

**EXHIBIT 2**  **SHEET 47 OF 48**

Cad No. 0301B4U  Drawn By: RJM  Date Printed: 11/9/07 8:35a

# SOUTH CARILLON BEACH,
## A CONDOMINIUM

**HOTEL LOT:**

1. ALL BALCONIES TERRACES AND PATIOS ARE LIMITED COMMON AREAS, IN THE HOTEL LOT.

2. CHASES AND COLUMNS WITHIN EACH UNIT ARE HOTEL LOT.

3. ALL RAILINGS AFFIXED TO THE BALCONIES OR TERRACES AND THE TOP PARTITIONS OF BALCONIES AND TERRACES SHALL BE HOTEL LOT.

**DIMENSION NOTE:**
(9.0') = Indicates Measured Dimension
9.00' = Indicates Dimension per architectural drawings

### GRAPHIC SCALE



( IN FEET )
1 inch = 10 ft.

**NOTE:**

For a complete description of the Unit boundaries as shown hereon, refer to the Declaration of Condominium.

There may exist some variation between the proposed improvements and the improvements as constructed.



UNIT ENTRY

**LEGEND:**

CONDOMINIUM UNIT BOUNDARY LINE

(HOTEL LOT) NOT A PART OF CONDOMINIUM PROPERTY

**NOTE:**
BALCONIES AND TERRACES NOT SHOWN.
SEE APPROPRIATE FLOOR PLAN FOR LOCATION.

### UNITS #701 THRU #PH01

# TYPE "C5"

EXHIBIT 2      SHEET 48 OF 48

Cad No. 0301B4U   Drawn By: RJM   Date Printed: 11/9/07 8:35a

## SOUTH CARILLON BEACH, A CONDOMINIUM

1

### PERCENTAGE OF OWNERSHIP OF COMMON ELEMENTS AND MASTER EXPENSES
"ALLOCATED INTERESTS"

| Unit Type | Unit Numbers | Total Unit Type | Percent per Unit | Percent per Unit Type |
|---|---|---|---|---|
| A1 | 104, 204, 304, 404, 504 | 5 | 0.011967% | 0.059835% |
| A1a | 106, 206, 306, 406, 506 | 5 | 0.011984% | 0.059920% |
| A2 | 1802, cph02, lph02, ph02 | 4 | 0.013017% | 0.052068% |
| B1 | 105, 205, 305, 405, 505 | 5 | 0.010862% | 0.054310% |
| B2 | 101, 201, 301, 401, 501 | 5 | 0.007324% | 0.036620% |
| B2 Rev | 102, 202, 302, 402, 502 | 5 | 0.007324% | 0.036620% |
| B2a | 103, 203, 303, 403, 503 | 5 | 0.007518% | 0.037590% |
| B3a | 605, 705, 805, 905, 1005, 1105, 1205, 1405, 1505, 1605, 1705, 1805, cph05, lph05, ph05 | 15 | 0.008291% | 0.124365% |
| B3b | 602, 702, 802, 902, 1002, 1102, 1202, 1402, 1502, 1602, 1702 | 11 | 0.008098% | 0.089078% |
| B4 | 704, 804, 904, 1004, 1104, 1204, 1404, 1504, 1604, 1704, 1804, cph04, lph04, ph04 | 14 | 0.006329% | 0.088606% |
| B5 | 212, 312, 412, 512, 606, 706, 806, 906, 1006, 1106, 1206, 1406, 1506, 1606, 1706, 1806, coh06, lph06, ph06 | 19 | 0.006042% | 0.114798% |
| C1 | 107, 109, 207, 209, 307, 309, 407, 409, 507, 509 | 10 | 0.005085% | 0.050850% |
| C1 Rev | 108, 208, 308, 408, 508 | 5 | 0.005085% | 0.025425% |
| C2 | 210, 310, 401, 510 | 4 | 0.006136% | 0.024544% |
| C3 | 211, 311, 411, 511 | 4 | 0.004891% | 0.019564% |
| C4 | 703, 803, 903, 1003, 1103, 1203, 1403, 1503, 1603, 1703 | 10 | 0.004920% | 0.049200% |
| C4a | 603 | 1 | 0.004754% | 0.004754% |
| C5 | 701, 801, 901, 1001, 1101, 1201, 1401, 1501, 1601, 1701, 1801, cph01, lph01, ph01 | 14 | 0.004422% | 0.061908% |
| C5a | 601 | 1 | 0.004113% | 0.004113% |
| C6 | 604 | 1 | 0.005832% | 0.005832% |
| | | 143 | | 1.000000% |

NOTE: FOR A DESCRIPTION OF UNITS BY UNIT TYPE, SEE EXHIBIT "2" TO THE DECLARATION OF CONDOMINIUM.

Exhibit "4"

BY-LAWS
OF
SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.

*A corporation not for profit organized
under the laws of the State of Florida*

1.   Identity. These are the By-Laws of **SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.**
     (the "Association"), a corporation not for profit incorporated under the laws of the State of Florida, and
     organized for the purposes set forth in its Articles of Incorporation.

     1.1   Fiscal Year. The fiscal year of the Association shall be the twelve month period commencing
           January 1st and terminating December 31st of each year.

     1.2   Seal. The seal of the Association shall bear the name of the corporation, the word "Florida", the
           words "Corporation Not for Profit", and the year of incorporation.

2.   Definitions. For convenience, these By-Laws shall be referred to as the "By-Laws" and the Articles of
     Incorporation of the Association as the "Articles". The other terms used in these By-Laws shall have the
     same definitions and meanings as those set forth in the Declaration for SOUTH CARILLON BEACH, A
     CONDOMINIUM, unless herein provided to the contrary, or unless the context otherwise requires.

3.   Members.

     3.1   Annual Meeting. The annual members' meeting shall be held on the date, at the place and at the
           time determined by the Board of Directors from time to time, provided that there shall be an annual
           meeting every calendar year and, to the extent possible, no later than thirteen (13) months after the
           last preceding annual meeting. The purpose of the meeting shall be, except as provided herein to
           the contrary, to elect Directors, and to transact any other business authorized to be transacted by
           the members, or as stated in the notice of the meeting sent to Unit Owners in advance thereof.
           Unless changed by the Board of Directors, the first annual meeting shall be held in the month of
           October following the year in which the Declaration is filed.

     3.2   Special Meetings. Special members' meetings shall be held at such places as provided herein for
           annual meetings, and may be called by the President or by a majority of the Board of Directors of
           the Association, and must be called by the President or Secretary upon receipt of a written request
           from a majority of the members of the Association. The business conducted at a special meeting
           shall be limited to that stated in the notice of the meeting. Special meetings may also be called by
           Unit Owners in the manner provided for in the Act. Notwithstanding the foregoing: (i) as to special
           meetings regarding the adoption of the Condominium's estimated operating budget, reference
           should be made to Section 10.1 of these By-Laws; and (ii) as to special meetings regarding recall
           of Board members, reference should be made to Section 4.3 of these By-Laws.

     3.3   Participation by Unit Owners. Subject to the following and such further reasonable restrictions as
           may be adopted from time to time by the Board, Unit Owners shall have the right to speak at the
           annual and special meetings of the Unit Owners, committee meetings and Board meetings with
           reference to all designated agenda items. A Unit Owner does not have the right to speak with
           respect to items not specifically designated on the agenda, provided, however, that the Board may
           permit an Unit Owner to speak on such items in its discretion. Every Unit Owner who desires to
           speak at a meeting, may do so, provided that the Unit Owner has filed a written request with the
           Secretary of the Association not less than 24 hours prior to the scheduled time for commencement
           of the meeting. Unless waived by the chairman of the meeting (which may be done in the
           chairman's sole and absolute discretion and without being deemed to constitute a waiver as to any
           other subsequent speakers), all Unit Owners speaking at a meeting shall be limited to a maximum
           of three (3) minutes per speaker. Any Unit Owner may tape record or videotape a meeting, subject
           to the following and such further reasonable restrictions as may be adopted from time to time by
           the Board:

           (a)   The only audio and video equipment and devices which Unit Owners are authorized to
                 utilize at any such meeting is equipment which does not produce distracting sound or light
                 emissions;

           (b)   Audio and video equipment shall be assembled and placed in position in advance of the
                 commencement of the meeting.

           (c)   Anyone videotaping or recording a meeting shall not be permitted to move about the
                 meeting room in order to facilitate the recording; and

(d)    At least 48 hours (or 24 hours with respect to a Board meeting) prior written notice shall be given to the Secretary of the Association by any Unit Owner desiring to make an audio or video taping of the meeting.

3.4    Notice of Meeting; Waiver of Notice. Notice of a meeting of members (annual or special), stating the time and place and the purpose(s) for which the meeting is called, shall be given by the President or Secretary. A copy of the notice shall be posted at a conspicuous place on the Condominium Property. The notice of an annual or special meeting shall be hand delivered, electronically transmitted or sent by regular mail to each Unit Owner, unless the Unit Owner waives in writing the right to receive notice of the annual meeting by mail. The delivery or mailing shall be to the address of the member as last furnished to the Association by the Unit Owner. However, if a Unit is owned by more than one person, the Association shall provide notice, for meetings and all other purposes, to that one address initially identified for that purpose by the Developer and thereafter as one or more of the Owners of the Unit shall so advise the Association in writing, or if no address is given or if the Owners disagree, notice shall be sent to the address for the Owner as set forth on the deed of the Unit. The posting and mailing of the notice for either special or annual meetings, which notice shall incorporate an identification of agenda items, shall be effected not less than fourteen (14) continuous days, nor more than sixty (60) days, prior to the date of the meeting. The Board shall adopt by rule, and give notice to Unit Owners of, a specific location on the Condominium Property upon which all notices of members' meetings shall be posted. In lieu of or in addition to the physical posting of notice of any meeting of the Unit Owners on the Condominium Property, the Association may, by reasonable rule, adopt a procedure for conspicuously posting and repeatedly broadcasting the notice and the agenda on a closed-circuit cable television system serving the Association, if any. However, if broadcast notice is used in lieu of a notice posted physically on the Condominium Property, the notice and agenda must be broadcast at least four times every broadcast hour of each day that a posted notice is otherwise required. When broadcast notice is provided, the notice and agenda must be broadcast in a manner and for a sufficient continuous length of time so as to allow an average reader to observe the notice and read and comprehend the entire content of the notice and the agenda.

Notice of specific meetings may be waived before or after the meeting and the attendance of any member (or person authorized to vote for such member), either in person or by proxy, shall constitute such member's waiver of notice of such meeting, and waiver of any and all objections to the place of the meeting, the time of the meeting or the manner in which it has been called or convened, except when his (or his authorized representative's) attendance is for the express purpose of objecting at the beginning of the meeting to the transaction of business because the meeting is not lawfully called.

An officer of the Association, or the manager or other person providing notice of the meeting shall provide an affidavit or United States Postal Service certificate of mailing, to be included in the official records of the Association, affirming that notices of meetings were posted and mailed or hand delivered in accordance with this Section and Section 718.112(2)(d) of the Act, to each Unit Owner at the appropriate address for such Unit Owner. No other proof of notice of a meeting shall be required.

3.5    Quorum. A quorum at members' meetings shall be attained by the presence, either in person or by proxy (limited or general), of persons entitled to cast in excess of 33 1/3% of the votes of members entitled to vote at the subject meeting.

3.6    Voting.

(a)    Number of Votes. Except as provided in Section 3.11 hereof, in any meeting of members, the Owners of each Unit shall be entitled to cast the number of votes designated for their Unit as set forth in the Articles. The vote of a Unit shall not be divisible.

(b)    Majority Vote. The acts approved by a majority of the votes present in person or by proxy at a meeting at which a quorum shall have been attained shall be binding upon all Unit Owners for all purposes, except where otherwise provided by law, the Declaration, the Articles or these By-Laws. As used in these By-Laws, the Articles or the Declaration, the terms "majority of the Unit Owners" and "majority of the members" shall mean a majority of the votes entitled to be cast by the members and not a majority of the members themselves and shall further mean more than 50% of the then total authorized votes present in person or by proxy and voting at any meeting of the Unit Owners at which a quorum shall have been attained. Similarly, if some greater percentage of members is required herein or in the Declaration or Articles, it shall mean such greater percentage of the votes of members and not of the members themselves.

(c)    Voting Member. If a Unit is owned by one person, that person's right to vote shall be established by the roster of members. If a Unit is owned by more than one person, those persons (including husbands and wives) shall decide among themselves as to who shall

cast the vote of the Unit. In the event that those persons cannot so decide, no vote shall be cast. A person casting a vote for a Unit shall be presumed to have the authority to do so unless the President or the Board of Directors is otherwise notified. If a Unit is owned by a corporation, the person entitled to cast the vote for the Unit shall be designated by a certificate signed by an appropriate officer of the corporation and filed with the Secretary of the Association. Such person need not be a Unit Owner. Those certificates shall be valid until revoked or until superseded by a subsequent certificate or until a change in the ownership of the Unit concerned. A certificate designating the person entitled to cast the vote for a Unit may be revoked by any record owner of an undivided interest in the Unit. If a certificate designating the person entitled to cast the vote for a Unit for which such certificate is required is not on file or has been revoked, the vote attributable to such Unit shall not be considered in determining whether a quorum is present, nor for any other purpose, and the total number of authorized votes in the Association shall be reduced accordingly until such certificate is filed.

3.7   Proxies. Votes to be cast at meetings of the Association membership may be cast in person or by proxy. Except as specifically provided herein, Unit Owners may not vote by general proxy, but may vote by limited proxies substantially conforming to the limited proxy form approved by the Division. Limited proxies shall be permitted to the extent permitted by the Act. No proxy, limited or general, shall be used in the election of Board members. General proxies may be used for other matters for which limited proxies are not required and may also be used in voting for nonsubstantive changes to items for which a limited proxy is required and given. A proxy may be made by any person entitled to vote, but shall only be valid for the specific meeting for which originally given and any lawful adjourned meetings thereof. In no event shall any proxy be valid for a period longer than 90 days after the date of the first meeting for which it was given. Every proxy shall be revocable at any time at the pleasure of the person executing it. A proxy must be in writing, signed by the person authorized to cast the vote for the Unit (as above described), name the person(s) voting by proxy and the person authorized to vote for such person(s) and filed with the Secretary before the appointed time of the meeting, or before the time to which the meeting is adjourned. Each proxy shall contain the date, time and place of the meeting for which it is given and, if a limited proxy, shall set forth the matters on which the proxy holder may vote and the manner in which the vote is to be cast. There shall be no limitation on the number of proxies which may be held by any person (including a designee of the Developer). If a proxy expressly provides, any proxy holder may appoint, in writing, a substitute to act in its place. If such provision is not made, substitution is not permitted.

3.8   Adjourned Meetings. If any proposed meeting cannot be organized because a quorum has not been attained, the members who are present, either in person or by proxy, may adjourn the meeting from time to time until a quorum is present, provided notice of the newly scheduled meeting is given in the manner required for the giving of notice of a meeting. Except as required above, proxies given for the adjourned meeting shall be valid for the newly scheduled meeting unless revoked for reasons other than the new date of the meeting.

3.9   Order of Business. If a quorum has been attained, the order of business at annual members' meetings, and, if applicable, at other members' meetings, shall be:

(a)   Collect any ballots not yet cast;

(b)   Call to order by President;

(c)   Appointment by the President of a chairman of the meeting (who need not be a member or a director);

(d)   Appointment of inspectors of election;

(e)   Counting of Ballots for Election of Directors;

(f)   Proof of notice of the meeting or waiver of notice;

(g)   Reading of minutes;

(h)   Reports of officers;

(i)   Reports of committees;

(j)   Unfinished business;

(k)   New business;

(l)   Adjournment.

Such order may be waived in whole or in part by direction of the chairman.

3.10    Minutes of Meeting. The minutes of all meetings of Unit Owners shall be kept in a book available for inspection by Unit Owners or their authorized representatives and Board members at any reasonable time. The Association shall retain these minutes for a period of not less than seven (7) years.

3.11    Action Without A Meeting. Anything to the contrary herein notwithstanding, to the extent lawful, any action required or which may be taken at any annual or special meeting of members, may be taken without a meeting, without prior notice and without a vote if a consent in writing, setting forth the action so taken, shall be signed by the members (or persons authorized to cast the vote of any such members as elsewhere herein set forth) having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of members at which all members (or authorized persons) entitled to vote thereon were present and voted. In order to be effective, the action must be evidenced by one or more written consents describing the action taken, dated and signed by approving members having the requisite number of votes and entitled to vote on such action, and delivered to the Secretary of the Association, or other authorized agent of the Association. Written consent shall not be effective to take the corporate action referred to in the consent unless signed by members having the requisite number of votes necessary to authorize the action within sixty (60) days of the date of the earliest dated consent and delivered to the Association as aforesaid. Any written consent may be revoked prior to the date the Association receives the required number of consents to authorize the proposed action. A revocation is not effective unless in writing and until received by the Secretary of the Association, or other authorized agent of the Association. Within ten (10) days after obtaining such authorization by written consent, notice must be given to members who have not consented in writing. The notice shall fairly summarize the material features of the authorized action. A consent signed in accordance with the foregoing has the effect of a meeting vote and may be described as such in any document.

4.    Directors.

4.1    Membership. The affairs of the Association shall be governed by a Board of not less than three (3) nor more than nine (9) directors, the exact number to be determined in the first instance in the Articles, and, thereafter, except as provided herein, from time to time upon majority vote of the membership. Directors must be natural persons who are 18 years of age or older. Any person who has been convicted of any felony by any court of record in the United States and who has not had his or her right to vote restored pursuant to law in the jurisdiction of his or her residence is not eligible for Board membership (provided, however, that the validity of any Board action is not affected if it is later determined that a member of the Board is ineligible for Board membership due to having been convicted of a felony). Directors may not vote at Board meetings by proxy or by secret ballot.

4.2    Election of Directors. Election of Directors shall be held at the annual members' meeting, except as herein provided to the contrary. Not less than sixty (60) days prior to a scheduled election, the Association shall mail, deliver or electronically transmit to each Unit Owner entitled to vote, a first notice of the date of election. Any Unit Owner or other eligible person desiring to be a candidate for the Board shall give written notice to the Secretary of the Association not less than forty (40) days prior to the scheduled election. Together with the notice of meeting and agenda sent in accordance with Section 3.4 above, the Association shall then, mail, deliver or electronically transmit a second notice of the meeting, not less than fourteen (14) days prior to the date of the meeting, to all Unit Owners entitled to vote therein, together with a ballot which shall list all candidates. Upon request of a candidate, the Association shall include an information sheet, no larger than 8-1/2 inches by 11 inches furnished by the candidate, which must be furnished by the candidate to the Association not less than thirty five (35) days before the election, to be included with the mailing of the ballot, with the costs of mailing or delivery and copying to be borne by the Association. The Association is not liable for the contents of the information sheets prepared by the candidates. In order to reduce costs, the Association may print or duplicate the information sheets on both sides of the paper.

The election of directors shall be by written ballot or voting machine. Proxies shall in no event be used in electing the Board at general elections or to fill vacancies caused by resignation or otherwise, provided, however, that limited proxies may be used to fill a vacancy resulting from the recall of a director, in the manner provided by the rules of the Division. Elections shall be decided by a plurality of those ballots and votes cast. There shall be no quorum requirement, however at least 20 percent of the eligible voters must cast a ballot in order to have a valid election of members of the Board. There shall be no cumulative voting.

Notwithstanding the provisions of this Section 4.2, an election is not required unless more candidates file notices of intent to run or are nominated than vacancies exist on the Board.

By-Laws
-4-

4.3    Vacancies and Removal.

    (a)    Except as to vacancies resulting from removal of Directors by members (as addressed in subsection (b) below), vacancies in the Board of Directors occurring between annual meetings of members shall be filled by a majority vote of the remaining Directors at any Board meeting (even if the remaining Directors constitute less than a quorum), provided that all vacancies in directorships to which Directors were appointed by the Developer pursuant to the provisions of paragraph 4.15 hereof shall be filled by the Developer without the necessity of any meeting.

    (b)    Any Director elected by the members (other than the Developer) may be removed by concurrence of a majority of the voting interests of the members at a special meeting of members called for that purpose or by written agreement signed by a majority of all voting interests. The vacancy in the Board of Directors so created shall be filled by the members at a special meeting of the members called for such purpose, or by the Board of Directors, in the case of removal by a written agreement unless said agreement also designates a new Director to take the place of the one removed. The conveyance of all Units owned by a Director in the Condominium (other than appointees of the Developer or Directors who were not Unit Owners) shall constitute the resignation of such Director.

    (c)    Anything to the contrary herein notwithstanding, until a majority of the Directors are elected by members other than the Developer of the Condominium, neither the first Directors of the Association, nor any Directors replacing them, nor any Directors named by the Developer, shall be subject to removal by members other than the Developer. The first Directors and Directors replacing them may be removed and replaced by the Developer without the necessity of any meeting.

    (d)    If a vacancy on the Board of Directors results in the inability to obtain a quorum of directors in accordance with these By-Laws, any Owner may apply to the Circuit Court within whose jurisdiction the Condominium lies for the appointment of a receiver to manage the affairs of the Association. At least thirty (30) days prior to applying to the Circuit Court, the Unit Owner shall mail to the Association and post in a conspicuous place on the Condominium Property a notice describing the intended action and giving the Association an opportunity to fill the vacancy(ies) in accordance with these By-Laws. If, during such time, the Association fails to fill the vacancy(ies), the Unit Owner may proceed with the petition. If a receiver is appointed, the Association shall be responsible for the salary of the receiver, court costs and attorneys' fees. The receiver shall have all powers and duties of a duly constituted Board of Directors, and shall serve until the Association fills the vacancy(ies) on the Board sufficient to constitute a quorum in accordance with these By-Laws.

4.4    Term. Except as provided herein to the contrary, the term of each Director's service shall extend until the next annual meeting of the members and subsequently until his successor is duly elected and has taken office, or until he is removed in the manner elsewhere provided. Notwithstanding the foregoing, any Director designated by the Developer shall serve at the pleasure of the Developer and may be removed and replaced by the Developer at any time.

4.5    Organizational Meeting. The organizational meeting of newly-elected or appointed Directors shall be held within ten (10) days of their election or appointment. The directors calling the organizational meeting shall give at least three (3) days advance notice thereof, stating the time and place of the meeting.

4.6    Meetings. Meetings of the Board of Directors may be held at such time and place as shall be determined, from time to time, by a majority of the Directors. Meetings of the Board of Directors may be held by telephone conference, with those Directors attending by telephone counted toward the quorum requirement, provided that a telephone speaker must be used so that the conversation of those Directors attending by telephone may be heard by the Directors and any Unit Owners attending such meeting in person. Notice of meetings shall be given to each Director, personally or by mail, telephone or telegraph, and shall be transmitted at least three (3) days prior to the meeting. Meetings of the Board of Directors and any Committee thereof at which a quorum of the members of that Committee are present shall be open to all Unit Owners. Any Unit Owner may tape record or videotape meetings of the Board, in accordance with the rules of the Division. The right to attend such meetings includes the right to speak at such meetings with respect to all designated agenda items. The Association may adopt reasonable rules governing the frequency, duration and manner of Unit Owner statements. Adequate notice of such meetings, which notice shall specifically incorporate an identification of agenda items, shall be posted conspicuously on the Condominium Property at least forty-eight (48) continuous hours preceding the meeting, except in the event of an emergency. Any item not included on the notice may be taken up on an emergency basis by at least a majority plus one of the members of the Board. Such emergency action shall be noticed and ratified at the next regular meeting of the Board. Notwithstanding the

foregoing, written notice of any meeting of the Board at which nonemergency special assessments, or at which amendment to rules regarding unit use will be proposed, discussed or approved, shall be mailed, delivered or electronically transmitted to all Unit Owners and posted conspicuously on the Condominium property not less than fourteen (14) continuous days prior to the meeting. Evidence of compliance with this fourteen (14) continuous day notice shall be made by an affidavit executed by the Secretary of the Association and filed among the official records of the Association. The Board shall adopt by rule, and give notice to Unit Owners of, a specific location on the Condominium Property upon which all notices of Board and/or Committee meetings shall be posted. In lieu of or in addition to the physical posting of notice of any meeting of the Board on the Condominium Property, the Association may, by reasonable rule, adopt a procedure for conspicuously posting and repeatedly broadcasting the notice and the agenda on a closed-circuit cable television system serving the Association, if any. However, if broadcast notice is used in lieu of a notice posted physically on the Condominium Property, the notice and agenda must be broadcast at least four times every broadcast hour of each day that a posted notice is otherwise required. When broadcast notice is provided, the notice and agenda must be broadcast in a manner and for a sufficient continuous length of time so as to allow an average reader to observe the notice and read and comprehend the entire content of the notice and the agenda. Special meetings of the Directors may be called by the President, and must be called by the President or Secretary at the written request of one-third (1/3) of the Directors or where required by the Act. A Director or member of a Committee of the Board of Directors may submit in writing his/her agreement or disagreement with any action taken at a meeting that such individual did not attend. This agreement or disagreement may not be used for the purposes of creating a quorum.

4.7    Waiver of Notice. Any Director may waive notice of a meeting before or after the meeting and that waiver shall be deemed equivalent to the due receipt by said Director of notice. Attendance by any Director at a meeting shall constitute a waiver of notice of such meeting, and a waiver of any and all objections to the place of the meeting, to the time of the meeting or the manner in which it has been called or convened, except when a Director states at the beginning of the meeting, or promptly upon arrival at the meeting, any objection to the transaction of affairs because the meeting is not lawfully called or convened.

4.8    Quorum. A quorum at Directors' meetings shall consist of a majority of the entire Board of Directors. The acts approved by a majority of those present at a meeting at which a quorum is present shall constitute the acts of the Board of Directors, except when approval by a greater number of Directors is specifically required by the Declaration, the Articles or these By-Laws.

4.9    Adjourned Meetings. If, at any proposed meeting of the Board of Directors, there is less than a quorum present, the majority of those present may adjourn the meeting from time to time until a quorum is present, provided notice of such newly scheduled meeting is given as required hereunder. At any newly scheduled meeting, any business that might have been transacted at the meeting as originally called may be transacted as long as notice of such business to be conducted at the rescheduled meeting is given, if required (e.g., with respect to budget adoption).

4.10    Joinder in Meeting by Approval of Minutes. The joinder of a Director in the action of a meeting by signing and concurring in the minutes of that meeting shall constitute the approval of that Director of the business conducted at the meeting, but such joinder shall not be used as a vote for or against any particular action taken and shall not allow the applicable Director to be counted as being present for purposes of quorum.

4.11    Presiding Officer. The presiding officer at the Directors' meetings shall be the President (who may, however, designate any other Unit Owner to preside).

4.12    Order of Business. If a quorum has been attained, the order of business at Directors' meetings shall be:

    (a)    Proof of due notice of meeting;

    (b)    Reading and disposal of any unapproved minutes;

    (c)    Reports of officers and committees;

    (d)    Election of officers;

    (e)    Unfinished business;

    (f)    New business;

    (g)    Adjournment.

Such order may be waived in whole or in part by direction of the presiding officer.

4.13    Minutes of Meetings. The minutes of all meetings of the Board of Directors shall be kept in a book available for inspection by Unit Owners, or their authorized representatives, and Board members at any reasonable time. The Association shall retain these minutes for a period of not less than seven years.

4.14    Committees. The Board may by resolution also create Committees and appoint persons to such Committees and vest in such Committees such powers and responsibilities as the Board shall deem advisable.

4.15    Proviso. Notwithstanding anything to the contrary contained in this Section 4 or otherwise, the Board shall consist of three directors during the period that the Developer is entitled to appoint a majority of the Directors, as hereinafter provided. The Developer shall have the right to appoint all of the members of the Board of Directors until Unit Owners other than the Developer own fifteen (15%) percent or more of the Units in the Condominium. When Unit Owners other than the Developer own fifteen percent (15%) or more of the Units in the Condominium that will be operated ultimately by the Association, the Unit Owners other than the Developer shall be entitled to elect not less than one-third (1/3) of the members of the Board of Directors. Upon the election of such director(s), the Developer shall forward to the Division of Florida Land Sales, Condominiums and Mobile Homes the name and mailing address of the director(s) elected. Unit Owners other than the Developer are entitled to elect not less than a majority of the members of the Board of Directors: (a) three years after fifty (50%) percent of the Units that will be operated ultimately by the Association have been conveyed to purchasers; (b) three months after ninety (90%) percent of the Units that will be operated ultimately by the Association have been conveyed to purchasers; (c) when all of the Units that will be operated ultimately by the Association have been completed, some of them have been conveyed to purchasers, and none of the others are being offered for sale by the Developer in the ordinary course of business; (d) when some of the Units have been conveyed to purchasers, and none of the others are being constructed or offered for sale by the Developer in the ordinary course of business; or (e) seven (7) years after recordation of the Declaration, whichever occurs first. The Developer is entitled (but not obligated) to elect at least one (1) member of the Board of Directors as long as the Developer holds for sale in the ordinary course of business five percent (5%) of the Units that will be operated ultimately by the Association.

The Developer may transfer control of the Association to Unit Owners other than the Developer prior to such dates in its sole discretion by causing enough of its appointed Directors to resign, whereupon it shall be the affirmative obligation of Unit Owners other than the Developer to elect Directors and assume control of the Association. Provided at least sixty (60) days' notice of Developer's decision to cause its appointees to resign is given to Unit Owners, neither the Developer, nor such appointees, shall be liable in any manner in connection with such resignations even if the Unit Owners other than the Developer refuse or fail to assume control.

Within seventy-five (75) days after the Unit Owners other than the Developer are entitled to elect a member or members of the Board of Directors, or sooner if the Developer has elected to accelerate such event as aforesaid, the Association shall call, and give not less than sixty (60) days' notice of an election for the member or members of the Board of Directors. The notice may be given by any Unit Owner if the Association fails to do so.

At the time the Unit Owners other than the Developer elect a majority of the members of the Board of Directors of the Association, the Developer shall relinquish control of the Association and such Unit Owners shall accept control. At that time (except as to subparagraph (g), which may be ninety (90) days thereafter) Developer shall deliver to the Association, at Developer's expense, all property of the Unit Owners and of the Association held or controlled by the Developer, including, but not limited to, the following items, if applicable to the Condominium:

(a)    The original or a photocopy of the recorded Declaration of Condominium, and all amendments thereto. If a photocopy is provided, the Developer must certify by affidavit that it is a complete copy of the actual recorded Declaration.

(b)    A certified copy of the Articles of Incorporation of the Association.

(c)    A copy of the By-Laws of the Association.

(d)    The minute book, including all minutes, and other books and records of the Association.

(e)    Any rules and regulations which have been adopted.

(f)    Resignations of resigning officers and Board members who were appointed by the Developer.

1

(g) The financial records, including financial statements of the association, and source documents from the incorporation of the Association through the date of the turnover. The records shall be audited for the period from the incorporation of the Association or from the period covered by the last audit, if applicable, by an independent certified public accountant. All financial statements shall be prepared in accordance with generally accepted accounting principles and shall be audited in accordance with generally accepted auditing standards as prescribed by the Florida Board of Accountancy. The accountant performing the audit shall examine to the extent necessary supporting documents and records, including the cash disbursements and related paid invoices to determine if expenditures were for Association purposes, and billings, cash receipts and related records to determine that the Developer was charged and paid the proper amounts of Assessments.

(h) Association funds or the control thereof.

(i) All tangible personal property that is the property of the Association or is or was represented by the Developer to be part of the Common Elements or is ostensibly part of the Common Elements, and an inventory of such property.

(j) A copy of the plans and specifications utilized in the construction or remodeling of improvements and the supplying of equipment, and for the construction and installation of all mechanical components serving the Improvements and the Condominium Property, with a certificate, in affidavit form, of an officer of the Developer or an architect or engineer authorized to practice in Florida, that such plans and specifications represent, to the best of their knowledge and belief, the actual plans and specifications utilized in the construction and improvement of the Condominium Property and the construction and installation of the mechanical components serving the Improvements and the Condominium Property.

(k) A list of the names and addresses of all contractors, subcontractors and suppliers, of which Developer had knowledge at any time in the development of the Condominium, utilized in the construction or remodeling of the improvements and the landscaping of the Condominium and/or Association Property.

(l) Insurance policies.

(m) Copies of any Certificates of Occupancy which may have been issued for the Condominium Property.

(n) Any other permits issued by governmental bodies applicable to the Condominium Property in force or issued within one (1) year prior to the date the Unit Owners take control of the Association.

(o) All written warranties of contractors, subcontractors, suppliers and manufacturers, if any, that are still effective.

(p) A roster of Unit Owners and their addresses and telephone numbers, if known, as shown on the Developer's records.

(q) Leases of the Common Elements and other leases to which the Association is a party, if applicable.

(r) Employment contracts or service contracts in which the Association is one of the contracting parties, or service contracts in which the Association or Unit Owners have an obligation or responsibility, directly or indirectly, to pay some or all of the fee or charge of the person or persons performing the service.

(s) All other contracts to which the Association is a party.

5. Authority of the Board.

5.1 Powers and Duties. The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the Condominium and may take all acts, through the proper officers of the Association, in executing such powers, except such acts which by law, the Declaration, the Articles or these By-Laws may not be delegated to the Board of Directors by the Unit Owners. Such powers and duties of the Board of Directors shall include, without limitation (except as limited elsewhere herein), the following:

(a) Operating and maintaining all Common Elements and the Association Property.

(b)    Determining the expenses required for the operation of the Association and the Condominium.

(c)    Employing and dismissing the personnel necessary for the maintenance and operation of the Common Elements and the Association Property.

(d)    Adopting and amending rules and regulations concerning the details of the operation and use of the Condominium and Association Property, subject to a right of the Unit Owners to overrule the Board as provided in Section 14 hereof.

(e)    Maintaining bank accounts on behalf of the Association and designating the signatories required therefor.

(f)    Purchasing, leasing or otherwise acquiring title to, or an interest in, property in the name of the Association, or its designee, for the use and benefit of its members. The power to acquire personal property shall be exercised by the Board and the power to acquire real property shall be exercised as described herein and in the Declaration.

(g)    Purchasing, leasing or otherwise acquiring Units or other property, including, without limitation, Units at foreclosure or other judicial sales, all in the name of the Association, or its designee.

(h)    Selling, leasing, mortgaging or otherwise dealing with Units acquired, and subleasing Units leased, by the Association, or its designee.

(i)    Organizing corporations and appointing persons to act as designees of the Association in acquiring title to or leasing Units or other property.

(j)    Obtaining and reviewing insurance for the Condominium and Association Property.

(k)    Making repairs, additions and improvements to, or alterations of, Condominium Property and Association Property, and repairs to and restoration of Condominium and Association Property, in accordance with the provisions of the Declaration after damage or destruction by fire or other casualty, or as a result of condemnation or eminent domain proceedings or otherwise.

(l)    Enforcing obligations of the Unit Owners, allocating profits and expenses and taking such other actions as shall be deemed necessary and proper for the sound management of the Condominium.

(m)    Levying fines against appropriate Unit Owners for violations of the rules and regulations established by the Association to govern the conduct of such Unit Owners. No fine shall be levied except after giving reasonable notice and opportunity for a hearing to the affected Unit Owner and, if applicable, his tenant, licensee or invitee. The hearing must be held before a committee of other Unit Owners. If the committee does not agree with the fine, the fine may not be levied. No fine may exceed $100.00 per violation, however, a fine may be levied on the basis of each day of a continuing violation with a single notice and opportunity for hearing, provided however, that no such fine shall in the aggregate exceed $1,000.00. No fine shall become a lien upon a Unit.

(n)    Purchasing or leasing Units for use by resident superintendents and other similar persons or for the general use and enjoyment of the Unit Owners.

(o)    Borrowing money on behalf of the Association or the Condominium when required in connection with the operation, care, upkeep and maintenance of Common Elements (if the need for the funds is unanticipated) or the acquisition of real property, and granting mortgages on and/or security interests in Association owned property; provided, however, that the consent of the Owners of at least two-thirds (2/3rds) of the Units represented at a meeting at which a quorum has been attained in accordance with the provisions of these By-Laws shall be required for the borrowing of any sum which would cause the total outstanding indebtedness of the Association to exceed $250,000.00. If any sum borrowed by the Board of Directors on behalf of the Condominium pursuant to the authority contained in this subparagraph (o) is not repaid by the Association, a Unit Owner who pays to the creditor such portion thereof as his interest in his Common Elements bears to the interest of all the Unit Owners in the Common Elements shall be entitled to obtain from the creditor a release of any judgment or other lien which said creditor shall have filed or shall have the right to file against, or which will affect, such Owner's Unit.

(p)    Subject to the provisions of Section 5.2 below, contracting for the management and maintenance of the Condominium and Association Property and authorizing a

management agent (who may be an affiliate of the Developer) to assist the Association in carrying out its powers and duties by performing such functions as the submission of proposals, collection of Assessments, preparation of records, enforcement of rules and maintenance, repair, and replacement of the Common Elements and Association Property with such funds as shall be made available by the Association for such purposes. The Association and its officers shall, however, retain at all times the powers and duties granted by the Declaration, the Articles, these By-Laws and the Act, including, but not limited to, the making of Assessments, promulgation of rules and execution of contracts on behalf of the Association.

(q) At its discretion, but within the parameters of the Act, authorizing Unit Owners or other persons to use portions of the Common Elements or Association Property for private parties and gatherings and imposing reasonable charges for such private use.

(r) Executing all documents or consents, on behalf of all Unit Owners (and their mortgagees), required by all governmental and/or quasi-governmental agencies in connection with land use and development matters (including, without limitation, plats, waivers of plat, unities of title, covenants in lieu thereof, etc.), and in that regard, each Owner, by acceptance of the deed to such Owner's Unit, and each mortgagee of a Unit Owner by acceptance of a lien on said Unit, appoints and designates the President of the Association as such Owner's agent and attorney-in-fact to execute any and all such documents or consents.

(s) Exercising (i) all powers specifically set forth in the Declaration, the Articles, these By-Laws and in the Act, (ii) all powers incidental thereto, and (iii) all other powers of a Florida corporation not for profit.

5.2 Contracts. Any contract which is not to be fully performed within one (1) year from the making thereof, for the purchase, lease or renting of materials or equipment to be used by the Association in accomplishing its purposes, and all contracts for the provision of services, shall be in writing. Where a contract for purchase, lease or renting materials or equipment, or for the provision of services, requires payment by the Association on behalf of the Condominium in the aggregate exceeding $5,000.00, the Association shall obtain competitive bids for the materials, equipment or services. Nothing contained herein shall be construed to require the Association to accept the lowest bid. Notwithstanding the foregoing, contracts with employees of the Association and contracts for attorney, accountant, architect, community association manager, engineering and landscape architect services shall not be subject to the provisions hereof. Further, nothing contained herein is intended to limit the ability of the Association to obtain needed products and services in an emergency; nor shall the provisions hereof apply if the business entity with which the Association desires to contract is the only source of supply within the County.

6. Officers.

6.1 Executive Officers. The executive officers of the Association shall be a President, a Vice-President, a Treasurer and a Secretary (none of whom need be Directors), all of whom shall be elected by the Board of Directors and who may be peremptorily removed at any meeting by concurrence of a majority of all of the Directors. A person may hold more than one office, except that the President may not also be the Secretary. No person shall sign an instrument or perform an act in the capacity of more than one office. The Board of Directors from time to time shall elect such other officers and designate their powers and duties as the Board shall deem necessary or appropriate to manage the affairs of the Association. Officers, other than designees of the Developer, must be Unit Owners (or authorized representatives of corporate/partnership/trust Unit Owners).

6.2 President. The President shall be the chief executive officer of the Association. He shall have all of the powers and duties that are usually vested in the office of president of an association. The President shall also serve as the Voting Member on behalf of the Condominium Hotel Lot and as a Director of the Master Association.

6.3 Vice-President. The Vice-President shall exercise the powers and perform the duties of the President in the absence or disability of the President. He also shall assist the President and exercise such other powers and perform such other duties as are incident to the office of the vice president of an association and as may be required by the Directors or the President.

6.4 Secretary. The Secretary shall keep the minutes of all proceedings of the Directors and the members. The Secretary shall attend to the giving of all notices to the members and Directors and other notices required by law. The Secretary shall have custody of the seal of the Association and shall affix it to instruments requiring the seal when duly signed. The Secretary shall keep the records of the Association, except those of the Treasurer, and shall perform all other duties incident to the office of the secretary of an association and as may be required by the Directors or the President.

6.5     Treasurer. The Treasurer shall have custody of all property of the Association, including funds, securities and evidences of indebtedness. The Treasurer shall keep books of account for the Association in accordance with good accounting practices, which, together with substantiating papers, shall be made available to the Board of Directors for examination at reasonable times. The Treasurer shall submit a treasurer's report to the Board of Directors at reasonable intervals and shall perform all other duties incident to the office of treasurer and as may be required by the Directors or the President. All monies and other valuable effects shall be kept for the benefit of the Association in such depositories as may be designated by a majority of the Board of Directors.

6.6     Developer Appointees. No officer appointed by the Developer may be removed except as provided in Section 4.15 hereof and by law.

7.      Fiduciary Duty. The officers and directors of the Association, as well as any manager employed by the Association, have a fiduciary relationship to the Unit Owners. No officer, director or manager shall solicit, offer to accept, or accept any thing or service of value for which consideration has not been provided for his own benefit or that of his immediate family, from any person providing or proposing to provide goods or services to the Association. Any such officer, director or manager who knowingly so solicits, offers to accept or accepts any thing or service of value shall, in addition to all other rights and remedies of the Association and Unit Owners, be subject to a civil penalty in accordance with the Act. Notwithstanding the foregoing, this paragraph shall not prohibit an officer, director or manager from accepting services or items received in connection with trade fairs or education programs.

8.      Compensation. Neither Directors nor officers shall receive compensation for their services as such, but this provision shall not preclude the Board of Directors from employing a Director or officer as an employee of the Association, nor preclude contracting with a Director or officer for the management of the Condominium or for any other service to be supplied by such Director or officer. Directors and officers shall be compensated for all actual and proper out of pocket expenses relating to the proper discharge of their respective duties.

9.      Resignations. Any Director or officer may resign his post at any time by written resignation, delivered to the President or Secretary, which shall take effect upon its receipt unless a later date is specified in the resignation, in which event the resignation shall be effective from such date unless withdrawn. The acceptance of a resignation shall not be required to make it effective. The conveyance of all Units owned by any Director or officer (other than appointees of the Developer or officers who were not Unit Owners) shall constitute a written resignation of such Director or officer.

10.     Fiscal Management. The provisions for fiscal management of the Association set forth in the Declaration and Articles shall be supplemented by the following provisions:

10.1    Budget.

(a)     Adoption by Board; Items. The Board of Directors shall from time to time, and at least annually, prepare a budget for all Condominiums governed and operated by the Association (which shall detail all accounts and items of expense and contain at least all items set forth in Section 718.504(21) of the Act, if applicable), determine the amount of Assessments payable by the Unit Owners to meet the expenses of such Condominium(s) and allocate and assess such expenses among the Unit Owners in accordance with the provisions of the Declaration. In addition, if the Association maintains limited common elements with the cost to be shared only by those entitled to use the limited common elements, the budget or a schedule attached thereto shall show amounts budgeted therefor. In addition to annual operating expenses, the budget shall include reserve accounts for capital expenditures and deferred maintenance (to the extent required by law). These accounts shall include, but not be limited to, roof replacement, building painting and pavement resurfacing regardless of the amount of deferred maintenance expense or replacement cost, and for any other item for which the deferred maintenance expense or replacement cost exceeds $10,000.00. The amount of reserves shall be computed by means of a formula which is based upon the estimated remaining useful life and the estimated replacement cost of each reserve item. The Association may adjust replacement and reserve assessments annually to take into account any changes in estimates or extension of the useful life of a reserve item caused by deferred maintenance. Reserves shall not be required if the members of the Association have, by a majority vote at a duly called meeting of members, determined for a specific fiscal year to provide no reserves or reserves less adequate than required hereby. Prior to transfer of control of the Association to Unit Owners other than the Developer, the Developer may vote to waive reserves or reduce the funding of reserves for the first two (2) fiscal years of operation of the Association, beginning with the fiscal year in which the Declaration is recorded, after which time and until transfer of control of the Association to Unit Owners other than the Developer, reserves may only be waived or reduced upon the vote of a majority of all non-Developer voting interests voting in person or by limited proxy at a duly called meeting of the Association. Following transfer of control of the Association to Unit Owners other than the Developer, the Developer may vote its voting interest to waive or reduce the funding of reserves. If a meeting of Unit Owners has been called to determine to provide no reserves or reserves less adequate than required, and such result is not attained or a quorum is not attained, the reserves, as included in the budget, shall go into effect. Reserve funds and any interest accruing thereon shall remain in the reserve account or accounts, and shall be used only for authorized reserve expenditures, unless their use for any other

purposes is approved in advance by a majority vote at a duly called meeting of the Association. Prior to transfer of control of the Association to Unit Owners other than the Developer, the Association shall not vote to use reserves for purposes other than that for which they were intended without the approval of a majority of all non-Developer voting interests, voting in person or by limited proxy at a duly called meeting of the Association.

The adoption of a budget for the Condominium shall comply with the requirements hereinafter set forth:

(i)  Notice of Meeting. A copy of the proposed budget of Common Expenses shall be hand delivered, mailed or electronically transmitted to each Unit Owner (at the address last furnished to the Association) not less than fourteen (14) days prior to the meeting of the Board of Directors at which the budget will be considered, together with a notice of that meeting indicating the time and place of such meeting. An officer or manager of the Association, or other person providing notice of such meeting, shall execute an affidavit evidencing compliance with such notice requirement and such affidavit shall be filed among the official records of the Association.

(ii)  Special Membership Meeting. If the Board of Directors adopts in any fiscal year an annual budget which requires assessments against Unit Owners which exceed one hundred fifteen percent (115%) of such Assessments for the preceding fiscal year, the Board of Directors shall conduct a special meeting of the Unit Owners to consider a substitute budget if the Board of Directors receives, within twenty-one (21) days following the adoption of the annual budget, a written request for a special meeting from at least ten percent (10%) of all voting interests. The special meeting shall be conducted within sixty (60) days following the adoption of the annual budget. At least fourteen (14) days prior to such special meeting, the Board of Directors shall hand deliver to each Unit Owner, or mail to each Unit Owner at the address last furnished to the Association, a notice of the meeting. An officer or manager of the Association, or other person providing notice of such meeting, shall execute an affidavit evidencing compliance with this notice requirement and such affidavit shall be filed among the official records of the Association. Unit Owners may consider and adopt a substitute budget at the special meeting. A substitute budget is adopted if approved by a majority of all voting interests. If there is not a quorum at the special meeting or a substitute budget is not adopted, the annual budget previously adopted by the Board of Directors shall take effect as scheduled.

(iii)  Determination of Budget Amount. Any determination of whether assessments exceed one hundred fifteen percent (115%) of assessments for the preceding fiscal year shall exclude any authorized provision for reasonable reserves for repair or replacement of the Condominium Property, anticipated expenses of the Association which the Board of Directors does not expect to be incurred on a regular or annual basis, or assessments for betterments to the Condominium Property.

(iv)  Proviso. As long as the Developer is in control of the Board of Directors of the Association, the Board shall not impose Assessments for a year greater than one hundred fifteen percent (115%) of the prior fiscal year's Assessments, as herein defined, without the approval of a majority of all voting interests.

(b)  Adoption by Membership. In the event that the Board of Directors shall be unable to adopt a budget for a fiscal year in accordance with the requirements of Subsection 10.1(a) above, the Board of Directors may call a special meeting of Unit Owners for the purpose of considering and adopting such budget, which meeting shall be called and held in the manner provided for such special meetings in said subsection, or propose a budget in writing to the members, and if such budget is adopted by the members, upon ratification by a majority of the Board of Directors, it shall become the budget for such year.

10.2  Assessments. Assessments against Unit Owners for their share of the items of the budget shall be made for the applicable fiscal year annually at least twenty (20) days preceding the year for which the Assessments are made. Such Assessments shall be due in equal installments, payable in advance on the first day of each month (or each quarter at the election of the Board) of the year for which the Assessments are made. If annual Assessments are not made as required, Assessments shall be presumed to have been made in the amount of the last prior

Assessments, and monthly (or quarterly) installments on such Assessments shall be due upon each installment payment date until changed by amended Assessments. In the event the annual Assessments prove to be insufficient, the budget and Assessments may be amended at any time by the Board of Directors, subject to the provisions of Section 10.1 hereof, if applicable. Unpaid Assessments for the remaining portion of the fiscal year for which amended Assessments are made shall be payable in as many equal installments as there are full months (or quarters) of the fiscal year left as of the date of such amended Assessments, each such monthly (or quarterly) installment to be paid on the first day of the month (or quarter), commencing the first day of the next ensuing month (or quarter). If only a partial month (or quarter) remains, the amended Assessments shall be paid with the next regular installment in the following year, unless otherwise directed by the Board in its resolution.

10.3    Special Assessments and Assessments for Capital Improvements. Special Assessments and Capital Improvement Assessments (as defined in the Declaration) shall be levied as provided in the Declaration and shall be paid in such manner as the Board of Directors of the Association may require in the notice of such Assessments. The funds collected pursuant to a Special Assessment shall be used only for the specific purpose or purposes set forth in the notice of adoption of same. However, upon completion of such specific purpose or purposes, any excess funds will be considered Common Surplus, and may, at the discretion of the Board, either be returned to the Unit Owners or applied as a credit towards future assessments.

10.4    Depository. The depository of the Association shall be such bank or banks in the State of Florida, which bank or banks must be insured by the FDIC, as shall be designated from time to time by the Directors and in which the monies of the Association shall be deposited. Withdrawal of monies from those accounts shall be made only by checks signed by such person or persons as are authorized by the Directors. All sums collected by the Association from Assessments or otherwise may be commingled in a single fund or divided into more than one fund, as determined by a majority of the Board of Directors. In addition, a separate reserve account should be established for the Association in such a depository for monies specifically designated as reserves for capital expenditures and/or deferred maintenance. Reserve and operating funds of the Association shall not be commingled unless combined for investment purposes, provided that the funds so commingled shall be accounted for separately and the combined account balance of such commingled funds may not, at any time, be less than the amount identified as reserve funds in the combined account.

10.5    Acceleration of Installments Upon Default. If a Unit Owner shall be in default in the payment of an installment upon his Assessments, the Board of Directors or its agent may accelerate the balance of the current budget years' Assessments upon thirty (30) days' prior written notice to the Unit Owner and the filing of a claim of lien, and the then unpaid balance of the current budget years' Assessments shall be due upon the date stated in the notice, but not less than five (5) days after delivery of the notice to the Unit Owner, or not less than ten (10) days after the mailing of such notice to him by certified mail, whichever shall first occur.

10.6    Fidelity Insurance or Fidelity Bonds. The Association shall obtain and maintain adequate insurance or fidelity bonding of all persons who control or disburse Association funds, which shall include, without limitation, those individuals authorized to sign Association checks and the president, secretary and treasurer of the Association. The insurance policy or fidelity bond shall be in such amount as shall be determined by a majority of the Board, but must be sufficient to cover the maximum funds that will be in the custody of the Association or its management agent at any one time. The premiums on such bonds and/or insurance shall be paid by the Association as a Common Expense

10.7    Accounting Records and Reports. The Association shall maintain accounting records in the State, according to accounting practices normally used by similar associations. The records shall be open to inspection by Unit Owners or their authorized representatives at reasonable times and written summaries of them shall be supplied at least annually. The records shall include, but not be limited to, (a) a record of all receipts and expenditures, and (b) an account for each Unit designating the name and current mailing address of the Unit Owner, the amount of Assessments, the dates and amounts in which the Assessments come due, the amount paid upon the account and the dates so paid, and the balance due. Written summaries of the records described in clause (a) above, in the form and manner specified below, shall be supplied to each Unit Owner annually.

Within ninety (90) days following the end of the fiscal year, the Association shall prepare and complete, or contract for the preparation and completion of a financial report for the preceding fiscal year (the "Financial Report"). Within twenty-one (21) days after the final Financial Report is completed by the Association, or received from a third party, but not later than one hundred twenty (120) days following the end of the fiscal year, the Board shall mail, or furnish by personal delivery, a copy of the Financial Report to each Unit Owner, or a notice that a copy of the

Financial Report will be mailed or hand delivered to the Unit Owner, without charge, upon receipt of a written request from the Unit Owner.

The Financial Report shall be prepared in accordance with the rules adopted by the Division. The type of Financial Report to be prepared shall, unless modified in the manner set forth below, be based upon the Association's total annual revenues, as follows:

(a)    REPORT OF CASH RECEIPTS AND EXPENDITURES – if the Association's revenues are less than $100,000.00 or if the Association operates less than fifty (50) Units (regardless of revenue) [or, if determined by the Board, the Association may prepare any of the reports described in subsections (b), (c) or (d) below in lieu of the report described in this section (a)].

(b)    COMPILED FINANCIAL STATEMENTS – if the Association's revenues are equal to or greater than $100,000.00, but less than $200,000.00 [or, if determined by the Board, the Association may prepare any of the reports described in subsections (c) or (d) below in lieu of the report described in this section (b)].

(c)    REVIEWED FINANCIAL STATEMENTS – if the Association's revenues are equal to or greater than $200,000.00, but less than $400,000.00 [or, if determined by the Board, the Association may prepare the report described in subsection (d) below in lieu of the report described in this section (c)].

(d)    AUDITED FINANCIAL STATEMENTS – if the Association's revenues are equal to or exceed $400,000.00.

A report of cash receipts and expenditures must disclose the amount of receipts by accounts and receipt classifications and the amount of expenses by accounts and expense classifications, including, but not limited to, the following, as applicable: costs for security, professional and management fees and expenses, taxes, costs for recreation facilities, expenses for refuse collection and utility services, expenses for lawn care, costs for building maintenance and repair, insurance costs, administration and salary expenses, and reserves accumulated and expended for capital expenditures, deferred maintenance, and any other category for which the association maintains reserves.

If approved by a majority of the voting interests present at a properly called meeting of the Association, the Association may prepare or cause to be prepared: (i) a report of cash receipts and expenditures in lieu of a compiled, reviewed, or audited financial statement; (ii) a report of cash receipts and expenditures or a compiled financial statement in lieu of a reviewed or audited financial statement; or (iii) a report of cash receipts and expenditures, a compiled financial statement or a reviewed financial statement in lieu of an audited financial statement. Such meeting and approval must occur prior to the end of the fiscal year and is effective only for the fiscal year in which the vote is taken. Prior to the time that control of the Association has been turned over to Unit Owners other than the Developer, all Unit Owners, including the Developer, may vote on issues related to the preparation of financial reports for the first two (2) fiscal years of the Association's operation. Thereafter, until control of the Association has been turned over to Unit Owners other than the Developer, all Unit Owners except for the Developer may vote on such issues.

10.8    Application of Payment. All payments made by a Unit Owner shall be applied as provided in these By-Laws and in the Declaration or as otherwise determined by the Board.

10.9    Notice of Meetings. Notice of any meeting where Assessments against Unit Owners are to be considered for any reason shall specifically contain a statement that Assessments will be considered and the nature of any such Assessments.

11.    Roster of Unit Owners. Each Unit Owner shall file with the Association a copy of the deed or other document showing his ownership. The Association shall maintain such information. The Association may rely upon the accuracy of such information for all purposes until notified in writing of changes therein as provided above. Only Unit Owners of record on the date notice of any meeting requiring their vote is given shall be entitled to notice of and to vote at such meeting, unless prior to such meeting other Owners shall produce adequate evidence, as provided above, of their interest and shall waive in writing notice of such meeting.

12.    Parliamentary Rules. Except when specifically or impliedly waived by the chairman of a meeting (either of members or directors), Robert's Rules of Order (latest edition) shall govern the conduct of the Association meetings when not in conflict with the Act, the Declaration, the Articles or these By-Laws; provided, however, that a strict or technical reading of said Robert's Rules shall not be made so as to frustrate the will of the persons properly participating in said meeting.

13. <u>Amendments</u>. Except as may be provided in the Declaration to the contrary, these By-Laws may be amended in the following manner:

13.1 <u>Notice</u>. Notice of the subject matter of a proposed amendment shall be included in the notice of a meeting at which a proposed amendment is to be considered.

13.2 <u>Adoption</u>. A resolution for the adoption of a proposed amendment may be proposed either by a majority of the Board of Directors or by not less than one-third (1/3) of the members of the Association. Directors and members not present in person or by proxy at the meeting considering the amendment may express their approval in writing, provided that such approval is delivered to the Secretary at or prior to the meeting. The approval must be:

(a) by not less than a majority of the votes of all members of the Association represented at a meeting at which a quorum has been attained and by not less than 66-2/3% of the entire Board of Directors; or

(b) after control of the Association has been turned over to Unit Owners other than the Developer, by not less than 80% of the votes of the members of the Association represented at a meeting at which a quorum has been attained.

13.3 <u>Proviso</u>. No amendment may be adopted which would eliminate, modify, prejudice, abridge or otherwise adversely affect any rights, benefits, privileges or priorities granted or reserved to the Developer or mortgagees of Units without the consent of said Developer and mortgagees in each instance. No amendment shall be made that is in conflict with the Articles or Declaration. No amendment to this Section shall be valid.

13.4 <u>Execution and Recording</u>. A copy of each amendment shall be attached to a certificate certifying that the amendment was duly adopted as an amendment of these By-Laws, which certificate shall be executed by the President or Vice-President and attested by the Secretary or Assistant Secretary of the Association with the formalities of a deed, or by the Developer alone if the amendment has been adopted consistent with the provisions of the Declaration allowing such action by the Developer. The amendment shall be effective when the certificate and a copy of the amendment is recorded in the Public Records of the County with an identification on the first page of the amendment of the Official Records Book and Page of said Public Records where the Declaration is recorded.

14. <u>Rules and Regulations</u>. The Board of Directors may, from time to time, create rules and regulations concerning the use of portions of the Condominium and Association Property, and thereafter modify, amend or add to such rules and regulations, except that subsequent to the date control of the Board is turned over by the Developer to Unit Owners other than the Developer, Owners of a majority of the Units may overrule the Board with respect to any such modifications, amendments or additions. Copies of any such rules and regulations shall be furnished by the Board of Directors to each affected Unit Owner not less than thirty (30) days prior to the effective date thereof. At no time may any rule or regulation be adopted which would prejudice the rights reserved to the Developer.

15. <u>Official Records</u>. From the inception of the Association, the Association shall maintain for the condominium, a copy of each of the following, where applicable, which shall constitute the official records of the Association:

(a) The plans, permits, warranties, and other items provided by the Developer pursuant to Section 718.301(4) of the Act;

(b) A photocopy of the recorded Declaration of Condominium and all amendments thereto;

(c) A photocopy of the recorded By-Laws of the Association and all amendments thereto;

(d) A certified copy of the Articles of Incorporation of the Association or other documents creating the Association and all amendments thereto;

(e) A copy of the current Rules and Regulations of the Association;

(f) A book or books containing the minutes of all meetings of the Association, of the Board of Directors, and of Unit Owners, which minutes shall be retained for a period of not less than 7 years.

(g) A current roster of all Unit Owners, their mailing addresses, Unit identifications, voting certifications, and if known, telephone numbers. The Association shall also maintain the electronic mailing addresses and the numbers designated by Unit Owners for receiving notices sent by electronic transmission of those Unit Owners consenting to receive notice by electronic transmission. The electronic mailing addresses and numbers provided by Unit Owners to receive

notice by electronic transmission shall be removed from Association records when consent to receive notice by electronic transmission is revoked. However, the Association shall not be liable for an erroneous disclosure of the electronic mail address or the number for receiving electronic transmission of notices;

(h) All current insurance policies of the Association and of all Condominiums operated by the Association;

(i) A current copy of any management agreement, lease, or other contract to which the Association is a party or under which the Association or the Unit Owners have an obligation or responsibility;

(j) Bills of Sale or transfer for all property owned by the Association;

(k) Accounting records for the Association and the accounting records for the Condominium. All accounting records shall be maintained for a period of not less than 7 years. The accounting records shall include, but not be limited to:

    (i) Accurate, itemized, and detailed records for all receipts and expenditures.

    (ii) A current account and a monthly, bimonthly, or quarterly statement of the account for each Unit designating the name of the Unit Owner, the due date and amount of each Assessment, the amount paid upon the account, and the balance due.

    (iii) All audits, reviews, accounting statements, and financial reports of the Association or Condominium.

    (iv) All contracts for work to be performed. Bids for work to be performed shall also be considered official records and shall be maintained for a period of 1 year;

(l) Ballots, sign-in sheets, voting proxies and all other papers relating to elections which shall be maintained for a period of 1 year from the date of the meeting to which the document relates.

(m) All rental records where the Association is acting as agent for the rental of Units.

(n) A copy of the current Question and Answer Sheet, in the form promulgated by the Division, which shall be updated annually.

(o) All other records of the Association not specifically listed above which are related to the operation of the Association.

The official records of the Association shall be maintained in the County in which the Condominium is located, or if in another county, then within twenty five (25) miles of the Condominium.

The official records of the Association shall be open to inspection by any Association member or the authorized representative of such member and shall be made available to a Unit Owner within five (5) working days after receipt of a written request by the board or its designees. The right to inspect the records includes the right to make or obtain copies, at a reasonable expense, if any, of the Association member. The Association may adopt reasonable rules regarding the time, location, notice and manner of record inspections and copying. The failure of an Association to provide official records to a Unit Owner or his authorized representative within ten (10) working days after receipt of a written request therefor shall create a rebuttable presumption that the Association willfully failed to comply with this paragraph. Failure to permit inspection of the Association records as provided herein entitles any person prevailing in an enforcement action to recover reasonable attorneys' fees from the person in control of the records who, directly or indirectly, knowingly denies access to the records for inspection. The Association shall maintain on the Condominium Property an adequate number of copies of the Declaration, Articles, By-Laws and rules, and all amendments to the foregoing, as well as the Question and Answer Sheet and year-end financial information required by the Act, to ensure their availability to Unit Owners and prospective purchasers. The Association may charge its actual costs for preparing and furnishing these documents to those persons requesting same. Notwithstanding the provisions of this Section 15, the following records shall not be accessible to Unit Owners:

(i) Any record protected by the lawyer-client privilege as described in Section 90.502, Florida Statutes, and any record protected by the work-product privilege including any record prepared by an Association attorney or prepared at the attorney's express direction, which reflects a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the Association, and which was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or which was prepared in anticipation or imminent civil or criminal litigation or imminent adversarial administrative proceedings until the conclusion of the litigation or adversarial administrative proceedings.

    (ii)    Information obtained by an Association in connection with the approval of the lease, sale or other transfer of a Unit.

    (iii)    Medical records of Unit Owners.

16.    <u>Certificate of Compliance</u>.  A certificate of compliance from a licensed electrical contractor or electrician may be accepted by the Association's Board as evidence of compliance of the Units to the applicable condominium fire and life safety code.

17.    <u>Provision of Information to Purchasers or Lienholders</u>.  The Association or its authorized agent shall not be required to provide a prospective purchaser or lienholder with information about the Condominium or the Association other than information or documents required by the Act to be made available or disclosed. The Association or its authorized agent shall be entitled to charge a reasonable fee to the prospective purchaser, lienholder, or the current Unit Owner for its time in providing good faith responses to requests for information by or on behalf of a prospective purchaser or lienholder, other than that required by law, provided that such fee shall not exceed $150.00 plus the reasonable cost of photocopying and any attorney's fees incurred by the Association in connection with the Association's response.

18.    <u>Electronic Transmission</u>.  For purposes hereof, "electronic transmission" means any form of communication, not directly involving the physical transmission or transfer of paper, which creates a record that may be retained, retrieved, and reviewed by a recipient thereof and which may be directly reproduced in a comprehensible and legible paper form by such recipient through an automated process. Examples of electronic transmission include, but are not limited to, telegrams, facsimile transmissions of images, and text that is sent via electronic mail between computers.  Notwithstanding the provision for electronic transmission of notices by the Association, same may be only be sent to Unit Owners that consent to receipt of Association notices by electronic transmission (and only for long as such consent remains in effect). Further, in no event may electronic transmission be used as a method of giving notice of a meeting called in whole or in part regarding the recall of a Director.

19.    <u>Construction</u>.  Wherever the context so permits, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be deemed to include all genders.

20.    <u>Captions</u>.  The captions herein are inserted only as a matter of convenience and for reference, and in no way define or limit the scope of these By-Laws or the intent of any provision hereof.

The foregoing was adopted as the By-Laws of **SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.**, a corporation not for profit under the laws of the State of Florida, as of the _25_ day of September, 2007.

Approved:

Eric Sheppard, President

Mary Burgin, Secretary



September 26, 2007

FLORIDA DEPARTMENT OF STATE
Division of Corporations
SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.
400 ARTHUR GODFREY BLVD SUITE 200
MIAMI BEACH, FL  33140

The Articles of Incorporation for SOUTH CARILLON BEACH CONDOMINIUM
ASSOCIATION, INC. were filed on September 25, 2007, and assigned document
number N07000009498.  Please refer to this number whenever corresponding
with this office.

This document was electronically received and filed under FAX audit number
H07000239205.

A corporation annual report/uniform business report will be due this
office between January 1 and May 1 of the year following the calendar year
of the file/effective date.  A Federal Employer Identification (FEI)
number will be required before this report can be filed.  Please apply NOW
with the Internal Revenue Service by calling 1-800-829-3676 and requesting
form SS-4 or by going to their website at www.irs.ustreas.gov.

Please be aware if the corporate address changes, it is the responsibility
of the corporation to notify this office.

Should you have any questions regarding corporations, please contact this
office at the address given below.

Sincerely,
Suzanne Hawkes
Document Specialist
New Filings Section
Division of Corporations          Letter Number: 107A00056579

## ARTICLES OF INCORPORATION
## FOR
## SOUTH CARILLON BEACH
## CONDOMINIUM ASSOCIATION, INC.

The undersigned incorporator, for the purpose of forming a corporation not for profit pursuant to the laws of the State of Florida, hereby adopts the following Articles of Incorporation:

### ARTICLE 1
### NAME

The name of the corporation shall be SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC. For convenience, the corporation shall be referred to in this instrument as the "Association", these Articles of Incorporation as the "Articles", and the By-Laws of the Association as the "By-Laws".

### ARTICLE 2
### OFFICE

The principal office and mailing address of the Association shall be 400 Arthur Godfrey Boulevard Suite 200 Miami Beach, Florida 33140, or at such other place as may be subsequently designated by the Board of Directors. All books and records of the Association shall be kept at its principal office or at such other place as may be permitted by the Act.

### ARTICLE 3
### PURPOSE

The purpose for which the Association is organized is to provide an entity pursuant to the Florida Condominium Act as it exists on the date hereof (the "Act") for the operation of that certain condominium located in Miami-Dade County, Florida, and known as SOUTH CARILLON BEACH, A CONDOMINIUM (the "Condominium").

## ARTICLE 4
## DEFINITIONS

The terms used in these Articles shall have the same definitions and meanings as those set forth in the Declaration of the Condominium to be recorded in the Public Records of Miami-Dade County, Florida, unless herein provided to the contrary, or unless the context otherwise requires.

## ARTICLE 5
## POWERS

The powers of the Association shall include and be governed by the following:

5.1    General.    The Association shall have all of the common-law and statutory powers of a corporation not for profit under the Laws of Florida, except as expressly limited or restricted by the terms of these Articles, the Declaration, the By-Laws or the Act.

5.2    Enumeration.    The Association shall have all of the powers and duties set forth in the Act, except as limited by these Articles, the By-Laws and the Declaration (to the extent that they are not in conflict with the Act), and all of the powers and duties reasonably necessary to operate the Condominium pursuant to the Declaration and as more particularly described in the By-Laws, as they may be amended from time to time, including, but not limited to, the following:

(a)    To make and collect Assessments and other charges against members as Unit Owners (whether or not such sums are due and payable to the Association), and to use the proceeds thereof in the exercise of its powers and duties.

(b)    To buy, accept, own, operate, lease, sell, trade and mortgage both real and personal property in accordance with the provisions of the Declaration.

(c)    To maintain, repair, replace, reconstruct, add to and operate the Common Elements and/or Association Property, and other property acquired or leased by the Association.

(d)    To purchase insurance upon the Common Elements and Association Property and insurance for the protection of the Association, its officers, directors and Unit Owners.

Articles
-2-

(e) To make and amend reasonable rules and regulations for the maintenance, conservation and use of the Common Elements and Association Property and for the health, comfort, safety and welfare of the Unit Owners.

(f) To approve or disapprove the leasing, transfer, ownership and possession of Units as may be provided by the Declaration.

(g) To enforce by legal means the provisions of the Act, the Declaration, these Articles, the By-Laws, and the rules and regulations for the use of the Common Elements and Association Property.

(h) To contract for the management and maintenance of the Common Elements and/or Association Property and/or to authorize a management agent (which may be an affiliate of the Developer) to assist the Association in carrying out any and all of the Association's powers and duties. The Association and its officers shall, however, retain at all times the powers and duties granted by the Condominium Act, including, but not limited to, the making of Assessments, promulgation of rules and execution of contracts on behalf of the Association.

(i) To employ personnel to perform the services required for the proper operation of the Common Elements and the Association Property.

(j) To execute all documents or consents, on behalf of all Unit Owners (and their mortgagees), required by all governmental and/or quasi-governmental agencies in connection with land use and development matters (including, without limitation, plats, waivers of plat, unities of title, covenants in lieu thereof, etc.), and in that regard, each Unit Owner, by acceptance of the deed to such Owner's Unit, and each mortgagee of a Unit Owner by acceptance of a lien on said Unit, appoints and designates the President of the Association as such Unit Owner's and mortgagee's agent and attorney-in-fact to execute, any and all such documents or consents.

5.3 Association Property. All funds and the title to all properties acquired by the Association and their proceeds shall be held for the benefit and

use of the members in accordance with the provisions of the Declaration, these Articles and the By-Laws.

5.4 Distribution of Income; Dissolution. The Association shall not pay a dividend to its members and shall make no distribution of income to its members, directors or officers, and upon dissolution, all assets of the Association shall be transferred only to another non-profit corporation or a public agency or as otherwise authorized by the Florida Not For Profit Corporation Act (Chapter 617, Florida Statutes).

5.5 Limitation. The powers of the Association shall be subject to and shall be exercised in accordance with the provisions hereof and of the Declaration, the By-Laws and the Act, provided that in the event of conflict, the provisions of the Act shall control over those of the Declaration and By-Laws.

## ARTICLE 6
## MEMBERS

6.1 Membership. The members of the Association shall consist of all of the record title owners of Units in the Condominium from time to time, and after termination of the Condominium, shall also consist of those who were members at the time of such termination, and their successors and assigns.

6.2 Assignment. The share of a member in the funds and assets of the Association cannot be assigned, hypothecated or transferred in any manner except as an appurtenance to the Unit for which that share is held.

6.3 Voting. On all matters upon which the membership shall be entitled to vote, there shall be only one vote for each Residential Unit and thirty (30) votes for the Shared Components Unit. All votes shall be exercised or cast in the manner provided by the Declaration and By-Laws. Any person or entity owning more than one Unit shall be entitled to cast the aggregate number of votes attributable to all Units owned.

6.4 Meetings. The By-Laws shall provide for an annual meeting of members, and may make provision for regular and special meetings of members other than the annual meeting.

## ARTICLE 7
## TERM OF EXISTENCE

The Association shall have perpetual existence.

## ARTICLE 8
## INCORPORATOR

The name and address of the Incorporator of this Corporation is:

NAME                        ADDRESS

Eric Sheppard              400 Arthur Godfrey Boulevard
                           Suite 200
                           Miami Beach, Florida 33140

## ARTICLE 9
## OFFICERS

The affairs of the Association shall be administered by the officers holding the offices designated in the By-Laws. The officers shall be elected by the Board of Directors of the Association at its first meeting following the annual meeting of the members of the Association and shall serve at the pleasure of the Board of Directors. The By-Laws may provide for the removal from office of officers, for filling vacancies and for the duties and qualifications of the officers. The names and addresses of the officers who shall serve until their successors are designated by the Board of Directors are as follows:

President:

Eric Sheppard              400 Arthur Godfrey Boulevard
                           Suite 200
                           Miami Beach, Florida 33140 .

Vice President:

Phil Wolman                400 Arthur Godfrey Boulevard
                           Suite 200
                           Miami Beach, Florida 33140

Secretary/Treasurer:

Mark Burgin

400 Arthur Godfrey Boulevard
Suite 200
Miami Beach, Florida 33140

## ARTICLE 10
## DIRECTORS

10.1 Number and Qualification. The property, business and affairs of the Association shall be managed by a board consisting of the number of directors determined in the manner provided by the By-Laws, but which shall consist of not less than three (3) directors. Directors need not be members of the Association.

10.2 Duties and Powers. All of the duties and powers of the Association existing under the Act, the Declaration, these Articles and the By-Laws shall be exercised exclusively by the Board of Directors, its agents, contractors or employees, subject only to approval by Unit Owners when such approval is specifically required.

10.3 Election; Removal. Directors of the Association shall be elected at the annual meeting of the members in the manner determined by and subject to the qualifications set forth in the By-Laws. Directors may be removed and vacancies on the Board of Directors shall be filled in the manner provided by the By-Laws.

10.4 Term of Developer's Directors. The Developer of the Condominium shall appoint the members of the first Board of Directors and their replacements who shall hold office for the periods described in the By-Laws.

10.5 First Directors. The names and addresses of the members of the first Board of Directors who shall hold office until their successors are elected and have taken office, as provided in the By-Laws, are as follows:

| NAME | ADDRESS |
|---|---|
| Eric Sheppard | 400 Arthur Godfrey Boulevard Suite 200 Miami Beach, Florida 33140 |

Phil Wolman                          400 Arthur Godfrey Boulevard
                                     Suite 200
                                     Miami Beach, Florida 33140

Mark Burgin                          400 Arthur Godfrey Boulevard
                                     Suite 200
                                     Miami Beach, Florida 33140

10.6   Standards.   A Director shall discharge his duties as a director,
including any duties as a member of a Committee: in good faith; with
the care an ordinary prudent person in a like position would exercise
under similar circumstances; and in a manner reasonably believed to
be in the best interests of the Association.  Unless a Director has
knowledge concerning a matter in question that makes reliance
unwarranted, a Director, in discharging his duties, may rely on
information, opinions, reports or statements, including financial
statements and other data, if prepared or presented by: one or more
officers or employees of the Association whom the Director
reasonably believes to be reasonable and competent in the manners
presented; legal counsel, public accountants or other persons as to
matters the Director reasonably believes are within the persons'
professional or expert competence; or a Committee of which the
Director is not a member if the Director reasonably believes the
Committee merits confidence.  A Director is not liable for any action
taken as a director, or any failure to take action, if he performed the
duties of his office in compliance with the foregoing standards.

### ARTICLE 11
### INDEMNIFICATION

11.1   Indemnitees.  The Association shall indemnify any person who was or
is a party to any proceeding (other than an action by, or in the right of,
the Association) by reason of the fact that he is or was a director,
officer, employee or agent (each, an "Indemnitee") of the Association,
against liability incurred in connection with such proceeding,
including any appeal thereof, if he acted in good faith and in a manner
he reasonably believed to be in, or not opposed to, the best interests of
the Association and, with respect to any criminal action or proceeding,
had no reasonable cause to believe his conduct was unlawful.  The
termination of any proceeding by judgment, order, settlement, or
conviction or upon a plea of nolo contendere or its equivalent shall

not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in, or not opposed to, the best interests of the Association or, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

11.2 Indemnification. The Association shall indemnify any person, who was or is a party to any proceeding by or in the right of the Association to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee, or agent of the Association against expenses and amounts paid in settlement not exceeding, in the judgment of the board of directors, the estimated expense of litigating the proceeding to conclusion, actually and reasonably incurred in connection with the defense or settlement of such proceeding, including any appeal thereof. Such indemnification shall be authorized if such person acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the Association, except that no indemnification shall be made under this subsection in respect of any claim, issue, or matter as to which such person shall have been adjudged to be liable unless, and only to the extent that, the court in which such proceeding was brought, or any other court of competent jurisdiction, shall determine upon application that, despite the adjudication of liability but in view of all circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

11.3 Indemnification for Expenses. To the extent that a director, officer, employee, or agent of the Association has been successful on the merits or otherwise in defense of any proceeding referred to in subsection 11.1 or 11.2, or in defense of any claim, issue, or matter therein, he shall be indemnified against expenses actually and reasonably incurred by him in connection therewith.

11.4 Determination of Applicability. Any indemnification under subsection 11.1 or subsection 11.2, unless pursuant to a determination by a court, shall be made by the Association only as authorized in the specific case upon a determination that indemnification of the director, officer, employee, or agent is proper under the circumstances because he has met the applicable standard of conduct set forth in subsection 11.1 or subsection 11.2. Such determination shall be made:

(a)    By the board of directors by a majority vote of a quorum consisting of directors who were not parties to such proceeding;

(b)    If such a quorum is not obtainable or, even if obtainable, by majority vote of a Committee duly designated by the Board of Directors (in which directors who are parties may participate) consisting solely of two or more Directors not at the time parties to the proceeding;

(c)    By independent legal counsel:

1.    selected by the Board of Directors prescribed in paragraph 11.4(a) or the committee prescribed in paragraph 11.4(b); or

2.    if a quorum of the Directors cannot be obtained for paragraph 11.4(a) and the Committee cannot be designated under paragraph 11.4(b), selected by majority vote of the full Board of Directors (in which Directors who are parties may participate); or

(d)    By a majority of the voting interests of the members of the Association who were not parties to such proceeding.

11.5   Determination Regarding Expenses. Evaluation of the reasonableness of expenses and authorization of indemnification shall be made in the same manner as the determination that indemnification is permissible. However, if the determination of permissibility is made by independent legal counsel, persons specified by paragraph 11.4(c) shall evaluate the reasonableness of expenses and may authorize indemnification.

11.6   Advancing Expenses. Expenses incurred by an officer or director in defending a civil or criminal proceeding may be paid by the Association in advance of the final disposition of such proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if he is ultimately found not to be entitled to indemnification by the Association pursuant to this section. Expenses incurred by other employees and agents may be paid in advance upon such terms or conditions that the Board of Directors deems appropriate.

11.7 Exclusivity; Exclusions. The indemnification and advancement of expenses provided pursuant to this section are not exclusive, and the Association may make any other or further indemnification or advancement of expenses of any of its directors, officers, employees, or agents, under any bylaw, agreement, vote of shareholders or disinterested directors, or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office. However, indemnification or advancement of expenses shall not be made to or on behalf of any director, officer, employee, or agent if a judgment or other final adjudication establishes that his actions, or omissions to act, were material to the cause of action so adjudicated and constitute:

    (a)   A violation of the criminal law, unless the director, officer, employee, or agent had reasonable cause to believe his conduct was lawful or had no reasonable cause to believe his conduct was unlawful;

    (b)   A transaction from which the director, officer, employee, or agent derived an improper personal benefit; or

    (c)   Willful misconduct or a conscious disregard for the best interests of the Association in a proceeding by or in the right of the Association to procure a judgment in its favor or in a proceeding by or in the right of the members of the Association.

11.8 Continuing Effect. Indemnification and advancement of expenses as provided in this section shall continue as, unless otherwise provided when authorized or ratified, to a person who has ceased to be a director, officer, employee, or agent and shall inure to the benefit of the heirs, executors, and administrators of such a person, unless otherwise provided when authorized or ratified.

11.9 Application to Court. Notwithstanding the failure of a Association to provide indemnification, and despite any contrary determination of the Board or of the members in the specific case, a director, officer, employee, or agent of the Association who is or was a party to a proceeding may apply for indemnification or advancement of expenses, or both, to the court conducting the proceeding, to the circuit court, or to another court of competent jurisdiction. On receipt of an application, the court, after giving any notice that it considers necessary, may order indemnification and advancement of expenses,

Article
- 10 -

including expenses incurred in seeking court-ordered indemnification or advancement of expenses, if it determines that:

(a)    The director, officer, employee, or agent is entitled to mandatory indemnification under subsection 11.3, in which case the court shall also order the Association to pay the director reasonable expenses incurred in obtaining court-ordered indemnification or advancement of expenses;

(b)    The director, officer, employee, or agent is entitled to indemnification or advancement of expenses, or both, by virtue of the exercise by the Association of its power pursuant to subsection 11.7; or

(c)    The director, officer, employee, or agent is fairly and reasonably entitled to indemnification or advancement of expenses, or both, in view of all the relevant circumstances, regardless of whether such person met the standard of conduct set forth in subsection 11.1, subsection 11.2, or subsection 11.7, unless (a) a court of competent jurisdiction determines, after all available appeals have been exhausted or not pursued by the proposed indemnitee, that he did not act in good faith or acted in a manner he reasonably believed to be not in, or opposed to, the best interest of the Association, and, with respect to any criminal action or proceeding, that he had reasonable cause to believe his conduct was unlawful, and (b) such court further specifically determines that indemnification should be denied. The termination of any proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith or did act in a manner which he reasonably believed to be not in, or opposed to, the best interest of the Association, and, with respect to any criminal action or proceeding, that he had reasonable cause to believe that his conduct was unlawful.

11.10  Definitions. For purposes of this Article 11, the term "expenses" shall be deemed to include attorneys' fees, including those for any appeals; the term "liability" shall be deemed to include obligations to pay a judgment, settlement, penalty, fine, and expenses actually and reasonably incurred with respect to a proceeding; the term "proceeding" shall be deemed to include any threatened, pending, or

Articles
-11-

completed action, suit, or other type of proceeding, whether civil, criminal, administrative or investigative, and whether formal or informal; and the term "agent" shall be deemed to include a volunteer; the term "serving at the request of the Association" shall be deemed to include any service as a director, officer, employee or agent of the Association that imposes duties on such persons.

11.11 Amendment. Anything to the contrary herein notwithstanding, no amendment to the provisions of this Article 11 shall be applicable as to any party eligible for indemnification hereunder who has not given his prior written consent to such amendment.

## ARTICLE 12
## BY-LAWS

The first By-Laws of the Association shall be adopted by the Board of Directors and may be altered, amended or rescinded in the manner provided in the By-Laws and the Declaration.

## ARTICLE 13
## AMENDMENTS

Amendments to these Articles shall be proposed and adopted in the following manner:

13.1 Notice. Notice of a proposed amendment shall be included in the notice of any meeting at which the proposed amendment is to be considered and shall be otherwise given in the time and manner provided in Chapter 617, Florida Statutes. Such notice shall contain the proposed amendment or a summary of the changes to be affected thereby.

13.2 Adoption. Amendments shall be proposed and adopted in the manner provided in Chapter 617, Florida Statutes and in the Act (the latter to control over the former to the extent provided for in the Act).

13.3 Limitation. No amendment shall make any changes in the qualifications for membership, nor in the voting rights or property rights of members, nor any changes in 5.3, 5.4 or 5.5, without the approval in writing of all members and the joinder of all record owners of mortgages upon Units. No amendment shall be made that is in conflict with the Act, the Declaration or the By-Laws, nor shall

any amendment make any changes which would in any way affect any of the rights, privileges, powers or options herein provided in favor of or reserved to the Developer and/or Institutional First Mortgagees, unless the Developer and/or the Institutional First Mortgagees, as applicable, shall join in the execution of the amendment. No amendment to this paragraph 13.3 shall be effective.

13.4 <u>Developer Amendments</u>. Notwithstanding anything herein contained to the contrary, to the extent lawful, the Developer may amend these Articles consistent with the provisions of the Declaration allowing certain amendments to be effected by the Developer alone.

13.5 <u>Recording</u>. A copy of each amendment shall be filed with the Secretary of State pursuant to the provisions of applicable Florida law, and a copy certified by the Secretary of State shall be recorded in the public records of Miami-Dade County, Florida with an identification on the first page thereof of the book and page of said public records where the Declaration was recorded which contains, as an exhibit, the initial recording of these Articles.

## ARTICLE 14
### INITIAL REGISTERED OFFICE;
### ADDRESS AND NAME OF REGISTERED AGENT

The initial registered office of this corporation shall be at 400 Arthur Godfrey Boulevard, Suite 200 Miami Beach, Florida 33140, with the privilege of having its office and branch offices at other places within or without the State of Florida. The initial registered agent at that address shall be Eric Sheppard.

IN WITNESS WHEREOF, the Incorporator has affixed his signature the day and year set forth below.

_____
Eric Sheppard, Incorporator

DATED this 25ᵗʰ day of September, 2007.

H07000239205 3

CERTIFICATE DESIGNATING PLACE OF BUSINESS OR DOMICILE
FOR THE SERVICE OF PROCESS WITHIN THIS STATE,
NAMING AGENT UPON WHOM PROCESS MAY BE SERVED

In compliance with the laws of Florida, the following is submitted:

First — That desiring to organize under the laws of the State of Florida with its principal office, as indicated in the foregoing articles of incorporation, in the County of Miami-Dade, State of Florida, the Association named in the said articles has named Eric Sheppard located at 400 Arthur Godfrey Boulevard, Suite 200 Miami Beach, Florida 33140, as its statutory registered agent.

Having been named the statutory agent of said Association at the place designated in this certificate, I am familiar with the obligations of that position, and hereby accept the same and agree to act in this capacity, and agree to comply with the provisions of Florida law relative to keeping the registered office open.

Eric Sheppard, Registered Agent

DATED this 26ᵗʰ day of September, 2007.

Articles
- 15 -

H07000239205 3

CFN 2008R0078547
OR Bk 26186 Pgs 4424 - 4426; (3pgs)
RECORDED 01/30/2008 10:21:58
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This instrument prepared by, or under the supervision of
(and after recording, return to):

Gary A. Saul, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131

(Reserved for Clerk of Court)

AMENDMENT TO DECLARATION
OF
SOUTH CARILLON BEACH, A CONDOMINIUM

THIS AMENDMENT is made as of the _28_ day of January, 2008 by Carillon South Joint Venture, L.L.C., a Florida limited liability company ("Developer"), to that certain Declaration of South Carillon Beach, a Condominium,, recorded December 3, 2007 in Official Records Book 26080, Page 4764 of the Public Records of Miami-Dade County, Florida (as amended from time to time, the "Declaration"). Unless the context otherwise requires, any capitalized term not defined but used herein shall have the meaning given to such word or words in the Declaration.

RECITALS

A.     Developer is the "Developer" of the Condominium under the Declaration.

B.     Pursuant to Section 6.5 of the Declaration, the Developer, during the time it has the right to elect a majority of the Board of Directors of the Association, may amend the Declaration, Articles of Incorporation or By-Laws to correct an error, or to effect any other amendment, without requiring the consent of any other party.

C.     Developer presently has the right to elect a majority of the Board of Directors of the Association.

D.     In accordance with the foregoing, Developer now desires to amend the Declaration in the manner hereinafter set forth to clarify certain provisions with respect to occupancy and use restrictions.

NOW, THEREFORE, in consideration of the premises and by virtue of the authority of Developer as hereinabove set forth, the Declaration is hereby amended and supplemented as follows:

1.     The first paragraph of Section 15.1 of the Declaration is hereby amended to read in its entirety as follows (with strikethroughs indicating deleted text and added text underscored ):

Each Unit shall be used as a residence only, whether for permanent, temporary or transient use, except as otherwise herein expressly provided, all in accordance with all applicable

county and state codes, ordinances and regulations. ~~Except as otherwise expressly provided herein~~ Notwithstanding the foregoing, in no event shall occupancy (except for temporary occupancy by visiting guests) exceed more than one (1) person per bedroom or den (as defined by the Association for the purpose of excluding from such definition living rooms, dining rooms, family rooms, country kitchens and the like), plus one (1) additional person ~~(the "Occupancy Limits").~~ ~~Notwithstanding anything contained herein to the contrary, for purposes hereof, the Occupancy Limits stated above may be exceeded by the number of children under the age of 18 who are residing in the Unit with their parents, provided however, in no event shall the total number of occupants exceed the maximum number permitted by applicable law.~~ By way of example only, occupancy of a two (2) bedroom Unit shall be limited to a total of three (3) persons ~~(plus those children, if any, under 18 residing in the Unit with their parents)~~ - one (1) per each bedroom, plus one (1) additional person ~~(and any children as described above)~~. Notwithstanding that the Unit may be owned by any number of individuals or by an entity, whether a corporation, partnership, limited liability company, trust or otherwise, the number of occupants shall in no event exceed the limits described in this subsection 15.1 (the "Occupancy Limits"). The Hotel Lot Owner shall have the power to authorize occupancy of a Unit by persons in addition to those set forth above. The provisions of this subsection 15.1 shall not be applicable to Units used by the Developer for model apartments, sales or resales offices or management or administrative services.

*** Signatures appear on the following page ***

IN WITNESS WHEREOF, Developer has executed this Amendment as of the day and year first above written.

Witnessed by:

Carillon South Joint Venture, L.L.C., a Florida limited liability company

Name: _Joanne Hurley_

By: _____
Name: _Eric Sheppard_
Title: _____

(Corporate Seal)

Name: _DENISE P. SORIANO_

Address: _____

STATE OF FLORIDA )
) ss:
COUNTY OF _MIAMI-DADE_

The foregoing instrument was acknowledged before me this 28 day of _JANUARY_, 2008 by _ERIC D. SHEPPARD_, as _____ President of Carillon South Joint Venture, L.L.C., a Florida limited liability company, on behalf of said partnership. He/she is personally known to me or produced _____ as identification.

Name: _DENISE P. SORIANO_
Notary Public, State of _FLORIDA_
Commission No. _DD 416499_

DENISE P. SORIANO
Notary Public - State of Florida
My Commission Expires Jun 25, 2009
Commission # DD 416499
Bonded By National Notary Assn.

# **Amendments**



CFN 2008R0354082
OR Bk 26353 Pgs 1890 - 1891; (2pgs)
RECORDED 04/30/2008 12:49:28
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This instrument prepared by, or under the supervision of (and after recording, return to):

Gary A. Saul, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131

(Reserved for Clerk of Court)

## CERTIFICATE OF AMENDMENT TO DECLARATION
## OF
## SOUTH CARILLON BEACH, A CONDOMINIUM

**THIS CERTIFICATE OF AMENDMENT** is made as of the 29th day of April, 2008 to that certain Declaration of South Carillon Beach, a Condominium, recorded December 3, 2007 in Official Records Book 26080, Pages 4764-4904 of the Public Records of Miami-Dade County, Florida (as amended from time to time, the "Declaration"). Unless the context otherwise requires, any capitalized term not defined but used herein shall have the meaning given to such word or words in the Declaration.

### RECITALS

A.      Pursuant to the authority set forth in the Declaration and the Act,  the Board has the power and authority to correct scrivener's errors in the Declaration.

B.      As a result of the scrivener's errors, the Board now desires to amend the Declaration in the manner hereinafter set forth.

**NOW, THEREFORE**, the undersigned officer of the Association hereby certifies that, at a duly noticed and called meeting of the Board of Directors of the Association, the Board of Directors of the Association approved the following amendments to the Declaration:

1.      Exhibit "3" of the Declaration as originally recorded is hereby amended to correct a scrivener's error in the listing of the unit numbers of Unit Type C2 as follows:

| Unit Type | Unit Numbers | Total Unit Type | Percent per Unit | Percent per Unit Type |
|-----------|--------------|-----------------|------------------|-----------------------|
| C2 | 210, 310, ~~401~~, **410**, 510 | 4 | 0.006136% | 0.0024544% |

The foregoing Amendments shall be effective as of the date of recordation of this Certificate in the Public Records of the County.  Except as specifically amended hereby, the Declaration shall remain in full force and effect ab initio.

(Reserved for Clerk of Court)

**IN WITNESS WHEREOF**, the undersigned officer of the Association has executed this Certificate of Amendment as of the day and year first above written.

Witnessed by:

Name: *Magda Gobeli*
Name: HAGDA GOBELI

Name: *Robin T. Brothers*
Name: Robin T. Brothers

**SOUTH CARILLON BEACH
CONDOMINIUM ASSOCIATION, INC.**

By:
Name: *Eric D. Sheppard*
Title: *Authorized Representative*

[CORPORATE SEAL]

Address: _____

STATE OF FLORIDA )
) SS:
COUNTY OF MIAMI · DADE )

The foregoing Certificate of Amendment was acknowledged before me, this *30* day of April, 2008, by *ERIC D. SHEPPARD* as *Authorized Rep* of **SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.**, a Florida not-for-profit corporation, on behalf of said corporation. He/she is personally known to me or has produced _____ as identification.

Name: _____

Notary Public, State of Florida
Commission No.: _____

My Commission Expires:

_____

(Notarial Seal)

DENISE P. SORIANO
Notary Public - State of Florida
My Commission Expires Jun 25, 2009
Commission # DD 416499
Bonded By National Notary Assn.

CFN 2009R0760655
OR Bk 27054 Pgs 3792 - 3793; (2pgs)
RECORDED 10/20/2009 15:33:40
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This instrument prepared by and return to:
Howard J. Vogel, Esq.
Berman Rennert Vogel & Mandler, P.A.
100 Southeast Second Street, Suite 2900
Miami, FL 33131



## AMENDMENT TO DECLARATION
## OF
## SOUTH CARILLON BEACH, A CONDOMINIUM

THIS AMENDMENT ("Amendment") is executed as of the 15 day of October, 2009, but effective as of December 3, 2007, by Carillon South Joint Venture, L.L.C., a Florida limited liability company (the "Developer").

WHEREAS, the Developer is the developer of that certain condominium known as South Carillon Beach, a Condominium (the "Condominium"), as further described in the Declaration of South Carillon Beach, a Condominium, recorded December 3, 2007, in Official Records Book 26080, Page 4764, of the Public Records of Miami-Dade County, Florida (the "Declaration" or the "Declaration of Condominium").

WHEREAS, the Developer desires to amend the Declaration of Condominium to correct certain scrivener's errors in Exhibit "3" attached thereto.

WHEREAS, the Developer currently has the right to elect a majority of the Board of Directors of the Association and, pursuant to Section 6.5 of the Declaration of Condominium, is entitled to, and desires to, amend the Declaration of Condominium to correct such scrivener's errors, as further set forth below.

NOW, THEREFORE, in consideration of the premises set forth above, the Developer, for itself, its successors and assigns, hereby amends the Declaration of Condominium as follows:

1.     The foregoing recitals are true and correct.

2.     All initially capitalized terms not defined herein shall have the meaning set forth in the Declaration of Condominium. The defined term "Declaration" or "Declaration of Condominium" shall mean the Declaration of Condominium and this Amendment, together with all amendments and modifications thereof.

3.     Exhibit "3" of the Declaration of Condominium, as originally recorded, is hereby amended to correct a scrivener's error in the listing of the unit numbers of Unit Type B5 as follows:

| Unit Type | Unit Numbers | Total Unit Type | Percent per Unit | Percent per Unit Type |
|-----------|--------------|-----------------|------------------|----------------------|
| B5 | 212, 312, 412, 512, 606, 706, 806, 906, 1006, 1106, 1206, 1406, 1506, 1606, 1706, 1806, ~~ooh06~~, cph06, lph06, ph06 | 19 | 0.006042% | 0.114798% |

4.     Except as modified by this Amendment, the Declaration of Condominium shall remain in full force and effect and the execution and delivery thereof, and all actions taken by Developer in connection therewith, are hereby ratified and affirmed and the terms thereof, as modified by this Amendment, are incorporated and restated herein. Although executed on the date set forth above, the terms set forth in this Amendment shall be deemed effective as of the date of recordation of the Declaration of Condominium, as originally recorded.

[EXECUTION PAGE FOLLOWS]

Witnessed by:

Name: ELLYN P CHERNIN

Name: DAFNE VITAL

CARILLON SOUTH JOINT VENTURE, L.L.C., a
Florida limited liability company

By: _____
Eric D. Sheppard, as Managing Member

(Corporate seal)

Address: 400 Arthur Godfrey Road, Suite 200
Miami Beach, FL 33140

STATE OF FLORIDA  )
        ) SS:
COUNTY OF MIAMI-DADE )

The foregoing Amendment was acknowledged before me, this 15 day of October, 2009, by Eric D. Sheppard, as Managing Member of Carillon South Joint Venture, L.L.C., a Florida limited liability company, on behalf of said company. He is personally known to me or produced a driver's license as identification.

| | |
|---|---|
| Notary Seal: **DENISE P. SORIANO** <br> Notary Public - State of Florida <br> My Comm. Expires Jun 30, 2013 <br> Commission # DD 903830 | Print Name:_____ <br> Notary Public, State of Florida <br> My Commission Expires:_____ <br> Serial Number (if any)_____ |



STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that this is a true copy of the
original filed in this office on 20 day of
Oct A.D. 09
WITNESS my hand and Official Seal
HARVEY RUVIN, CLERK, of Circuit and County Courts
By _____ 37639 D.C.



CFN 2010R0331949
OR Bk 27288 Pgs 0247 - 251; (5pgs)
RECORDED 05/18/2010 09:50:52
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

**Record & Return to:** Sandra E. Krumbein, Esquire
Ruden McClosky P.A.
P. O. Box 1900
Fort Lauderdale, FL 33302

**Prepared By:** Sandra E. Krumbein, Esquire
Ruden McClosky P.A.
P.O. Box 1900
Fort Lauderdale, FL 33302

Miami-Dade County Recording Office:

*Cross Reference to Declaration recorded in Official Records Book
26080, Page 4764, of the Public Records of Miami-Dade County,
Florida*

---

SPACE ABOVE THIS LINE FOR PROCESSING DATA      SPACE ABOVE THIS LINE FOR RECORDING DATA

---

**DOCUMENT TITLE:**      Certificate and Amendment to Articles of Incorporation
of South Carillon Beach Condominium Association, Inc.

RM:7390909:1



# State of Florida

## Department of State

I certify from the records of this office that SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC. is a corporation organized under the laws of the State of Florida, filed on September 25, 2007.

The document number of this corporation is N07000009498.

I further certify that said corporation has paid all fees due this office through December 31, 2010, that its most recent annual report/uniform business report was filed on March 1, 2010, and its status is active.

I further certify that said corporation has not filed Articles of Dissolution.

I further certify that this is an electronically transmitted certificate authorized by section 15.16, Florida Statutes, and authenticated by the code, 110A00011638-051010-N07000009498-1/1, noted below.

Authentication Code: 110A00011638-051010-N07000009498-1/1

Given under my hand and the
Great Seal of the State of Florida,
at Tallahassee, the Capital, this the
Tenth day of May, 2010

Dawn K. Roberts

*Dawn K. Roberts*
*Secretary of State*

# State of Florida

## Department of State

I certify the attached is a true and correct copy of the Articles of Amendment, filed on May 7, 2010, to Articles of Incorporation for SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., a Florida corporation, as shown by the records of this office.

I further certify the document was electronically received under FAX audit number H10000112127. This certificate is issued in accordance with section 15.16, Florida Statutes, and authenticated by the code noted below.

The document number of this corporation is N07000009498.

Authentication Code: 110A00011638-051010-N07000009498-1/1

Given under my hand and the Great Seal of the State of Florida, at Tallahassee, the Capital, this the Tenth day of May, 2010



*Dawn K. Roberts*
*Secretary of State*

# CERTIFICATE AND AMENDMENT TO
# ARTICLES OF INCORPORATION
## OF SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.

The undersigned, pursuant to Section 617.1002, Florida Statutes, and the provisions of Article 13.4 of the Articles of Incorporation of SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation (the "Corporation"), do hereby certify as follows:

FIRST: The name of the Corporation is SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.

SECOND: The Articles of Incorporation of the Corporation were filed with the Secretary of State of Florida on September 25, 2007 under Document Number N07000009498.

THIRD: Carillon South Joint Venture, L.L.C., a Florida limited liability company (the "Creating Developer") executed that certain Declaration of Condominium of South Carillon Beach, a Condominium, which was recorded December 3, 2007 in Official Records Book 26080, Page 4764 of the Public Records of Miami-Dade County, Florida, as same may have been amended and supplemented (the "Declaration");

FOURTH: Pursuant to that certain Assignment of Declarant and Developer Rights recorded in Official Records Book 27124, Page 2053, of the Public Records of the County ("Assignment"), Creating Developer assigned all of its rights under the Declaration to FL 6801 Collins South, LLC, a Delaware limited liability company ("FL 6801");

FIFTH: Pursuant to the Assignment, FL 6801 is entitled to exercise the rights and privileges of the "Developer," under and as defined in the Declaration (the "Developer Rights");

SIXTH: Section 6.3 is hereby amended in its entirety to read as follows:

6.3. Voting. On all matters upon which the membership shall be entitled to vote, there shall be only one vote for each Residential Unit. All votes shall be exercised or cast in the manner provided by the Declaration and By-Laws. Any person or entity owning more than one Unit shall be entitled to cast the aggregate number of votes attributable to all Units owned.

SEVENTH: The Articles of Amendment were adopted as of the date set forth below.

RM:7319534:1

EIGHTH:     These Articles of Amendment were adopted by FL 6801, as holder of the Developer Rights, pursuant to Article 13.4 of the Articles of Incorporation and no members of the Corporation are entitled to vote on this Amendment.

Dated this 29 day of April , 2010.

FL 6801 COLLINS SOUTH, LLC, a Delaware limited liability company

By:     FL 6801 SPIRITS LLC, a Delware limited liability company, Managing Member

By: _____

Name: _____
        Jeffrey Fitts

Title: _____
        Authorized Signatory

RM:7319534:1