**Requested Hearing Date:  June 25, 2014 at 10:00 a.m. (ET)**
**Response Date:  To Be Determined**

BROWN RUDNICK LLP
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

- and -

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
Scott L. Baena (*pro hac vice* motion pending)
Mindy A. Mora
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone:  (305) 374-7580
Facsimile:  (305) 351-2242

*Co-Counsel to North Carillon Beach Condominium*
*Association, Inc., Central Carillon Beach*
*Condominium Association, Inc., and South Carillon*
*Beach Condominium Association, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 14-11691 (SCC) |
| FL 6801 SPIRITS LLC, *et al.*, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

-----------------------------------------------------------------X

**MOTION OF NORTH CARILLON BEACH CONDOMINIUM
ASSOCIATION, INC., CENTRAL CARILLON BEACH CONDOMINIUM
ASSOCIATION, INC., AND SOUTH CARILLON BEACH
CONDOMINIUM ASSOCIATION, INC. PURSUANT TO 28 U.S.C. §§ 1408
& 1412 AND RULE 1014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE TO TRANSFER CASES TO THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

JURISDICTION, VENUE, AND STATUTORY PREDICATES ................................................ 4

BACKGROUND ................................................................................................................... 5

    A.    The Debtors' Assets, Operations And Creditors Are All In Florida. ...................... 5

    B.    Florida Regulators Have A Direct Interest And Will Have An Active Role In These Cases .................................................................................................. 8

    C.    Litigants With Potentially Significant Claims In Florida Have An Interest In These Proceedings. ........................................................................................... 9

RELIEF REQUESTED ......................................................................................................... 11

BASIS FOR RELIEF REQUESTED ..................................................................................... 11

    A.    Transferring The Chapter 11 Cases To The United States District Court For The Southern District Of Florida Is In The Interest Of Justice. .................................. 13

    B.    Convenience Of The Parties Strongly Favors Transferring The Chapter 11 Cases To The Southern District of Florida .................................................................... 21

NO PRIOR REQUEST ......................................................................................................... 24

NOTICE ............................................................................................................................. 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

Clark v. Chrysler Grp., LLC,
    No. 10-3030, 2010 WL 4486927 (Bankr. E.D. Pa. Nov. 5, 2010) ..........................................20

Enron Corp. v. Arora (In re Enron Corp.),
    317 B.R. 629 (Bankr. S.D.N.Y. 2004) ..................................................................................13

Gro Master, Inc. v. Farmweld, Inc.,
    920 F. Supp. 2d 974 (N.D. Iowa 2013) ..................................................................................16

Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),
    896 F.2d 1384 (2d Cir. 1990) ..........................................................................................12, 14

In re Apple, Inc.,
    602 F.3d 909 (8th Cir. 2010) ................................................................................................16

In re Asset Resolution LLC,
    No. 09-16142 (AJG), 2009 WL 4505944 (Bankr. S.D.N.Y. Nov. 24, 2009) ...................12, 23

In re B.L. of Miami,
    294 B.R. 325 (Bankr. D. Nev. 2003) ....................................................................................18

In re Bayshore Yacht & Tennis Club Condominium Ass'n, Inc.,
    336 B.R. 866 (Bankr. S. D. Fla. 2006) (Mark, J.) ..................................................................19

In re Commonweth Oil Refining Co.,
    596 F.2d 1239 (5th Cir. 1979) ..............................................................................................13

In re DesignLine Corp.,
    No. 13-12089 (Bankr. D. Del. Sept. 4, 2013) .......................................................................21

In re Dunmore Homes, Inc.,
    380 B.R. 663 (Bankr. S.D.N.Y. 2008) ...............................................................12, 13, 18, 20

In re EB Capital Mgmt. LLC,
    No. 11-12646, 2011 WL 2838115 (Bankr. S.D.N.Y. July 14, 2011) ......................................17

In re Enron Corp.,
    274 B.R. 327 (Bankr. S.D.N.Y. 2002) ..................................................................................12

In re Enron Corp.,
    284 B.R. 376 (Bankr. S.D.N.Y. 2002) ..................................................................................18

In re Fontainebleau Las Vegas Holdings, LLC et al.,
    Case No. 09-21481-BKC AJC (Bankr. S.D. Fla.) ..................................................................22

In re Harbour East Development, Ltd.,
    No. 10-20733-BKC-AJC, 2011 WL 65104 (Bankr. S. D. Fla. Jan 6, 2011) (Cristol, J.)........20

In re Lakota Canyon Ranch Dev., LLC,
    No. 11-03739-8, 2011 WL 5909630 (Bankr. E.D.N.C. June 21, 2011) .................................14

In re Ofia Realty Corp.,
    74 B.R. 574 (Bankr. S.D.N.Y. 1987) .............................................................................18, 23

In re Old Delmar Corporation,
    45 B.R. 883 (S.D.N.Y. 1985).................................................................................................18

In re Patriot Coal Corporation,
    482 B.R. 718 (Bankr. S.D.N.Y. 2012) ......................................................................12, 13, 15

In re Statewide Theatres Corp.,
    4 F. Supp. 86 (D. Del. 1933).................................................................................................12

In re Suncoast Towers East Associates,
    241 B.R. 476 (Bankr. S.D. Fla. 1999) (Cristol, J.) ..............................................................19

In re Walker,
    No. 07-14797-BKC-LMI, 2008 WL 1781181 (Bankr. S.D. Fla. Apr. 17, 2008)...................19

In the Matter of Ocean Properties of Delaware, Inc.,
    95 B.R. 304 (Bankr. D. Del. 1988) ...........................................................................18, 20, 22

STATUTES

11 U.S.C. § 105(a) ............................................................................................................1, 4, 11

11 U.S.C. § 363...........................................................................................................2, 8, 9, 14

28 U.S.C § 157(b) .......................................................................................................................4

28 U.S.C. § 1334.........................................................................................................................4

28 U.S.C. § 1408 ...............................................................................................................1, 4, 11, 12

28 U.S.C. § 1409.........................................................................................................................4

28 U.S.C. § 1412........................................................................................................1, 4, 11, 12, 13, 20

Ch. 197, Fla. Stat. § 122 (2013).................................................................................................8

Ch. 718, Fla. Stat. (2013)...........................................................................................................8

Ch. 720, Fla. Stat. (2013) ......................................................................................................6, 19

Fla. Admin. Code chs. 61B-15 - 61B-25 ............................................................................8

Fla. Admin. Code ch. 61B-45 .............................................................................................8

Fla. Admin. Code ch. 61B-50 .............................................................................................8

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 1014 ...............................................................................................1, 4, 11

North Carillon Beach Condominium Association, Inc., Central Carillon Beach Condominium Association, Inc., and South Carillon Beach Condominium Association, Inc. (the "Associations"), by their undersigned co-counsel, hereby move this Court (the "Motion") pursuant to 28 U.S.C. §§ 1408 and 1412, Rule 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), to transfer the above-captioned chapter 11 cases (the "Chapter 11 Cases") of FL 6801 Spirits LLC ("Spirits"), FL 6801 Collins North LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), and FL 6801 Collins South LLC ("6801 South" and, together with 6801 Central, 6801 North and Spirits, the "Debtors") to the United States District Court for the Southern District of Florida, in the interests of justice and for the convenience of the parties. In support of this Motion, the Associations respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.      This case is about a close-knit community in Miami Beach, Florida, whose "Canyon Ranch" lifestyle and significant investment have been put into jeopardy by an over-reaching property owner.   The Associations represent the owners (the "Unit Owners") of approximately 570 condominium units on the property (i.e., the community) and the Debtors are the property owner.  The high stakes at play in this case directly impact the daily lives of each Unit Owner, yet this case is being played out over a thousand miles away from their homes.  As detailed below, the interests of justice and convenience of the parties substantially favors the

transfer of these Chapter 11 Cases to the United States District Court for the Southern District of Florida.[1]

2.      Prior to filing for bankruptcy, the Debtors entered into a standstill agreement with the Associations to negotiate a deal for the purchase of Canyon Ranch Miami (as defined below) by an entity controlled by the Unit Owners.  However, instead of negotiating in good faith, the Debtors left the Unit Owners at the altar and now seek to sell their property interest in Canyon Ranch Miami in a Bankruptcy Code Section 363 sale that would terminate the Canyon Ranch management and materially devalue the Unit Owners' interest in their condominium units.  The Unit Owners are interested in submitting a higher or better bid and plan to contest the Debtors' unfair proposed sale procedures.

3.      Evaluation of the highest or best bid in this case will involve numerous complex interpretations of Florida state law.  Further, in a game plan that raises due process and other procedural and substantive concerns, the Debtors seek to utilize their Sale Motion (defined below) to resolve a significant portion of the Associations' pending lawsuits against the Debtors. The Debtors are defendants in pending lawsuits (the "State Court Actions") commenced by the Associations in the Circuit Court in and for Miami-Dade County, Florida (the "State Court").  By the State Court Actions, the Associations seek, *inter alia*, declaratory relief under Florida state law as to the condominium Unit Owners' rights under various condominium declarations, restrictions and easements.  In other words, the Associations seek a determination that the Debtors have historically levied millions of dollars of improper assessments against the Unit

---

[1]    Presumably, upon transfer of the Chapter 11 Cases to the District Court for the Southern District of Florida, that Court will thereupon refer the Cases to the United States Bankruptcy Court for the Southern District of Florida.  See United States District Court for the Southern District of Florida General Order of Reference, dated July 11, 1984 and Local Rule 87.2 of the United States District Court for the Southern District of Florida.

Owners and now seek to prospectively lock in these exponential over-charges and other restrictions on their Canyon Ranch lifestyle. In that regard, the proposed sale raises numerous complex issues under Florida state law. The difficulty and added expense attendant to the participation of the Associations and the Unit Owners in a distant forum clearly meets the threshold for transferring venue to the United States District Court for the Southern District of Florida in accord with the interests of justice and the convenience of the parties.

4.      The property, the Debtors, the Associations, the Unit Owners, and almost all key creditors and parties-in-interest in these Chapter 11 Cases are Florida based. The Debtors' only connection to New York is that the Debtors are indirect subsidiaries of Lehman Brothers Holdings, Inc. ("LBHI") and purportedly maintain an office (or perhaps, more simply, a desk within an office) in New York. Although the Debtors are indirect subsidiaries of LBHI, their assets and business operations are discrete and bear no meaningful relation to the financial operations of LBHI and its other subsidiaries. The Sale Motion suggests that the net proceeds from the proposed sale of the Debtors' assets will likely be exhausted by creditor claims or, at best, may result in a *de minimis* distribution to the Debtors' parent company that would prove insignificant in the context of the LBHI bankruptcy cases.

5.      In contrast, the Debtors have significant connections to Florida:

- the property and business operations of the Debtors consist of the ownership and operation of a hotel and spa, as well as the ownership of thirteen condominium units, located in Miami Beach, Florida;

- the Debtors' operating books and records are located in Florida;

- the Debtors' key creditors, including the Associations and Unit Owners are located in Florida;

3

- the Debtors have litigated often and exclusively in Florida courts;

- the Debtors are subject to Florida's extensive regulatory regime for the sale of condominium units; and

- the Debtors are subject to tax claims and police powers of governmental authorities in Florida.

Indeed, but for the affiliate filing rule under 28 U.S.C. § 1408(2), there would be no basis for the Chapter 11 Cases being filed in New York.

6.     There are more than 500 homeowners situated in Florida with Florida real property interests at stake in these Chapter 11 Cases.  The Associations are Florida not-for-profit corporations that will be required to levy a special assessment against the Unit Owners in order to fund the litigation fees and costs associated with the Chapter 11 Cases.  The Associations reasonably believe that their litigation fees and costs (including travel) associated with these Chapter 11 Cases will be lower if venue is transferred to the Southern District of Florida than if the cases remain in this Court.  As more fully set forth in this Motion, the facts and circumstances of these Chapter 11 Cases, when viewed in light of the interests of justice and convenience of the parties, strongly favors the transfer of these Chapter 11 Cases to the Southern District of Florida.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

7.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C § 157(b).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for relief sought in this Motion are 28 U.S.C. § 1412, Bankruptcy Rule 1014 and Bankruptcy Code Section 105(a).

4

## BACKGROUND

A.    **The Debtors' Assets, Operations and Creditors are in Florida.**

8.      The Debtors' real property, personal property, and books and records are located at 6799, 6801, and 6899 Collins Avenue, Miami Beach, Florida 33154, at the property commonly known as "Canyon Ranch Living - Miami Beach," and "Canyon Ranch Hotel & Spa, Miami Beach" ("Canyon Ranch Miami").  See *Declaration of Anthony Barsanti pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2] (the "Barsanti Decl."), Exs. E and F.  Canyon Ranch Miami is approximately 10 miles from the Bankruptcy Court in Miami, Florida.

9.      It appears that all of the Debtors were formed under Delaware law as special purpose entities to take title to their assets through deeds in lieu of foreclosure.  Id. at 3.  When the Debtors took title to Canyon Ranch Miami in 2009, construction was not complete, and many of the condominium units were unfinished and unsold.  Id. at 3-4.  Subsequent to taking title to the project, the Debtors sold all but thirteen of the units at Canyon Ranch Miami to Unit Owners whose interests are collectively represented by the Associations.

10.      Canyon Ranch Miami is governed by a recorded Declaration of Covenants, Restrictions and Easements for Carillon Hotel and Spa (the "Master Declaration").  A copy of the Master Declaration is attached as Exhibit A to the Declaration of Lara R. Sheikh, Esq., in support of the *Debtors' (I) Ex Parte Application for an Order Scheduling a Hearing to Consider, Among Other Things, Bidding Procedures and (II) Motion for (A) an Order Approving, Among Other Things, (i) Bidding Procedures Regarding the Debtors' Sale of Property, Subject to Higher or Better Offers and Bankruptcy Court Approval, (ii) the Time, Date, Place and Form of Notice for the Auction and Sale Hearing, and (iii) a Break-Up Fee, (B) an Order (i) Approving the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (ii) Authorizing the*

5

*Assumption and Assignment of Certain Executory Contracts, and (C) Related Relief* [Docket

Nos. 4] (the "Sale Motion").  See Docket No. 12.  The Master Declaration envisions five "Lots,"

as follows:

| Address | Lots |
|---------|------|
| 6799 Collins Avenue | South Tower |
| 6801 Collins Avenue | Central Tower |
| 6801 Collins Avenue | Hotel Lot |
| 6899 Collins Avenue | North Tower |
| 6899 Collins Avenue | Retail Lot |

11.    The Master Declaration governs the relationships between and among the

developer, the Master Association, the Associations, the Unit Owners, the Hotel Lot Owner, and

the Retail Lot Owner (as defined in the Master Declaration).  The Master Declaration created a

homeowners association, as described in Chapter 720, Florida Statutes, since the project is

principally comprised of residential units.  See Ch. 720, Fla. Stat. (2013).

12.    Other than the Associations, the Debtors have identified very few, if any,

creditors.  No creditor matrix was filed in connection with the Debtors' bankruptcy petitions.

Instead, the Debtors indicated that they would furnish their creditor lists to their noticing and

claims agent, Prime Clerk.  As of the date of this Motion, the only list of creditors included on

Prime Clerk's website for the Chapter 11 Cases is identical to the limited list of creditors affixed

to the bankruptcy petitions.

13.    There are seven unsecured creditors identified on the Debtors' petitions, other

than the three Associations (each of which is listed twice, once for litigation claims asserted in

the State Court Actions, and once for what appears to be unpaid Association dues for unsold

6

condominium units owned by the Debtors).  The seven unsecured creditors include the spa management company known as Canyon Ranch, listed as being located in Tucson, Arizona, whose claim is designated as disputed and unliquidated, and CR Miami, LLC, an affiliate of Canyon Ranch, which operates the Rental Management Program (as defined in the Barsanti Decl.), also listed as being located in Tucson, Arizona, whose claim is designated as unliquidated.  Both Canyon Ranch and CR Miami, LLC provide services to the Debtors in Miami-Dade County, Florida.  The other five listed unsecured creditors are all located in Florida.

14.     The only other creditor identified by the Debtors on their petitions is their parent company, PAMI ALI LLC, an affiliate of LBHI, which purportedly loaned the Debtors funds to cover operating costs, including the payment of an insurance premium.  See Barsanti Decl., at 10.

15.     Notwithstanding the Court's inquiry at the first day hearing about notice to the Unit Owners, the Debtors have yet to identify, as potential creditors, the approximately 570 Unit Owners who bought condominium units at Canyon Ranch Miami.  Each of the Unit Owners is a potential creditor of one or more of the Debtors, and each of them has a nexus to and presence in Florida as a consequence of ownership of a condominium unit at Canyon Ranch Miami.  The Debtors induced Unit Owners to purchase Units by the representation in offering materials that the property would be flagged and managed by Canyon Ranch with the effect on the value of a condominium unit being as much as 35% greater than other similarly sized units in luxury condominium buildings situated on Collins Avenue in Miami Beach.  Further, the Debtors assured Unit Owners, both orally and through written comfort letters, that Canyon Ranch was contractually bound to serve as the spa director of Canyon Ranch Miami for 20 years.  As a result, the Associations are informed and believe that numerous Unit Owners will assert claims

7

against the Debtors for damages arising from these potentially fraudulent representations and the resulting loss of value if the Debtors are permitted to reject the Canyon Ranch management agreement.

**B.      Florida Regulators have a Direct Interest in these Cases.**

16.      The Debtors are subject to a number of Florida regulatory schemes, and Florida regulators and authorities will have myriad interests in these cases.  The development, sale and operation of condominiums located within the State of Florida comprise a regulated enterprise, governed by Chapter 718, Florida Statutes, and by the Florida Administrative Code, Chapters 61B-15 through 25, 45 and 50.  See Ch. 718, Fla. Stat. (2013); Fla. Admin. Code chs. 61B-15 - 61B-25, 61B-45, and 61B-50.

17.      Numerous Unit Owners have advised the Associations that they believe they have valid claims for fraud and deceit against the Debtors and their officers based upon representations made to the Unit Owners in connection with the sale of their Units.  It is entirely likely that the Florida Department of Business Regulation, Division of Condominiums, Timeshares and Mobile Homes will wish to take an active role in these Chapter 11 Cases and may initiate actions of its own against the Debtors.

18.      Further, the Florida Department of Revenue and Miami-Dade County, Florida, have direct interests in these Chapter 11 Cases.  Taxes arising from any sale of the Debtors' assets will be subject to taxation by the Florida Department of Revenue, especially if the sale of the Debtors' assets occurs pursuant to Bankruptcy Code Section 363 instead of under a chapter 11 plan.  Miami-Dade County, Florida has claims for real property taxes that become a secured lien against the real property owned by the Debtors as of January 1 of each year.  See Ch. 917 Fla. Stat. § 122.  Customarily, the County Attorney for Miami-Dade County, Florida takes an active role in any chapter 11 case in which there are significant real property taxes owed.

C.    **Litigants with Potentially Significant Claims**
      **in Florida have an Interest in these Proceedings.**

19.    The Debtors are also involved in a number of lawsuits relating to the various condominium declarations, as well as commercial issues, and other claims for injuries and damages.  See Barsanti Decl. at Ex. G.  Of the eleven actions in which the Debtors have been a party since 2009, all were (or are) being litigated in state courts in Miami-Dade County, Florida. Not a single case over that period was filed in state or federal court in New York.

20.    In light of the strategy being employed by the Debtors to dispose of their assets pursuant to Bankruptcy Code Section 363 and seek declaratory relief from this Court pertaining to the Associations' claims in the State Court Actions, it is critically important for the Court to appreciate the nature of the State Court Actions.[2]   By the State Court Actions, the Associations seek relief with respect to a number of issues arising from the Debtors' conduct that impact the manner in which the Debtors, and any successor owner, operate the Master Association and the Non-Retail Shared Facilities, including the following:

a.    Whether, under the Master Declaration, 6801 Central, or any successor in interest, can include: (i) Spa-related line items in the Non-Retail Shared Facilities assessments, including but not limited to:  (A) Spa Attendant, (B) Spa expenses, (C) Fitness Instructors, (D) Office Expense Fitness, and (E) Spa Expense Supplies; and (ii) Hotel-related line items in the Non-Retail Shared Facilities

---

[2]    The State Court Actions are as follows:  (i) *Central Carillon Beach Condominium Association, Inc., South Carillon Beach Condominium Association, Inc. v. FL 6801 Collins Central LLC, Carillon Hotel and Spa Master Association, Inc., North Carillon Beach Condominium Association, Inc.*, Case No. 2014-5408-CA (25), pending in the Circuit Court in and for Miami-Dade County, Florida; and (ii) *North Carillon Beach Condominium Association, Inc., vs. FL 6801 Collins North LLC, FL 6801 Collins South LLC, FL 6801 Collins Central LLC and W Capital Group, LLC*, Case No. 14-004356 CA (04), pending in the Circuit Court in and for Miami-Dade County, Florida.  Copies of the complaints (without exhibits) filed in the State Court Actions are attached to this Motion as **Exhibit A**.  Capitalized terms not otherwise defined in paragraph 26 shall have the meaning provided therefor in the complaints.

9

Budget, including:  (A) IT Systems & Technology Share, (B) Concierge, and (C) Contingency;

b.      Whether under the Master Declaration, 6801 Central, or any successor in interest, can assess Garage Costs by including Valet Parking Services as part of the Non-Retail Shared Facilities when Unit Owners are prohibited from self-parking their vehicles and, prior to 2012, such expenses were not included in the Shared Facilities assessments;

c.      Whether under the Master Declaration, 6801 Central, or any successor in interest, can assess costs for utilities based upon a purported square footage allocation methodology instead of based upon usage;

d.      Whether 6801 Central, or any successor in interest, is prohibited from enacting rules and regulations relating to Spa usage which are in direct conflict with the rights of Unit Owners set forth in the Prospectus for each Condominium Tower, upon which the Unit Owners relied in purchasing their units; and,

e.      Whether 6801 Central, 6801 North and 6801 South, or any successor "Declarant" under the Condominium Declarations for the three Condominium Towers, is entitled to exercise reserved rights, if any, in such a way that would fundamentally and adversely change or alter the character of the exclusive and private lifestyle that is the key ambient element of Canyon Ranch Miami.

## RELIEF REQUESTED

21.    By this Motion, the Associations respectfully request entry of an Order, substantially in the form attached hereto as **Exhibit B**, transferring the Chapter 11 Cases to the United States District Court for the Southern District of Florida, in the interest of justice and for the convenience of the parties, pursuant to 28 U.S.C. §§ 1408 and 1412, Bankruptcy Rule 1014, and Bankruptcy Code Section 105(a).

## BASIS FOR RELIEF REQUESTED

22.    Section 1408 of title 28 of the United States Code sets forth the venue in which a case brought under Title 11 may be commenced, as follows:

> Except as provided in section 1410 of this title [pertaining to cases ancillary to foreign proceedings], a case under title 11 may be commenced in the district court for the district -
>
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one hundred and eighty day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
>
> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

23.    In turn, Bankruptcy Rule 1014 provides:

> If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014.

11

24.     Where venue is proper in multiple districts under Section 1408 of Title 28 of the United States Code, a party-in-interest may seek to have the case transferred to another proper venue.  See 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."); see also In re Statewide Theatres Corp., 4 F. Supp. 86, 87 (D. Del. 1933) (finding expansive standing for parties to challenge venue when noting "'parties in interest' include not only general unsecured creditors but secured creditors, the bankrupt, and every other party *whose pecuniary interest is affected by the proceedings.*") (emphasis added).

25.     The Court is authorized to transfer venue for a chapter 11 case where the transfer is (a) in the interest of justice; or (b) for the convenience of the parties.  See 28 U.S.C. § 1412; see also In re Patriot Coal Corp., 482 B.R. 718, 738-739 (Bankr. S.D.N.Y. 2012) ("Section 1412 is written in the disjunctive, meaning that each of the two prongs – 'in the interest of justice' or 'for the convenience of the parties' -- constitutes an independent ground for transferring venue."); *accord*, In re Asset Resolution LLC, No. 09-16142 (AJG) 2009 WL 4505944, at *2 (Bankr. S.D.N.Y. Nov. 24, 2009); In re Dunmore Homes, Inc., 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008).

26.     Here, both prongs of the disjunctive test are satisfied.  Courts in this jurisdiction consider a host of factors in evaluating whether the interests of justice and convenience of parties mandate the transfer of venue:

27.     **Interests of Justice:**  The "interests of justice" test has been characterized as a broad and flexible standard.  In re Enron Corp., 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002) (citing Gulf States Exploration Co. v. Manville Forest Prods. Cor. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1391 (2d Cir. 1990)).  Under the interests of justice test, the court

considers whether:  (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed.  See Enron Corp. v. Arora (In re Enron Corp.), 317 B.R. 629, 638-39 (Bankr. S.D.N.Y. 2004).

28.    **Convenience of Parties:**  The "convenience of parties" test has six factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result.  See Dunmore Homes, 380 B.R. at 671-672.

29.    Considered both separately and collectively, these factors overwhelmingly weigh in favor of granting the relief requested in the Motion.

A.    **Transferring the Chapter 11 Cases to the United States District Court for the Southern District of Florida is in the Interest of Justice.**

30.    **Economic and Efficient Administration of the Estate**.  Of the host of factors considered by courts when determining whether to transfer a bankruptcy case, "[t]he factor given the most weight is the promotion of the economic and efficient administration of the estate." Patriot Coal Corp., 482 B.R. at 740 n. 31 (citing In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1247 (5th Cir. 1979)).  "[T]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis.  It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy

estate, judicial economy, timeliness, and fairness. . . ."  <u>Manville Forest Prods. Corp.</u>, 896 F.2d at

1391.

31.    Efficiency and fairness dictate that these Chapter 11 Cases be transferred to the

Southern District of Florida.  Transferring these cases to the Southern District of Florida will

allow the efficient resolution of legal issues grounded in Florida state law that may need to be

decided in connection with a Bankruptcy Code Section 363 sale of the Debtors' assets and are

integral to determining the Unit Owners' rights and the value of the Debtors' assets.  To that end,

the Southern District of Florida has significant experience and expertise to address issues arising

under Florida state law.  Further, both the Debtors and the Associations have already engaged

professionals who can ably represent their interests in Florida.  All of the Debtors' assets and

their operational records are located in Miami and virtually all of the Debtors' creditors are

located within Florida, including the Associations and many of the Unit Owners who may be

asserting claims in these Chapter 11 Cases.

32.    In addition, given the nature of the Debtors' assets, all of which are located in

Florida, most material witnesses will be located in Florida, a fact that weighs heavily in favor of

transferring these cases to the Southern District of Florida.  <u>See</u> <u>In re Lakota Canyon Ranch</u>

<u>Dev., LLC</u>, No. 11-03739-8, 2011 WL 5909630, at *3-*4 (Bankr. E.D.N.C. June 21, 2011)

(transferring cases to Colorado after determining, among other things, that "[b]ecause of the

location and nature of the Debtor's assets, the appraisers, and real estate sales experts will most

likely be from Colorado" and so the estate and secured lenders should not have to bear the cost

of transporting those witnesses, especially where the only material witness living in the

jurisdiction where the debtor filed was the member/manager of the debtor's limited liability

company).  Predictably, the Debtors will seek to present Florida-based witnesses in support of

the relief and findings requested in the Sale Motion, including the Debtors' real estate broker responsible for the marketing of Canyon Ranch Miami, the Debtors' property manager, CR Miami, LLC and the Debtors' expert witness on Florida condominium law.

33.     While certain professionals based in the Northeast and employees of LBHI or Alvarez & Marsal LLC ("A&M") may have to travel farther, or participate telephonically, such is of little moment if the goal is to maximize estate value by efficiently administering the sale of the Debtors' assets.  In a recent decision by this Court to transfer venue to Missouri, this Court recognized that advances in technology "can and should be utilized to allow unlimited real-time access to these proceedings for those who are unable to travel to [the forum to which the case is transferred]."  Patriot Coal, 482 B.R. at 755.

34.     Moreover, these are not bankruptcy cases in which the Debtors' employees require ready access to the bankruptcy court, because the Debtors do not have any employees. See Barsanti Decl., at Ex. H.  Instead, the Debtors operate through their property manager, CR Miami, LLC, an affiliate of Canyon Ranch, which performs its services and maintains the Debtors' books and records at Canyon Ranch Miami in Miami Beach, Florida.

35.     There is certainly nothing unfair about transferring these cases to a venue in which virtually all of the unsecured creditors,[3] the Unit Owners, state regulators, and numerous other parties in interest reside and may much more easily participate in the Chapter 11 Cases. The Debtors' assets are centralized in the Southern District of Florida, a venue that is well suited

---

[3]     The Debtors' sole purported secured creditor is PAMI ALI, LLC, a Delaware limited liability company, which is also the parent company of Debtor 6801 Spirits.  Its business representative appears to be Anthony Barsanti, the same individual who filed the Declaration on behalf of the Debtors in support of their chapter 11 petitions and first day motion.  As a result, it does not appear that the transfer of venue of these Chapter 11 Cases from New York to Florida will cause any additional hardship for the Debtors' secured creditor since the same individual speaks for the secured creditor as for the Debtors.

14-11691-scc   Doc 46   Filed 06/17/14   Entered 06/17/14 21:24:56   Main Document
Pg 21 of 30

and positioned to handle these Chapter 11 Cases efficiently and readily accessible to all parties in interest. The decision to file these Chapter 11 Cases at a great distance from the location of the Debtors' assets coupled with the summary declaratory relief the Debtors seek in connection with the Sale Motion raises the specter of forum shopping to effect a tactical advantage over the Associations with respect to the issues raised in the State Court Actions, as well as to quell opposition from Unit Owners generally. Moreover, it would be grossly unfair to require those opposing the relief sought by the Debtors to largely rely on depositional testimony of witnesses who cannot be compelled to appear before this Court while the Debtors incur the administrative expense of producing friendly Florida witnesses in New York.

36. Given that the Chapter 11 Cases contemplate the sale of real property in Miami-Dade County, Florida, the County Attorney for Miami-Dade County and the Florida Department of Revenue likely will also wish to take an active role in these cases, particularly given the real property tax obligations and potential transfer taxes arising from the sale of the Debtors' assets at Canyon Ranch Miami. Moreover, to the extent that any of the claims of the Unit Owners raise issues arising from the sale of the units in Canyon Ranch Miami, the State of Florida Department of Business Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes is likely to also become involved in the Chapter 11 Cases. Such participation in the Chapter 11 Cases will unfairly come at unnecessary public expense unless venue is transferred from New York to Miami.

37. **Judicial Economy**. Courts have found that the comparative congestion of dockets is relevant to the "interests of justice" test. See In re Apple, Inc., 602 F.3d 909, 915 (8th Cir. 2010) ("Docket congestion is a permissible factor to consider . . . ."); Gro Master, Inc. v. Farmweld, Inc., 920 F. Supp. 2d 974, 993 (N.D. Iowa 2013) ("Factors that the court has found

are frequently relevant to the 'interests of justice' issue include . . . comparative congestion of dockets.").  The docket for the Bankruptcy Court for the Southern District of New York is growing faster than that of the Southern District of Florida.  During the 12-month period ended March 31, 2014, there were 395 chapter 11 cases filed in this Court, compared with 310 chapter 11 cases filed in the Southern District of Florida. See U.S. Bankruptcy Courts – Business and Nonbusiness Cases Commenced, by Chapter of the Bankruptcy Code, During the 12-Month Period Ending March 31, 2014, available at: http://www.uscourts.gov/uscourts/Statistics/BankruptcyStatistics/BankruptcyFilings/ 2014/0314_f2.pdf (last accessed on June 17, 2004).

38.    Additionally, notions of judicial economy take into account the "learning curve" associated with a case.  See In re EB Capital Mgmt. LLC, No. 11-12646, 2011 WL 2838115, at *5-6 (Bankr. S.D.N.Y. July 14, 2011) (granting motion to transfer venue after finding, *inter alia*, that "there has been no 'learning curve' in this case because this is the first motion pending before the [c]ourt").  While the Court has conducted a first day hearing and has some familiarity with the Chapter 11 Cases, the twenty-day "interim period" has yet to run such that the Chapter 11 Cases are still at a nascent stage.  Moreover, given the numerous Florida state law issues that will arise in these Chapter 11 Cases, and the experience of the bankruptcy bench in the Southern District of Florida in dealing with such issues, it is respectfully submitted that if any court has a short learning curve for these Chapter 11 Cases, it is the bankruptcy court in Miami.

39.    **Ability to Receive a Fair Trial**.  The Associations do not question that this Court and the bankruptcy court in Miami alike will fairly administer the Chapter 11 Cases and judiciously dispose of contested matters.  However, the ability to receive a fair trial has other nuances, including a convenient forum where litigants do not suffer any disadvantage with

17

respect to the availability and presentation of testimony and evidence.  In that light, transfer advances fairness for the reasons stated above.

40.    **Forum's Interest in Having Controversy Decided Within its Borders**.  The United States Bankruptcy Court for the Southern District of Florida is the local court for the Debtors, the Unit Owners, the majority of creditors, and the regulatory authorities with police powers over the Debtors' business and assets.

41.    The bankruptcy court in Miami is a forum with a clear interest in adjudicating the Chapter 11 Cases.  See B.L. of Miami, 294 B.R. at 332 (granting a motion to transfer venue after noting, *inter alia*, that "matters concerning real property have always been of local concern and traditionally are decided at the situs of the property," citing In re Enron Corp., 284 B.R. 376, 392 (Bankr. S.D.N.Y. 2002)).  Ultimately, the Debtors' extensive ties to Florida favor the transfer of venue since, "[w]here a debtor's assets consist solely of real property, as with Debtor in this case, courts 'have held that transfer of venue is proper . . . .'" B.L. of Miami, 294 B.R. at 332; *accord*, In the Matter of Ocean Properties of Delaware, Inc., 95 B.R. 304 (Bankr. D. Del. 1988) (granting motion to transfer venue from Delaware to Florida when debtors' hotel, real estate management and sales business was in Florida, Florida legal issues would have to be resolved, witnesses were in Florida, and creditors were in Florida); Dunmore Homes, 380 B.R. at 677 (granting motion to transfer venue from New York to California of real estate development company whose main assets were California real estate owned by its subsidiaries, and noting "[m]arketing and selling its California real estate assets can best be overseen by a California bankruptcy court with greater familiarity with the market"); In re Ofia Realty Corp., 74 B.R. 574 (Bankr. S.D.N.Y. 1987) (granting motion to transfer venue from New York to Texas where all of debtor's real property assets, creditors and managing agent were in Texas, citing In re Old Delmar Corporation, 45

18

B.R. 883, 884 (S.D.N.Y. 1985) in which the District Court observed, "The factor which 'overwhelmingly militates in favor of transfer' is that all of the debtors' assets are located in Texas.").

42.    Indeed, condominium development, which is a vital segment of the South Florida economy, is finally on the uptick after the Great Recession left that community reeling with tens of thousands of unsold condominium units.    That market uniquely depends on consumer confidence, particularly since construction is financed in large part by buyer deposits.    The Debtors' proposed sale of Canyon Ranch Miami includes an effort to remove the Canyon Ranch "flag" from the property despite the fact that Canyon Ranch was the exclusive lifestyle the Debtors sold to more than 500 Unit Owners.    The Debtors' efforts to execute that strategy in New York may well have a significant adverse impact on consumer confidence as prospective buyers generally become concerned that they may have to defend their interests in a court in some distant jurisdiction.

43.    Further, the bankruptcy court in Miami has prior experience overseeing chapter 11 cases involving debtors similar to these Debtors (including the adjudication of complex Florida condominium law issues that will likely be present in the Debtors' cases). See, e.g., In re Walker, No. 07-14797-BKC-LMI, 2008 WL 1781181 (Bankr. S.D. Fla. Apr. 17, 2008) (Isiocoff, J.) (interpreting chapter 720, Florida Statutes, and whether a homeowner association has the right to promulgate bylaws prohibited by the Declaration of Covenants); In re Bayshore Yacht & Tennis Club Condominium Ass'n, Inc., 336 B.R. 866 (Bankr. S. D. Fla. 2006) (Mark, J.) (interpreting duties of condominium association pursuant to Declaration of Condominium and Florida Statutes); In re Suncoast Towers East Associates, 241 B.R. 476 (Bankr. S.D. Fla. 1999) (Cristol, J.) (analyzing rights of prospective purchasers to rescind sales contracts by evaluating

declaration of condominium, by-laws of condominium association, articles of incorporation of association, association's rules and regulations, and Florida state law governing condominiums); In re Harbour East Dev., Ltd., No. 10-20733-BKC-AJC, 2011 WL 65104 (Bankr. S. D. Fla. Jan. 6, 2011) (Cristol, J.) (analyzing rights of debtor to lease condominium units by evaluating condominium declaration, prospectus and construction loan agreement).

44.    Miami-Dade County, Florida is also the venue for all of the Debtors' pending litigation.  The Debtors are involved in the State Court Actions in Florida, as well as other lawsuits involving commercial issues in Florida.  See Barsanti Decl., at Ex. G.

45.    **Debtors' Original Choice of Forum.**  While the Debtors' venue choice is normally accorded significant weight, transferring venue is appropriate if the remaining relevant factors favor transfer and the Debtors' interests will not be harmed or the estates suffer a diminution in value.  Accordingly, it is appropriate to transfer venue under 28 U.S.C. § 1412 when the overall circumstances evidence that the transfer of venue is in the interest of justice. See Dunmore, 380 B.R. at 675; Clark v. Chrysler Grp., LLC, No. 10-3030, 2010 WL 4486927, at *9 (Bankr. E.D. Pa. Nov. 5, 2010) ("consider[ing] Plaintiff's choice of forum and the convenience afforded to Plaintiff in allowing the parties to litigate the matter in Pennsylvania" but nevertheless transferring the action to the Bankruptcy Court for the Southern District of New York because plaintiff's choice of forum was "outweighed by" those factors that promoted venue transfer in the interest of justice and for the convenience of the parties); In re Ocean Props. of Del., Inc., 95 B.R. at 305 (granting motion to transfer venue after explaining that, although "the debtor's choice of forum is entitled to 'great weight'" where venue is proper, a venue transfer motion "requires balancing this factor with several others," including "the proximity of the court

20

to interested parties as well as the location of assets, the economics of administering the estate and the relative economic harm to debtor and other interested parties").

46.     Considering all of the relevant factors, and focusing on promotion of the economic and efficient administration of the estate, these Chapter 11 Cases should be transferred to the Southern District of Florida.

**B.     Convenience of the Parties Strongly Favors**
        **Transferring the Chapter 11 Cases to the Southern District of Florida.**

47.     While the Associations believe the "interest of justice" test is satisfied and justifies transfer of the Chapter 11 Cases to the Southern District of Florida, consideration of the "convenience of the parties" test provides an independent basis for transferring the Chapter 11 Cases.

48.     **Proximity of Creditors.**  The Debtors acknowledge that virtually all of their unsecured creditors are located or operate in Florida.  See Barsanti Decl. at ¶ 25, Ex. B. Moreover, it is reasonable to anticipate that once the Unit Owners receive notice of the Chapter 11 Cases, many of them may assert claims against the Debtors.  It matters not whether the Unit Owners purchased their Units as primary residences or second homes since all Unit Owners share a nexus to the Southern District of Florida as property owners at Canyon Ranch Miami.  It appears that the only substantial creditor residing outside of Florida is the Debtors' direct and indirect parent entity, PAMI ALI LLC, which allegedly loaned the Debtors funds shortly before the petition date to pay an insurance obligation purportedly due in respect of the property. However, a Delaware bankruptcy court recently noted that the location of a debtor's general unsecured creditors was of paramount importance when determining whether a particular venue was convenient for the parties.  See In re DesignLine Corp., No. 13-12089 (Bankr. D. Del. Sept. 4, 2013) (Hr'g. Tr. at 76:22 – 77:2) (attached hereto as **Exhibit C**) (rejecting argument that

convenience for secured lenders is of utmost importance and noting that "it is important to make sure the unsecureds participate in the case to assure that everything [is] just not railroaded through based on an assumption that the secured creditors are the only ones with an interest"). Furthermore, as a practical matter, secured lenders are "in the best position to pay to go" to the state where the general unsecured, and typically not as well financed, creditors reside. Id. at 77:7-11.6.    This is particularly true here since the Associations are Florida not-for-profit corporations that will be required to levy a special assessment against the Unit Owners in order to fund the litigation fees and costs associated with the Chapter 11 Cases.    The Condo Associations reasonably believe that their litigation fees and costs (including travel) associated with these Chapter 11 Cases will be lower if venue is transferred to the Southern District of Florida than if the cases remain in this Court.

49.    **Proximity of the Debtors.**    The Debtors' assets, operations, books and records and property management exist almost exclusively in Florida.    The Debtors have no employees and their senior management is comprised of representatives of A&M, who, upon information and belief, regularly travel for their professional engagements.    Nearly all of the Debtors' officers are employees of LBHI.    LBHI's general bankruptcy counsel, Weil Gotschal & Manges, maintains an office in Miami.    Based on information and belief, attorneys in the Miami office assist their New York colleagues in LBHI bankruptcy matters, including in other bankruptcy cases pending in Miami.    See, e.g., In re Fontainebleau Las Vegas Holdings, LLC et al., Case No. 09-21481-BKC-AJC (Bankr. S.D. Fla.).    Even if they are required to travel to participate in these proceedings, the convenience of other interested parties should be paramount.    See Ocean Props. of Del., 95 B.R. at 307 (granting motion to transfer venue after noting that, although a venue transfer may result in nominally higher costs for the debtors to administer their estates,

"[t]he cost to Debtors is considerably less than the total cost other interested parties would have to incur to participate in these reorganizations").

50.  **Proximity of Witnesses.**  The Debtors are party to a number of pending lawsuits - all of which are being litigated in state courts in Florida – including the State Court Actions. Given that substantially all of the Debtors' operations, books and records, and assets are located in Florida, and the expert witnesses retained by the Debtors and the Associations are located in Florida, the proximity of witnesses factor weighs in favor of transferring these Chapter 11 Cases to Florida, to minimize the cost to the parties involved in these Chapter 11 Cases.  See In re Ofia Realty Corp., 74 B.R. at 577 (granting a motion to transfer venue from New York to Texas, and determining that the economics of administering the case where the debtor's assets are located will be furthered because all of the witnesses and transactions testified to will be rooted in that forum, and creditors, their witnesses and their counsel will be better able to participate); In re Asset Resolution LLC, No. 09-16142 (AJG), 2009 WL 4505944, at *5 (Bankr. S.D.N.Y. Nov. 24, 2009) (granting a motion to transfer venue from New York to Nevada, after noting that ongoing litigation in Nevada necessitated the debtor's CRO who resided in Utah to appear in Nevada courts, and that a majority of the significant creditors live either in or near Nevada, rendering Nevada a more convenient venue for such creditors).

51.  **Location of the Assets.**  All of the Debtors' assets are located in the state of Florida.  Canyon Ranch Hotel & Spa, as well as thirteen condominium units at Canyon Ranch Miami are the scope of the assets owned by the Debtors.  See Barsanti Decl. at ¶7.

52.  **Economic Administration of the Estate.**  For the reasons set forth in paragraphs 30 to 38 above, the Associations submit that the Chapter 11 Cases can be more economically

23

administered in the Southern District of Florida where substantially all of the witnesses, the assets, and creditors reside.

53.    Based on the location of the Debtors' assets, principal place of business, creditors, books and records, potential witnesses, and regulators, the convenience of the parties overwhelmingly favors granting the relief requested in this Motion.

## NO PRIOR REQUEST

54.    No prior motion for the relief requested herein has been made to this Court or any other court.

## NOTICE

55.    Notice of this Motion has been given to:  (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) the Debtors' postpetition lender; (d) creditors on the Debtors' schedule of the holders of the twenty largest unsecured claims; and (e) parties who have filed notices of appearance.  The Associations respectfully submit that no other or further notice need be given.

## CONCLUSION

WHEREFORE, for the reasons stated in this Motion, the Associations respectfully request that this Court enter an Order, substantially in the form attached hereto as **Exhibit B**: (i) transferring the Chapter 11 Cases to the United States District Court for the Southern District of Florida; and (ii) granting the Associations such other and further relief as this Court may deem just and proper.

Dated: New York, New York
June 17, 2014

**NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., CENTRAL CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., AND SOUTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC.**

By their counsel,
BROWN RUDNICK LLP
By:

By: */s/ Edward S. Weisfelner*
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

- and -

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
Scott L. Baena (*pro hac vice* pending)
Mindy A. Mora
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone:  (305) 374-7580
Facsimile:  (305) 351-2242

25