UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
: 
In re: : Chapter 11
:
: Case No. 14-11691 (SCC)
FL 6801 SPIRITS LLC, *et al.*, :
: (Jointly Administered)
Debtors. :
:
-------------------------------------------------------------x

# ORDER (A) APPROVING (i) BIDDING PROCEDURES, (ii) FORM AND MANNER OF NOTICES, AND (iii) FORM OF ASSET PURCHASE AGREEMENT, INCLUDING BID PROTECTIONS; (B) SCHEDULING THE TIME, DATE AND PLACE FOR THE AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF</u>

Upon consideration of that portion of the motion (the "Procedures Motion"), dated June 1, 2014, of FL 6801 Spirits LLC, *et al.* (collectively, the "Debtors")[1], for entry of an order pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) approving the proposed bidding procedures (the "Bidding Procedures") to be used in connection with the proposed sale (the "Sale") of the Assets[2] to 360 Miami Hotel & Spa LLC (the "Purchaser"), or to any competing bidder (the "Successful Bidder") that submits a higher or better offer for the

---

[1]    The Debtors consist of the following entities:  FL 6801 Spirits LLC, FL 6801 Collins North LLC, FL 6801 Collins Central LLC, FL 6801 Collins South LLC.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures and/or the Purchase Agreement (defined below).

Assets, (ii) scheduling an auction (the "Auction") for the Assets and a hearing (the "Sale Hearing") to consider approval of the Sale, and (iii) approving the form and manner of notice of the Auction and the Sale Hearing; and this Court having held a hearing on the Bidding Procedures on June 30, 2014 (the "Procedures Hearing"); and this Court having reviewed, among other things the Procedures Motion, and objection (the "Objection") to the Procedures Motion filed by North Carillon Beach Condominium Association, Inc., Central Carillon Beach Condominium Association, Inc. and South Carillon Beach Condominium Association, Inc. (collectively, the "Associations") [ECF No. 52] and the Debtors' response to the Objection (the "Response") [ECF No. 71]; and based on the Procedures Motion and the record of the Procedures Hearing, it now appearing that the relief requested in the Procedures Motion is in the best interest of the Debtors' estates and all parties in interest; and after due deliberation thereon and good cause appearing therefor an no further notice being required, it is hereby:

## FOUND AND DETERMINED THAT:[3]

A.      This Court has jurisdiction over the Procedures Motion pursuant to 28 U.S.C. § 1334.  Consideration of the Procedures Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

B.      Good and sufficient notice of the Procedures Motion has been given

and no further notice is required.   A reasonable opportunity to object or be heard

regarding the relief requested in the Procedures Motion has been afforded to all

interested persons and entities, including (i) counsel for the Purchaser, Fulbright &

Jaworski LLP, 98 San Jacinto Blvd., Suite 1100, Austin, Texas 78701-4255, Attn:  Jane

Snoddy Smith, Esq. and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, Attn:

Kristian W. Gluck, Esq.; (ii) all applicable federal, state, and local taxing and regulatory

authorities of the Debtors or recording offices or any other governmental authorities

that, as a result of the sale of the Assets, are reasonably expected by the Debtors to have

claims, contingent or otherwise, in connection with the Debtors' ownership of the

Assets or have any known interest in the relief requested by the Procedures Motion,

including (a) the Internal Revenue Service, P.O. Box 21126, Philadelphia, Pennsylvania

19114, (b) the Florida Licensing Authorities, and (c) the City of Miami Beach, City Hall,

1700 Convention Center Drive, Miami Beach, Florida 33139; (iii) the Debtors' known

secured creditors and lien holders, including all creditors or their counsel known to the

Debtors to assert a lien (including any security interest), claim, right, interest, or

encumbrance of record against all or any portion of the Assets; (iv) the United States

Attorney for the Southern District of New York; (v) the Office of the United States

Trustee for Region 2, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq., U.S.

Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; (vi)

the Debtors' Secured Lender, PAMI ALI LLC, c/o Weil, Gotshal & Manges LLP, Attn:

Jacqueline Marcus, Esq., 767 Fifth Avenue, New York, New York 10153; (vii) CR Miami,

3

LLC, Attn: Jerry Cohen and Gary Milner, 8600 East Rockcliff Road, Tucson, Arizona 85750; W. James Harrison, Esq., W.J. Harrison & Associates, P.C., 3561 East Sunrise, Suite 201, Tucson, Arizona 85718 (counsel to CR Miami, LLC); (viii) parties to executory contracts and unexpired leases proposed to be assumed and assigned, or rejected as part of the Proposed Sale; (ix) counsel to the North Tower Association; (x) counsel to the Central and South Tower Associations; (xi) all owners of units at the Assets; (xii) the creditors listed as holding the 20 largest unsecured claims against the Debtors' estates (on a consolidated basis); (xiii) all entities that have expressed an interest to the Debtors' or their advisors in purchasing the assets subject to this Order;  (xiv) all parties listed on Schedule 6 to the Purchase Agreement;  and (xv) all other parties that filed notices of appearance in the Chapter 11 cases ((i)-(xv) shall be collectively referred to herein as the "Notice Parties").

C.    The proposed notice of the Sale and the Bidding Procedures is good, appropriate, sufficient and is reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice of the Sale of the Assets, the assumption and assignment of the Assigned Contracts (as defined herein), or the Bidding Procedures, as set forth herein and in the Procedures Motion, is required.

D.    The Cure Notice (as defined herein) attached hereto as **Exhibit C** is reasonably calculated to provide all non-Debtor counterparties (the "Contract Parties") to the Debtors' executory contracts and unexpired leases (each a "Contract or Lease" and, collectively, the "Contracts and Leases") with proper notice of the potential

assumption and assignment of their Contract or Lease and any cure amounts relating thereto and will be served on such Contract Parties in accordance with paragraph 17 hereof; provided, however, that the mere listing of any Contract or Lease on the Cure Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors with respect to such Contracts and Leases are reserved.

E.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Procedures Motion, including this Court's approval of (i) the Bidding Procedures, attached hereto as **Exhibit A**, (ii) the form and manner of service of the notice of the Auction and Sale Hearing, attached hereto as **Exhibit B** (the "Notice of Auction and Sale Hearing"), (iii) the procedures for the assumption and assignment of certain Contracts and Leases (collectively, the "Assigned Contracts"), including notice of the proposed cure amounts, and (iv) the Break-Up Fee.

F.      The Debtors have articulated good and sufficient reasons for, and the best interests of the Debtors' estates will be served by, this Court scheduling a subsequent hearing to consider whether to grant the relief requested in that portion of the Debtors' motion (the "Sale Motion"), dated June 1, 2014, for entry of an order (i) approving the Sale of the Assets free and clear of liens, claims, encumbrances, and other interests, and (ii) authorizing the assumption and assignment of certain executory contracts, including approval of the proposed Sale in accordance with either (i) the Purchase Agreement, or (ii) such other agreement by and between the Debtors and the Successful Bidder, which may be consummated pursuant to a chapter 11 plan of

5

liquidation, in each case, free and clear of, among other things, all liens, claims,

encumbrances, and interests, other than permitted exceptions (collectively, "Liens,

Claims and/or Interests") (with the same to attach to the proceeds therefrom) pursuant

to section 363 of the Bankruptcy Code.

G.    The entry of this Order is in the best interests of the Debtors, their

estates, their creditors and other parties in interest.

H.    The Debtors have exercised sound business judgment and

presented sound business reasons for approval of the Bid Procedures and Break-Up

Fee.  The Bidding Procedures are reasonably designed to maximize the value to be

achieved for the Assets.

I.    The Break-Up Fee set forth in the Purchase Agreement, if triggered:

(i) shall be deemed an actual and necessary cost and super-priority administrative

expense of preserving the value of the Debtors' estates, within the meaning of sections

364(c)(1) and 503(b)(1) of the Bankruptcy Code, (ii) is reasonable and appropriate,

particularly in light of the size and nature of the sale and the efforts that have been or

will be expended by the Purchaser notwithstanding that the proposed sale is subject to

higher or otherwise better offers for the Assets, (iii) was negotiated by the parties at

arm's length and in good faith, (iv) is commensurate with the real and substantial post-

petition benefits conferred upon the Debtors' estates by the Purchase, and (v) is

necessary to ensure that the Purchaser will continue to pursue its proposed acquisition

of the Assets contemplated by the Purchase Agreement.

J.      The proposed sale of the Assets is consistent with section 363(b)(1)(A) of the Bankruptcy Code and the Debtors' existing privacy policy, and no consumer privacy ombudsman is necessary in connection with the sale of the Assets.

K.      The entry of this Order is without prejudice to the State Court Actions and all rights of the Associations and the Debtors relating thereto are expressly reserved.[4]

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Procedures Motion is GRANTED solely to the extent provided in this Order.

2.      Any and all objections to the relief requested in the Procedures Motion that have not been withdrawn, waived, resolved, or settled, are hereby denied and overruled.

3.      The Bidding Procedures, as set forth on **Exhibit A** and incorporated herein by reference as if fully set forth herein, are approved and shall apply with respect to the sale of the Assets.  Notwithstanding the above, any party in interest may object at the Sale Hearing to, *inter alia*, the criteria used by the Debtors (after consultation with any official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee") or the Associations, provided that, the Associations are not a Qualified Bidder) to select the highest or otherwise best offer for the Assets.

---

[4]      Capitalized terms in Paragraph K shall have the meanings ascribed to them in the Objection.

4.      The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

**Important Dates and Deadlines**

5.      **Bid Deadline.**  The deadline for submitting bids for the Assets (the "Bid Deadline") shall be August 14, 2014, at 4:00 p.m., or such later date to which the Debtors reasonably consent (after consultation with the Committee), but in no event later than three business days prior to the commencement of the Auction.  If the Debtors extend the Bid Deadline, the Debtors shall promptly notify all Potential Bidders of the extension.

6.      **Auction.** If Qualified Bids are timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall commence at 11:00 a.m. New York Time on August 19, 2014, at a location to be determined in New York, New York, or such later date and time as the Debtors shall notify all Qualified Bidders and counsel for the Purchaser; provided, however, in the event that no Qualified Bids (other than that submitted by the Purchaser) are received by the Bid Deadline, the Debtors shall not be required to conduct an Auction, and in such event the Debtors shall proceed with the approval of the Purchase Agreement.   Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that it has not engaged in any collusion with respect to the bidding or the Sale.

7.      Sale Hearing.  The Sale Hearing shall be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, on August 27, 2014 at 10:00 a.m. at the United States Bankruptcy Court, Courtroom 623, One Bowling Green, New York,

New York 10004.  At the Sale Hearing, the Court shall:  (i) consider approval of the Sale

to the Purchaser or an Alternative Transaction with a Successful Bidder; (ii) consider the

entry of the proposed sale order, substantially in the form attached to the Procedures

Motion as **Exhibit 3** (the "Sale Order"); (iii) consider any issues or objections that are

timely interposed by any parties;  and (iv) grant such other or further relief as this Court

may deem just or proper.

8.      Without prejudice to the Purchaser's rights under the Purchase

Agreement, the Sale Hearing (or any portion thereof) may be adjourned by the Court or

the Debtors, after consultation with the Committee, and the Purchaser or other

Successful Bidder, as applicable, from time to time without further order of this Court,

by filing a notice with this Court and serving such notice on all Qualified Bidders and

counsel for the Purchaser.

9.      Sale Notice.  The Notice of Auction and Sale Hearing substantially

in the form attached hereto as **Exhibit B** is hereby approved.

10.      Within two (2) business days after the entry of this Order, the

Debtors shall cause a copy of the Bidding Procedures, the Notice of Auction and Sale

Hearing, and this Order to be served upon the Notice Parties as well as the parties that

toured and/or made offers for the Assets via first class mail if they could be located.

11.      As soon as practicable after entry of this Order, the Debtors shall

cause the Notice of Auction and Sale Hearing, substantially in the form attached hereto

as **Exhibit B**, to be published once in the New York Times pursuant to Bankruptcy Rule

2002(l).

12.     The notice and publication as set forth in the preceding paragraphs

shall constitute good and sufficient notice of the Sale Motion, the Auction, the Sale

Hearing and the proposed Sale Order, and no other or further notice of the Sale Motion,

the Auction, the Sale Hearing and/or the proposed Sale Order shall be necessary or

required.

13.     Sale Objections.  Objections, if any, to the sale of the Assets, the

proposed form of Sale Order, or the relief requested in the Sale Motion, other than with

respect to the relief granted herein, shall: (i) be in writing; (ii) comply with the

Bankruptcy Rules; (iii) be filed with this Court and served so as to be **received** no later

than 4:00 p.m. prevailing Eastern Time on August 14, 2014 (the "Objection Deadline"),

provided, however, that supplemental objections relating to the conduct of the Auction,

the selection of the Successful Bidder (other than the Purchaser) or the terms of the

Successful Bid (other than the Purchase Agreement), may be filed with this Court and

served so as to be **received** no later than 4:00 p.m. prevailing Eastern Time on August

22, 2014 (the "Supplemental Objection Deadline") by:  (a) Togut, Segal & Segal LLP,

attorneys for the Debtors, One Penn Plaza, Suite 3335, New York, New York 10119,

Attention:  Frank A. Oswald, Esq.; (b) the United States Trustee for the Southern District

of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York,

New York 10014, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq.; and

(c) counsel for Purchaser, Fulbright & Jaworski LLP, 98 San Jacinto Blvd., Suite 1100,

Austin, Texas 78701-4255, Attn: Jane Snoddy Smith, Esq. and 2200 Ross Avenue, Suite

2800, Dallas, Texas 75201, Attn:  Kristian W. Gluck, Esq; and (d) Brown Rudnick LLP, 7

10

Times Square, New York, New York 10036:  Attn:  Edward S. Weisfelner, Esq. and

Howard S. Steel, Esq., as counsel to the Associations.  Only timely filed and served

responses, objections, and other pleadings will be considered by this Court at the Sale

Hearing.

14.    The failure of any person or entity to timely file an objection to the

Sale Motion shall, unless otherwise ordered by the Bankruptcy Court, forever bar any

objection to the Sale Motion or the relief requested therein, or to the consummation of

the Sale contemplated by the Purchase Agreement or an Alternative Transaction with

the Successful Bidder, if any (including the transfer of the Assets free and clear of Liens,

Claims and/or Interests).

### Assigned Contracts

15.    The notice of potential assumption and assignment of the Contracts

and Leases, substantially in the form attached hereto as **Exhibit C** (the "Cure Notice"), is

hereby approved.

16.    On or before ten (10) business days after the entry of this Order, the

Debtors shall file with the Bankruptcy Court and serve by first-class postage-prepaid

the Cure Notice on all Contract Parties and their counsel who have filed notices of

appearance in the Chapter 11 Cases.  The Cure Notice shall identify each of the

Contracts and Leases and provide the corresponding cure amounts that the Debtors

believe must be paid to cure all defaults under the Contracts and Leases to the extent

required by section 365 of the Bankruptcy Code (the "'Cure Amounts").  The Cure

Notice that the Debtors shall file with the Bankruptcy Court will include a comprehensive list of the Contracts and Leases with the corresponding Cure Amounts and the Cure Notice that the Debtors shall serve on Contract Parties shall be personalized.

17.    Unless the Contract Party to any Contract or Lease files an objection to its scheduled Cure Amount or to the assumption and assignment of a Contract or Lease, and serves a copy of the such objection so as to be actually received by the Notice Parties no later than the Objection Deadline , such Contract Party shall be forever barred, estopped, and enjoined from objecting (i) to the Cure Amount and from asserting that any additional amounts are due or defaults exist, (ii) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required consent to assumption or assignment has not been given, or (iii) that the Successful Bidder (including the Purchaser) has not provided adequate assurance of future performance.

18.    In the event of a timely filed objection and dispute regarding: (a) any Cure Amount with respect to any of the Contracts and Leases; (b) the ability of the Successful Bidder (including the Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under any of the Contracts and Leases; or (c) any other matter pertaining to assumption or assignment of any of the Contracts and Leases, the Debtors may, in consultation with the Committee, hold an amount equal to the claimed cure amount in reserve pending further order of the Court or agreement between the Debtors and the objecting party;

provided, however, that the Debtors are authorized to consensually resolve with an applicable counterparty any dispute regarding the amount of any Cure Amount or assignment to the Successful Bidder (including the Purchaser), without any further notice to or action, order, or approval of the Bankruptcy Court.  If the Debtors hold the claimed cure amount in reserve, the Debtors may assume and assign the Contracts or Leases without further delay, unless such Contract(s) or Lease(s) may not be assumed or assigned for reasons other than or in addition to the adequacy or inadequacy of the cure amount.

19.     No later than five (5) business days after the Closing Date, the Debtors will file a complete list of the Contracts and Leases that were assumed and assigned as Assigned Contracts as of the Closing Date in connection with the sale of the Assets.

20.     The Successful Bidder may determine to exclude any Contracts and Leases from the list of Assets at any time prior to the Closing.  The non-debtor party or parties to any such excluded contract will be notified of such exclusion by written notice as soon as practicable after such determination, which may be after the Sale Hearing.

**Break-Up Fee**

21.     The Break-Up Fee is hereby approved, authorized and binding upon the Debtors and their estates as a super-priority administrative expense.  The Debtors' obligation to pay the Break-Up Fee shall survive termination of the Purchase Agreement and shall be payable as provided in the Purchase Agreement as an

administrative expense claim in accordance with sections 105(a) and 503 of the Bankruptcy Code. The Debtors are authorized and directed to pay the Break-Up Fee to the Purchaser in accordance with the terms of the Purchase Agreement without further order of the Bankruptcy Court.

22. Nothing in this Order shall prohibit any Qualified Bidder from requesting payment of any incurred reasonable fees and expenses arising in connection with the due diligence investigation of such Qualified Bidder relating to a potential bid for the Assets as an administrative expense claim or substantial contribution claim under section 503 of the Bankruptcy Code or otherwise.

23. The Debtors' obligations under this Order, the provision of this Order, and the portions of the Purchase Agreement pertaining to the obligations to pay the Break-Up Fee shall survive confirmation of any chapter 11 plan or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted Debtors, as the case may be, after the effective date of a confirmed plan or plans in the Chapter 11 Cases (including any order entered after any dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code).

24. The full amount of the Break-Up Fee may be included in each bid by the Purchaser for the purposes of comparison to any Overbid (as defined in the Bid Procedures) in connection with each round of bidding in the Auction.

## Additional Provisions

25.     The Debtors, in consultation with the Committee, shall determine, consistent with the Bidding Procedures:  (i) which bidders are Qualified Bidders; (ii) which bids are Qualified Bids; (iii) which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; and (iv) whether to waive terms and conditions set forth herein with respect to all potential bidders.

26.     Nothing in the Bidding Procedures or this Order shall prohibit, restrict, or otherwise limit the ability of a Qualified Bidder to propose an Alternative Transaction that contemplates acquiring the Assets pursuant to the terms of a chapter 11 plan of liquidation.

27.     The rights of the Associations to object to the Sale and the relief requested in the Sale Motion with respect to approval of the Sale are fully reserved and preserved pending the Sale Hearing and the entry of this Order is without prejudice to the State Court Actions and all rights of the Associations and the Debtors relating thereto are expressly reserved.

28. Any Committee member that is affiliated with a person or entity, including the Associations, that intends to submit or submits a Qualified Bid for the Assets, shall be prohibited from exercising any consultation rights under this Order or the Bidding Procedures except to the extent that such consultation rights are available to all Qualified Bidders.

29.     The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

30.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived, and this Order shall be effective immediately upon its entry.

31.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: July 1, 2014
New York, New York

*/s/ Shelley C. Chapman*
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
          :
In re:                    :         Chapter 11
          :         Case No. 14-11691 (SCC)
FL 6801 SPIRITS LLC, *et al.*,     :         (Jointly Administered)
          :
               Debtors.    :
          :
----------------------------------------------------------------x

## BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures")[1] have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on [_____ __,] 2014 [Docket No. __] (the "Bidding Procedures Order") on the docket in the above-captioned jointly administered cases of FL 6801 Spirits LLC, *et al.*, (the "Debtors").[2]  The Bidding Procedures set forth the process by which the Debtors are authorized to conduct the sale (the "Sale") by auction of the Assets, as defined in that certain Purchase and Sale Agreement (the "Purchase Agreement") by and between the Collins Subsidiaries as Sellers (the "Sellers") and 360 Miami Hotel & Spa LLC, as stalking horse purchaser (the "Purchaser").

### Notice

The Debtors shall provide notice of the Bidding Procedures and the date for a hearing to approve the sale of the Assets (the "Sale Hearing"), together with a copy of the Purchase Agreement, to all parties identified by the Debtors as potentially having an interest in acquiring the Assets.

### Due Diligence

Parties interested in conducting due diligence should contact the Debtors' real estate brokers, CBRE Inc. ("CBRE") attention Christian Charre at (305) 381-6427 or Christian.Charre@cbre.com.   Prospective bidders that have executed an appropriate

---

[1]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Purchase Agreement.

[2]    The Debtors consist of the following entities:  FL 6801 Spirits LLC ("Spirits"), FL 6801 Collins North LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), FL 6801 Collins South LLC ("6801 South," together with 6801 North and 6801 Central, the "Collins Subsidiaries").

confidentiality agreement with CBRE will be afforded access to a virtual proprietary data room that contains information relating to the Assets. The Debtors and CBRE maintain the right to deny access to the proprietary data room to any party, in their discretion, including, without limitation, on the basis that such party might use such proprietary information in a competitive manner to the detriment of the Debtors, Canyon Ranch, the Purchaser or the Successful Bidder (as defined below), provided that such access shall not be denied to the North Carillon Beach Condominium Association, Inc., Central Carillon Beach Condominium Association, Inc. and South Carillon Beach Condominium Association, Inc. and its affiliates and related entities (collectively, the "Associations"). The Debtors and CBRE shall not be obligated to furnish any due diligence information other than that information contained in the virtual data room or after the Bid Deadline (as defined below). The Debtors and CBRE shall use good faith efforts to provide all prospective bidders with substantially the same access and information.

Each party submitting a bid (each, a "Potential Bidder") and Qualified Bidder (as defined herein) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors in consultation with any official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"). Failure by a Potential Bidder or Qualified Bidder (other than the Purchaser) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors in consultation with the Committee to determine that such bidder is not a Qualified Bidder or that a bid made by a Qualified Bidder is not a Qualified Bid.

## Qualified Bid Requirements

Unless otherwise ordered by the Bankruptcy Court, to participate in the Auction, each Potential Bidder must submit a bid that adheres to the requirements below. Nothing in these Bidding Procedures shall prohibit the Associations from submitting a Qualified Bid. Each bid must:

    a. state that the bid is irrevocable through the Auction, provided, however, that (a) if the Qualified Bid (defined below) becomes the Successful Bid, such bid shall be irrevocable through the Closing Date or such earlier date as the Purchase Agreement is terminated in accordance with its terms and (b) and in the case of the Second Highest Bid (defined below), such bid shall remain irrevocable through the closing of the sale of the Assets to the Successful Bidder, unless the Successful Bidder fails to close and the Debtors shall have given notice to the Second Highest Bidder that it has decided to consummate the transaction contemplated by the Second Highest Bid in which case the Second Highest Bid shall

remain open through the closing with such Second Highest Bidder or such earlier dates as the Purchase Agreement may be terminated in accordance with its terms;

b. state that the Potential Bidder (i) has had an opportunity to conduct due diligence regarding the Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith with respect to its bid, except as expressly stated in these Bidding Procedures;

c. stating that the Potential Bidder has obtained all necessary organizational approvals to make its competing bid and to enter into and consummate the transaction set forth in the Qualified Bid; and

d. be submitted in writing to (a) counsel for the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119 (Attn: Frank A. Oswald); and (b) CBRE, 777 Brickell Avenue, Suite 900, Miami, Florida 33131 (Attn: Christian Charre), real estate broker for Debtors, so as to be received no later than August 14, 2014 at 4 PM (Prevailing Eastern time) (the "Bid Deadline"). Upon receipt of a bid, the Debtors shall deliver a copy to counsel for the Purchaser: Fulbright & Jaworski LLP, 98 San Jacinto Boulevard, Suite 1100, Austin, Texas 78701 (Attn: Jane Snoddy Smith) and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201 (Attn: Kristian W. Gluck) and counsel for the Committee, should a Committee be formed.

In addition to the foregoing, a "Qualified Bidder" is a Potential Bidder that delivers a binding bid ("Qualified Bid") that satisfies the following:

1)      the bid must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternative Transaction (the "Modified Purchase Agreement"), which may be consummated pursuant to a chapter 11 plan of liquidation. The bid must also include a copy of the Purchase Agreement marked against the Modified Purchase

Agreement to show all changes requested by the Bidder.  The Debtors will promptly provide a Word document of the Purchase Agreement to all Potential Bidders;

2)      the bid must offer to purchase all of the Assets;

3)      the bid must be on the same (or better) terms and conditions as those set forth in the Purchase Agreement, including without limitation, with respect to timing and certainty of closing;

4)      includes a bid under terms which the Debtors, and should a Committee be formed, in consultation with said Committee (or the Associations if the Associations are not a Qualified Bidder), believe to be higher or better than the Purchaser's bid without any financing conditions, the value of which is determined by the Debtors and, should a Committee be formed, in consultation with said Committee to be equal to or greater than the sum of: (a) the purchase price set forth in the stalking horse Purchase Agreement; the (b) the Break-Up Fee;[3] and (c) $100,000 (the sum of which shall be the incremental bid amount);

5)      is accompanied by a deposit (the "Bid Deposit") in an amount equal to 10% of the cash purchase price proposed by the Potential Bidder, in the form of a certified check or cash deposit, provided that the Bid Deposit shall in no event be less than $1,200,000.00;

6)      is accompanied by satisfactory evidence, in the opinion of the Debtors, in consultation with the Committee, of the Qualified Bidder's ability to (a) fund the purchase price proposed by the Qualified Bidder with cash on hand (or sources of immediately available funds) or other distributable forms of consideration or non-cash consideration, and (b) otherwise perform all transactions contemplated by the Qualified Bid;

7)      is firm and unconditional and not subject to further due diligence review or financing and other contingencies;

8)      contains a list of the Debtors' leases and executory contract that may be assumed and assigned in connection with the consummation of the Qualified Bid;

9)      a Qualified Bid may provide for forms of consideration that include cash and non-cash consideration, including, without limitation, releases of claims, or a

---

[3]     Counsel for the Purchaser will, upon reasonable request of counsel for the Debtors prior to the Bid Deadline, provide counsel for the Debtors with a reasonable estimate of the expense reimbursement through and including the Auction, which amount shall be used by the Debtors to calculate the expense reimbursement for purposes of determining Qualified Bids.

combination of cash and other distributable form of non-cash consideration that may be distributed or used to satisfy claims under a plan of liquidation;

10)    a Qualified Bid may propose to consummate an Alternative Transaction pursuant to a chapter 11 plan of liquidation.  Any proposed chapter 11 plan of liquidation must be attached as an exhibit to the Modified Purchase Agreement.

The Debtors shall not consider any Bids received after the Bid Deadline. A Qualified Bid will be valued based upon factors such as:  (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' estates from any releases of claims and assumption of liabilities; (b) the fair value to be provided to the Debtors under the Qualified Bid; (c) the length of time expected to close the proposed transaction and the cost to the Debtors of any delay in closing; (d) the ability to obtain all necessary approvals for the proposed transaction; (e) the confirmability of any proposed chapter 11 plan; (f) the number, type, and nature of any changes to the Purchase Agreement requested by the Bidder; and (g) any other factors that the Debtors and, should a Committee be formed, in consultation with said Committee may deem relevant.

The Debtors may, in their sole and absolute discretion, communicate prior to the Auction or Sale Hearing with any Potential Bidder and may request any additional information reasonably required by the Debtors in connection with the Debtors' evaluation of such Potential Bidder's bid.

Within three (3) business days after the Bid Deadline, the Debtors shall inform each Potential Bidder that has submitted a bid whether it is a Qualified Bidder and shall contemporaneously advise the Purchaser and the Committee of such determination(s).  As soon as reasonably practicable after the Bid Deadline, but in any case no later than two (2) days prior to the Auction (as defined below), the Debtors shall give all Qualified Bidders a copy of all Qualified Bid(s) received to date.

The Purchase Agreement executed by the Purchaser is a Qualified Bid and the Purchaser is a Qualified Bidder for all purposes.

### Sale to The Purchaser

The Successful Bid for the Assets will be presented to the Bankruptcy Court for approval at the Sale Hearing.  If no Qualified Bids have been submitted (other than that submitted by the Purchaser) by the Bid Deadline the Debtors shall report the same to the Bankruptcy Court and shall proceed to seek approval of the Purchase Agreement and the transaction contemplated thereby.

## Auction

If the Debtors receive a Qualified Bid for the Assets (other than that submitted by the Purchaser) by the Bid Deadline, the Debtors will hold an auction (the "Auction") on August 19, 2014 at 11:00 a.m. in New York, New York at a location to be determined or such later date and time as the Debtors shall notify all Qualified Bidders and counsel for the Purchaser.   The Debtors may, after consultation with the Committee, extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing for any reason without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Potential Bidders.

Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction.  The Debtors will evaluate all Qualified Bids received and, after consultation with their professionals and the Committee, will select the Qualified Bid that reflects the highest or best offer for the Assets as the "Starting Auction Bid."  In considering which Qualified Bid shall be the Starting Auction Bid, the Debtors will consider, among other things, the Qualified Bid, the changes to the Purchase Agreement required by the Qualified Bid, and the Qualified Bidder's ability to finance and timely consummate the purchase of Assets.

For the avoidance of doubt, the Purchaser shall be permitted to include the full amount of the Break-Up Fee in each bid by the Purchaser for the purposes of comparison to any overbid in connection with each round of bidding in the Auction.

The following rules shall apply at the Auction:

(i) only the Debtors and their representatives, the Committee (should a Committee be formed), the Debtors' post-petition lenders and any other Qualified Bidder that has timely submitted a Qualified Bid shall attend the Auction in person. Only the Purchaser and any other Qualified Bidders will be entitled to make any subsequent bids at the Auction and each of the Purchaser and any other Qualified Bidders must have a representative attend the Auction in person.  Bidding at the Auction will be transcribed or videotaped.

(ii) each Qualified Bidder shall be required to confirm on the record at the Auction that it has not engaged in any impermissible collusion with respect to bidding or the sale by the Debtors of the Assets.

(iii)  Bidding at the auction will begin with the Starting Auction Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that improves upon such Qualified Bidder's immediately prior Qualified Bid by at least $100,000 (a "Subsequent Bid").  The value of any Subsequent Bid may come in the form of:   (i) cash; (ii) non-cash

consideration; and/or (iii) other forms of consideration that may be distributed under a plan of liquidation. Each Subsequent Bid shall provide net value to the estate over the Starting Auction Bid with respect to the Assets, which net value may be in the form of cash or non-cash consideration (any such non-cash consideration to be valued in the discretion of the Debtors, in consultation with the Committee). From time to time, the Debtors will, in an open forum, advise Qualified Bidders participating in the Auction of their determination as to the terms of the then highest or otherwise best bid for the Assets. The Debtors shall also consider the impact of the Break-Up Fee and the potential costs of satisfying the conditions of any bid.

(iv) A Subsequent Bid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Subsequent Bid must remain open and binding on the Bidder until and unless the Debtors accept a higher or otherwise better Subsequent Bid from such Bidder. To the extent not previously provided, a Bidder submitting a Subsequent Bid at the Auction must submit, as part of its Subsequent Bid, written evidence reasonably acceptable to the Debtors, after consultation with the Committee demonstrating such Bidder's ability to close the Alternative Transaction proposed by such Subsequent Bid.

(v) The Debtors, after consultation with their professionals and the Committee, may adopt other rules for the Auction at the Auction that, in their reasonable judgment, will better promote the goals of the Auction. All such rules will provide that: (i) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder and (ii) all bids shall be made and received in one room, on an open basis, and all bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Qualified Bid shall be fully disclosed to all other bidders throughout the entire Auction. Nothing herein shall prohibit the Debtors from meeting privately with any Qualified Bidder to negotiate the terms of a bid or a Subsequent Bid.

(vi) During the Auction, the Debtors will review each bid or Subsequent Bid submitted by a Qualified Bidder in order to identify, in their sole and absolute discretion after consultation with their professionals and the Committee, the bid or Subsequent Bid that constitutes the highest or otherwise best bid for the Assets. The Debtors will consider, among other things, (i) the amount of consideration offered under the Qualified Bid; (ii) the changes to the Purchase Agreement required by the Qualified Bid; and (iii) the Qualified Bidder's ability to finance and timely consummate the purchase of the Assets. The Debtors will also consider the Qualified Bid's impact on the ability to minimize the Debtors' losses incurred before the Closing Date based on the terms and timing provided in the bid.

(vii) The Auction shall continue until there is only one Qualified Bid for the Assets that the Debtors determine, in their reasonable business judgment, after

consultation with their advisors and the Committee, is the highest or otherwise best Qualified Bid at the Auction for the Assets. The bid that is selected by the Debtors as the highest or otherwise best bid for the Assets will be considered the "Successful Bid" and such bidder the "Successful Bidder."

(viii) Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction (and in no event later than one (1) business day after the close of the Auction), the Debtors shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

Any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered, and neither the Debtors nor any other person shall have any obligation to seek such an order from the Bankruptcy Court.

The second highest or otherwise best bid (the "Second Highest Bid" and such bidder, the "Second Highest Bidder"), as determined by the Debtors after consultation with the Committee, at the conclusion of the Auction and approved by the Bankruptcy Court at the Sale Hearing, shall remain open and irrevocable through the closing of the sale of the Assets to the Successful Bidder. In the event that, for any reason, the Successful Bidder fails to close the transaction contemplated by its Successful Bid, the Debtors, in their sole and absolute discretion, after consultation with the Committee, may elect to regard the Second Highest Bid as the highest or best bid for the Assets, and the Debtors will be authorized to consummate the transaction contemplated by the Second Highest Bid without further order of the Bankruptcy Court. The Debtors may not compel the Purchaser to serve as the Second Highest Bidder without the Purchaser's express written consent.

Subject to the provisions of the Bidding Procedures Order, whenever these Bidding Procedures refer to a determination as to the highest or otherwise best offer, the Debtors, after consultation with the Committee, shall have the final authority to make such determinations, subject to approval of the Bankruptcy Court.

Nothing in these Bidding Procedures shall prohibit any Qualified Bidder from requesting payment of any incurred reasonable fees and expenses arising in connection with the due diligence investigation of such Qualified Bidder relating to a potential bid for the Assets as an administrative expense claim or substantial contribution claim under section 503 of the Bankruptcy Code or otherwise.

### The Sale Hearing and Return of Deposits

No offer shall be deemed accepted by the Debtors unless and until it is approved by the Bankruptcy Court. The Sale Hearing will be held at a date and time

established by the Bankruptcy Court in the Bidding Procedures Order.  At the Sale Hearing, the Debtors will seek entry of a Sale Order, among other things, authorizing and approving the sale of the Assets:  (i) if no Auction is held or if the Purchase Agreement is the Successful Bid, with the Purchaser pursuant to the terms and conditions set forth in the Purchase Agreement, or (ii) if a Qualified Bid other than the Purchase Agreement is determined by the Debtors after the Auction to be the Successful Bid, with the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid.  Without prejudice to the Purchaser's rights under the Purchase Agreement, the Sale Hearing (or any portion thereof) may be adjourned by the Court or the Debtors, after consultation with the Committee, and the Purchaser or other Successful Bidder, as applicable, from time to time without further order of this Court, by filing a notice with this Court and serving such notice on all Qualified Bidders and counsel for the Purchaser.

In the event the Purchaser or any Successful Bidder fails to consummate the purchase of the Assets because of its own breach or failure to perform, the bidder's Bid Deposit shall be forfeited to the Debtors provided that the Debtors reserve the right to seek all available damages from the defaulting bidder, provided, however, that in the case of the Purchaser's Bid Deposit, the treatment thereof shall be governed by the terms of the Purchase Agreement and the Debtors' right to seek additional damages will be subject to the terms of the Purchase Agreement.

All Bid Deposits, other than the Bid Deposit of the Successful Bidder and the Second Highest Bidder, will be returned within three (3) business days following entry of the Sale Order.  The Bid Deposit of the Second Highest Bidder will be returned promptly following the closing of the sale with the Successful Bidder, unless the Debtors have elected to regard the Second Highest Bid as the highest or best bid for the Assets, as described above.   Except as otherwise provided for in the Purchase Agreement, the Debtors will not be required to maintain any Bid Deposit in an interest-bearing account, but any interest earned on any Bid Deposit will be remitted to the appropriate Qualified Bidder if the Bid Deposit is returned to the Qualified Bidder pursuant to the above.  Subject to the Purchase Agreement in the case of the Purchaser's Bid Deposit, Bid Deposits may only be used in accordance with the terms of these Bidding Procedures.  The Debtors may, in consultation with the Committee, credit the Deposit of the Successful Bidder toward the purchase price on the closing of the sale of the Assets.

## **Break-Up Fee**

Pursuant to the Bidding Procedures Order, the Purchaser is entitled to the Break-Up Fee in accordance with the terms of the Purchase Agreement and the Bidding Procedures Order.

### Personal Identifiable Information

The Sale may include the transfer of personally identifiable information, as defined in section 101(41)(A) of the Bankruptcy Code. No consumer privacy ombudsman need be appointed under section 363(b)(1) of the Bankruptcy Code because the Purchaser (and the Successful Bidder to the extent not the Purchaser) agrees to use customer information only in accordance with the applicable privacy policies in effect on the date of the commencement of the case.

### Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of the Bidding Procedures Order.

### Limitation on Committee Consultation Rights

Should a Committee be formed, any Committee member that is affiliated with a person or entity, including the Associations, that intends to submit or submits a Qualified Bid for the Assets, shall be prohibited from exercising any consultation rights under these Bidding Procedures except to the extent that such consultation rights are available to all Qualified Bidders.

Exhibit "B" to Bid Procedures Order

## NOTICE OF AUCTION

| | |
|---|---|
| **AUCTION DATE AND TIME:** | **Aug. 19, 2014 at 11:00 a.m. (New York Time)** |
| **BID DEADLINE DATE AND TIME:** | **Aug. 14 2014 at 4:00 p.m. (New York Time)** |
| **SALE HEARING DATE AND TIME:** | **Aug. 27, 2014 at 10:00 a.m. (New York Time)** |
| **OBJECTION DEADLINE DATE AND TIME:** | **Aug. 14, 2014 at 4:00 p.m. (New York Time)** |
| **SUPPLEMENTAL OBJECTION DEADLINE:** | **Aug. 22, 2014 at 4:00 p.m. (New York Time)** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                 :

In re:                                 :        Chapter 11

                                        :        Case No. 14-11691

**FL 6801 SPIRITS LLC,** *et al.,*       :

                                        :        (Jointly Administered)

                      Debtors.   :

                                          :

------------------------------------------------------------x

## NOTICE OF AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE OF THE DEBTORS' PROPERTY

**NOTICE IS HEREBY GIVEN,** that:

      1.      On June 1, 2014, FL 6801 Spirits LLC, *et al.,* (the "Debtors")[1] filed a

motion (the "Motion") with the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") requesting, among other things, (i) the

approval of bidding procedures (the "Bidding Procedures") in connection with the sale

of the Assets, as defined in the Purchase and Sale Agreement attached to the Motion as

Exhibit A, to 360 Miami Hotel & Spa LLC, as stalking horse purchaser (the "Purchaser")

and (ii) the scheduling of a bid deadline, auction date, and sale hearing (the "Bidding

---

[1]    The Debtors consist of the following entities:  FL 6801 Spirits LLC ("Spirits"), FL 6801 Collins North LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), FL 6801 Collins South LLC ("6801 South," together with 6801 North and 6801 Central, the "Collins Subsidiaries").

Schedule"). On _____ ___, 2014, the Bankruptcy Court entered an order (the

"Bidding Procedures Order") approving, among other things, the Bidding Procedures,

and establishing the Bidding Schedule.

2.     A copy of each of the Motion, the Bidding Procedures, and the

Bidding Procedures Order may be obtained by: (i) accessing the Bankruptcy Court's

website at www.nysb.uscourts.gov, (ii) accessing the website maintained by the

Debtors' claims and noticing agent at http://cases.primeclerk.com/flspirits/, or

(iii) contacting Frank A. Oswald, Esq. at Togut, Segal & Segal LLP, attorneys for the

Debtors, at (212) 594-5000. Note that a PACER password is needed to access documents

on the Court's website.

3.     The Debtors and the Purchaser have entered into the Purchase and

Sale Agreement (the "Purchase Agreement") for the sale of the Assets, but as set forth in

the Bidding Procedures, the sale of the Assets remains subject to higher or better offers

and Bankruptcy Court approval.

4.     All interested parties are invited to make competing offers for the

Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures

Order. The deadline to submit competing offers (the "Bid Deadline") is August 14, 2014

at 4:00 p.m. New York time. Pursuant to the Bidding Procedures Order, the Debtors

may conduct an auction (the "Auction") for the sale of the Assets on August 19, 2014 at

11:00 a.m. New York time. The Auction may be adjourned from time to time.

5.     The Bidding Procedures Order further provides that a Sale Hearing

will be held on August 27, 2014, at 10:00 a.m. New York time before the Honorable

2

Shelley C. Chapman, United States Bankruptcy Judge, in Room 632 of the Bankruptcy Court, One Bowling Green, New York, New York 10004.  The hearing may be adjourned from time to time.

6.      At the Sale Hearing, the Debtors will request that the Bankruptcy Court enter an order, among other things, approving the highest or best bid for the Assets, or the Purchase Agreement (which will be determined as described in the Bidding Procedures), pursuant to which the Debtors will transfer the Assets.  In addition, the Debtors will request that the Bankruptcy Court provide that the transfer of the Assets be free and clear of all liens, claims and interests, including possessory leasehold interests (other than certain permitted exceptions as expressly set forth in the Purchase Agreement).

7.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 case.  Objections, if any, to the sale of the Assets pursuant to the terms of the agreement reached between the Debtors and the successful bidder for the Assets, the proposed form of Sale Order, or the Purchase Agreement, as applicable, must be in writing and filed with the Bankruptcy Court and served so as to be **received** no later than 4:00 p.m. prevailing Eastern Time on August 14, 2014, provided, however that supplemental objections relating to the conduct of the Auction, the selection of the Successful Bidder (other than the Purchaser) or the terms of the Successful Bid (other than the Purchase Agreement), may be filed with this Court and served so as to be **received** no later than 4:00 p.m. prevailing Eastern Time on August 22, 2014 (the

3

"Supplemental Objection Deadline").  Copies of Objections, if any, must be provided to the Chambers of the Honorable Shelley Chapman, United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green, Room 610, New York, New York 10004-1408, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates, the basis for the objection and the specific grounds therefor, and must be served upon:  (i) Togut, Segal & Segal LLP, attorneys for the Debtors, One Penn Plaza, Suite 3335, New York, New York 10119, Attention:  Frank A. Oswald, Esq.;  (ii) the Office of the United States Trustee for Region 2, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; (iii) counsel for the Purchaser, Fulbright & Jaworski LLP, 98 San Jacinto Blvd., Suite 1100, Austin, Texas 78701-4255, Attn:  Jane Snoddy Smith, Esq. and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, Attn:  Kristian W. Gluck, Esq., and (vi) counsel for the Associations, Brown Rudnick LLP, 7 Times Square, New York, New York 10036:  Attn: Edward S. Weisfelner, Esq. and Howard S. Steel, Esq.

8.    All requests for information concerning the sale of the Assets should be directed by written request to counsel for the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attention:  Frank A. Oswald, Esq. or by contacting CBRE, Inc., Attention:  Christian Charre at (305) 381-6427 or Christian.Charre@cbre.com, 777 Brickell Avenue, Suite 900, Miami, Florida 33131, real estate brokers to the Debtors' estates.

4

DATED:  New York, New York
                  _____, 2014

FL 6801 SPIRITS LLC, *ET AL.*,
Debtors and Debtors in Possession,
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

_____

ALBERT TOGUT
FRANK A. OSWALD
LARA R. SHEIKH
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Lara R. Sheikh

*Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re:                                                      :        Chapter 11
                                                            :        Case No. 14-11691
FL 6801 SPIRITS LLC, *et al.*,                              :
                                                            :        (Jointly Administered)
                                        Debtors.            :
                                                            :
------------------------------------------------------------x

**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND
UNEXPIRED LEASES THE DEBTORS MAY ASSUME AND ASSIGN AS
PART OF SALE OF SUBSTANTIALLY ALL OF THE PROPERTY**

      **PLEASE TAKE NOTICE THAT** on June 1, 2014, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors")[1] filed a motion [Docket No. 4] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which seeks, among other things, approval of key dates, times, and procedures related to the sale of the "Assets," as defined in the Purchase and Sale Agreement (the "Agreement"), to 360 Miami Hotel & Spa LLC (the "Purchaser") pursuant to the Agreement.  On [_____], 2014, the Bankruptcy Court approved the Bidding Procedures.  On August 27, 2014 at 10:00 a.m. prevailing Eastern time, the Debtors intend to seek approval of, among other things, the sale of the Assets, including the assumption and assignment of certain executory contracts and unexpired leases.

      **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF
YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR**

---

[1] The Debtors consist of the following entities: FL 6801 Spirits LLC, FL 6801 Collins North LLC, FL 6801 Collins Central LLC and FL 6801 Collins South LLC.

**UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**[2]

> **PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Bidding Procedures, the Debtors may assume and assign to the Purchaser or other Successful Bidder the executory contract(s) or unexpired lease(s) listed on <u>Exhibit A</u> attached hereto (each, an "Assigned Contract") to which you are a counterparty.  The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contract is as set forth on Exhibit A attached hereto (the "Cure Amount").  If you disagree with the proposed Cure Amount, object to the proposed assignment to the Purchaser or other Successful Bidder of the Assigned Contract(s) or object to the Purchaser's ability to provide adequate assurance of future performance with respect to any Assigned Contracts, you must file an objection with the Bankruptcy Court so as to be actually received no later than 4:00 p.m. (prevailing Eastern time) on August 14, 2014 (the "Objection Deadline"), provided, however that supplemental objections relating to the Successful Bidder's (if other than the Purchaser) ability to provide adequate assurance of future performance with respect to any Assigned Contracts, may be filed with this Court and served so as to be actually received no later than 4:00 p.m. prevailing Eastern Time on August 22, 2014 (the "Supplemental Objection Deadline"), and serve such objection(s) on (i) Togut, Segal & Segal LLP, attorneys for the Debtors, One Penn Plaza, Suite 3335, New York, New York 10119, Attention:  Frank A. Oswald, Esq. and Lara R. Sheikh, Esq.; (ii) the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq.; and (iii) counsel for Purchaser, Fulbright & Jaworski LLP, 98 San Jacinto Blvd., Suite 1100, Austin, Texas 78701-4255, Attn: Jane Snoddy Smith, Esq. and 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, Attn:  Kristian W. Gluck, Esq.

> **PLEASE TAKE FURTHER NOTICE THAT** the Debtors propose that if no objection to (a) the Cure Amount(s), (b) the proposed assignment of the Assigned Contract(s) to the Purchaser or other Successful Bidder or (c) adequate assurance of the Purchaser's or other Successful Bidder's ability to perform is filed by the Objection Deadline or the Supplemental Objection Deadline, as applicable, (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) you shall be forever barred, estopped, and enjoined from asserting any additional cure amount under the Assigned Contract(s), and (iii) you will be forever barred from objecting to the assumption or assignment of the Assigned Contract(s) to the Purchaser or other Successful Bidder or the Purchaser's or other Successful Bidder's adequate assurance of future performance.

---

[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases.  This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

**PLEASE TAKE FURTHER NOTICE THAT** with respect to any Assigned Contract assumed and assigned to the Purchaser or other Successful Bidder, all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after closing of the sale to the Purchaser or other Successful Bidder or on such other terms as the parties to each such Assigned Contract and the Purchaser or other Successful Bidder may otherwise agree without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, the assumption or assignment of each such Assigned Contract may be conditioned upon the disposition of all issues with respect to such Assigned Contract.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Bidding Procedures, with respect to any Assigned Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Debtors to assume or assign to the Purchaser or other Successful Bidder such Assigned Contracts; (c) the ability of the Purchaser or other Successful Bidder to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under such Assigned Contract; or (d) any other matter pertaining to assumption or assignment, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption and assignment of such Assigned Contract; provided, however, that the Debtors may settle any such dispute without any further notice to or action, order, or approval of the Bankruptcy Court.

**PLEASE THAT FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection, or termination of any of the Assigned Contracts.  Moreover, the Debtors explicitly reserve their rights, in their sole discretion, to seek to reject or assume or assume and assign any Assigned Contract pursuant to section 365(a) of the Bankruptcy Code, and nothing herein (a) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to an Assigned Contract against the Debtors that may arise under such Assigned Contract, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of any counterparty to an Assigned Contract against the Debtors that may arise under such Assigned Contract.

DATED:  New York, New York
_____, 2014

> FL 6801 SPIRITS LLC, *ET AL.*,
> Debtors and Debtors in Possession,
> By their attorneys,
> TOGUT, SEGAL & SEGAL LLP
> By:

_____

ALBERT TOGUT
FRANK A. OSWALD
LARA R. SHEIKH
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

**Exhibit A**

| Counterparty Name | Executory Contract or Unexpired Lease | Cure Amount |
|---|---|---|
|  |  |  |