BROWN RUDNICK LLP
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

- and -

BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
Scott L. Baena (admitted *pro hac vice*)
Mindy A. Mora
Martin A. Schwartz
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone:  (305) 350-2414

*Co-Counsel for North Carillon Beach Condominium*
*Association, Inc., Central Carillon Beach*
*Condominium Association, Inc., and South Carillon*
*Beach Condominium Association, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 14-11691 (SCC) |
| FL 6801 SPIRITS LLC, *et al.*, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------------X


**<u>THE ASSOCIATIONS' OBJECTION TO THE SALE MOTION</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................2

BACKGROUND .....................................................................................................................5

    A.    General Background. .................................................................................5

    B.    The Associations' Claims. ..........................................................................6

    C.    The 360 Miami Bid. ...................................................................................8

    D.    The Interested Parties' Bid. ........................................................................9

OBJECTION...........................................................................................................................9

    A.    The Debtors Have A Duty To Select The Bid With The Greatest Overall Benefit For The Debtors' Estates..............................................................................9

    B.    The 360 Miami Bid Is Not The Best Bid. ........................................................10

    C.    The Sale Motion Should Be Denied Because The Proposed Sale To 360 Miami Cannot Close Given The Favorable Resolution Condition. ................................11

            I.    Valet Parking Charges. ..........................................................................14

            II.    Spa Assessments. .................................................................................15

            III.    Spa Access. .........................................................................................16

            IV.    Utility Charges. ....................................................................................16

            V.    Character Of The Property.....................................................................17

RESERVATION OF RIGHTS ...............................................................................................19

CONCLUSION......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

Crawford v. Barker,
   64 So. 3d 1246 (Fla. 2011) ........................................................................................ 13, 14

In re Crowthers McCall Pattern, Inc.,
   114 B.R. 877 (Bankr. S.D.N.Y. 1990) ..................................................................... 11

Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re
   Integrated Res., Inc.),147 B.R. 650 (S.D.N.Y. 1992) ............................................. 9

Richter v. Richter,
   666 So. 2d 559 (Fla. Dist. Ct. App. 1995) .............................................................. 14

Sheen v. Lyon,
   485 So.2d 422 (Fla. 1986) ....................................................................................... 14

Shields v. Andros Isle Prop. Owners Ass'n, Inc.,
   872 So.2d 1003 (Fla. Dist. Ct. App. 2004) ............................................................. 14

Washington Nat'l Ins. Corp. v. Ruderman,
   117 So. 3d 943 (Fla. 2013) ...................................................................................... 13

S<small>TATUTES</small>

11 U.S.C. § 363 ............................................................................................................. 2, 9, 10

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

North Carillon Beach Condominium Association, Inc. ("North Association"), Central Carillon Beach Condominium Association, Inc. ("Central Association") and South Carillon Beach Condominium Association, Inc. ("South Association" and, together with the North Association and the Central Association, the "Associations"), by and through their undersigned co-counsel, hereby object (the "Objection")[1] to the *Debtors' (I) Ex Parte Application for an Order Scheduling a Hearing to Consider, among Other Things, Bidding Procedures and (II) Motion for (A) an Order Approving, among Other Things, (i) Bidding Procedures Regarding the Debtors' Sale of Property, Subject to Higher or Better Offers and Bankruptcy Court Approval, (ii) the Time, Date, Place and Form of Notice for the Auction and Sale Hearing, and (iii) a Break-Up Fee, (B) an Order (i) Approving the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (ii) Authorizing the Assumption and Assignment of Certain Executory Contracts and (C) Related Relief* [Docket No. 4] (the "Sale Motion"),[2] and in furtherance of the Objection, the Associations respectfully represent as follows:

---

[1] The Associations hereby incorporate into this Objection by reference their objections to the Sale Motion set forth in the *Objection to Debtors' (I) Ex Parte Application for an Order Scheduling a Hearing to Consider, Among Other Things, Bidding Procedures and (II) Motion for (A) an Order Approving, Among Other Things, (i) Bidding Procedures Regarding the Debtors' Sale of Property, Subject to Higher or Better Offers and Bankruptcy Court Approval, (ii) the Time, Date, Place and Form of Notice for the Auction and Sale Hearing, and (iii) a Break-Up Fee, (B) An Order (i) Approving the Sale Free and Clear of Liens, Encumbrances and Other Interests, and (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and (C) Related Relief,* dated June 19, 2014, [Docket No. 52] (the "Associations' Preliminary Objection").

[2] The Debtors consist of the following entities: FL 6801 Spirits LLC ("Spirits"); FL 6801 Collins North LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), FL 6801 Collins South LLC ("6801 South," together with 6801 North and 6801 Central, the "Collins Subsidiaries").

## PRELIMINARY STATEMENT

1.     The Collins Subsidiaries own interests in property known as the "Canyon Ranch Hotel & Spa, Miami Beach," located in Miami Beach, Florida (the "Property"). The Associations represent the interests of the 580 condominium units on the Property. The condominium units are owned by families and investors drawn to the beachfront Property and the promise of world-class spa services. As detailed in the Associations' Preliminary Objection and this Objection, instead of realizing the full benefits of their investments, the unit owners and the Associations have been embroiled in extensive litigation with the Collins Subsidiaries relating to, inter alia, unauthorized assessments and limitations on access to facilities at the Property, wrongfully imposed on the unit owners and the Associations by the Collins Subsidiaries.

2.     As a result of the Collins Subsidiaries' conduct, the Associations commenced the State Court Actions to seek to protect their rights and the lifestyle the unit owners paid significant amounts to obtain.[3] At the same time, given ongoing operating losses at the Property, the Associations have been actively engaged in good faith negotiations with the Debtors and their equity owners to identify a suitable sale transaction for the Property that benefits the Debtors, their creditors and the families who live at the Property. Unfortunately, the Sale Motion represents the antithesis of those efforts.

3.     By the Sale Motion, the Collins Subsidiaries seek to sell substantially all of their Assets under Bankruptcy Code Section 363 to 360 Miami Hotel and Spa LLC ("360 Miami"). The proposed sale to 360 Miami is universally opposed by each of the three separate Associations, each of whom had the opportunity to consult with their underlying unit owner

---

[3]    Capitalized terms not otherwise defined in this Objection shall have the meanings ascribed to them in the Sale Motion.

constituents about the proposed sale to 360 Miami. Further, a sale to 360 Miami, an operator that is thinly capitalized, has limited operations, no track record for success or brand recognition and seeks to remove the Canyon Ranch flag from the Property, is likely to result in a drop in the value of the condominium units by at least twenty percent. Already, the Associations are informed that if the Debtors proceed with a proposed sale to 360 Miami, a majority of the unit owners that participate in the rental management program (the lifeblood of the hotel operation) will give notice that they will withdraw their units from the program. Thus, a proposed transaction with 360 Miami is not in the best interests of the Debtors and their creditors (of which the Associations and the unit owners are the primary and perhaps sole legitimate unsecured creditors).[4]

4. However, if the Debtors would re-orient their focus away from swinging for the fences for equity and focus on their creditors' interests (as the Bankruptcy Code and Second Circuit jurisprudence require), the Debtors would realize there is a viable alternative on the table that not only satisfies all creditor claims, but also has the support of the Associations. An entity controlled by certain unit owners and Asset Restructuring Group, LLC, an affiliate of Capella Hotel Group, LLC (collectively, the "Interested Parties") has submitted a qualified bid (the "Interested Parties' Bid") for the Assets that is supported by the Associations.

5. The Interested Parties' Bid constitutes a better offer than the 360 Miami bid, because it contemplates cash consideration sufficient to satisfy all creditor claims under a chapter 11 plan and costs of administration of these chapter 11 cases (i.e., repayment of DIP borrowings,

---

[4]     Additionally, a proposed transaction with 360 Miami or another hotel operator unsupported by the Associations will likely portend additional litigation, including potential class action claims by unit owners against the Debtors, their equity owners, and Canyon Ranch relating to certain misrepresentations and claims of fraudulent inducement in connection with the marketing of the units and the pledge that Canyon Ranch had a fixed twenty year contract to operate the spa. The class claims may exceed $100 million in damages.

payment of allowed prepetition secured claims, allowed priority tax claims, the Break-Up Fee and any allowed substantial contribution claims of the Associations' professionals) and contemplates a release of the State Court Actions and other claims and causes of action of the Associations against the Debtors, as well as other potential creditor releases. The Interested Parties' Bid will provide the Property with a hotel operator supported by the Associations, may maintain Canyon Ranch as the spa operator, and may preserve a sufficient number of units in the rental program to reverse the historical operating losses at the Property. In short, it is not even a close call as to which is the better bid. As such, the Debtors are required, by their fiduciary duties to their creditors, to reject the 360 Miami bid in favor of the Interested Parties' Bid. Otherwise, the Sale Motion must be denied.

6.      The Interested Parties' Bid is also a better bid than the 360 Miami bid because it is more likely to close given the Associations' support. By the Sale Motion, the Debtors ask the Court to include findings in the Sale Order interpreting the Declarations that govern the Property, under Florida law. Obtaining so-called Favorable Resolution of these complex issues of Florida condominium law is a condition to closing under the 360 Miami Purchase Agreement. These issues may require extensive briefing and expert reports and the Associations respectfully request that the Court abstain from determining issues of Florida state condominium law or remand the State Court Actions. At a minimum, the Favorable Resolution closing condition will lead to significant delay as the Court has already stated that it has "no intention" of peremptorily entering the Sale Order with findings of fact and conclusions of law necessary to meet the Favorable Resolution condition. See June 25, 2014 Hr'g Tr. 26:8-16. While the Interested Parties' Bid contains an identical Favorable Resolution requirement, based on extensive negotiations between the Associations and the Interested Parties, the Associations have every

reason to believe the condition will be consensually resolved under a proposed sale to the Interested Parties.

7.  Finally, the Debtors' proposed interpretations of the Declarations are wrong on the merits. Thus, it is beyond comprehension why the Debtors continue to promote a bid that cannot close, particularly, when the Interested Parties' Bid has the support of the Associations and contemplates the delivery of releases of the State Court Actions at closing. As a matter of law and fact, if the Debtors seek approval of the sale to 360 Miami, the Court should deny the Sale Motion because the proposed sale cannot close and the Debtors have a better offer on the table.

8.  In sum, instead of working with the Associations, and in contravention to the desires of the unit owners who live on the Property, the Debtors have worked at cross-purposes to the Associations and the unit owners. The Associations can only surmise that this is a transparent effort to attempt to benefit the Debtors' equity owners over the interests of the Debtors' creditors and the families directly impacted by the sale of the Property. The Bankruptcy Code and Second Circuit jurisprudence do not countenance sacrificing an optimum outcome for creditors and the majority of parties-in-interest for a gambit to potentially provide equity an upside return. Accordingly, the Sale Motion must be denied.

## BACKGROUND

### A.  General Background.

9.  The Associations are not-for-profit Florida corporations that operate and govern the Condo Towers at the Property. The Canyon Ranch community is comprised of the owners of approximately 580 condominium units on the Property. In February 2014, the Associations sued the Collins Subsidiaries (the "State Court Actions") in Florida state court seeking, inter alia, declaratory relief as to the unit owners' rights under various condominium declarations,

restrictions and easements which are expressly governed by Florida law, as well as monetary damages for the Collins Subsidiaries' breach of the Master Declaration.[5]

10.     Additional background regarding these chapter 11 cases, the Condo Towers, the Associations, and the Declarations is set forth in the Associations' Preliminary Objection at paragraphs 5-30, which are hereby incorporated into this Objection by reference.

11.     On July 1, 2014, this Court entered an Order approving bidding procedures to govern the sale of the Property.  See Docket No. 77.

**B.     The Associations' Claims.**

12.     The proposed sale to 360 Miami, which lacks the support of the Associations, is only the most recent example of the Debtors' lack of good faith in their dealings with the Associations.  Prior to the filing of these chapter 11 cases, the Debtors actively disenfranchised the Associations, and the Associations and unit owners have incurred significant damages and diminution in the value of their investments in the Property on account of the Debtors' wrongful acts.

13.     Prior to filing the Central/South Tower Complaint, the Associations discovered that, since at least 2009, the Debtors have been improperly assessing the Associations millions of dollars in unauthorized charges in violation of the Master Declaration.  See Central/South Tower Compl. ¶ 30.  Further, the Debtors sought to impose unwarranted restrictions on the unit owners'

---

[5]     The State Court Actions are:  (i) *Central Carillon Beach Condominium Association, Inc., South Carillon Beach Condominium Association, Inc. v. FL 6801 Collins Central LLC, Carillon Hotel and Spa Master Association, Inc., North Carillon Beach Condominium Association, Inc.*, Case No. 2014-5408-CA (25), pending in the Circuit Court in and for Miami-Dade County, Florida; (the "Central/South Tower Complaint") and (ii) *North Carillon Beach Condominium Association, Inc., vs. FL 6801 Collins North LLC, FL 6801 Collins South LLC, FL 6801 Collins Central LLC and W Capital Group, LLC*, Case No. 14-004356 CA (04), pending in the Circuit Court in and for Miami-Dade County, Florida (the "North Tower Complaint").   Copies of the Central/South Tower Complaint and the North Tower Complaint (without exhibits) filed in the State Court Actions are attached to the Associations' Preliminary Objection as Exhibit A.

use and enjoyment of the spa facilities.  See id. ¶ 38.  In response to the Debtors' unlawful actions, the Associations filed the Central/South Tower Complaint to recover from the Debtors the ill-gotten assessments and prevent the Debtors from engaging in their unlawful conduct now and in the future.

14.     In early 2014, the Associations became aware that the Debtors were seeking to sell the Property to Shamrock in a transaction that threatened to fundamentally alter the character of the Property in violation of the Master Declaration.  In response to the threatened sale to Shamrock, which, like the proposed sale to 360 Miami, lacked the support of the Associations, the Associations filed the North Tower Complaint, which seeks declaratory relief that the Debtors (or any successor) may not exercise rights under the Master Declaration in such a way that would fundamentally alter the character of the Property.  See North Tower Compl. ¶ 43.

15.     The Associations also learned that the Debtors secretly amended the Management Agreement with Canyon Ranch in 2009 so as to permit the Debtors to reject the Management Agreement under certain conditions, in violation of the representations made by the Debtors to many of the unit owners that Canyon Ranch had a fixed twenty-year contract to manage the spa at the Property.  Upon information and belief, unit owners are considering potential class claims against the Debtors that may exceed $100 million in damages related to certain misrepresentations and claims of fraudulent inducement in connection with the marketing of the units and the pledge that Canyon Ranch had a fixed twenty-year contract to operate the spa.

16.     The Associations' intent in filing the State Court Actions was never to "cloud title" to the Property as spuriously alleged by the Debtors.  See Barsanti Decl. ¶ 12.  Rather, the Associations only seek to protect the rights of the owners of the 580 condominium units at the

Property. The Associations' good faith is borne out by the fact that, after filing the State Court Actions, the Associations repeatedly reached out to the Debtors in an attempt to reach a consensual resolution of the matters, including a potential consensual acquisition of the Property. To further demonstrate their good faith and facilitate negotiations, the Associations agreed to enter into the Standstill Agreement (as defined in the Associations' Preliminary Objection). Instead of reciprocating the Associations' good faith efforts, the Debtors withheld information requested by the Associations and stymied a consensual transaction and resolution of the State Court Actions. In a further illustration of the Debtors' questionable motives toward the Associations, the Debtors filed these chapter 11 cases on the day immediately following the expiration of the Standstill Agreement.

## C.    The 360 Miami Bid.

17.    The 360 Miami Bid consists of $12 million in cash consideration for the Assets. See Sale Mot. ¶ 47. 360 Miami has selected its affiliate, 360 VOX to serve as the hotel and spa operator. See id. ¶¶ 42-43. In order to effectuate that transition, the Canyon Ranch Agreements will be rejected under the proposed Sale Order. See id. ¶ 47.

18.    The proposed sale to 360 Miami is subject to numerous closing conditions, including the Favorable Resolution of the State Court Actions and any Other Litigation.[6]

---

[6]    Other Litigation is defined under the 360 Miami Purchase Agreement as "any claim, other than the North Tower Litigation and [Central/South Tower Litigation], that is made prior to, on, or after the Effective Date [of the 360 Miami Purchase Agreement] by [the Associations], as Plaintiff(s), against any or all of Sellers, as Defendant(s), in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida or any other court, and that will materially and adversely (as defined below) affect [360 Miami], the Property and/or the operation of the Property after Closing. The definition of 'Other Litigation' specifically excludes any claims that can be resolved by any of Sellers by the payment of money. The meaning of 'materially and adversely' shall mean any claim or claims that are $100,000 or more in the aggregate." 360 Miami Purchase Agreement, §§ 1, 10(d)(vi)(E)-(G).

**D.    The Interested Parties' Bid.**

19.    The Interested Parties' Bid is by all accounts a better bid than the 360 Miami bid. The Interested Parties' Bid meets all Qualified Bid requirements and is supported by the Associations.  The Interested Parties' Bid is for all of the Debtors' Assets and projects to close on or about December 1, 2014.  Further, the Interested Parties' Bid provides sufficient cash consideration to pay all costs of administration and allowed creditor claims under a confirmable chapter 11 plan.

20.    The Interested Parties' Bid contains closing conditions related to the State Court Actions and the number of units participating in the rental management program.  However, unlike the 360 Miami bid, the Interested Parties' Bid contemplates the valuable releases of the State Court Actions and any other claims or causes of action that the Associations may have against the Debtors, and other potential creditor releases, as well as unit owner support for a viable rental management program.

## OBJECTION

**A.    The Debtors Have A Duty To Select The Bid**
**With The Greatest Overall Benefit For The Debtors' Estates.**

21.    While a sale under Bankruptcy Code Section 363 is subject to the debtors' "sound business judgment," such discretion is not unfettered – the debtor must act in a manner that maximizes the value of its estate for all parties in interest.  See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (emphasis added) (citation omitted).

**B.    The 360 Miami Bid Is Not The Best Bid.**

22.     Given the Debtors' fiduciary duties to their creditors (primarily the Associations and the unit owners), the Debtors cannot satisfy the standards for approval of the proposed sale to 360 Miami under Bankruptcy Code section 363, because the Interested Parties' Bid represents a better bid for the following reasons.

23.     First, the proposed sale to 360 Miami lacks creditor support. The Associations do not support the proposed sale to 360 Miami or the introduction of 360 VOX as the spa operator. The Associations are well aware of 360 Miami and its capacity, and the Associations have reservations that 360 Miami will not be able to stem ongoing operating losses at the Property as 360 Miami is thinly capitalized and has a limited track record. Further, the Associations have been informed that many of the unit owners participating in the rental management program will withdraw from the program if the Debtors proceed with the proposed sale to 360 Miami.

24.     By contrast, the Interested Parties' selected operator, Capella Hotel Group LLC ("Capella"), is a well-established operator and may retain Canyon Ranch to manage the spa. Capella has the support of the Associations and was selected after a thorough due diligence process by the Associations that included interviews with several potential operators.

25.     As representatives of the unit owners and the majority creditors, deference should be provided to the Associations' input as to the selection of the new hotel and spa operator(s). The Bidding Procedures Order requires as much. See Bidding Procedures Order at 4. The Sale Motion proffers a purchaser that the Associations and unit owners do not support. Therefore, when factoring the paramount interests of the creditors, the Interested Parties' Bid is clearly better than the 360 Miami bid.

26.     Second, the Interested Parties' Bid is a better bid than the 360 Miami bid because it contemplates the satisfaction of all creditors' claims and provides the greatest likelihood of a release of the State Court Actions and other claims of the Associations, the unit owners, and other creditors.  Specifically, the Interested Parties' Bid provides sufficient cash consideration to pay all costs of administration (including DIP financing borrowings and the Break-Up Fee) and allowed creditor claims under a confirmable chapter 11 plan.

27.     Thus, the 360 Miami bid is inferior to the Interested Parties' Bid because it is conditioned on resolving the State Court Actions and any Other Litigation of the Associations, which 360 Miami cannot deliver.  See In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 887-88 (Bankr. S.D.N.Y. 1990) ("[T]he conditional nature of the [higher] bid more than justifies the Committee's and Debtor's acceptance of the [alternative] bid in a slightly lower amount that is not so conditioned.  A bid for higher monetary consideration is not necessarily higher and better if it is conditioned on obtaining a financing commitment.").  Here, the Interested Parties' Bid provides the Debtors and their creditors greater certainty of closing than the Miami 360 bid.  Accordingly, there can be no dispute that the Interested Parties' Bid is the better bid.

**C.     The Sale Motion Should Be Denied Because The Proposed Sale To 360 Miami Cannot Close Given The Favorable Resolution Condition.**

28.     For the reasons set forth in the Associations' Preliminary Objection, which the Associations hereby fully incorporate by reference, this Court should abstain from granting the declaratory relief requested in the Sale Motion, based on the doctrines of permissive abstention and equitable remand.  See Associations' Preliminary Objection ¶¶ 59-64.

29.     If the Court is not inclined to abstain or remand, the Associations respectfully request that the hearing on the Sale Motion serve as a status conference concerning an appropriate discovery and briefing schedule to address the Favorable Resolution condition.

30.     The proposed sale to 360 Miami is conditioned on the Favorable Resolution; without this extraordinary relief, the proposed sale to 360 Miami cannot close.  See Sale Mot. ¶ 47 ("The Purchaser's obligation to close is conditioned on the fulfillment of each of the following conditions . . . (c) a Favorable Resolution of the Association Litigations").  The Favorable Resolution condition can be satisfied either through entry of the proposed Sale Order or through dismissal of the State Court Actions.  Because neither of these options can be met, the Favorable Resolution cannot be satisfied, the proposed sale to 360 Miami cannot close, and the Sale Motion should be denied.  While the Interested Parties' Bid also contains the Favorable Resolution condition, the Associations believe, based on extensive negotiations between the Associations and the Interested Parties, that the condition will be consensually resolved under a proposed sale to the Interested Parties.

31.     The Favorable Resolution condition cannot be met through entry of the proposed Sale Order with certain findings of fact and conclusions of law that would, in essence, dispose of the State Court Actions, as this Court has already stated that it has "no intentions" of entering such findings of fact and conclusions of law.  See June 25, 2014 Hr'g Tr. 26:8-16 (recognizing that the Favorable Resolution requirement "would in effect dispose of the substance of those actions in violation of the Bankruptcy Code and the [A]ssociations' constitutional and Florida state laws;" and concluding that: "I have no intention of doing that.  So whether the case stays here or whether the case were to go to Florida I'm not going do that."); see also Associations' Preliminary Objection ¶¶ 33-64 (outlining, in detail, why this Court should not grant the requested relief).

32.     Another method proposed by the Debtors for obtaining the Favorable Resolution is the "entry of an order by the Bankruptcy Court which denies, dismisses or otherwise disposes

of the declaratory relief" sought in the State Court Actions.  See Sale Mot. ¶ 45 n.4.  This outcome is equally unavailing because the Debtors' proposed interpretations of the Declarations fail on the merits.  By this Objection, the Associations only provide an overview of the merits of the claims in the State Court Actions and how the Debtors' proposed interpretations of the Declarations must fail.  The Associations reserve all rights to supplement this Objection and more fully brief the merits of the State Court Actions subject to an appropriate briefing schedule if the Court does not otherwise deny the Sale Motion or abstains from hearing or remands the State Court Actions.

33.     The North Tower Complaint asserts claims relating to the Debtors' operation of the Property in a way that is contrary to the Declarations and the unit owners' rights under their governing agreements.  The North Association seeks a declaratory judgment that, under the Declarations, the Debtors cannot fundamentally alter the Canyon Ranch experience that the unit owners paid substantial amounts to obtain.

34.     The Central/South Tower Complaint asserts claims against the Debtors for the improper allocation to the Associations of certain expenses, including:  (i) expenses for non-retail shared facilities; (ii) valet parking services; and (iii) utilities.  The Central and South Associations also seek declaratory relief as to the number of permitted occupants per unit owner in the spa facilities.  The Central and South Associations seek a declaratory judgment requiring the Debtors to comply with the terms of the Declarations, and at least $8.7 million in damages for prior breaches of the Declarations.

35.     It is undisputed that, under Florida law, where the terms of a contract are clear and unambiguous, the contract must be enforced pursuant to its plain language.  See Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 954-55 (Fla. 2013); Crawford v. Barker, 64 So. 3d

1246, 1255 (Fla. 2011); <u>Sheen v. Lyon</u>, 485 So.2d 422, 424 (Fla. 1986) (stating that when the language of a contract "is clear and unambiguous[,] a court cannot entertain evidence contrary to its plain meaning"). In such a situation, "the language itself is the best evidence of the parties' intent, and its plain meaning controls." <u>Richter v. Richter</u>, 666 So. 2d 559, 561 (Fla. Dist. Ct. App.1995). Under Florida law, the Declarations are a form of contract and are interpreted according to their plain meaning. <u>See</u> <u>Shields v. Andros Isle Prop. Owners Ass'n, Inc.</u>, 872 So.2d 1003, 1005-06 (Fla. Dist. Ct. App. 2004) ("[Declaration] will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms . . . .").

36.     By the Sale Motion, the Debtors seek the Court's imprimatur on the Debtors' errant interpretation of the Declarations to the detriment of the Associations and unit owners. <u>See</u> Sale Mot. ¶¶ 30-32. However, as demonstrated below and as the Associations are prepared to present at the appropriate time and with an appropriate briefing schedule, the Debtors' interpretations of the Declarations must fail.

## I.    <u>Valet Parking Charges.</u>

37.     In the Central/South Tower Complaint, the Central and South Associations contend that valet parking services are included in Garage Costs, and therefore, must be included in the Non-Retail Facilities budget and allocated according to a prescribed formula. <u>See</u> Central/South Tower Compl. ¶ 36. The Associations' position is based on the terms of the Master Declaration, which states that "Garage Costs shall mean and refer to a portion of the expenses incurred by, or on behalf of, the Hotel Lot Operator for the operation . . . of the parking structures and/or facilities located within the Hotel Lot." Master Decl. § 1.1(z). The Central and South Associations posit that valet parking services are part of the "operation" of the parking lots.

38.     By contrast, the Debtors' claim that this provision of the Master Declaration only includes the structures or facilities, not personnel.  <u>See</u> Sale Mot. ¶¶ 100-101.  Such an interpretation, though, ignores the word "operation" in the Master Declaration, which, as a matter of law, must be given meaning.  The "operation" of a garage necessarily involves parking cars, especially when valet service is the only means for parking on the Property.  Accordingly, the Debtors' interpretation, which fails to give meaning to this term, should be rejected as a matter of law.

**II.     <u>Spa Assessments.</u>**

39.     In the Central/South Tower Complaint, the Central and South Associations assert that the Debtors have improperly levied assessments on the Associations for the use of the spa.  <u>See</u> Central/South Tower Compl. ¶ 31.  For example, the Hotel Lot Owner has billed the Central Association and the South Association for the cost of "fitness instructors" at an annual rate of $1,149,629.  <u>Id.</u>  The Master Declaration makes clear, though, that each Unit Owner "agrees to pay, on a monthly basis, a fixed charge for use of the spa facilities contained within the Non-Retail Shared Facilities . . . ."  <u>Id.</u>; Master Decl. § 16.1.  Nowhere in that section of the Master Declaration is there a provision that permits additional billing for "fitness instructors" or other additional items.  Therefore, the Central and South Associations contend that no additional spa-related expenses are chargeable, other than the fixed charge set forth in the Master Declaration.

40.     The Debtors contend that the Master Declaration provides for unlimited assessments of the Associations for the "repair, replacement, improvement, maintenance, management, operation, alteration, relocation, and/or insurance of . . . the Non-Retail Shared Facilities."  Sale Mot. ¶¶ 98-99; Master Decl. § 16.3.  By the Debtors' expansive interpretation, Section 16.1 of the Master Declaration would be rendered a nullity, because the Debtors could

impose additional assessments whenever they sought fit, regardless of the monthly charges already paid by the unit owners. The Court should not recognize such an open-ended interpretation and the Debtors' construction should be denied.

### III. Spa Access.

41.     In the Central/South Tower Complaint, the Central and South Associations assert that the Debtors have improperly attempted to limit the number of people that unit owners may designate to use the spa facilities. <u>See</u> Central/South Tower Compl.¶ 38. The Declarations explicitly state that "each Unit Owner shall submit in writing to the Hotel Lot Owner, a list of not more than eight (8) individuals, who shall be deemed the Permitted Occupants of the Unit." <u>See</u> South Tower Decl., Art. 15.3; Central Tower Decl., Art. 16.3.

42.     In response, the Debtors argue that the Declarations do not provide that eight people per unit can use the spa at the same time. <u>See</u> Sale Mot. ¶¶ 103-104. However, rather than pointing to a specific provision which states that, the Debtors rely on a general provision permitting the Hotel Lot Owner to "reasonably regulate[]" the Shared Facilities. <u>See</u> Master Decl. § 4.3. Because the Debtors fail to point to any specific provision that the Hotel Lot Owner can limit the number of spa users contrary to the designation in the Declarations that eight individuals may use the spa facilities, the Debtors' limiting construction must be denied.

### IV. Utility Charges.

43.     In the Central/South Tower Complaint, the Central and South Associations assert that utilities should be billed based on usage, rather than allocated to the unit owners based on the square-footage of the units. <u>See</u> Central/South Tower Compl. ¶ 37. The Master Declaration states exactly that: "[t]o the extent that any utility consumption charges are part of the cost attributable to the Shared Facilities and those charges can reasonably be allocated to the

particular Lots based upon actual consumption," then the unit owners shall be so charged. Master Decl. § 16.3.  While the Debtors contend that such an allocation is unfeasible (see Sale Mot. ¶ 102), such a conclusory and factually unfounded statement cannot override the explicit requirement of the Master Declaration.

44.     Accordingly, the Central and South Associations are likely to prevail on all claims in the Central/South Tower Litigation, rendering it impossible to satisfy the Favorable Resolution requirement and close the proposed sale to 360 Miami.  Accordingly, the Sale Motion should be denied.

**V.     Character Of The Property.**

45.     By the North Tower Complaint, the North Association seeks declaratory relief preventing the Debtors from fundamentally altering the character of the Property.  See North Tower Compl. ¶¶ 33, 42, 43.

46.     The Debtors contend that the North Tower Complaint is moot because the proposed sale to Shamrock did not close.  See Sale Mot. ¶ 29.  The Debtors are mistaken.  The North Tower Complaint is not moot because, in addition to the particular relief with respect to the planned sale to Shamrock, the North Association is seeking other relief in the North Tower Complaint unrelated to the contemplated Shamrock transaction.  Further, notwithstanding the Debtors' contention that the North Tower Complaint is moot, they are still requesting that the Court enter findings of fact and conclusions of law with respect to the substance of the North Tower Complaint that are contrary to the rights afforded to the Associations and unit owners under the Declarations.

47.     In the North Tower Complaint, the North Association contends that the Debtors cannot exercise their rights under the Declarations "in such a way that will fundamentally change

the character of the exclusive Canyon Ranch lifestyle within the community." See North Tower Compl. ¶ 33. In particular, the North Association contends that the Debtors are not permitted to annex additional property if such annexation "would unreasonably impair the fundamental plan of development . . . and cause damages to the North Tower residents." See North Tower Compl. ¶ 27. The Debtors argue that Article 2.2 of the Master Declaration "specifically provides that the Hotel Lot Owner . . . has the right to 'annex' or add [certain additional property] as defined by the . . . Master Declaration." See Sale Mot. ¶ 92. As a result, the Debtors request that the Court include provisions in the Sale Order finding that the Hotel Lot Owner (whether the Debtors or any successor) has the unqualified right to annex additional property under the Master Declaration.

48. However, the relief sought by the Debtors is contrary to the plain meaning of the Master Declaration. As set forth in Article 2.2 of the Master Declaration, the Hotel Lot Owner does not have an unqualified right to annex additional property, but rather must ensure that any annexation is in accordance with the "uniform scheme of development of [the Property]" and does not "change the common elements of a condominium or the Shared Facilities." See Master Decl., Article 2.2. The Debtors' proposed findings are in direct conflict with the plain meaning of the Declarations and should be denied.

49. The North Association further contends that the Debtors cannot operate the Shared Facilities in such a way that overburdens them to the detriment of the unit owners. See North Tower Compl. ¶¶ 22. The Debtors argue that the Master Declaration "plainly provides that the Hotel Lot Owner has the right to use, and regulate use of, the Hotel Lot, including the Shared Facilities, the Spa, and the spa facilities in its sole discretion." See Sale Mot. ¶ 93. As a result, the Debtors request that the Court include provisions in the Sale Order finding that the

Hotel Lot Owner (whether the Debtors or any successor) has the exclusive right to: (i) determine how the unit owners may exercise their rights with respect to the Shared Facilities; (ii) grant easements with respect to the Shared Facilities; and (iii) determine who may use the Spa facilities. <u>See</u> Sale Mot. ¶ 95.

50.     However, the broad relief sought by the Debtors is contrary to and far exceeds any rights the Debtors or any purchaser may have under the Master Declaration. Although the Master Declaration affords the Hotel Lot Owner certain rights with respect to the Shared Facilities and Spa, the exercise of those rights must be carried out in a "reasonable" manner. <u>See</u> Master Decl., Article 4.3. The findings proposed by the Debtors far exceed the limited rights of the Hotel Lot Owner under the Master Declaration and should be denied.

51.     Accordingly, the Court should deny the Sale Motion as it seeks entry of findings of fact and conclusions of law that are not supported by the Declarations and which are contrary to the Associations' and unit owners' rights thereunder.

## <u>RESERVATION OF RIGHTS</u>

52.     Given this Objection is submitted prior to the Auction, the Associations reserve all rights to supplement this Objection, including filing a supplemental objection to the conduct of the Auction or the selection of the Successful Bidder.

## CONCLUSION

**WHEREFORE**, the Associations respectfully request that the Court: (i) deny the Sale Motion for the reasons set forth above; (ii) abstain from hearing the State Court Actions and remand to the State Court; and (iii) grant such other and further relief to the Associations as the Court may deem just and proper.

Dated: New York, New York
      August 14, 2014

Respectfully submitted,

**NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., CENTRAL CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., AND SOUTH CARILLON CONDOMINIUM ASSOCIATION, INC.**

By their counsel,
BROWN RUDNICK LLP
By:

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

-and-

BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
Scott L. Baena (admitted *pro hac vice*)
Mindy A. Mora
Martin A. Schwartz
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone: (305) 374-7580
Facsimile: (305) 351-2242