BROWN RUDNICK LLP
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4900

- and -

BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
Scott L. Baena (admitted *pro hac vice*)
Mindy A. Mora
Martin A. Schwartz
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone:  (305) 350-2414

*Co-Counsel for North Carillon Beach Condominium*
*Association, Inc., Central Carillon Beach*
*Condominium Association, Inc. and South Carillon*
*Beach Condominium Association, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
In re:                                                                      :          Chapter 11
                                                                               :
                                                                               :          Case No. 14-11691 (SCC)
FL 6801 SPIRITS LLC, *et al.*,                                   :
                                                                               :          (Jointly Administered)
                                                     Debtors.          :
---------------------------------------------------------------X

**NOTICE OF THE ASSOCIATIONS' MOTION FOR ENTRY OF AN
ORDER:  (I) FINDING THAT THE PROPOSED SALE CANNOT BE
CONSUMMATED FREE AND CLEAR OF THE FLORIDA LAWSUITS
PURSUANT TO 11 U.S.C. §§ 105 AND 363, OR IN THE ALTERNATIVE,
(II) ABSTAINING FROM ADJUDICATING DECLARATORY RELIEF
REQUESTED IN FLORIDA LAWSUITS PURSUANT TO 28 U.S.C. § 1334
AND TO LIFT THE AUTOMATIC STAY TO PURSUE THE DECLARATORY
RELIEF SOUGHT IN THE FLORIDA LAWSUITS PURSUANT TO 11 U.S.C. § 362**

**PLEASE TAKE NOTICE** that a hearing on the *Associations' Motion for Entry of an Order: (I) Finding that the Proposed Sale Cannot Be Consummated Free and Clear of the Florida Lawsuits Pursuant to 11 U.S.C. §§ 105 and 363, or in the Alternative, (II) Abstaining from Adjudicating Declaratory Relief Requested in Florida Lawsuits Pursuant to 28 U.S.C. § 1334 and to Lift the Automatic Stay to Pursue the Declaratory Relief Sought in the Florida Lawsuits Pursuant to 11 U.S.C. § 362* (the "Motion") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Room 623 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, on **October 7, 2014 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Motion (the "Responses") must be made in writing, stating in detail the reasons therefore, and must be filed with the Clerk of the Bankruptcy Court, with paper copies delivered to Bankruptcy Judge Shelley C. Chapman's Chambers, and served upon: (i) Brown Rudnick LLP, Seven Times Square, New York, New York 10036, Attn: Edward S. Weisfelner, Esq. and Howard S. Steel, Esq.; (ii) Togut, Segal & Segal, One Penn Plaza, Suite 3335, Attn: Frank A. Oswald, Esq. and Lara R. Sheikh, Esq., as counsel for the Debtors; (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq.; (iv) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Jacqueline Marcus, Esq., as counsel for Lehman; and (v) any parties required to be served under any applicable Bankruptcy Rules or Local Rules, so that such Responses are actually received by the aforementioned parties not later than **September 30, 2014 at 4:00 p.m.** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no Reponses are timely filed and served with respect to the Motion, the Associations may, on or before the Response Deadline, submit to the Court a proposed order with respect to the relief requested in the Motion, which order may be entered with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Motion may be adjourned from time to time, without further written notice to any party.

Dated: New York, New York
  September 9, 2014

Respectfully submitted,

**NORTH CARILLON BEACH
CONDOMINIUM ASSOCIATION, INC.,
CENTRAL CARILLON BEACH
CONDOMINIUM ASSOCIATION, INC., AND
SOUTH CARILLON CONDOMINIUM
ASSOCIATION, INC.**

By their counsel,
BROWN RUDNICK LLP

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

-and-

BILZIN SUMBERG BAENA PRICE &
AXELROD, LLP
Scott L. Baena (admitted *pro hac vice*)
Mindy A. Mora
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone:  (305) 374-7580
Facsimile:  (305) 351-2242

BROWN RUDNICK LLP
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4900

- and -

BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
Scott L. Baena (admitted *pro hac vice*)
Mindy A. Mora
Martin A. Schwartz
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone:  (305) 350-2414

*Co-Counsel for North Carillon Beach Condominium*
*Association, Inc., Central Carillon Beach*
*Condominium Association, Inc., and South Carillon*
*Beach Condominium Association, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 14-11691 (SCC) |
| FL 6801 SPIRITS LLC, *et al*., | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------X

## THE ASSOCIATIONS' MOTION FOR ENTRY OF AN ORDER:  (I) FINDING THAT THE PROPOSED SALE CANNOT BE CONSUMMATED FREE AND CLEAR OF THE FLORIDA LAWSUITS PURSUANT TO 11 U.S.C. §§ 105 AND 363, OR IN THE ALTERNATIVE, (II) ABSTAINING FROM ADJUDICATING DECLARATORY RELIEF REQUESTED IN FLORIDA LAWSUITS PURSUANT TO 28 U.S.C. § 1334 AND TO LIFT THE AUTOMATIC STAY TO PURSUE THE DECLARATORY RELIEF SOUGHT IN THE FLORIDA LAWSUITS PURSUANT TO 11 U.S.C. § 362

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND .........................................................................................................6

    A.    The Associations and Declarations...............................................................6

    B.    Lehman Disregards The Rights Of The Associations And Unit Holders. ...................8

    C.    The Florida Lawsuits. ....................................................................................9

    D.    The Sale Motion. .........................................................................................10

            i.   The Proposed Sale To Z Capital. .......................................................11

RELIEF REQUESTED ................................................................................................12

ARGUMENT ..............................................................................................................12

I.      THE PROPOSED SALE CANNOT BE EFFECTUATED FREE AND CLEAR
OF THE CLAIMS FOR DECLARATORY RELIEF ASSERTED IN THE
FLORIDA LAWSUITS UNDER BANKRUPTCY CODE SECTION 363(F)...............12

II.     THE COURT SHOULD ABSTAIN FROM ADJUDICATING THE
REQUESTED DECLARATORY RELIEF IN THE FLORIDA LAWSUITS. ..............15

    A.    The Court Is Required To Abstain From Adjudicating The Claims For
Declaratory Relief Asserted In The Florida Lawsuits Pursuant To 28 U.S.C. §
1334(c)(2)...................................................................................................15

            i.   The Abstention Request Is Timely. ...................................................16

            ii.  The Florida Lawsuits Assert State Law Claims For Declaratory Relief...............17

            iii.  The Florida Lawsuits Are Not Core Proceedings. ...............................18

            iv.  The Only Basis For Jurisdiction Over The Florida Lawsuits Is 28 U.S.C. §
1334.......................................................................................................19

            v.   There Is A Related Action Pending In The Florida State Courts. ......................20

            vi.  The Florida Lawsuits Can Be Timely Adjudicated In The Florida State
Courts. ..................................................................................................20

B.      The Court Should Exercise Permissive Abstention With Respect To The Claims For Declaratory Relief Asserted In The Florida Lawsuits. ........................... 23

         i.    Existence Of Right To Jury Trial. ......................................................... 24

         ii.   Potential Forum Shopping. .................................................................. 24

         iii.  Need To Sever State Law Claims From Core Matters. ......................... 24

         iv.  Remoteness Of State Law Claims To Main Bankruptcy Case. ............. 25

         v.   Presence Of Non-Debtor Third Parties. ............................................... 25

C.      The Court Should Lift The Automatic Stay To Permit The Associations To Pursue The Declaratory Relief Sought In The Florida Lawsuits ............................... 25

         i.    Whether Relief Would Result In A Partial Or Complete Resolution Of The Issues. ................................................................................................. 27

         ii.   Whether Litigation In Another Forum Would Prejudice Other Creditors. ........... 27

         iii.  Whether The Parties Are Ready For Trial. ............................................ 27

         iv.  Harm To The Parties As A Result Of The Stay. .................................... 28

III.    THE COURT LACKS JURISDICTION TO ENTER THE DECLARATORY RELIEF SOUGHT IN THE SALE MOTION BECAUSE THERE IS NO CASE OR CONTROVERSY PENDING BEFORE THE COURT AND THE DECLARATORY RELIEF CONCERNS NON-DEBTOR THIRD PARTIES ............. 28

    A.     There Is No Case Or Controversy Concerning The Florida Lawsuits Pending Before The Court. ................................................................................... 28

    B.     The Favorable Resolution Clause Concerns A Dispute Between Non-Debtor Third Parties. ............................................................................................ 29

NO PRIOR REQUEST ............................................................................................. 30

NOTICE ..................................................................................................................... 30

CONCLUSION ........................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

BGC Partners, Inc. v. Avison Young (Canada), Inc.,
919 F. Supp. 2d 310 (S.D.N.Y. 2013) ..................................................................... 20, 21, 22

Burger Boys, Inc. v. South Street Seaport Ltd. (In re Burger Boys Inc.),
183 B.R. 682 (Bankr. S.D.N.Y. 1994) ...................................................................25

Cody Inc. v. Cnty. of Orange (In re Cody, Inc.),
281 B.R. 182 (S.D.N.Y. 2002)...................................................................24

E.S. Bankest, LLC v. United Beverage Fla., LLC (In re United Container LLC),
284 B.R. 162 (Bankr. S.D. Fla. 2002) ...................................................................24

Fried v. Lehman Bros. Real Estate Assocs. III, L.P.,
496 B.R. 706 (S.D.N.Y. 2013)...................................................................... 16, 23

Gordon v. Shirley Dukes Assocs. (In re Shirley Duke Assocs.),
611 F.2d 15 (2d Cir.1979) ...................................................................29

Home Cable Concepts, Inc. v. Seale (In re Best Reception Systems, Inc.),
219 B.R. 980 (Bankr. E.D. Tenn. 1998)...................................................................19

Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.),
185 B.R. 680 (S.D.N.Y. 1995)...................................................................19

In re 4 Front Petroleum, Inc.,
345 B.R. 744 (Bankr. N.D. Okla. 2006)...................................................................22

In re Balco Equities Ltd., Inc.,
323 B.R. 85 (Bankr. S.D.N.Y. 2005) ...................................................................18

In re Ben Cooper, Inc.,
896 F.2d 1394 (2d. Cir. 1990)...................................................................19

In re Downtown Athletic Club of New York City, Inc.,
No. M-47, 2000 WL 744126 (S.D.N.Y. June 9, 2000) ...................................................................13

In re Dundee Equity Corp.,
Case No. 89-B-10233, 1992 WL 53743 (Bankr. S.D.N.Y. March 6, 1992) .........................13

In re Helen Touloumis,
170 B.R. 825 (Bankr. S.D.N.Y. 1994) ...................................................................26

In re Iridium Operating LLC,
    285 B.R. 822 (S.D.N.Y. 2002)............................................................................18

In re Jackson Brook Inst. Inc.,
    227 B.R. 569 (D. Me. 1998) ............................................................................18

In re Joint Eastern and Southern Dist. Asbestos Litig.,
    14 F.3d 726 (2d Cir. 1993) ..............................................................................28

In re Restaurant Associates, L.L.C.,
    Civ. Action No. 1:06CV53, 2007 WL 951849 (N.D. W.Va. March 28, 2007).....................14

In re Taub,
    413 B.R. 81 (E.D.N.Y. 2009) ..........................................................................17

Joremi Enters. Inc. v. Hershkowitz (In re New 118th LLC),
    396 B.R. 885 (Bankr. S.D.N.Y. 2008) .................................................................16

Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.,
    487 B.R. 158 (S.D.N.Y. 2013)..........................................................................18

N.Y. City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec.
    Litig.),
    293 B.R. 308 (S.D.N.Y. 2003)..........................................................................16

Nelson White Construction Management Corp. v. McConaghy (In re
    McConaghy),
    15 B.R. 480 (Bankr. E.D. Va. 1981) ...................................................................30

New York Commercial Bank v. Pullo,
    No. 12-02052 (BRL) 2013 WL 494050 (Bankr. S.D.N.Y. Feb. 7, 2013)............................22

Pacor, Inc. v. Higgins,
    743 F.2d 984 (3d Cir. 1984) ............................................................................30

Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,
    639 F.3d 572 (2d Cir. 2011) ............................................................................20

Renaissance Cosmetics Inc. v. Dev. Specialist Inc.,
    277 B.R. 5 (S.D.N.Y. 2002)............................................................................16

S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips
    Constructors, Inc.),
    45 F.3d 702 (2d Cir.1995) ..............................................................................18

Seascape at Wrightsville Beach, LLC v. Mercer's Enterprises, Inc. (In re Mercer's
    Enterprises, Inc.),
    387 B.R. 681 (Bankr. E.D.N.C. 2008) .................................................................18

Silverman v. Ankari (In re Oyster Bay Cove, Ltd.),
    196 B.R. 251 (E.D.N.Y. 1996) ................................................................15

Sonnax Indus., Inc. v. TRI Component Prod. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990)................................................................26

U.S. v. Probber,
    170 F.3d 345 (2d Cir. 1999) ................................................................28

**STATUTES**

11 U.S.C. § 362(g)(1)................................................................................25

11 U.S.C. § 1334 ......................................................................................19

11 U.S.C. § 362(d)(1)................................................................................25

11 U.S.C. § 363(f)..............................................................................12, 13

28 U.S.C. § 157(b)(2)(A)-(P) ....................................................................18

28 U.S.C. § 1334(c)(1)..............................................................................23

28 U.S.C. 1334(c)(2)..............................................................................16

**OTHER AUTHORITIES**

Florida Office of the State Courts Administrator, FY 2012-13 Statistical
    Reference Guide, 4-13 (Sept. 4, 2014),
    http://www.flcourts.org/core/fileparse.php/250/urlt/reference-guide-1213-
    circuit-civ.pdf................................................................................21

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

North Carillon Beach Condominium Association, Inc. ("North Association"), Central Carillon Beach Condominium Association, Inc. ("Central Association") and South Carillon Beach Condominium Association, Inc. ("South Association" and, together with North Association and Central Association, the "Associations"), by and through their undersigned co-counsel, respectfully submit *The Associations' Motion for Entry of an Order: (I) Finding that the Proposed Sale Cannot Be Consummated Free and Clear of the Florida Lawsuits Pursuant to 11 U.S.C. §§ 105 and 363, , or, in the Alternative, (II) Abstaining from Adjudicating Declaratory Relief Requested in Florida Lawsuits Pursuant to 28 U.S.C. § 1334 and Lifting the Automatic Stay to Pursue the Declaratory Relief Sought in the Florida Lawsuits Pursuant to 11 U.S.C. § 362* (the "Motion").[1]   In support of the Motion, the Associations respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Associations are not-for-profit Florida corporations that represent the interests of 580 unit owners (the "Unit Holders") at the Canyon Ranch Hotel & Spa Miami Beach (the "Property").

2.      During a meeting held on September 2, 2014 within days of the status conference with the Court on August 27th, the Associations presented a consensual chapter 11 plan proposal to the Debtors and Lehman in the Associations' ongoing efforts to resolve these cases.  The contemplated plan would provide enough cash to pay what the Associations were led to believe

---

[1]   The Debtors are indirect, wholly-owned subsidiaries of Lehman Brothers Holdings, Inc. ("LBHI").  Lehman Ali Inc. ("Lehman Ali") is the sole member of PAMI ALI LLC ("PAMI," and collectively with Lehman Ali and LBHI, "Lehman"), which in turn is the manager and sole member of Debtor FL 6801 Spirits LLC ("Spirits"), the  manager and sole member of affiliated Debtors, FL 6801 Collins North LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), Fl 6801 Collins South LLC ("6801 South," together with 6801 North and 6801 Central, the "Collins Subsidiaries," and collectively with Spirits, the "Debtors").

were all of the budgeted costs of administration, the satisfaction of all of the projected general unsecured claims and would have provided a reasonable return to Lehman.[2]  Significantly, the Associations' plan proposal also includes releases of the Associations' Florida Lawsuits (defined below) and would have expedited a harmonious transition of the Property from the Debtors to an entity comprised of several Unit Holders and their chosen new hotel operator.

3.      Unfortunately, the Associations' considerable efforts appear for naught.  Not only have the Debtors refused to respond to the Associations' plan proposal, newly discovered facts and circumstances evidence Lehman's continued efforts to change the economic goal posts for a deal and cling to an auction result that is more mirage than any sort of reflection of true market value.

4.      Since the September 2nd meeting, Lehman has admitted that it did not fund anywhere near the court-approved DIP budget and has failed to make any of the property repairs called for in that budget.[3]  Instead, Lehman now appears to want the plan proponents to undertake the costs of certain construction defects (estimated at almost $3 million) as an additional cost of funding a plan.  Furthermore, there are literally millions of dollars of other construction defects and/or deferred maintenance costs that Lehman has known about for years but has failed to address.[4]

---

[2]   In fact, the projected return to the equity owners provides more value than what Lehman demanded the Associations deliver prior to the commencement of the Debtors' tainted auction.

[3]   Despite this recent admission, Lehman has still refused to provide a variance budget to the one submitted to the Court.

[4]   It also appears that Lehman withheld these additional costs from the bidders as part of the due diligence process making the likelihood of Z Capital's closing all the more speculative.  Lehman continues to want to rely on a long shot (who has not articulated a plan for the operation of the hotel or spa) and who has the  option to drag out the uncertainty imposed on the Unit Holders through May 22, 2015 or simply walk away with a return of its deposit if it is not satisfied with the results of litigation over the Florida Lawsuits.

5.      With dismay, the Associations have also only recently discovered that the proposed purchase agreement with Z Capital has several credits that may reduce its purchase price to $17.8 million at closing – that is, if Z Capital does not otherwise exercise its free option to walk away.  By contrast, the chapter 11 plan supported by the Associations would have $14 million in cash funding and would eliminate the issues which would otherwise have to be litigated as reflected by the Florida Lawsuits.

6.      Despite the passage of time, there has still been no formal response to the economic terms of the Associations' plan proposal.  Said another way, Lehman has yet to articulate its counter-demand for a return on its equity.

7.      In the absence of a consensual deal, the Associations find themselves forced to investigate Lehman's DIP financing loan, purported secured claim (for which the Debtors have refused to provide the Associations' requested discovery) and scheduled general unsecured claim (which the Debtors cannot explain to the Associations in greater fashion than it is for "advances").  The Associations are also investigating the estates' claims against KM Plaza (which the equity owners have demanded be assigned to them in any transaction and which may be worth millions of dollars).  Given there is no Creditors' Committee in these cases, the Associations, not-for-profit corporations, fully funded by assessments on the Unit Holders, have been paying a substantial price to counter-balance the actions of the Debtors and their equity owners.

8.      The Debtors and their equity owners have repeatedly turned their backs on the Associations' plan proposals (and selected Z Capital without consultation with the Associations in breach of the Bidding Procedures Order) and continue to impede the Associations' discovery.  These cases require a new path and leadership.  Thus, the Associations intend shortly to file a

motion to seek appointment of a trustee to properly govern these cases or an examiner to investigate the insider transactions benefitting the equity owners and whether the equity owners' myriad acts of bad faith and self-dealing should result in equitable subordination of their claims. The Associations will also seek to terminate exclusivity to file the Associations' plan which, at a minimum, should progress on a dual track as an alternative to the Debtors' proposed sale process.

9.     The instant Motion seeks to advance these cases forward by determining the appropriate forum and schedule for adjudication of the declaratory relief portion of the Florida Lawsuits.[5] The Florida Lawsuits seek declaratory relief as to the Associations' rights under the Declarations, which are expressly governed by Florida law (the "Florida Lawsuits").

10.     The Debtors have improperly sought to have this Court dispose of the Florida Lawsuits in summary fashion as part of the Sale Motion.[6] Specifically, by the Sale Motion, the Debtors have asked this Court to either enter findings of fact and conclusions of law that would effectively adjudicate the claims for declaratory relief asserted by the Associations in the Florida Lawsuits, or simply order their dismissal. The Court should decline to grant such relief for at least three reasons.

11.     First, as a matter of law, the Debtors cannot sell the Property free and clear of the claims for declaratory relief asserted in the Florida Lawsuits under Bankruptcy Code Section

---

[5]  To be clear, the Associations acknowledge that this Court may be the appropriate forum for adjudicating the allowed amount of their contested general unsecured claims, an adjudication that would be settled under their plan construct. Rather, this Motion is addressed only to that portion of the Florida Lawsuits that seek declaratory relief.

[6]  See Ex Parte Application For An Order Scheduling A Hearing To Consider, Among Other Things, Bidding Procedures And (II) Motion For (A) An Order Approving, Among Other Things, (i) Bidding Procedures Regarding The Debtors' Sale Of Property, Subject To Higher Or Better Offers And Bankruptcy Court Approval, (ii) The Time, Date, Place And Form Of Notice For The Auction And Sale Hearing, And (iii) A Break-Up Fee, (B) An Order (i) Approving The Sale Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (ii) Authorizing The Assumption And Assignment Of Certain Executory Contracts, And (C) Related Relief, dated June 1, 2014, [Docket No. 4] (the "Sale Motion").

363(f).  Because the Florida Lawsuits do not involve a dispute concerning the validity of the Declarations, but rather their interpretation, there is no bona fide dispute concerning the validity of the Declarations, and the Property cannot be sold free and clear of the Associations' claims pursuant to Bankruptcy Code Section 363(f)(4).

12.     Second, the Court should abstain from adjudicating the claims for declaratory relief asserted by the Associations in the Florida Lawsuits and lift the automatic stay solely to permit the Florida State Courts to adjudicate the declaratory relief sought in the Florida Lawsuits.  Abstention is warranted in this case on both a mandatory and permissive basis.  The Debtors cannot overcome the undisputed fact that the Florida Lawsuits involve only issues of Florida state law, and the Florida State Courts are the more appropriate forum to resolve the dispute.  Accordingly, it is logical and appropriate that the Court lift the automatic stay pursuant to Bankruptcy Code Section 362 to permit the Associations to fully litigate their claims for declaratory relief in the Florida State Courts.

13.     Third, the Court should not adjudicate the claims for declaratory relief in the Florida Lawsuits as part of the Sale Motion because the Florida Lawsuits are not pending before this Court.  By asking the Court to do so, the Debtors fail to recognize the basic Constitutional requirement that a case or controversy must be pending before the Court before judgment can be rendered.  The Debtors should not be permitted to avoid this principle in their effort to obtain relief with respect to a case not pending before this Court.

14.     The Debtors' attempt to have this Court adjudicate the claims for declaratory relief asserted by the Associations in the Florida Lawsuits is another example of the Debtors' complete disregard for the rights of the Associations and Unit Holders.  This Court should enter an order:  (i) abstaining from adjudicating the claims for declaratory relief asserted by the

Associations in the Florida Lawsuits and lift the automatic stay so that the Florida State courts can adjudicate the Associations' claims for declaratory relief; or (ii) finding that the Property cannot be sold free and clear of the Florida Lawsuits pursuant to Bankruptcy Code Section 363(f).

## BACKGROUND

### A.   The Associations and Declarations.

15.   The Associations were established by the Master Declaration (defined below), which governs the operation of the Property.  The Master Declaration was executed by the original Declarant (defined in the Master Declaration) at the outset of the development of the Property in December 2007.  The Master Declaration is more than just a contract between the owner of the Property and the Associations and Unit Owners.  Rather, the Master Declaration and related Tower Declarations (defined below) are required by Florida law, and are so essential that they are covenants that run with the Property.  Thus, in the event that the Property changes hands, pursuant to the Master Declaration, the new owner becomes the Declarant.

16.   The Property is a condominium hotel and spa development that was marketed as the nation's first luxury boutique hotel and spa dedicated to wellness and providing its owners with a unique and valuable life-style experience.  The Property is comprised of three towers: (i) the "North Tower"; (ii) the "Central Tower"; and (iii) the "South Tower" (collectively, the "Condo Towers").

17.   Each of the Condo Towers is governed by a Declaration of Condominium (collectively, the "Tower Declarations").[7]  In addition to the Tower Declarations, the Property is

---

[7]   Copies of the Tower Declarations are attached hereto as **Exhibit A.**

governed by a Declaration of Covenants, Restrictions and Easements for Carillon Hotel and Spa (the "Master Declaration" and together with the Tower Declarations, the "Declarations").[8]

18.     The Master Declaration governs the relationships between and among the Associations, the Unit Holders and the Hotel Lot Owner (as defined in the Master Declaration). The Master Declaration provides for five "Lots" at the Property as follows:

| Address | Lots |
| --- | --- |
| 6799 Collins Avenue | South Tower |
| 6801 Collins Avenue | Central Tower |
| 6801 Collins Avenue | Hotel Lot |
| 6899 Collins Avenue | North Tower |
| 6899 Collins Avenue | Retail Lot |

19.     The Declarations unambiguously state that they are "covenants that run with the land." Master Declaration, Art. 19.1; Tower Declarations, Art. 19; see also Master Declaration, Art. 19.17 ("Anything to the contrary herein notwithstanding . . . it is the intentions of all parties affected hereby . . . that these covenants and restrictions shall run with The Properties and with title to The Properties.").

20.     The Declarations also provide that they are binding on the Declarant as well as on its "successors and such of its assigns as to which the rights of Declarant hereunder are specifically assigned." Master Declaration, Art. 1.1(r). The Debtors have acknowledged that "the rights granted under the Declarations run with the land and [will] remain in place after the [Property is sold]." See Sale Motion ¶ 89.

21.     The Master Declaration identifies certain shared facilities of the five Lots (the "Shared Facilities"), as well as certain non-retail shared facilities (the "Non-Retail Shared

---

[8]     A copy of the Master Declaration is attached hereto as **Exhibit B**.

Facilities"). Every year, the Hotel Lot Owner is charged under the Declarations to establish an annual budget for the Shared Facilities (the "Shared Facilities Budget") and the Non-Retail Shared Facilities (the "Non-Retail Shared Facilities Budget"). The Master Declaration provides that the Associations, via assessments on Unit Holders, must pay the Hotel Lot Owner annual charges relating to the Shared Facilities and the Non-Retail Shared Facilities. The Master Declaration also sets forth the methodology by which the Hotel Lot Owner shall allocate the assessments to the Associations. See Master Declaration Art. 16.3.

**B.      Lehman Disregards The Rights Of The Associations And Unit Holders.**

22.      In December 2009, the Debtors took over the Property by deed in lieu of foreclosure. See *Declaration of Anthony Barsanti pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* (hereafter, the "Barsanti Decl.") at 3. In so doing, the Debtors became the Declarants under the Declarations. See Master Declaration, Art. 1.1(r).

23.      Since that time, the Debtors and their equity owners have distorted the Declarations for their own pecuniary gain to the detriment of the Associations and Unit Holders.[9] Specifically, a recent forensic audit commissioned by the Associations revealed that the Debtors improperly assessed the Associations an estimated $20 million in unauthorized charges. The forensic audit is ongoing and the precise amount of the improper assessments is unknown at this

---

[9] See *Objection to Debtors' (I) Ex Parte Application for an Order Scheduling a Hearing to Consider, among Other Things, Bidding Procedures and (II) Motion for (A) an Order Approving, among Other Things, (i) Bidding Procedures Regarding the Debtors' Sale of Property, Subject to Higher or Better Offers and Bankruptcy Court Approval, (ii) the Time, Date, Place and Form of Notice for the Auction and Sale Hearing, and (III) a Break-Up Fee, (B) an Order (i) Approving the Sale Free and Clear of Lien, Claims, Encumbrances and Other Interests, and (ii) Authorizing the Assumption and Assignment of Certain Executory Contracts and (C) Related Relief* [Docket No. 52]; *The Associations' Objection to the Sale Motion* [Docket No. 106]; *Associations' Supplemental Objection to: (I) Conduct of Auction; (II) Selection of Successful Bidder and Second Highest Bidder; and (III) Terms of Proposed Sale* [Docket No. 120]

time and further impaired because of the Debtors' refusal to comply with the Associations' discovery requests.

C.    The Florida Lawsuits.

24.    On February 19, 2014, the North Association filed an Amended Complaint against Debtors 6801 Collins North LLC, 6801 Collins South LLC, 6801 Collins Central LLC and W Capital Group, LLC,[10] in the Circuit Court of the 11th Judicial District in and for Miami-Dade County, Florida, seeking declaratory relief under Chapter 86 of the Florida Statutes in connection with defendants' misinterpretation of the Master Declaration and the North Tower Declaration to the detriment of the North Association (the "North Tower Litigation").[11] To date, the Debtors have not removed the North Tower Litigation to this Court or interposed an answer to the amended complaint.

25.    On February 28, 2014, the Central Association and South Association filed a Complaint in the 11th Judicial District in and for Miami-Dade County, Florida against the Master Association, South Tower Association and 6801 Central, seeking, *inter alia*, declaratory and injunctive relief under the Master Declaration (the "Central/South Tower Litigation," and together with the North Tower Litigation, the "Florida Lawsuits").[12] In their Complaint, Central Association and South Association requested a jury trial. To date, the Debtors have not removed the Central/South Tower Litigation to this Court or interposed an answer to the complaint.

26.    The Florida Lawsuits are complex litigations based on interpretations of dense condominium documents under Florida law. By the Florida Lawsuits, the Associations seek,

---

[10]    On March 21, 2014, North Association filed a "Stipulated Notice of Dropping Defendant W Capital Group, LLC without Prejudice," thereby removing W Capital Group, LLC as a defendant in the litigation.

[11]    A copy of the Complaint filed by the North Association is attached hereto as **Exhibit C**.

[12]    A copy of the Complaint filed by the Central and South Associations is attached hereto as **Exhibit D**.

inter alia, declaratory relief with respect to a number of issues that impact the rights of the Associations and Unit Holders, on one hand, and the prospective Hotel Lot Owner, on the other, including the following:

      a.      Whether, under the Master Declaration, the following charges, among others, can be included in the Non-Retail Shared Facilities assessments: (a) Spa Attendants; (b) Spa Expenses; (c) Fitness Instructors; (d) Office Expense Fitness; and (e) Spa Expense Supplies;

      b.      Whether, under the Master Declaration, the following charges, among others, can be included in the Hotel-related line items in the Non-Retail Shared Facilities Budget: (a) IT Systems & Technology Share; (b) Concierge; (c) Contingency, and (d) Valet and Parking Services;

      c.      Whether, under the Master Declaration, costs for utilities can be assessed based upon a purported square footage allocation methodology instead of based upon usage;

      d.      Whether rules and regulations prohibiting Spa usage, which conflict with the rights of Unit Holders set forth in the offering memorandum for the units, may be enacted and enforced; and

      e.      Whether the exclusive Canyon Ranch lifestyle that is the key ambient element of the Property may be fundamentally altered under the Declarations.

**D.**      **The Sale Motion.**

27.      On June 1, 2014, the Debtors filed the Sale Motion.  See Docket No. 4.  Pursuant to the Sale Motion, the Debtors seek approval to sell substantially all of their assets to the Successful Bidder in accordance with the terms of the Successful Bidder's Purchase Agreement. See Sale Motion ¶ 6.

28.      By the Sale Motion, the Debtors make an extraordinary request that the Court include a series of findings in the Sale Order – the so-called "Favorable Resolution"– that would deny, dismiss or otherwise dispose "of the declaratory relief sought by the [Associations in the Florida Lawsuits], including [through] the entry of (i) the Sale Order containing findings of fact

and conclusions of law effectuating such relief, (ii) an order of dismissal or (iii) other similar resolution that is favorable to the Debtors." See Sale Motion ¶ 17.

29.     The Debtors assert that entry of the Favorable Resolution is "necessary . . . [to] nullify[] the Associations' attempts to limit the [prospective] Hotel Lot Owner's rights with respect to the Property. . . ." Sale Motion ¶ 89.

30.     Further, by the Sale Motion, the Debtors request that the Court approve the sale of certain assets free and clear of the claims for declaratory relief asserted by the Associations in the Florida Lawsuits pursuant to Bankruptcy Code Section 363(f)(4). See Sale Motion ¶ 113. The stated basis for the requested relief is the alleged existence of a bona fide dispute between the Debtors and the Associations regarding the Associations' attempts to "encumber, define and limit the Debtors' rights to the Property under the Declarations." Id. ¶ 114.

### i.     The Proposed Sale To Z Capital.

31.     On August 21, 2014, the Debtors selected Z Capital as the Successful Bidder, and North Beach Development, LLC as the Second Highest Bidder. See Docket No. 113. The Debtors propose to sell substantially all of their assets to Z Capital pursuant to the Z Capital Purchase Agreement. See Docket No. 118.

32.     As set forth in the Associations' Supplemental Sale Objection, the Associations object to the proposed sale to Z Capital. The Auction was tainted by the Debtors/Lehman's conduct and violations of the Bidding Procedures Order. Further, the Z Capital bid is illusory and cannot close because, among other reasons: (i) the Z Capital purchase is conditioned on the entry of the Favorable Resolution, which cannot be obtained as it is both procedurally and substantively improper; (ii) Z Capital has not demonstrated any plan for operating the unique hotel or spa; and (iii) Z Capital has not demonstrated how it will turnaround historic operating losses that continue to expand when factoring in the discovery of additional improper

assessments and necessary repairs and capital investment. The Debtors have a better alternative – the Associations' proffered plan represents an optimum outcome of these cases for the estates and their creditors.

<b><u>RELIEF REQUESTED</u></b>

33. By this Motion, the Associations seek entry of an order finding that the proposed sale to Z Capital cannot be consummated free and clear of the claims for declaratory relief asserted by the Associations in the Florida Lawsuits pursuant to 11 U.S.C. §§ 105 and 363, or, alternatively, abstaining from adjudicating the claims for declaratory relief asserted in the Florida Lawsuits pursuant to 28 U.S.C. § 1334 and providing relief from the automatic stay under 11 U.S.C. § 362, solely to allow the Associations to pursue the declaratory relief in the Florida State Courts.

<b><u>ARGUMENT</u></b>

I. **THE PROPOSED SALE CANNOT BE EFFECTUATED FREE AND CLEAR OF THE CLAIMS FOR DECLARATORY RELIEF ASSERTED IN THE FLORIDA LAWSUITS UNDER BANKRUPTCY CODE SECTION 363(F).**

34. The Associations seek the entry of an order finding that pursuant to Bankruptcy Code Section 363(f), the proposed sale cannot be effectuated free and clear of the claims for declaratory relief asserted by the Associations in the Florida Lawsuits.

35. Bankruptcy Code Section 363(f) identifies the limited conditions under which property may be sold "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). Specifically, such property may be sold "free and clear" of a non-debtor entity's interest *only if*:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

12

(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

36.     The Debtors solely rely on Bankruptcy Code Section 363(f)(4) and argue that this sub-section is satisfied with respect to the Associations' claims for declaratory relief in the Florida Lawsuits because the proposed sale would purportedly resolve "a bona fide dispute between the Debtors, on the one hand, and the Associations, on the other hand." Sale Motion ¶ 113. The Debtors are incorrect.

37.     The Debtors acknowledge that in order to establish a "bona fide dispute" for purposes of Bankruptcy Code Section 363(f)(4), they must present the Court with objective evidence that a factual or legal dispute exists as to "the validity of the debt." See Sale Motion ¶ 114 citing In re Downtown Athletic Club of New York City, Inc., No. M-47, 2000 WL 744126, at *4 (S.D.N.Y. June 9, 2000). The Debtors claim that the Declarations are the subject of a "bona fide dispute" because the "Associations seek to encumber, define, and limit the Debtors' rights to the Property under the Declarations." Sale Motion ¶ 114. But even if that were true, it would not be enough to create a "bona fide dispute" concerning the Declarations for purposes of Bankruptcy Code Section 363(f)(4).

38.     Rather, courts consistently hold that in the case of a dispute concerning a covenant or easement that runs with the land, a "bona fide dispute" only exists when there is a dispute as to the "validity" of the covenant or easement. See In re Dundee Equity Corp., Case No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. March 6, 1992) (no "bona fide dispute" existed concerning stipulations that ran with the property because the "Trustee has not disputed the validity of the Stipulation"). Put differently, a "bona fide dispute" does not exist

when the dispute concerns only the scope or interpretation of the covenant or easement. See In re Restaurant Associates, L.L.C., Civ. Action No. 1:06CV53, 2007 WL 951849, at *9 (N.D. W.Va. March 28, 2007) ("the dispute contemplated by § 363(f)(4) is the validity of the debt . . . and not tangential disputes, such as the applicability of the covenants. . . .").

39.     The Debtors concede that "the rights granted under the Declarations run with the land and remain in place after the Proposed Sale." Sale Motion ¶ 89. Although the Debtors and the Associations may not agree on the meaning of specific provisions of the Declarations, a disagreement over how to interpret a covenant that runs with the land does not give rise to a bona fide dispute over an interest in the Property. In the Florida Lawsuits, the Associations do not challenge the validity of the Declarations, but seek declaratory relief concerning an interpretation of its provisions as they relate to the Hotel Lot Owner's ability to: (1) impose certain assessments on the Unit Holders concerning the spa, parking facilities and utilities; (2) enact rules and regulations limiting the Unit Holders' ability to access the spa; and (3) fundamentally and adversely change or alter the character of the exclusive and private lifestyle that is the key ambient element of Canyon Ranch Miami. Thus, as in Dundee Equity Corp., there is no dispute as to the validity of the Declarations; rather the dispute concerns the scope and interpretation of the Declarations under applicable Florida law. Accordingly, the Associations' claims for declaratory relief in the Florida Lawsuits do not constitute a "bona fide dispute" for purposes of Bankruptcy Code Section 363(f)(4).

40.     Moreover, "[w]hen the alleged dispute concerns the rights of third parties and not the debtor, bankruptcy courts should use § 363(f)(4) with caution." In re Restaurant Associates, L.L.C., 2007 WL 951849 at *9. Here, the Debtors seek to sell their assets and, following the close of the Sale, will have no continuing interest in the Property. Thus, the claims

for declaratory relief asserted by the Associations in the Florida Lawsuits are ultimately a dispute between the Associations and the future Hotel Lot Owner. For this reason as well, the proposed sale cannot be consummated free and clear of those claims pursuant to Bankruptcy Code Section 363(f)(4).

41. Finally, a sale "free and clear of liens or other interests" should not impact litigation concerning the interpretation of the Declarations, which, as noted, are covenants that run with the land. As used in Bankruptcy Code Section 363(f), "free and clear" refers to economic interests against the assets to be sold, such as liens and mortgages, which would then attach to the proceeds of the sale. See Silverman v. Ankari (In re Oyster Bay Cove, Ltd.), 196 B.R. 251, 255 (E.D.N.Y. 1996) (finding that an order to sell free and clear has no effect on easements that run with the land). As the District Court for the Eastern District of New York noted in Oyster Bay Cove, "[c]learly 11 U.S.C.A. § 363(f) and Bankruptcy Rule 6004, which refer to the sale of land 'free and clear' from these 'interests,' are not intended to sever easements and other non-monetary property interests that are created by substantive State law." Id. at 255. Here, the Associations' claims for declaratory relief are not "liens" that may be extinguished as part of a sale pursuant to Bankruptcy Code Section 363(f).

## II.    THE COURT SHOULD ABSTAIN FROM ADJUDICATING THE REQUESTED DECLARATORY RELIEF IN THE FLORIDA LAWSUITS.

### A.    The Court Is Required To Abstain From Adjudicating The Claims For Declaratory Relief Asserted In The Florida Lawsuits Pursuant To 28 U.S.C. § 1334(c)(2).

42. Pursuant to 28 U.S.C. § 1334(c)(2), this Court is required to abstain from either dismissing the Florida Lawsuits or from entering the Favorable Resolution under 28 U.S.C. § 1334(c)(2), which provides for mandatory abstention, as follows:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title

> 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

43.     Courts in this district typically consider six factors when determining whether abstention is mandatory under 28 U.S.C. § 1334(c)(2):  (i) whether the motion to abstain is timely; (ii) whether the action is based on a state law claim; (iii) whether the action is a "core" or "non-core" proceeding; (iv) whether 28 U.S.C. § 1334 provides the only basis for federal jurisdiction; (v) whether a related action is commenced in state court; and (vi) whether the related action can be timely adjudicated in state court.  See Fried v. Lehman Bros. Real Estate Assocs. III, L.P., 496 B.R. 706, 711 (S.D.N.Y. 2013) (citing N.Y. City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 293 B.R. 308, 332 (S.D.N.Y. 2003)); Renaissance Cosmetics Inc. v. Dev. Specialist Inc., 277 B.R. 5, 12 (S.D.N.Y. 2002).  All the requirements for mandatory abstention are satisfied as follows:

### i.     The Abstention Request Is Timely.

44.     Although 28 U.S.C. § 1334(c)(2) does not define "timely," Judge Bernstein has previously considered three factors in determining whether a motion to abstain was timely: (i) whether the motion was filed as soon as possible after the movant learned of the grounds for possible abstention; (ii) whether the movant had already invoked the federal courts on a matter addressing the merits of the claim, and moved for abstention only after receiving an unfavorable result; and (iii) whether the other party would be prejudiced by abstention.  See Joremi Enters. Inc. v. Hershkowitz (In re New 118th LLC), 396 B.R. 885, 893 (Bankr. S.D.N.Y. 2008).

45. The Associations first requested mandatory abstention in the Associations' Preliminary Sale Objection, which was filed fewer than three weeks after the Petition Date. <u>See</u> Docket No. 52. The Associations have never invoked the federal courts with respect to the claims for declaratory relief asserted in the Florida Lawsuits. Finally, the Debtors will not be prejudiced by granting this Motion.

46. The Florida Lawsuits are currently pending in the Florida State Courts. The Property is located in Florida, and the relevant witnesses and professionals are located in Florida. In addition, as previously noted by this Court, traveling to Florida in connection with these cases is not burdensome. <u>See</u> June 25, 2014 Hr'g Tr. 28:10-12 ("[Debtors' counsel] know[s] how to get on planes.").

47. Further, the hearing on the Sale Motion has been postponed <u>sine die</u>, providing ample opportunity to proceed in the Florida State Courts. Under the Z Capital Purchase Agreement, the Debtors may have until May 22, 2015 to satisfy the Favorable Resolution closing condition. Accordingly, the request for abstention is timely.

### ii. The Florida Lawsuits Assert State Law Claims For Declaratory Relief.

48. The claims for declaratory relief asserted by the Associations in the Florida Lawsuits involve complex issues of Florida condominium law, and are predicated on Florida decisional law and statutory authority. <u>See</u>, <u>e.g.</u>, Exhibit C (North Tower Complaint) ¶ 34. The Florida Lawsuits focus solely on the Declarations (which are creatures of Florida law), and the appropriate interpretation of the Declarations. Accordingly, this prong of the mandatory abstention requirements is satisfied. <u>See</u> <u>In re Taub</u>, 413 B.R. 81, 88 (E.D.N.Y. 2009) (mandatory abstention was satisfied where claims subject to abstention were all based on state law).

### iii.    The Florida Lawsuits Are Not Core Proceedings.

49.    The Debtors claim that the Florida Lawsuits are "core proceedings" pursuant to

28 U.S.C. § 157(b)(2).  See *Debtors' Response To Associations' Preliminary Sale Objection*,

dated June 26, 2014 [Docket No. 71] ¶¶ 34-36.  The Debtors are wrong.[13]  Core proceedings

include those proceedings listed under 28 U.S.C. § 157(b)(2).[14]  The Florida Lawsuits do not fall

under any of the categories specified in 28 U.S.C. § 157(b)(2).  The Second Circuit has defined a

"core proceeding" as a proceeding that "invokes a substantive right provided by title 11 or is a

---

[13]   The cases relied upon by the Debtors are all readily distinguishable from the Florida Lawsuits, because they all involve situations in which a court had to adjudicate issues that were bankruptcy specific, such as contract rejection and assumption, claims determinations and lien avoidance.  See Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P., 487 B.R. 158, 162 (S.D.N.Y. 2013) (a third party dispute over whether certain assets were wrongfully transferred was a core proceeding because the resolution depended in part on rights created by an earlier sale order in the case and adjudicating the dispute would depend on interpreting the terms of that order.); S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.), 45 F.3d 702, 708 (2d Cir.1995) (a third party had filed a proof of claim, which had resulted in the commencement of an adversary proceeding, which was a core proceeding because it determined the allowance of the claim); In re Balco Equities Ltd., Inc., 323 B.R. 85, 93 (Bankr. S.D.N.Y. 2005), (Issues concerning: (1) the determination of the validity, extent, or priority of liens, (2) the interpretation of orders by the bankruptcy court approving the sale of property, and (3) proceedings to reject executory contracts, all were held to be core proceedings pursuant to 28 U.S.C. § 157; Seascape at Wrightsville Beach, LLC v. Mercer's Enterprises, Inc. (In re Mercer's Enterprises, Inc.), 387 B.R. 681, 688 (Bankr. E.D.N.C. 2008) (Determination of whether the debtor had an interest in a single piece of property which made up the entirety of the estate was central to decision as to validity of the bankruptcy proceedings); In re Jackson Brook Inst. Inc., 227 B.R. 569, 584 (D. Me. 1998) (state foreclosure action was core because, although foreclosure is based in state law, in bankruptcy a debtor can maintain its interest in property by invoking its bankruptcy provided right to cure and assume executory contracts.); In re Iridium Operating LLC, 285 B.R. 822, 830-32 (S.D.N.Y. 2002) (While contract claims brought by the debtor were "traditionally non-core," such claims were determined to be core because they "essentially amount[ed] to objections to… proof of claims" filed by the defendant, and furthermore, the defendant had submitted itself to the equitable power of the bankruptcy court by asserting affirmative defenses of set-off and recoupment.)

[14]   Under 28 U.S.C. § 157(b)(2), "[c]ore proceedings include, but are not limited to—

    (A)  matters concerning the administration of the estate;
    (B)  allowance or disallowance of claims or exemptions from property of the estate, and estimation of claims or interests for purposes of confirming a plan . . .;
    (C)  counterclaims by the estate . . .;
    (D)  orders in respect of obtaining credit;
    (E)  orders to turn over property;
    (F)  proceedings to determine, avoid, or recover preferences;
    (G)  motions to terminate, annul, or recover preferences;
    (H)  motions to determine, avoid, or recover fraudulent conveyances;
    (I)  determinations as to the dischargeability of particular debts;
    (J)  objections to discharges;
    (K)  determinations of the validity, extent, or priority of liens;
    (L)  confirmations of plans;
    (M)  orders approving the use or lease of property . . .;
    (N)  orders approving the sale of property . . .;
    (O)  other proceedings affecting the liquidation of the assets of the estate . . .; and
    (P)  recognition of foreign proceedings . . . ."

28 U.S.C. § 157(b)(2)(A)-(P).

proceeding that, by nature could arise only in the context of a bankruptcy case." In re Ben

Cooper, Inc., 896 F.2d 1394, 1400 (2d. Cir. 1990); Houbigant, Inc. v. ACB Mercantile, Inc. (In

re Houbigant, Inc.), 185 B.R. 680, 685 (S.D.N.Y. 1995).

50.     The declaratory relief sought in the Florida Lawsuits concerns the interpretation

of the Declarations, and is based solely on Florida state law.  Accordingly, the Florida Lawsuits

and the claims for declaratory relief asserted therein are not "core" proceedings.

### iv.     The Only Basis For Jurisdiction Over The Florida Lawsuits Is 28 U.S.C. § 1334.

51.     The sole basis for federal jurisdiction over the Florida Lawsuits is 28 U.S.C. §

1334.[15]  The requests for declaratory relief in the Florida Lawsuits do not raise any claims that

constitute federal questions under 28 U.S.C. § 1331.  Nor can the Florida Lawsuits be removed

to this Court based on 28 U.S.C. § 1332(a), because diversity actions cannot be referred to

bankruptcy courts.  See Home Cable Concepts, Inc. v. Seale (In re Best Reception Systems,

Inc.), 219 B.R. 980, 984 (Bankr. E.D. Tenn. 1998) ("Because diversity actions cannot be referred

---

[15]  28 U.S.C. § 1334 provides that:
   (a)  Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
   (b)  Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
   (c)
       (1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
       (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
   (d)  Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158 (d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.
   (e)  The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—
       (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and
       (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

to bankruptcy courts, this court holds that removal of an action to a bankruptcy court pursuant to 28 U.S.C.A.§ 1441 based upon diversity jurisdiction arising under 28 U.S.C.A. § 1332 is improper and ineffectual.")  Accordingly, there is no other basis for federal jurisdiction over the claims for declaratory relief asserted in the Florida Lawsuits.

**v.      There Is A Related**
**Action Pending In The Florida State Courts.**

52.      The declaratory relief sought in the Florida Lawsuits concerns the interpretation of the Declarations under Florida law.  See generally North Tower Complaint; South/Central Complaint at **Exhibits C and D**.  By the Sale Motion, the Debtors seek to effectively terminate the Associations' claims for declaratory relief in the Florida Lawsuits through entry of the Favorable Resolution clause, notwithstanding that the Florida Lawsuits remain pending in the Florida State Courts.  Accordingly, the Associations satisfy this prong of the abstention analysis.

**vi.      The Florida Lawsuits Can Be**
**Timely Adjudicated In The Florida State Courts.**

53.       The Second Circuit has identified four factors to consider when evaluating whether an action can be timely adjudicated in the state court for abstention purposes:

(1)      The backlog of the state court's calendar compared to the federal court's calendar;
(2)      The complexity of the issues presented and the respective expertise of each forum;
(3)      The status of the relevant bankruptcy proceedings; and
(4)      Whether the state court proceeding would prolong the administration or liquidation of the estate.

See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 580 (2d Cir. 2011).

54.      Each of these factors either weighs in favor of abstention, or the Debtors bear the burden of proving that it does not weigh in favor of abstention – a burden they cannot meet. First, the Debtors bear the burden of proving that the Florida State Courts cannot adjudicate the declaratory relief sought in the Florida Lawsuits in a timely manner.  See BGC Partners, Inc. v.

<u>Avison Young (Canada), Inc.</u>, 919 F. Supp. 2d 310, 319 n. 66 (S.D.N.Y. 2013) ("I conclude that…the burden should be on [the] defendants to prove that the state court *cannot* adjudicate the claims in a timely manner.") (emphasis in original).

55.     The Florida State Courts have extensive experience with state law issues similar to the declaratory relief sought in the Florida Lawsuits.   In 2012 alone, Florida State Courts heard 294,682 contract cases, of which 11,527 involved real property issues other than foreclosure.   <u>See</u> Florida Office of the State Courts Administrator, FY 2012-13 Statistical Reference           Guide,           4-13           (Sept.           4,           2014), http://www.flcourts.org/core/fileparse.php/250/urlt/reference-guide-1213-circuit-civ.pdf. Furthermore, Florida State Courts are highly efficient.   In 2012 the Florida State Courts disposed of 359,547 civil cases, while only 294,252 were filed, giving them an exemplary clearance rate[16] of 122.2%.   <u>Id.</u> at 4-24.   The 11th Circuit, where the state court cases at issue are pending, was the most efficient in the state, with a clearance rate of 139.5%.   <u>Id.</u>

56.     <u>Second</u>, the Florida Lawsuits are complex litigations based on interpretations of dense condominium documents governed by Florida law.   The resolution of the Florida Lawsuits will require the review and application of fairly arcane Florida decisional and statutory law, including, specifically, the statutory scheme set forth in Chapters 718 and 720 of the Florida Statutes.   The Associations respectfully submit that because of the complexity of the Florida state law issues implicated by the Florida Lawsuits, and the Florida State Courts' expertise with the applicable law, the second factor weighs in favor of abstention.   <u>See</u> <u>BGC Partners Inc.</u>, 919

---

[16]   The "clearance rate" is a useful measure of the responsiveness of a court to the demand for services, and is
    nationally recognized as a measure of court performance.   <u>See</u>  Florida Office of the State Courts Administrator,
    FY 2012-13 Statistical Reference Guide, 4-23 (Sept. 4, 2014),
    http://www.flcourts.org/core/fileparse.php/250/urlt/reference-guide-1213-circuit-civ.pdf.

F. Supp. 2d. at 320 ("[T]here is no question that state courts are best positioned to interpret and apply state law.").

57.     Third, abstention is favored where the principal purpose of a Chapter 11 case is to effectuate an asset sale rather than a reorganization.  See New York Commercial Bank v. Pullo, No. 12-02052 (BRL) 2013 WL 494050, at *7 (Bankr. S.D.N.Y. Feb. 7, 2013) (Lifland, J.) ("[h]ere the Chapter 11 case does not involve a complex reorganization, as the [debtors] seek a sale of substantially all of their assets," this fact weighs in favor of abstention).  The purpose of these Chapter 11 cases is to effectuate a sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code Section 363.  Accordingly, this factor weighs in favor of abstention.

58.     Finally, adjudication of the claims for declaratory relief asserted in the Florida Lawsuits by the Florida State Courts will not prolong the administration of the Debtors' estates. Florida is the appropriate forum for adjudicating these claims precisely because the Florida State Courts have substantial experience analyzing condominium declarations pursuant to the statutory scheme set forth in chapters 718 and 720 of the Florida Statutes, and would therefore be in the best position to resolve the Florida Lawsuits as expeditiously as possible.[17]

59.     All of the requirements for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) are satisfied.  Accordingly, the Court should abstain from adjudicating the claims for declaratory relief asserted in the Florida Lawsuits.

---

[17] To the extent the Court were to adjudicate the declaratory relief in the Florida Lawsuits on the merits, the Associations may not consent to the entry of final orders by the Bankruptcy Court with respect to claims asserted in the Florida Lawsuits.  If the Court does not abstain, the exercise of this right may delay final disposition of the claims for declaratory relief asserted in the Florida Lawsuits far more than any potential delay in adjudication by virtue of abstention and adjudication by the Florida State Courts.  See In re 4 Front Petroleum, Inc., 345 B.R. 744, 755 (Bankr. N.D. Okla. 2006) ("A trial in state court before a judge and jury who are empowered to make binding findings of fact and final conclusions of law will almost always be more efficient than the multi-tiered procedure imposed by 28 U.S.C. § 157(c)(1).").

**B. The Court Should Exercise Permissive Abstention With Respect To The Claims For Declaratory Relief Asserted In The Florida Lawsuits.**

60.     Even assuming that mandatory abstention is not warranted, this Court should nonetheless permissively abstain from adjudicating the claims for declaratory relief asserted in the Florida Lawsuits pursuant to 28 U.S.C. § 1334(c)(1).

61.     Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides:

> [N]othing in this section prevents a district court in the interests of justice, or in the interests of comity with State courts, or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

62.     Courts in this district typically consider the following factors when deciding whether to abstain under 28 U.S.C. § 1334(c)(1): (i) the effect on the efficient administration of the estate; (ii) the burden on the bankruptcy court's docket; (iii) the extent to which state law issues predominate over bankruptcy issues; (iv) the complexity of the applicable state law; (v) the presence of related proceedings commenced in state court; (vi) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (vii) whether the proceeding is "core" or "non-core"; (viii) the existence of a right to a jury trial; (ix) the likelihood that the commencement of the proceedings in bankruptcy court involves forum shopping by one of the parties; (x) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (xi) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case; and (xii) the presence in the proceeding of non-debtor parties. See Fried, 496 B.R. at 712-13.

63.     The first seven factors overlap with the requirements for mandatory abstention. For the reasons set forth above and in the Associations' Preliminary Sale Objection, the first

seven factors are satisfied.  <u>See</u> Associations' Preliminary Sale Objection ¶¶ 47-58.  Further, each of the remaining five factors weighs in favor of abstention.[18]

### i. <u>Existence Of Right To Jury Trial.</u>

64.     The Associations have demanded a jury trial in the Florida Lawsuits.  Thus "the trial would not be conducted by the bankruptcy judge administering the . . . case."  <u>E.S. Bankest, LLC v. United Beverage Fla., LLC (In re United Container LLC)</u>, 284 B.R. 162, 177 (Bankr. S.D. Fla. 2002).

### ii. <u>Potential Forum Shopping.</u>

65.     The Associations submit that the Debtors are attempting to circumvent the expertise and experience of the Florida State Courts by seeking adjudication of the declaratory relief requested in the Florida Lawsuits by this Court rather than the Florida State Courts.  The Debtors filed these cases one day after the expiration of a standstill agreement with the Associations, tolling the Debtors' time to answer the Florida Lawsuits.  The Debtors should not be permitted to forum shop and avoid adjudication of the Associations' Florida state law claims for declaratory relief by the Florida State Courts.

### iii. <u>Need To Sever State Law Claims From Core Matters.</u>

66.     The request for declaratory relief under the Florida Lawsuits does not include any "core" matters.  Accordingly, the Court need not sever any "core" matters in exercising permissive abstention.

---

[18] Although the Associations contend that all twelve permissive abstention factors are satisfied, not all twelve need be satisfied for a court to exercise permissive abstention.  <u>See</u> <u>Cody Inc. v. Cnty. of Orange (In re Cody, Inc.)</u>, 281 B.R. 182, 190 (S.D.N.Y. 2002) ("In determining whether to exercise permissive abstention . . . courts have considered one or more (not necessarily all) of [the] twelve factors. . . .").

### iv. Remoteness Of State Law Claims To Main Bankruptcy Case.

67.     The claims for declaratory relief asserted in the Florida Lawsuits are a dispute between non-Debtor third parties, namely, the Associations and the new Hotel Lot Owner. Moreover, the Associations' proposed chapter 11 plan is not dependent on any adjudication of the Florida Lawsuits.   Accordingly, the claims for declaratory relief asserted in the Florida Lawsuits are sufficiently remote from the Debtors' Chapter 11 cases warranting abstention.

### v. Presence Of Non-Debtor Third Parties.

68.     The Associations represent the interests of 580 Unit Holders.  The adjudication of the claims for declaratory relief asserted in the Florida Lawsuits directly affects the rights of the Associations/Unit Holders and the prospective Hotel Lot Owner.  Accordingly, the Court should exercise permissive abstention and abstain from adjudicating the claims for declaratory relief asserted in the Florida Lawsuits.

### C.     The Court Should Lift The Automatic Stay To Permit The Associations To Pursue The Declaratory Relief Sought In The Florida Lawsuits

69.     The natural and logical result of abstention is to proceed forward with adjudication of the declaratory relief sought in the Florida Lawsuits in the Florida State Courts. Accordingly, sufficient cause is present to lift the automatic stay under Bankruptcy Code Section 362, solely to permit the Florida State Courts to adjudicate the declaratory relief sought in the Florida Lawsuits, for the same reasons abstention is warranted.

70.     Pursuant to Bankruptcy Code Section 362(d)(1), a court may terminate the automatic stay "for cause."  See 11 U.S.C. § 362(d)(1).  Once the movant provides such "cause," the burden of proof shifts to the debtor.  See 11 U.S.C. § 362(g)(1).  Relief from the automatic stay is particularly fitting where the Court finds that abstention is appropriate.  See Burger Boys, Inc. v. South Street Seaport Ltd. (In re Burger Boys Inc.), 183 B.R. 682, 688-89 (Bankr.

S.D.N.Y. 1994) ("The decision to grant relief from the automatic stay is logical within the context of the Bankruptcy Court's determination that it must abstain from Burger Boys' Adversary Proceeding.")

71.     The Second Circuit considers a dozen factors when "deciding whether litigation should be permitted to continue in another forum."  See Sonnax Indus., Inc. v. TRI Component Prod. Corp., (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990).  The factors are:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

Id.

72.     As set forth in this Motion, factors one, two, six, seven, ten, eleven and twelve weigh in favor of stay relief.  The Associations submit that factors three, four, five, eight, and nine are not relevant to this particular Motion or favor stay relief.  See In re Helen Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994 ("Only those factors relevant to a particular case need be considered and the Court need not assign them equal weight.").

### i.     Whether Relief Would Result In A
### Partial Or Complete Resolution Of The Issues.

73.     As set forth in the Sale Objection, the Associations are seeking declaratory relief in the Florida Lawsuits to ensure that the Declarations are interpreted according to their plain meaning and applicable decisional authority under Florida law.  See Sale Objection ¶¶ 32-50. Upon granting such relief, no additional relief would be necessary to ensure that the Declarations are properly implemented.  Accordingly, the Associations satisfy this factor.

### ii.     Whether Litigation In Another
### Forum Would Prejudice Other Creditors.

74.     The Associations and the Unit Holders are the primary and perhaps sole legitimate unsecured creditors in this case.  The Declarations, which are the subject of the declaratory relief, only affect the Associations and the Hotel Lot Owner.  Accordingly, only those parties will be affected by any declaratory relief granted in the Florida Lawsuits, and therefore, this factor is satisfied as well.

### iii.     Whether The Parties Are Ready For Trial.

75.     The Florida Lawsuits have been pending since February 2014 and the Associations are ready to litigate the declaratory relief requested.  The Associations entered into a standstill agreement with the Debtors in an attempt to, among other things, resolve the Florida Lawsuits.  See Sale Objection ¶ 17.  Instead, the Debtors refused to engage in earnest discussions with the Associations, and then filed for bankruptcy the day after the standstill agreement expired and have not yet answered the Florida Lawsuits.  Accordingly, the Florida Lawsuits are equally ready for litigation in Florida as they are in this Court.  Given the expertise of the Florida State Courts managing this type of litigation, this factor weighs in favor of readying the declaratory relief for trial in the Florida State Courts.

iv.    **Harm To The Parties As A Result Of The Stay.**

76.    The Debtors are attempting to short circuit the Associations' rights by asking this Court to enter the Favorable Resolution and moot the declaratory relief in the Florida Lawsuits. Absent relief from the automatic stay, the Associations are unable to fully, and properly, litigate the declaratory judgment sought in the Florida Lawsuits. Accordingly, the Associations are harmed by the automatic stay, and therefore, the Court should grant the Associations relief in order to pursue the declaratory relief requested in the Florida Lawsuits.

III.    **THE COURT LACKS JURISDICTION TO
ENTER THE DECLARATORY RELIEF SOUGHT
IN THE SALE MOTION BECAUSE THERE IS NO CASE
OR CONTROVERSY PENDING BEFORE THE COURT AND THE
DECLARATORY RELIEF CONCERNS NON-DEBTOR THIRD PARTIES.**

A.    **There Is No Case Or Controversy
Concerning The Florida Lawsuits Pending Before The Court.**

77.    There is a reason that the Debtors have never sought to remove the Florida Lawsuits to this Court. The Debtors know that any such motion would be defeated and the matter remanded to the State Courts of Florida. The Court should abstain from entering the declaratory relief the Debtors seek in the Sale Motion relating to the Florida Lawsuits because the relevant "case or controversy" is not pending before the Court. It is a basic Constitutional principle that in order for a court to enter judgment in favor of a party, the relevant case or controversy must be pending before it. See U.S. v. Prober, 170 F.3d 345, 347 (2d Cir. 1999) ("Article III, Section 2 of the United States Constitution limits the subject matter jurisdiction of the federal courts to those cases that present a case or controversy. [C]ase-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.") (internal citations omitted); In re Joint Eastern and Southern Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir. 1993) ("Foremost among elements of the case or controversy requirement is the

requirement that the court be presented with a legal claim to adjudicate.… A necessary prerequisite to the exercise of judicial power, then, is the presence before a court of a claim of substantive right.").

78.     It is undisputed that the Florida Lawsuits are not presently before this Court. Yet, by asking this Court to approve the Favorable Resolution clause, the Debtors have requested that this Court either enter findings of fact and conclusions of law that would effectively dispose of the claims for declaratory relief asserted by the Associations in the Florida Lawsuits, or order their dismissal, all without first seeking to have the Florida Lawsuits removed to this Court. See Sale Motion ¶ 45, n.4.

79.     The Debtors have not removed the Florida Lawsuits to this Court, nor could they successfully do so, as the Florida Lawsuits would not survive a motion to remand in light of the nature of the claims asserted therein.  Thus, the Debtors have improperly attempted to obtain through the Sale Motion what they know they cannot achieve through removal of the Florida Lawsuits.  The Court should decline to consider the Sale Motion because the relevant cases – the Florida Lawsuits – are not pending before this Court.

> **B.     The Favorable Resolution Clause
> Concerns A Dispute Between Non-Debtor Third Parties.**

80.     The Favorable Resolution is a necessary condition under Z Capital's proposed purchase agreement.  It frames a dispute between two non-debtors:  the Associations and the prospective Hotel Lot Owner.

81.     Respectfully, this Court cannot adjudicate a dispute between two non-debtor parties.  See Gordon v. Shirley Dukes Assocs. (In re Shirley Duke Assocs.), 611 F.2d 15, 18 (2d Cir.1979) ("[a]s a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot

complete its administrative duties without resolving the controversy."); <u>Nelson White Construction Management Corp. v. McConaghy</u> (<u>In re McConaghy</u>), 15 B.R. 480, 481 (Bankr. E.D. Va. 1981) ("[The bankruptcy court] lacks jurisdiction to decide disputes between third parties in which the estate of the Debtor has no interest."); <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984) ("[J]urisdiction over non-bankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.").

82.    The Favorable Resolution does not concern the Debtors' property as the Debtors are seeking to sell substantially all of their assets.  The Favorable Resolution also does not implicate the Court's ability to complete its administrative duties and the Associations stand ready with a consensual and confirmable plan that does not require the Favorable Resolution. The Favorable Resolution is an attempt by the Debtors to artificially increase the value of the Property at the expense of the Associations and the Unit Holders.  This is not a sufficient basis to invoke this Court's jurisdiction to remove the declaratory relief in the Florida Lawsuits from the Florida State Courts.  Because the Favorable Resolution concerns relief involving only non-debtor third parties (<u>i.e.</u>, the Associations and the future Hotel Lot Owner), this Court lacks jurisdiction to adjudicate the claims for declaratory relief asserted in the Florida Lawsuits and to enter the relief sought with respect thereto in the Sale Motion.

## NO PRIOR REQUEST

83.    No prior motion for the relief requested herein has been made to this Court or any other court.

## NOTICE

84.    Notice of this Motion has been given to:  (a) counsel to the Debtors; (b) counsel to Lehman; (c) the Office of the United States Trustee; (d) parties who have filed notices of

appearance; and (e) all parties required to be served under any applicable Bankruptcy Rules or Local Rules.  The Associations respectfully submit that no other or further notice need be given.

*[The remainder of this page is intentionally left blank.]*

## CONCLUSION

**WHEREFORE**, the Associations respectfully request that the Court enter an Order: (i) finding that the proposed sale cannot be consummated free and clear of the claims for declaratory relief asserted in the Florida Lawsuits or, alternatively, (ii) abstaining from adjudicating the claims for declaratory relief asserted in the Florida Lawsuits and providing relief from the automatic stay to allow the Associations to pursue the declaratory relief in the Florida State Courts; and (iii) granting such other and further relief to the Associations as the Court may deem just and proper.

Dated: New York, New York
September 9, 2014

Respectfully submitted,

**NORTH CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., CENTRAL CARILLON BEACH CONDOMINIUM ASSOCIATION, INC., AND SOUTH CARILLON CONDOMINIUM ASSOCIATION, INC.**

By their counsel,
BROWN RUDNICK LLP

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
Howard S. Steel
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

-and-

BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
Scott L. Baena (admitted *pro hac vice*)
Mindy A. Mora
Martin A. Schwartz
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone: (305) 374-7580
Facsimile: (305) 351-2242