TOGUT, SEGAL & SEGAL LLP  
One Penn Plaza  
Suite 3335  
New York, New York 10119  
(212) 594-5000  
Albert Togut  
Frank A. Oswald  
Lara R. Sheikh  
Samantha J. Rothman  

HEARING DATE: October 7, 2014 at 10:00 a.m.  
OBJECTION DEADLINE: September 30, 2014 at 4:00 p.m.

Counsel to the Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-----------------------------------------------------------------X  
:  
In re:                                                   :    Chapter 11  
                                                         :  
FL 6801 SPIRITS LLC, *et al.*,                           :    Case No. 14-11691 (SCC)  
                                                         :  
                          Debtors.                       :    (Jointly Administered)  
                                                         :  
-----------------------------------------------------------------X  

**DEBTORS' FIRST APPLICATION FOR AN ORDER  
EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A  
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF  
PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE**

TO THE HONORABLE SHELLEY C. CHAPMAN,  
UNITED STATES BANKRUPTCY JUDGE:

    The debtors and debtors in possession (collectively, the "Debtors")[1] by and through their undersigned counsel, hereby move this Court for entry of an order pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-2 of the Local Bankruptcy Rules for the Southern District of New York (The "Local Bankruptcy Rules"), for an order extending the period during which the Debtors have the exclusive right to: (i) file a

---

[1] The Debtors are: FL 6801 Spirits LLC ("Spirits"), FL 6801 Collins North LLC ("6801 North"), FL 6801 Collins Central LLC ("6801 Central"), FL 6801 Collins South LLC ("6801 South," together with 6801 North and 6801 Central, the "Collins Subsidiaries").

Chapter 11 plan (the "Exclusive Filing Period") through and including December 1, 2014 and (ii) solicit acceptances thereof (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") through and including February 2, 2015 (the "Motion"). In support of the Motion, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The relief sought in the Motion is based primarily upon section 1121(d) of the Bankruptcy Code, Bankruptcy Rule 9006(b)(1) and Local Bankruptcy Rule 9006-2.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

3.  On June 1, 2014 (the "Petition Date"), each of the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code.

4.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108. As of the date hereof, no committee of unsecured creditors has been appointed in these Chapter 11 cases.

5.  The events leading up to the Petition Date are set forth in the Declaration of Anthony Barsanti submitted in accordance with Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York in support of the Debtors' Chapter 11 petitions (the "Barsanti 1007 Declaration"), which

2

was filed with the Court on the Petition Date is deemed fully incorporated herein by reference.[2]

6. In short, before the Debtors commenced these Chapter 11 cases, the Collins Subsidiaries (for convenience hereafter, referred to as the Debtors) pursued a sale of the Debtors' interest in the luxury full-service, ocean front condominium hotel located at the site of the old Carillon Hotel in Miami Beach, Florida (the "Property"). An extensive marketing process was led by CBRE, Inc. ("CBRE"), a national real estate brokerage company having a comprehensive hospitality practice. A contract purchaser was found but exercised its right to terminate its signed purchase agreement with the Debtors after the commencement of state court litigations filed by the Associations in February 2014. Subsequently, the Debtors negotiated with the Associations for their potential purchase of the Property but with no success.

7. In light of the Property's continuing losses, the Debtors, with CBRE's assistance, received an offer from 360 Miami Hotel and Spa LLC (the "Stalking Horse"), an operator of award-winning luxury resort and spa facilities. 360 Miami made a $12 million "stalking horse" bid for the Debtors' interest in the Property, subject to certain findings confirming the Debtors' rights under the Declarations that govern the Property.

8. On the Petition Date, the Debtors filed a motion (the "Sale Motion") seeking approval of the sale of substantially all of their assets to the Stalking Horse, subject to higher or better offers (the "Sale") upon the terms set forth in that certain stalking horse Purchase and Sale Agreement, dated May 28, 2014 [Docket No. 4] (the

---

[2] Capitalized terms, used herein but not otherwise defined, shall have the meanings ascribed to them in the Barsanti 1007 Declaration.

"Stalking Horse PSA"), and for approval of bidding and auction procedures (the "Bidding Procedures") in connection with the Sale.

9. The Associations have appeared by counsel, Brown Rudnick, and have been very active in these cases, including by filing a Motion to Transfer Venue to the United States District Court for the Southern District of Florida on June 17, 2014 [Docket No. 46] (the "Venue Motion"); and an objection to the Bidding Procedures (the "Bidding Procedures Objection") and preliminary objection to the Sale on June 19, 2014 [Docket No. 52] (the "Preliminary Objection").

10. On July 1, 2014, following negotiations between and among the Debtors, the Associations, and the Stalking Horse regarding changes to the proposed Bidding Procedures, the Court signed an order, with the consent of the Associations, approving, *inter alia*, bidding procedures and bid protections in connection with the Sale and scheduling the date and time for the submission of higher or better offers, an auction and the sale hearing [Docket No. 77] (the "Bidding Procedures Order").

11. By Order dated July 22, 2014 this Court fixed September 12, 2014 at 5:00 P.M. Eastern Time as the bar date (the "Bar Date") for the filing of prepetition claims against the Debtors, as more fully described in the Order establishing the Bar Date [Docket No. 91].

12. On July 30, 2014, the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket No. 95].

13. Pursuant to the Bidding Procedures Order, on August 19, 2014, the Debtors conducted an auction for the sale of their interests in the Property (the "Auction"). At the Auction, seven Qualified Bidders competed in several rounds of spirited bidding which resulted in all-cash high bids of $21.6 million and $21.5 million from Z Capital Partners, LLC ("Z Capital") and North Beach Development, LLC

("North Beach"), respectively, and a lower cash bid of $19 million (subject to a $2 million credit and other conditions) by the Associations' designated bidder, 6801 Collins Hotel, LLC ("6801 Collins") (the "6801 Collins Bid").

14.     Over the next 36 hours, the Debtors conducted an analysis of the Z Capital, North Beach, and 6801 Collins Bids, which included discussions among the Debtors, the Associations, and 6801 Collins, as well as discussions between the Debtors and Z Capital and with North Beach regarding their respective purchase agreements. In the exercise of their business judgment, the Debtors deemed the $21.6 million offer by Z Capital to be the highest offer, and Z Capital to be the "Successful Bidder," and the $21.5 million offer by North Beach to be the "Second Highest Bidder") [Docket No. 113].

15.     On August 25, 2014, the Associations served the Debtors and multiple third parties, including Z Capital and North Beach, with extensive discovery, including 87 document requests and notices for the depositions of 17 individuals (the "Associations' Discovery") in connection with the Sale and the Auction.

16.     On August 26, 2014, the Associations filed a supplemental objection to the Sale [Docket No. 120] (the "Associations' Supplemental Objection," together with the Preliminary Sale Objection, the "Associations' Objection"). On the same day, 6801 Collins also filed an objection to the Sale [Docket No. 121] (the "6801 Collins Objection," together with the Associations' Objection, the "Sale Objections"). The Sale Objections argue, *inter alia*, that the Auction was unfair and that the Debtors should have selected the 6801 Collins Bid as the Successful Bid.

17.     On August 27, 2014, the Court held a status conference (the "August 27 Conference") with respect to the Sale, the Sale Objections, and the Associations' Discovery. At the August 27 Conference, the Court encouraged the Debtors and the Associations to work toward a consensual resolution of the Sale

5

Objections and these Chapter 11 cases. The Court scheduled a further status conference for September 12, 2014 (the "September 12 Conference").

18. On September 9, 2014, the Associations filed a Motion for Entry of an Order: (i) Finding That the Proposed Sale Cannot be Consummated Free and Clear of the Florida Lawsuits Pursuant to 11 U.S.C. §§ 105 and 363, or in the alternative, (ii) Abstaining from Adjudicating Declaratory Relief Requested in Florida Lawsuits Pursuant to 28 U.S.C. § 1334 and to Lift the Automatic Stay to Pursue the Declaratory Relief Sought in the Florida Lawsuits Pursuant to 11 U.S.C. § 362 (the "Abstention Motion").

19. On September 10, 2014, the Debtors filed their Reply to the Sale Objections, along with supporting declarations of Anthony Barsanti and Christian Charre of CBRE [Docket No. 134] (together, the "Debtors' Sale Reply").

20. On September 11, 2014, the Associations filed a Motion for Entry of an Order: (i) Appointing a Trustee Pursuant to Bankruptcy Code Section 1104(a), or Alternatively, (ii) Appointing an Examiner Pursuant to Bankruptcy Code Section 1104(c) and Terminating the Debtors Exclusivity Period Pursuant to Bankruptcy Code Section 1121(d) (the "Trustee/Examiner Motion").[3]

21. At the September 12 Conference, the Court urged the Debtors to continue discussions with the Associations concerning a resolution of the Sale Objections for a consensual plan process. Those discussions are now taking place.

---

[3] The Trustee/Examiner Motion has been noticed for hearing on October 15, 2014. The Debtors' will treat the portion of the Trustee/Examiner Motion that requests early termination of the Exclusive Periods as a preliminary objection to this Motion.

6

## RELIEF REQUESTED

22. Unless extended, the Debtors' initial Exclusive Filing Period will expire on September 29, 2014, and the Exclusive Solicitation Period will expire on November 28, 2014. By this Motion, the Debtors seek an extension of the Exclusive Filing Period pursuant to section 1121(d) of the Bankruptcy Code, through and including December 1, 2014, and the Exclusive Solicitation Period through and including February 2, 2015. This is the Debtors' first such request.

23. As set forth more detail in the Barsanti 1007 Declaration, the Sale Motion and the Sale Reply, the Debtors have been working diligently toward a Sale of the Property while trying to work with the Associations to resolve their concerns and objections. The Debtors' efforts toward responding to, and working with, the Associations have included, *inter alia*:

- Extensive discussions and meetings to discuss the Associations' proposals for a sale pursuant to a Chapter 11 plan;

- Extensive discussions and meetings during and after the Auction concerning the 6801 Collins Bid and the Debtors' selection of Z Capital as the "highest and best" offer;

- Responding to the Venue Motion (which was withdrawn on the eve of the Debtors' objection deadline);

- Responding to and negotiating a consensual resolution of the Associations' Bidding Procedures Objection, Preliminary Sale Objection, and Supplemental Sale Objection;

- Responding to the Abstention Motion;

- Responding to the Trustee/Examiner Motion; and

- Responding to broad formal and informal discovery demands served by the Associations on the Debtors and multiple parties in interest in the Chapter 11 cases.

7

24. Additionally, the Debtors have undertaken various tasks, including those that are typical of most Chapter 11 debtors: (a) obtaining entry of orders approving "first day" motions to stabilize and smoothly transition operations into the Chapter 11 cases; (b) finalizing agreements for post-petition financing; (c) obtaining an Order setting a Bar Date and beginning the claims reconciliation process; and (d) responding to a motion to lift the automatic stay.

25. In light of the above and the progress to date in moving these cases forward, the Debtors respectfully submit that an extension of the Exclusive Periods is warranted. To allow the Exclusive Periods to expire would be premature and unproductive, given the progress that the Debtors continue to make in these Chapter 11 cases, which the Debtors hope will be resolved as consensually as is possible.

26. The requested extension is necessary to provide the Debtors with the time needed to either reach a resolution with the Associations or proceed with the Sale pursuant to the Sale Order. In addition, an extension will provide the Debtors with sufficient time to evaluate the claims that have been filed in the Chapter 11 cases, many of which were filed just one week ago, on the September 12 Bar Date. Evaluation of those claims is necessary to reach a productive strategy for emergence from Chapter 11 and to otherwise conclude the administration of these cases.

27. Given the current posture of these Chapter 11 cases, the Debtors submit that an extension of sixty (60) days of the Exclusive Filing Period is warranted.

## STANDARD FOR RELIEF

28. Section 1121(d) of the Bankruptcy Code provides that the Court may extend the Exclusive Periods as follows:

> "[o]n request of a party in interest. . . and after notice and a hearing, the court may for cause reduce or

8

> increase the 120-day period or the 180-day period referred to in this section."

11 U.S.C. § 1121(d)(1).

29. Section 1121 further provides that the 120-day period to file a plan of reorganization "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period to solicit acceptances of a filed plan "may not be extended beyond a date that is 20 months after the [petition date]." 11 U.S.C. § 1121(d)(2).

30. The determination of whether sufficient cause exists to grant an extension of the Exclusive Periods is committed to the sound discretion of bankruptcy courts and is to be based upon the facts and circumstances of each chapter 11 case. *See, e.g., In re Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Ames Dept. Stores, Inc.*, 1991 WL 259036, *2 (S.D.N.Y. 1991); *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); *In re Texaco, Inc.*, 76 B.R. 322, 325 (Bankr. S.D.N.Y. 1987).

31. The legislative history of section 1121(d) indicates that the Bankruptcy Court is given broad flexibility in making such determinations. *See* H.R. Rep. No. 95-595 (95th Cong. 1st Sess. 232 1978), reprinted in 1978 U.S. Code Cong. & Admin. News, 5953, 6191; *In re Gibson & Cushman Dredging*, 101 B.R. 405, 409 (E.D.N.Y. 1989) ("The cause standard referred to in Section 1121 has been referred to as a general standard that allows the Bankruptcy Court maximum flexibility to suit various types of reorganization proceedings.") (internal quotations and citation omitted).

32. A court's decision to extend a debtor's exclusive period is based upon the facts and circumstances of each particular case. *See, e.g., First American Bank of*

9

*New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y 1987).

33. In applying these factors, "the hallmark of . . . section [1121(d)] is flexibility." *In re Perkins,* 71 B.R. 294, 297 (W.D. Tenn. 1987). Courts have found that an extension is necessary to provide such a "reasonable opportunity" in a wide range of cases where the debtor is proceeding diligently and in good faith but has simply not had sufficient time under the particular factual circumstances of the case to formulate a plan. *See, e.g., In re McLean Indus., Inc.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1987); *Gaines v. Perkins*, 71 B.R. 294 (W.D. Tenn. 1987); *In re Pine Run Trust, Inc.*, 67 B.R. 432 (Bankr. E.D. Pa. 1986).

34. In determining what constitutes cause sufficient to warrant an extension of a debtor's exclusivity, courts have also looked to the following factors:

- the size and complexity of the case;
- the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
- the existence of good faith progress toward reorganization;
- the fact that the debtor is paying its bills as they become due;
- whether the debtor has demonstrated reasonable prospects for filing a viable plan;
- whether the debtor has made progress in its negotiations with creditors;
- the amount of time that has elapsed in the case;
- whether the debtor is seeking to extend exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
- the existence of an unresolved contingency.

*See In re Lionel L.L.C.*, 2007 WL 2261539 at *6 (Bankr. S.D.N.Y. Aug. 3, 2007); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re McLean Indus., Inc.*, 87 B.R. at 833-34 (*citing In re Texaco, Inc.*, 76 B.R. at 327).

35. These factors are evaluated to determine whether a debtor has had a reasonable opportunity to negotiate an acceptable plan with various interested parties and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., In re McLean Indus., Inc.*, 87 B.R. at 833-34; *In re Texaco Inc.*, 76 B.R. at 326.

36. A finding that any of these factors exists may justify extending a debtor's exclusive periods. *See In re Express One Int'l,* 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (four factors relevant in determining whether cause exists to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors showed that bondholders'' committee failed to show cause to terminate debtors' exclusivity); *In re Texaco, Inc.*, 76 B.R. at 327 (cause existed to extent exclusivity based on size and complexity alone).

37. Also, while the foregoing factors are frequently cited, the court may consider any other factors that may be germane to the requested extension.

38. Other cited factors include: (a) intransigence and continual litigation from interested parties and (b) whether an extension of time will harm the debtor's creditors. *See In re Sletteland*, 260 B.R. 657, 670 (Bankr. S.D.N.Y. 2001); ' *In re Grand Traverse Development Co. Ltd. Partnership*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); *In re Southwest Oil Co.,* 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987*)*; *Gibson & Cushman Dredging Corp.,* 101 B.R. at 409-10.

39. The Debtors respectfully submit that ample cause exists to extend the Exclusive Periods in these Chapter 11 cases.

A.    **Good Faith Progress in These Cases**

40.    The Debtors have made significant progress in their Chapter 11 cases. The Debtors anticipate that they will have more than ample funds to pay the administrative costs of these cases, and to fund a plan that will satisfy allowed claims against the Debtors' estates in full, together with a substantial distribution to the Debtors' equity holder.

B.    **Debtors Are Not Seeking an Extension to Pressure Creditors**

41.    The Debtors do not seek an extension of the Exclusive Periods as a means to exert pressure on the relevant parties in interest, but rather to ensure that the status quo be maintained. The request made by this Motion is intended to maintain a framework conducive to an orderly, efficient, and cost-effective process, without the distractions and attendant costs that flow from competing Chapter 11 plans.

42.    The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. At every step of these cases, the Debtors have engaged in regular communications and/or negotiations with stakeholders; particularly with the Associations on numerous issues, most significantly, with respect to the potential for a consensual Chapter 11 plan.

C.    **Termination of the Debtors' Exclusive Periods Could Adversely Impact These Cases**

43.    Termination of the Exclusive Periods could severely and adversely impact the progress of these cases by allowing third parties to propose a Chapter 11 plan for the Debtors. Indeed, the Associations have already stated that they would do so upon termination of exclusivity. *See* Trustee/Examiner Motion (requesting termination of exclusivity). Such a result would foster a chaotic environment giving rise to even more additional litigation, together with the costs attendant thereto.

44. No purpose would be served by providing the Associations (or any other party) with the opportunity to derail the process at this juncture. Neither the Debtors nor their creditors would be served by entering into competing Chapter 11 plans at this stage in the Chapter 11 cases. Accordingly, the Debtors should be granted an extension of their Exclusive Periods.

D. **Debtors Have Reasonable Prospects of Filing Viable Plan**

45. The Debtors are not asking creditors to incur "more than six months of delay and no progress" based on a "visionary concept," as suggested by the Associations. *See* Preliminary Objection at 36. If an agreement cannot be reached with the Associations in short order, the Debtors are prepared to seek approval of the Sale to Z Capital. In either scenario, the Debtors have more than reasonable expectations that they will be able to successfully and expeditiously resolve these Chapter 11 cases.

E. **The Debtors' Cases Have Been Pending for Less than Four Months**

46. The Debtors commenced these cases on June 1, 2014, less than four months ago. This is the first request the Debtors have made for an extension of their Exclusive Periods.

F. **Debtors Are Paying Their Debts as They Come Due**

47. The Debtors continue to pay in the ordinary course their undisputed post-petition obligations. Accordingly, the requested extension of the Exclusive Periods will not prejudice the interests of creditors, and this factor weighs in favor of extending the Exclusive Periods.

**CONCLUSION**

48. Although the Debtors anticipate that they will be able to comply with the extended Exclusive Periods, they reserve the right to request a further extension of the Exclusive Periods, if necessary or appropriate.

49. While the Exclusive Filing Period is set to expire on September 29, 2014, Local Bankruptcy Rule 9006-2 provides that if a motion to extend time to take an action is filed prior to the expiration of such period, with a return date that is no later than fourteen days after the date of the filing of the motion, the applicable deadline shall automatically be extended "until the Court resolves the motion to extend the time." LBR 9006-2. The Court has indicated that this Motion may be scheduled for a hearing on October 7, 2014. Therefore, by filing this Motion prior to the expiration of the Exclusive Filing Period, Local Bankruptcy Rule 9006-2 automatically extends the Exclusive Filing Period until the Court makes its determination on the Motion.

**NOTICE**

50. Notice of this Motion will be given to: (i) the Office of the United States Trustee for Region 2, Attn: Susan D. Golden, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; (ii) the Debtors' Secured Lender, PAMI ALI LLC, c/o Weil, Gotshal & Manges LLP, Attn: Jacqueline Marcus, Esq., 767 Fifth Avenue, New York, New York 10153; (iii) the Associations, by their counsel, Brown Rudnick, Attn: Edward S. Weisfelner, Esq., Seven Times Square, New York, New York 10036; (iv) Z Capital Partners, LLC, c/o Latham & Watkins, LLP, Attn: James Ktsanes, Esq., 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; (v) North Beach Development, LLC, c/o Lewis W. Siegel, Esq., 630 Third Avenue, 7th Floor,

New York, New York 10017; and (vi) any parties having filed a notice of appearance in these Chapter 11 Cases. The Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

51.     No prior Motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as Exhibit "1," (i) extending the Exclusive Filing Period through and including December 1, 2014, and (ii) extending the Exclusive Solicitation Period through and including February 2, 2015, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods and granting such other relief as the Court deems just and proper.

DATED:   New York, New York
         September 19, 2014

>                                    FL 6801 SPIRITS LLC, *et al.*
>                                    Debtors and Debtors-in-Possession
>                                    By Their Counsel
>                                    TOGUT, SEGAL & SEGAL LLP
>                                    By:
>
>                                    /s/Albert Togut
>                                    ALBERT TOGUT
>                                    FRANK A. OSWALD
>                                    Members of the Firm
>                                    One Penn Plaza, Suite 3335
>                                    New York, New York 10119
>                                    (212) 594-5000

15