UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 11
                                              :        Case No.   14-11691
FL 6801 SPIRITS  LLC, et al.,                 :
                                              :
                              Debtors.        :
                                              :
------------------------------------------------------------x

## ORDER (I) APPROVING SALE OF DEBTORS' PROPERTY; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

Upon that portion (the "Sale Motion") of the motion (the "Motion"), dated

June 1, 2014, of FL 6801 Spirits LLC, et al. (collectively, the "Debtors"),[1] wherein the

Debtors moved for entry of an order pursuant to sections 105(a) and 363 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 2002(a)(2), 6004 and 6006 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the sale

(the "Sale") of the Assets to Z Capital Partners or its designee (the "Purchaser"), as

defined and described in the Motion and the Purchase and Sale Agreement attached

hereto as Exhibit A (the "Purchase Agreement");[2] and this Court having reviewed the

Sale Motion and the Purchase Agreement; and upon this Court's prior order, dated July

1, 2014 approving the Bidding Procedures [ECF No. 77] (the "Bidding Procedures

Order"); and due notice of the Sale Motion, the Bidding Procedures Order and the

---

[1]    The Debtors consist of the following entities:  FL 6801 Spirits LLC, FL 6801 Collins North LLC, FL 6801 Collins Central LLC and FL 6801 Collins South LLC.

[2]    Unless otherwise defined in this Order, capitalized terms used herein shall have the meanings ascribed to such terms in the Motion or the Purchase Agreement, as applicable.

auction conducted in connection therewith (the "Auction") having been given to all parties entitled thereto; and the Auction having been held on August 19, 2014; and objections to the Sale Motion having been filed on behalf of the Associations (as defined herein below) [ECF Nos. 52, 106 and 120] and 6801 Collins Hotel LLC ("6801 Collins") [ECF No. 121] (collectively, the "Sale Objections"); and the Debtors having filed a reply to the Sale Objections, which included a Declaration of Christian Charre and a Supplemental Declaration of Anthony Barsanti in support of the Sale [ECF No. 134] (the "Sale Reply"); and the Central and South Tower Associations having filed notices withdrawing their support for the Sale Objections [ECF Nos. 184, 186, 188, 189] (the "Sale Objection Withdrawals"); and the Debtors having filed a supplemental reply in support of the Sale Motion [ECF No. 203] (the "Supplemental Sale Reply"); and the Purchaser having filed the Declaration of Andrei Scrivens in support of the Sale Motion [ECF No. 199] (the "Sale Declaration"); and the North Tower Association having filed a supplemental Sale Objection [ECF No. 210] (the "North Tower Supplemental Objection"); and unit owners Henry Shamamian, Kuljinder Chase, Alan Ginsberg and Nasser Ahmad having filed a position statement [ECF No. 206] (the "Unit Owners' Statement"); and 6801 Collins having filed a supplemental statement regarding the Sale [ECF No. 208] (the "6801 Supplemental Objection"); and the Purchaser having executed that certain Term Sheet annexed hereto as Exhibit B with the South Tower Association and the Central Tower Association (each as defined hereinbelow) (the "South/Central Tower Term Sheet"); and the Purchaser having executed that certain Term Sheet

annexed hereto as Exhibit C with the North Tower Association (as defined hereinbelow) (the "North Tower Term Sheet");

NOW, THEREFORE, upon the entire record of the Procedures Hearing, the Sale Hearing (each as defined in the Bidding Procedures Order) and this case, including, without limitation, the admitted portions of the Declaration of Anthony Barsanti Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions [ECF No. 2], the Declaration of Anthony Barsanti in Support of Motion [ECF No. 72], the Sale Motion, Sale Objections, the Sale Reply, the Sale Objection Withdrawals, the Supplemental Sale Reply, the Sale Declaration, the North Tower Supplemental Objection, the Unit Owners' Statement, the 6801 Supplemental Objection, the South/Central Tower Term Sheet and the North Tower Term Sheet; and after due deliberation thereon and good cause appearing therefor, and for the reasons stated on the record of the Sale Hearing; and each of the Associations having consented to entry of the Sale Order on the terms reflected herein;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    This Court has jurisdiction over the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

C.     Proper, timely, adequate and sufficient notice of the Sale Motion and the relief requested therein, the Auction, the Sale Hearing, the Sale, and the transactions described in the Purchase Agreement (all such transactions being collectively referred to as the "Sale Transaction"), and the assumption and assignment of each Assigned Contract, has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and in compliance with the Bidding Procedures Order to all interested persons and entities, including: (i) counsel for the Purchaser, Latham & Watkins, 330 N. Wabash, Suite 2800, Chicago, IL, Attn: James Ktsanes; (ii) all applicable federal, state, and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Assets, are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the Debtors' ownership of the Assets or have any known interest in the relief requested by the Motion, including (a) the Internal Revenue Service, P.O. Box 21126, Philadelphia, Pennsylvania 19114, (b) the Florida Licensing Authorities, and (c) the City of Miami Beach, City Hall, 1700 Convention Center Drive, Miami Beach, Florida 33139; (iii) the Debtors' known secured creditors and lien holders, including all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Assets; (iv) the

United States Attorney for the Southern District of New York; (v) the Office of the United States Trustee for Region 2, Attn: William K. Harrington, Esq. and Susan D. Golden, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; (vi) the Debtors' Secured Lender, PAMI ALI LLC, c/o Weil, Gotshal & Manges LLP, Attn: Jacqueline Marcus, Esq., 767 Fifth Avenue, New York, New York 10153; (vii) CR Miami, LLC, Attn: Jerry Cohen and Gary Milner, 8600 East Rockcliff Road, Tucson, Arizona 85750; W. James Harrison, Esq., W.J. Harrison & Associates, P.C., 3561 East Sunrise, Suite 201, Tucson, Arizona 85718 (counsel to CR Miami, LLC); (viii) parties to executory contracts and unexpired leases proposed to be assumed and assigned, or rejected as part of the Proposed Sale; (ix) counsel to the North Tower Association; (x) counsel to the Central and South Tower Associations; (xi) all owners of units at the Assets; (xii) the creditors listed as holding the 20 largest unsecured claims against the Debtors' estates (on a consolidated basis); (xiii) all entities that have expressed an interest to the Debtors' or their advisors in purchasing the assets subject to this Order; (xiv) all parties listed on Schedule 6 to the Purchase Agreement; and (xv) all other parties that filed notices of appearance in the Chapter 11 cases, ((i)-(xv) shall be collectively referred to herein as the "Notice Parties"). Notice of the Auction and Sale Hearing was published in the New York Times on July 7, 2014. The notices described above were good, sufficient, and appropriate under the circumstances, and no other notice is required.

D.     The disclosures made by the Debtors concerning the Purchase Agreement, the Auction, the Sale contemplated by the Purchase Agreement, and the Sale Hearing were good, complete, and adequate.

E.     The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive and proposed and executed in good faith as a result of arm's-length negotiations, and were substantively and procedurally fair to all entities.

F.     The Debtors conducted the sale and auction process in accordance, and have otherwise complied in all respects, with the Bidding Procedures Order.  The sale and auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for all creditors, parties-in-interest and other entities to make a higher or otherwise better offer to purchase the Assets.

G.     A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

H.     The Debtors have full corporate power and authority to consummate the Sale Transaction pursuant to the Purchase Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the Sale Transaction.

I.     Approval of the Purchase Agreement and consummation of the Sale Transaction are in the best interests of the Debtors' estates, their creditors, and other parties-in-interest.

J.     The Debtors have demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code.  Such business reasons include, without limitation, the following: (i) the Purchase Agreement constitutes the highest or otherwise best offer for the Assets; (ii) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets; and (iii) any other transaction, including, without limitation, pursuant to a chapter 11 plan, would not have yielded as favorable an economic result.

K.     The Purchase Agreement was negotiated, proposed and entered into by and among the Debtors and the Purchaser, without collusion, in good faith, and from arm's-length bargaining positions.  The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the avoidance of the Purchase Agreement or the consummation of the Sale Transaction, or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.  The aggregate price paid by the Purchaser for the Assets was not controlled by any agreement among the bidders.

L.     The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in that: (a) the Purchaser recognized that the Debtors were free to deal with any other party interested in a transaction regarding the Sale; (b) the Purchaser complied in all

respects with the Bidding Procedures Order; (c) the Purchaser agreed to provisions in the Purchase Agreement that would enable the Debtors to accept a higher or better offer in respect of the Sale; (d) the Purchaser made the highest or best bid in respect of the Sale; (e) all payments to be made by or to the Purchaser and other agreements or arrangements that have been entered into by the Purchaser in connection with the transactions have been disclosed; (f) the Purchaser neither induced nor caused the Debtors' chapter 11 filings; (g) the negotiation and execution of the Purchase Agreement and any other agreements or instruments related thereto was in good faith and an arm's-length transaction between the Purchaser and the Debtors; and (h) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The Purchaser has at all times acted in good faith and will continue to be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase Agreement.

M.     The Sale Transaction and the sale of the Assets is in furtherance of, and a conveyance pursuant to, the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc., Chapter 11 Case No. 08-13555 [ECF No. 23023] (the "Plan"), which provides that the Plan Administrator (as defined in the Plan) shall wind-down, sell and otherwise liquidate assets of the Debtor-Controlled Entities (as defined in the Plan) in accordance with Section 6.1(b)(iii) of the Plan. The Debtors are Debtor-Controlled Entities within the meaning of the Plan.

N.     The terms and conditions of the Purchase Agreement are fair and reasonable. The consideration of $21,600,000 (subject to adjustments as set forth in the

Purchase Agreement) to be provided by the Purchaser for the Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law. No other entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' estates than the Purchaser. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

O.      The Purchaser is not a mere continuation of any of the Debtors or their estates and there is no continuity of enterprise between the Purchaser and any of the Debtors. The Purchaser is not holding itself out to the public as a continuation of any of the Debtors. The Purchaser is not a successor to any of the Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of Purchaser and any of the Debtors.

P.      The Sale of the Assets outside a chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan of the Debtors. The Sale does not constitute a sub rosa plan.

Q.     The Purchaser has not agreed to assume and shall have no obligations with respect to any liabilities of the Debtors or their subsidiaries or Affiliates other than the Assumed Liabilities and Permitted Encumbrances as specifically provided in the Purchase Agreement.

R.     The Purchaser is not and will not be liable to any agent, broker, person or firm acting or purporting to act on behalf of either the Debtors or the Purchaser for any commission, broker's fee or finder's fee respecting the Sale Transaction.

S.     The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the Purchaser are fraudulently entering in the transaction contemplated by the Purchase Agreement.

T.     The Assets constitute property of the Debtors' estates and the Debtors are the sole and lawful owner of the Assets, and hold good title thereto (subject to the Permitted Encumbrances).[3]  The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtors in and to the Assets free and clear of all liens, claims, interests, obligations, rights, charges and encumbrances, except for Permitted

---

[3]     A Legal Description of the real property components of the Assets is contained on Exhibit D to this Order.

Encumbrances as specifically provided in the Purchase Agreement. The Purchaser shall have no liability for any claims against or liabilities of the Debtors or their estates.

U. The Debtors have good marketable title to the Assets and are lawful owners of the Assets. The Debtors may sell the Assets free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in Section 101(5) of the Bankruptcy Code), leases, possessory leasehold interests, charges, options, rights of first refusal or option to purchase any real property, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options, in each case of whatever kind, nature, or description in, against or with respect to any of the Assets, having arisen, existed or accrued prior to and through the Closing, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise and whether arising prior to, on or after the Petition Date, including those liens, claims and/or encumbrances listed on Exhibit E to this Order (collectively, "Liens, Claims and/or Interests"), except for Permitted Encumbrances as expressly provided in the Purchase Agreement, because one or more of the standards set forth in section 363(f)(1) – (5) has been satisfied with regard to each such Lien, Claim and/or Interest. Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Assets who did not object, or who

withdrew their objections to the Sale Transaction or the Sale Motion are deemed to have consented to the sale of the Assets free and clear of those non-debtor parties' Liens, Claims and/or Interests in the Assets pursuant to section 363(f)(2) of the Bankruptcy Code. Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Assets who objected to the Motion, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their liens, claims or interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

V. Certain of the Assets are sold subject to: (i) the Declaration of Covenants, Restrictions and Easements for Carillon Hotel and Spa recorded on December 3, 2007 in OR Book 26080 on Pages 4905 – 5008 in the public records for Miami-Dade County, FL, including all recorded amendments to same (collectively, the "Master Declaration"); (ii) the Declaration of Central Carillon Beach, a Condominium recorded on October 15, 2008 in OR Book 26610, Pages 0735 – 882 in the public records for Miami-Dade County, FL, including all recorded amendments to same (collectively, the "Central Tower Declaration"); (iii) the Declaration of South Carillon Beach, a Condominium recorded on December 3, 2007 in OR Book 26080 at page 4764 in the public records for Miami-Dade County, FL, including all recorded amendments to same (collectively, the "South Tower Declaration"), and (iv) the Declaration of North Carillon Beach, a Condominium recorded on August 27, 2008 in OR Book 26542 at page 15 in the public records for Miami-Dade County, FL, including all recorded amendments to same (collectively, the "North Tower Declaration") (the "North Tower Declaration," "South Tower Declaration" and "Central Tower Declaration" are

collectively referred to hereinafter as the "Tower Declarations" unless otherwise specified, and the Master Declaration and Tower Declarations are hereinafter referred to as the "Declarations," unless otherwise specified) which grant the owner of those Assets certain rights pursuant thereto. The North Carillon Beach Condominium Association Inc. (the "North Tower Association"), South Carillon Beach Condominium Association Inc. (the "South Tower Association"), and Central Carillon Beach Condominium Association, Inc. (the "Central Tower Association) (collectively referred to hereinafter as the "Associations" unless otherwise specified) dispute and have sought to impinge upon and define those rights. To facilitate the Sale, this Court makes the following findings confirming the rights granted to the Debtors pursuant to the Declarations:

- The "Hotel Lot Owner" (as defined in the Master Declaration) (or any successor Hotel Lot Owner) has the exclusive right to determine from time to time, in its sole discretion and without notice or approval of any change, how and by whom the Spa (as defined in the Master Declaration) and spa facilities shall be used, if at all, including, without limitation, the right to approve users, determine eligibility for use, establish hours or use and guest policies, restrictions and/or prohibitions, and to allow use of the Spa and spa facilities by persons other than the Unit Owners (as defined in the Declarations).

- Each Unit Owner's right to use the Shared Facilities (as defined in the Master Declaration), including his or her "Limited Spa Rights," as that term is defined in Article 1.1(dd)(iv)(d) of the Master Declaration, are subject to the Hotel Lot Owner's right to permit other persons to use such facilities as the Hotel Lot Owner (or any successor Hotel Lot Owner) may designate in its sole discretion. This includes without limitation persons who are not members of the Associations or who are not owners of any portion of the Properties (as defined in the Master Declaration) and may include members of the public generally.

- The Hotel Lot Owner (or any successor Hotel Lot Owner) may grant and use general and specific easements over, under, and through the Shared Facilities at its sole discretion to whomever it so chooses.

- The owner (or any successor owner) of the Future Development Property as defined by Article 1.1(x) of the Master Declaration has the right to "annex" or add Future Development Property to the jurisdiction of the Master Declaration, provided that a Supplemental Declaration is duly executed and recorded in the Public Records of Miami-Dade County, as provided in Article 2.2 of the Master Declaration.

- The Hotel Lot Owner (or any successor Hotel Lot Owner) may levy assessments for, without limitation, the maintenance, repair, management, replacement and operation of the Shared Facilities. Included in the Shared Facilities are the Unit Owner's Limited Spa Rights, only as expressly set forth in Articles 1.1(dd)(iv)(d), 1.1(oo), and 4.4 of the Master Declaration. Such assessments for the Shared Facilities are separate from and in addition to the monthly Fixed Charge that Unit Owners are obligated to pay the Hotel Lot Owner (or any successor Hotel Lot Owner) in accordance with Article 16.3 of the Master Declaration.

- The Hotel Lot Owner (or any successor Hotel Lot Owner) has broad rights under the Master Declaration to regulate the use of the Shared Facilities, including, without limitation, (i) the right to limit the availability of Unit Owners' use privileges, (ii) to change, eliminate or cease of any or all of the spa features and/or services, and (iii) to impose reasonable non-discriminatory rules and regulations, policies, restrictions and/or prohibitions to govern the orderly use of such facilities.

- The Hotel Lot Owner (or any successor Hotel Lot Owner) may institute reasonable rules and regulations to operate and manage the Shared Facilities, including limiting maximum daily users to comport with legal occupancy limits.

- The Hotel Lot Owner (or any successor Hotel Lot Owner) may include the expense of Valet Parking Services (as defined in the Sale Motion) in the Condominium Tower' Shared Facilities Assessments (as defined in the Sale Motion).

- The Hotel Lot Owner (or any successor Hotel Lot Owner) may assess utility costs based upon square footage rather than actual usage.

Nothing herein, including the Court's approval of the North Tower Term Sheet and the South/Central Tower Term Sheet, shall constitute an amendment or modification of the Declarations.

W.      If the above findings regarding the rights granted by the Master Declaration and Declarations were not entered, the Purchaser would not consummate the Sale, thus adversely affecting the Debtors, their estates and their creditors.

X.      If the Sale were not free and clear of all Liens, Claims and/or Interests, or if the Purchaser would, or in the future could, be liable for any of the Liens, Claims and/or Interests, the Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors, their estates and their creditors.

Y.      Approval of the North Tower Term Sheet and the South/Central Tower Sheet as part of the Court's approval of the Sale is a condition of the North Tower Term Sheet and South/Central Tower Term Sheet, respectively.

Z.      The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

AA.      The Debtors and Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including, without limitation,

sections 365(b)(1)(A) and (B) and 365(f) of the Bankruptcy Code, in connection with the Sale and the assumption and assignment of the Assigned Contracts to the extent provided under the Purchase Agreement. The Purchaser is able to demonstrate adequate assurance of future performance with respect to any Assigned Contracts in accordance with section 365(b)(1)(C) of the Bankruptcy Code. Except as expressly provided by the Purchase Agreement, the Assigned Contracts are assumable and assignable notwithstanding any provisions contained therein to the contrary.

AB.     The transfer of the Assets to the Purchaser (i) does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law and (ii) does not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' business prior to the closing of the Sale Transaction (the "Closing").

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>**General Provisions**</u>

1.     The Sale Motion is hereby granted and approved as set forth herein.

2.     The North Tower Term Sheet and the South/Central Tower Term Sheet are hereby approved as set forth herein.

3.     The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule

9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

4.      Any and all objections, if any, to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case, are enjoined from taking any action against the Purchaser or any purchaser of the Assets, his affiliates or any agent of the foregoing to recover any claim which such person or entity has against the Debtors, or their estates.  Those parties who did not object or who withdrew their objections to the Sale Motion, including, without limitation, each of the Associations, are deemed to have consented to the sale, including pursuant to section 363(f)(2) of the Bankruptcy Code.

**Approval of the Purchase Agreement**

5.      The Purchaser's offer for the Assets, as embodied in the Purchase Agreement, is the highest or otherwise best offer for the Assets.

6.      The Sale Transaction, and all of the terms and conditions and transactions contemplated by the Purchase Agreement are hereby authorized and approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

7.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the Purchase Agreement and the Debtors shall at all times act in accordance with the terms thereof.

8.      The Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient or desirable to implement the Purchase Agreement and consummate the Sale Transaction pursuant thereto and effectuate the provisions of this Order and the transactions approved hereby, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

9.      The consideration provided by the Purchaser to the Debtors pursuant to the Purchase Agreement for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

10.      This Order shall be binding in all respects upon (a) the Debtors, (b) their estates, (c) all creditors, (d) all holders of Liens, Claims and/or Interests whether known or unknown (including, but not limited to those identified on Exhibit E to this Order) against or on all or any portion of the Assets, (d) the Purchaser and all successors and assigns of the Purchaser (e) the Assets, (f) any trustee(s) subsequently appointed in the Debtors' chapter 11 cases or upon a dismissal or conversion of these cases under chapter 7 of the Bankruptcy Code.  This Order and the Purchase Agreement

shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

**Transfer of the Assets**

11. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any Liens, Claims and/or Interests in the Assets.

12. Except for Permitted Encumbrances only as expressly provided in the Purchase Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Assets (and good and marketable title to such Assets) and all of the Debtors' rights, title and interest therein shall be transferred to the Purchaser free and clear of all Liens, Claims and/or Interests (including, but not limited to those listed on Exhibit E to this Order) with all such Liens, Claims and/or Interests to attach to the net cash proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect which they now have as against the Assets, subject to any claims and defenses, setoffs or rights of recoupment the Debtors may possess with respect thereto (which such claims defenses, setoffs or rights of recoupment shall be transferred to the Purchaser at closing).

13. Pursuant to section 363(f) of the Bankruptcy Code, applicable Florida law, the Declarations, and this Court's Guidelines for the Conduct of Asset Sales, adopted by General Order No. M-383, dated as of November 18, 2009, the Debtors have set forth the legal authority necessary to support this Court's findings

regarding the future conduct that may or will take place with respect to certain of the Assets after the date of the Sale Order.

14.     Except for Permitted Encumbrances, as expressly provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Liens, Claims and/or Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in or with respect to the Debtors and/or the Assets arising or accruing under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens, Claims and/or Interests against the Assets or the Purchaser or any of the Purchaser's successors or assigns. Following the Closing Date, no holder of a Lien, Claim and/or Interest shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Lien, Claim and/or Interest or any actions that the Debtors have taken or may take in this Chapter 11 case. Effective upon the Closing, the Purchaser shall have no liability for any claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors or their estates.

15.     The Debtors may sell the Assets free and clear of all Liens, Claims and/or Interests whatsoever against the Debtors, their estates or any of the Assets (except the Assumed Liabilities or as otherwise provided in this Order) because, in each

case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Claims and/or Interests against the Debtors, their estates or any of the Assets who did not object, or who withdrew their objections to the Sale Transaction or the Sale Motion are deemed to have consented pursuant to 363(f)(2) of the Bankruptcy Code.

16. The transfer of the Assets to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Assets.

**Sale Proceeds**

17. The proceeds of the Sale Transaction (including the amount of the Deposit) shall be distributed as follows: first, to pay the costs and expenses incurred by the Debtors in connection with the Sale Transaction (excluding legal fees), including, without limitation, the commission owing to the Debtors' broker, CBRE in the amount of $499,139.34, all taxes and/or assessments levied and assessed against the land, which are due and payable, estoppel fees, survey costs, escrow fees, title costs, stamp taxes, transfer taxes, and property prorations due from the Debtors; and second, to PAMI ALI, LLC, the Debtors' post-petition lender and the holder of a first priority senior lien on the Assets to satisfy the Debtors' secured pre-petition obligation and the Debtors' outstanding borrowings under the post-petition financing agreement. Any and all valid and perfected Liens, Claims and/or Interests in the Assets shall attach to the proceeds of such Assets immediately upon receipt of such proceeds by the Debtors (or any party acting on any Debtor's behalf) in order of priority, and with the same validity, force and

effect which they now have against such Assets, except to the extent modified by the immediately preceding sentence, subject to any rights, claims and defenses the Debtors, the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of this Sale Order.

**No Successor Liability**

18.     Except for the Assumed Liabilities, the transfer of the Assets to Purchaser shall not result in (i) the Purchaser or the Assets having any liability or responsibility for any Liens, Claims and/or Interests against the Debtors or against an insider of the Debtors, (ii) the Purchaser or the Assets having any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens, Claims and/or Interests or Excluded Assets, or (iii) the Purchaser or the Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement.

19.     Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, the Purchaser shall not be liable for any claims (as defined in section 101(5) of the Bankruptcy Code) against any of the Debtors or any of their respective predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability, de facto merger or joint

venture, mere continuation or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between any of the Debtors and any non-debtor subsidiary, liabilities relating to or arising from any environmental laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to Closing.

20.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of any of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

21.     The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the Debtors, their estates and creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens, Claims and/or Interests pursuant to the Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of all Liens, Claims and/or Interests against any of the Debtors or any of the Assets.  The consideration provided by the Purchaser for the Assets under the Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

## Assigned Contracts

22.    (a)    **Authorization**.  Subject to the terms of this Section 22, the Debtors are authorized to execute and deliver to the Purchaser such documents or other instruments and to take such other actions as may be necessary to assume and assign the Assigned Contracts to the Purchaser at Closing.  In addition, the Debtors shall, at Closing, assign the Rental Program Agreements to the Purchaser.  The foregoing assignment of the Rental Program Agreements to the Purchaser shall constitute an "Assigned Contract" for all purposes hereunder, including, without limitation, Section 21(c) of this Sale Order.

(b)    **Cure Amounts; Adequate Assurances**.  Except as may otherwise be agreed to by the parties to an Assigned Contract, at the Closing, the Debtors shall cure those defaults under the Assigned Contracts that need to be cured in accordance with the Purchase Agreement and section 365(b) of the Bankruptcy Code, by payment of (i) the undisputed Cure Amounts in the amounts listed in the Sale Notice as "Cure Amounts," (ii) the amount agreed to by any party to an Assigned Contract and the Debtors, or (iii) the amount ordered by this Court to constitute the Cure Amount for any Assigned Contract after a hearing to consider the objection by a counterparty to an Assigned Contract to the Cure Amount for such Assigned Contract.  The payment of the applicable Cure Amounts (if any) by the Debtors will (a) effect a cure of all defaults existing thereunder as of the date that such executory contracts or unexpired leases are assumed and assigned within the meaning of section 365(b)(1)(A) of the Bankruptcy Code or otherwise and (b) compensate for any actual pecuniary loss to such non-Debtor

party resulting from such default within the meaning of section 365(b)(1)(B) of the Bankruptcy Code or otherwise, at which time the Purchasers shall then have taken assignment of the Assigned Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assigned Contracts shall not be a default thereunder. Since the Purchaser has sufficient assets to continue performance under the Assigned Contracts, the Purchaser's promise to perform under the Assigned Contracts is hereby deemed to constitute adequate assurance of future performance under the Assigned Contracts and any other proposed assignments.

(c) **Assignment Free and Clear of Liens, Claims and/or Interests**. The Assigned Contracts shall be assigned to the Purchaser upon the Closing, free and clear of all Liens, Claims and/or Interests of any kind or nature whatsoever (including, without limitation, any Liens, Claims and/or Interests arising under or related to any of the Canyon Ranch Agreements) other than the Assumed Liabilities, and shall remain in full force and effect for the benefit of the Purchaser and/or its affiliates, as applicable, in accordance with their respective terms, notwithstanding any provision in any such Assigned Contracts (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions any assignment, transfer or sublease.

(d) **Good Faith**. The assignments of each of the Assigned Contracts are made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code.

(e) **Effect of Assumption and Assignment**.  Upon the Closing (or, if later, upon the assignment of such Assigned Contract to Purchaser) and the payment of the relevant Cure Amounts by the Debtors, Purchaser shall be deemed to be substituted for the Debtors, as applicable, as a party to the applicable Assigned Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy code, to the extent allowable under applicable law, from any liability under the Assigned Contracts but only to the extent any such liability first accrues after the Closing Date;  provided, however, that any default, claim, liability or obligation of any kind arising from an event that occurs prior to the Closing that gives rise to a default, claim, liability or obligation or any kind after Closing (e.g., any event that gives rise to liability after lapse of an applicable cure period) shall be deemed to have accrued prior to Closing for all purposes hereunder); and, provided, further, that the foregoing release of the Debtors by the Purchaser shall apply only with respect to liabilities that are assumed by the Purchaser.  There shall be no rent accelerations, assignment fees, increases or any other fees or loss of rights or increase of liabilities under the Assigned Contracts charged to Purchaser solely as a result of the assumption and assignment of the Assigned Contracts.  Each counterparty to an Assigned Contract will be forever barred, estopped and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or their respective affiliates, or the property of any of them, any default existing as of Closing; or, against the Purchaser or its affiliates, any counterclaim, defense, setoff or any other Lien, Claim and/or Interest asserted or assertable against the Debtors;  and (ii) imposing or charging against Purchaser or its affiliates any

accelerations, assignment fees, increases or any other fees or asserting any loss of rights or increase of liabilities under the Assigned Contract solely as a result of the Debtors' assumption and assignment to Purchaser of the Assigned Contract. No counterparty under any Assigned Contract may terminate any such contract, nor shall the Purchaser's rights and obligations under such Assigned Contracts be adversely affected in any way, by reason of any default under such Assigned Contract prior to Closing. To the extent that any counterparty to an Assigned Contract failed to object to any notice of assumption and assignment or to the Cure Amount with respect to such Assigned Contract, such counterparty is deemed to have consented to such Cure Amount and the assignment of such contract to the Purchaser.

   (f) **Possible Covenants Attached to the Assets**. The assumption of that certain Master Declaration, which is recorded in Official Records Book 26080, Page 4905 of the Public Records of Miami-Dade County, Florida, is without prejudice to any party's argument over whether such contract is an "executory contract" subject to assumption or rejection.

**Rejected Contracts**

   23. This Sale Order shall operate as a permanent injunction prohibiting any party to a contract that has been rejected by any of the Debtors (each a "Rejected Party") that in any way relates to the Assets from taking any action against the Purchaser in connection with the Sale Transaction, whether pursuant to the Bankruptcy Code or any other statutory or non-statutory federal, state or local law.

**Ipso Facto Clauses Ineffective**

24.     Upon the Debtors' assignment of the Assigned Contracts to the Purchaser under the provisions of this Sale Order and any additional order contemplated by this Sale Order or the Purchase Agreement, and subject to the timely payment by the Debtors of the applicable Cure Amount or such other amount as may be agreed to in writing by the parties to an Assigned Contract (provided, however, that the failure of the Debtors to cure any default under an Assigned Contract shall not result in any liability to or obligation of the Purchaser), no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted to declare a default thereunder, or otherwise take action against the Purchaser, as a result of any Debtor's financial condition, bankruptcy or failure of the Debtor to perform or observe any of its obligations under the relevant Assigned Contract.  Any provision in an Assigned Contract that prohibits or conditions an assignment or sublease of such Assigned Contract (including, without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition on account of such assignment or sublease, constitutes an unenforceable anti-assignment provision in connection with the Sale Transaction that is void and of no force and effect.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or the Debtors' and Purchaser's rights to enforce every term and condition of the Assigned Contract.

## No Stay of Order

25.     Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Bankruptcy Rules, this Sale Order shall not be stayed for 14 days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in approving the Sale Transaction, and the Debtors and the Purchaser intend to close the Sale Transaction as soon as practicable.

## Additional Provisions

26.     Without limiting the other terms of this Sale Order, prior to or upon the Closing of the Sale Transaction, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their Liens, Claims and/or Interests, if any, in the Assets as such Liens, Claims and/or Interests may have been recorded or may otherwise exist.

27.     Except for Permitted Encumbrances, only as expressly provided in the Purchase Agreement, this Sale Order (a) shall be effective as a determination that, upon the Closing, all Liens, Claims and/or Interests existing with respect to the Assets prior to the Closing (including, but not limited to those listed on Exhibit E to this Sale Order) have been unconditionally released, discharged and terminated as to the Purchaser and the Assets, and that the conveyances described herein have been effected, and (b) shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state,

and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

28.     Each and every federal, state, and local governmental agency or department or office is hereby directed to accept this Sale Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

29.     Without limiting the other provisions of this Sale Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing interests with respect to the Debtors and/or the Assets shall not have delivered to the Debtors or their designee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims and/or Interests which the person or entity has with respect to the Debtors, the Assets or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser and/or the Debtors are hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and/or Interests in, against or with respect to the Debtors and/or the Assets.  This Sale Order is deemed to be in recordable form

sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

30.     From and after the date hereof, no creditor of the Debtors or other party in interest shall take or cause to be taken any action that would interfere with the transfer of the Assets to the Purchaser in accordance with the terms of this Sale Order.

31.     This Court hereby retains exclusive jurisdiction, regardless of whether a chapter 11 plan has been confirmed and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser in accordance with the terms of the Purchase Agreement, (b) resolve any dispute, controversy or claim arising under or related to the Purchase Agreement, or the breach thereof and (c) interpret, implement, and enforce the provisions of this Sale Order and resolve any disputes related thereto.

32.     Nothing contained in any plan confirmed in this Chapter 11 case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

33.     The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code.   The Purchaser is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to the Purchaser.

34.     The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and their creditors, the Purchaser, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon all of the Debtors' creditors, all prospective and actual bidders for some or all of the Assets, and all persons and entities receiving notice of the Sale Motion, the Auction and/or the Sale Hearing notwithstanding any subsequent appointment of any examiner(s) or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their members or any examiner(s) or receiver(s).

35.     The Bid Deposit of the Second Highest Bidder will be returned within (5) business days following the closing of the Sale to the Purchaser.

36.     The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

37.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.


DATED:   New York, New York
         November 26, 2014

                                    s/ Shelley C. Chapman
                                    UNITED STATES BANKRUPTCY JUDGE