# Z CAPITAL PARTNERS

November 24, 2014

North Carillon Beach Condominium Association
6899 Collins Avenue
Miami, FL 33141

    Re:    Letter Agreement

Gentlemen:

We appreciate the time you have taken to meet with Z Capital Florida Resort LLC (collectively, with its affiliates, "Z Capital") and for sharing the views of your fellow constituents. Z Capital was named the successful bidder on August 21, 2014 for the Canyon Ranch Miami Hotel Lot, Retail Lot, 13 condominium units and other assets pursuant to the auction conducted by subsidiaries of Lehman Brothers Holdings, Inc. (the "Property"). On October 28, 2014, Z Capital entered into a term sheet (the "Term Sheet") with the South Carillon Beach Condominium Association, Inc. ("South Tower") and Central Beach Condominium Association Inc. ("Central Tower," and together with the North Tower (as defined below) and South Tower, "the Associations").

We understand the North Carillon Beach Condominium Association Inc. ("North Tower") litigation currently pending in the courts of the State of Florida (the "Litigation") was centered on preserving the character of the property as a distinctive and exclusive lifestyle in which unit owner have made substantial investments, and you have conveyed quite clearly your requests in that regard during our discussions. In response to those requests and in exchange for good and valuable consideration, the sufficiency of which is hereby acknowledged, Z Capital and the North Tower agree as follows:

1. North Tower shall be re-named to reflect its unique positioning within the Property.

2. Z Capital will use its reasonable best efforts to provide a destination restaurant on the Property.

3. Within a commercially reasonable period of time following the successful closing of its acquisition of the Property (the "Closing"), Z Capital will conduct a feasibility review of delivering the services set forth in (a) – (c) below. Provided that 5-star product and services levels can be achieved, in Z Capital's sole discretion, Z Capital will provide such services on a cost-plus basis allocated only to those Associations that have elected to participate in such services. For clarity, such services will be excluded from any assessment caps provided under the Term Sheet.

    a. Full food and beverage service will be offered on pool decks.

b. Room service will be made available to residences, at unit owner expense.

c. A concierge shall be retained with the ability to secure preferred reservations at any restaurants, spa and massage areas, and beach decks on the Property.

4. Z Capital will implement the following measures with respect to the security of residents and hotel guests:

    a. Z Capital will conduct a review of spa key fob inventory and address abuses as necessary;

    b. The security system shall be reviewed and upgraded as necessary at all entrances;

    c. The North Tower valet driveway will be designated for exclusive use by the residents of the North Tower; and

    d. Classes conducted in the Ocean Studio will be relocated to a more central location on the property. As a replacement amenity at the North Tower, the Ocean Studio shall include a cardio gym (or such other amenity to be mutually agreed by Z Capital and the Associations), for the exclusive use of the residents of those towers whose Associations elect to participate in such amenity, with any costs thereof allocated ratably to the electing Associations on a cost-plus basis; provided, however, that nothing herein shall be inconsistent with what the Master Declaration (defined below) requires.

5. The external spa membership program shall be limited as follows:

    a. Each of the 200 individual memberships will be allowed only 20 guest passes per year, non-cumulative. No more than 4 guest passes may be used by an individual member at any one time.

    b. Black-out dates – Individual members will not be allowed access during peak periods of the Property, which peak periods are 1) Thursday through Sunday of Art Basel Week, 2) December 16 through January 1 of each year and 3) other such periods as the Associations and Z Capital shall agree.

    c. No area on the Property will be exclusive to individual members.

6. Z Capital shall, to the extent practicable, review actual valet parking usage and the current cost allocation for such services within a commercially reasonable period of time after the Closing, and, as necessary in Z Capital's discretion, adjust such allocation taking into account usage.

7. The North Tower hereby joins the Term Sheet and the parties hereto agree to be bound by the provisions set forth therein, other than the provisions requiring dismissal of any lawsuits or claims by the North Tower against the Debtors. Except as modified by this letter agreement, all of the terms and provisions contained in the Term Sheet shall be

treated as incorporated herein by reference and in full force and effect as to the North Tower.

8. Notwithstanding the language of the Term Sheet, the Long-term Cap (as defined therein) shall be, for 2017 and thereafter during Z Capital ownership:

   a. Actual increase or decrease in real estate and personal property taxes, insurance and utilities over prior year, plus

   b. Actual increases or decreases in any other expenses over prior year, which expenses cannot exceed CPI plus 10% in any single year unless mutually agreed between the Associations, individually, and Z Capital.

9. Annually, upon the commencement of the Long-Term Cap Assessment in 2017, Z Capital will provide the Associations with a line-item Budget for the following year, which shall set forth all shared expenses assessable to the unit owners (whether directly or through the Associations). Prior to commencement of the 2017 budget year, Z Capital will review all expenses (including property taxes for double assessment) for reasonableness and will retain an independent expert(s), selected by Z Capital in their sole discretion after consultation with the Associations, to determine the fair allocation of expenses between the Associations and the Hotel Lot.

10. In principal, Z Capital would like residents to have access to all areas of the property which they currently enjoy under the same conditions to access currently in effect. Accordingly, notwithstanding Section 2.3 of the Declaration of Covenants, Restrictions and Easements for Carillon Hotel and Spa (the "Master Declaration"), Z Capital agrees that it will not, without consulting the Associations, remove any facilities from the use of the unit owners, and will not limit use of any facilities or charge any additional amounts for use of any facility unless, within one-year of the Closing, Z Capital reasonably determines (and notifies the Associations) that continuation of the *status quo* is unreasonable and impracticable.

11. In consideration of an agreement by Canyon Ranch to remain as the spa and wellness operator at the Property for not less than two years, the North Tower shall provide at Closing a release of all known and unknown claims it has or could have asserted against Canyon Ranch through the date of Closing. Canyon Ranch's execution of a spa management agreement of a term of at least two years shall be a condition precedent to the North Tower's obligation to provide the release provided herein.

12. Other than as set forth herein, the terms of the Master Declaration shall remain in full force and effect.

After having met and reviewed the credentials of our esteemed team of operators, we hope you are gaining confidence that they we will not just preserve but enhance the stature of the property to 5-star status. We know as you do, that delivering 5-star service and a luxury experience is not a one size fits all endeavor, and we are willing to personalize our service offerings to meet the needs of all our customers. With your support we hope to begin our transition soon, and we welcome your continued input.

This letter agreement and the Term Sheet constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof. This letter agreement shall be governed in all respects by the laws of the State of New York, without giving effect to the conflict of laws rules thereof.

The obligations of Z Capital set forth herein are conditioned on Z Capital's successful acquisition of the Property. Z Capital shall have the right to either proceed as a successful bidder by auction or to incorporate the foregoing terms and conditions into a plan of reorganization in Z Capital's reasonable discretion. This letter agreement shall be subject to and conditioned on approval by the Court in the Bankruptcy Case as part of its approval of the sale transaction.

THIS TERM SHEET AND THE TRANSACTIONS CONTEMPLATED HEREIN ARE PART OF A PROPOSED SETTLEMENT OF DISPUTES AMONG THE PARTIES HERETO. NOTHING HEREIN SHALL BE DEEMED AN ADMISSION OF ANY KIND. THE TERM SHEET IS NOT A SOLICITATION OF ACCEPTANCE AND REJECTIONS WITH RESPECT TO ANY CHAPTER 11 PLAN. ANY SUCH SOLICITATIONS WILL COMPLY WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE.

Please acknowledge your agreement to be bound by the entirety of the foregoing by signing in the space provided below.

Very truly yours,

Z Capital Florida Resorts, LLC

By: _____
Name: James Zenni
Title: Authorized Person

**Adopted and agreed:**

North Carillon Beach Condominium Association, Inc.

By: _____
Name: JASON STONE
Title: V.P./SEC'Y.
NORTH TOWER BOARD

4