<u>**Exhibit "A"**</u>

**Liquidating Plan of FL 6801 Spirits LLC
and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York  10119
Telephone:  (212) 594-5000
Albert Togut
Frank A. Oswald
Steven S. Flores

Attorneys for the Debtors and
Debtors in Possession


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
*In re*:                                       :    Chapter 11
                                              :
FL 6801 SPIRITS LLC, *et al.*,                 :    Case No. 14-11691 (SCC)
                                              :
                        Debtors.               :    Jointly Administered
                                              :
------------------------------------------------------------x


## LIQUIDATING PLAN OF FL 6801 SPIRITS LLC
## AND ITS AFFILIATED DEBTORS UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE


Dated:    New York, New York
          April 13, 2015

### LIQUIDATING PLAN OF FL 6801 SPIRITS LLC AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### INTRODUCTION

Debtors FL 6801 Spirits LLC, FL 6801 Collins North LLC, FL 6801 Collins Central LLC, and FL 6801 Collins South LLC propose the following liquidating plan (the "Plan") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, as well as a summary and analysis of the Plan and other related matters, including distributions to be made under the Plan. The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

### ARTICLE I - DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

A.    <u>Defined Terms</u>. As used herein, the following terms have the respective meanings specified below, except as expressly provided in other Sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined). Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

1.    <u>Administrative Claim</u> means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtors after the Petition Date of preserving the Estates or operating the Debtors' business; (b) Professional Fee Claims; (c) U.S. Trustee Fees; (d) the Break-up Fee; and (e) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

2.    <u>Administrative Claims Fund</u> means a fund to be established by the Debtors on the Effective Date, and administered thereafter by the Plan Administrator, in an amount sufficient to pay Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Claims, and Allowed Priority Tax Claims.

3.    <u>Allowed</u>, with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or

established by the Bankruptcy Court, if the Claim (i) was scheduled by a Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court;  (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed);  (d) determined to be valid by the Plan Administrator; (e) is the PAMI ALI General Unsecured Claim;  (f) is the Secured Lender Pre-Petition Claim;  or (g) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing.  A proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution under the Plan.

4.    Assets means all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Estates pursuant to section 541 of the Bankruptcy Code, Cash (including proceeds from the Sale), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

5.    Available Cash means, as of any given Distribution Date, all of the Debtors' Cash, less the remaining balances in the Disputed Claims Reserve, the Expense Reserve, and the Administrative Claims Fund.

6.    Bankruptcy Code means title 11 of the United States Code, as now in effect or as hereafter amended, as applicable to the Chapter 11 Cases.

7.    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Cases.

8.    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended from time to time and as applicable to the Chapter 11 Cases.

9.    Bar Date means such date(s) established by the Bankruptcy Court as the last date for filing proofs of Claim or requests for allowance of Administrative Claims, as applicable, against the Debtors.

10.    Bidding Procedures Order means the order of the Bankruptcy Court under sections 105 and 363 of the Bankruptcy Code, approving the Bidding Procedures, dated July 1, 2014 [Docket No. 77].

11.    Break-Up Fee means the break-up fee paid to 360 Miami Hotel & Spa LLC as an Administrative Expense pursuant to the Bidding Procedures Order in an amount equal to three hundred twenty thousand dollars ($320,000.00) plus any third party costs and expenses actually incurred by 360 Miami Hotel & Spa LLC (including,

but not limited to, reasonable attorneys' fees and reasonable inspection expenses) in the amount of one hundred twenty thousand dollars ($120,000.00).

12.   <u>Business Day</u> means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

13.   <u>Buyer</u> means Z Capital Florida Resort LLC together with its affiliated designee(s).

14.   <u>Cash</u> means cash and cash equivalents in U.S. dollars.

15.   <u>Causes of Action</u> means any and all claims, rights, and causes of action that could have been brought or can be brought now by or on behalf of the Debtors or the Estates arising before, on or after the Petition Date, whether they are known or unknown, direct or indirect, reduced or not reduced to judgment, disputed or undisputed, suspected or unsuspected, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to:  (i) those referred to in the Disclosure Statement, including, without limitation, the Retained Lawsuit; (ii) derivative claims, and (iii) right of setoff or recoupment, and claims on contracts or breaches of duty imposed by law.

16.   <u>Chapter 11 Cases</u> means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors, and jointly administered for procedural purposes under *In re FL 6801 Spirits LLC, et al.*, Chapter 11 Case No. 14-11691 (SCC), currently pending before the Bankruptcy Court.

17.   <u>Claim</u> means a "claim," as defined in section 101(5) of the Bankruptcy Code, against a Debtor, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim.

18.   <u>Class</u> means a category of Claims or Equity Interests set forth in Article III of the Plan.

19.   <u>Collateral</u> means any property or interest in property of the Estates subject to an unavoidable Lien to secure the payment or performance of a Claim.

20.   <u>Collins Central</u> means FL 6801 Collins Central LLC, one of the Debtors.

21.   <u>Collins North</u> means FL 6801 Collins North LLC, one of the Debtors.

4

22.     <u>Collins South</u> means FL 6801 Collins South LLC, one of the Debtors.

23.     <u>Collins Subsidiaries</u> means, collectively, Collins Central, Collins North and Collins South, three of the Debtors.

24.     <u>Confirmation Date</u> means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Cases.

25.     <u>Confirmation Hearing</u> means the hearing or hearings conducted by the Bankruptcy Court to consider confirmation of the Plan as it may be modified hereafter from time to time.

26.     <u>Confirmation Order</u> means the Order(s) confirming the Plan in accordance with the provisions of the Bankruptcy Code.

27.     <u>Debtors</u> means, collectively, FL 6801 Spirits LLC, FL 6801 Collins North LLC, FL 6801 Collins Central LLC and FL 6801 Collins South LLC.

28.     <u>DIP Lender</u> means PAMI ALI LLC.

29.     <u>Disclosure Statement</u> means the disclosure statement for the Plan filed with the Bankruptcy Court by the Debtors in accordance with section 1125 of the Bankruptcy Code, including all exhibits and schedules thereto, as it may be amended from time to time.

30.     <u>Disclosure Statement Order</u> means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

31.     <u>Disputed Claim</u> means a Claim that is not an Allowed Claim nor a disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim a Debtor or the Plan Administrator has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

32.     <u>Disputed Claims Reserve Accounts</u> means an account or accounts established and funded by the Debtors and administered by the Plan Administrator for the payment of Disputed Claims that become Allowed Claims after the Effective Date, and which shall hold Cash and/or other Assets as applicable, for the benefit of the holders of Disputed Claims.

33.    <u>Distribution</u> means the distribution to holders of Allowed Claims in accordance with the Plan of any Assets, or other consideration distributed under Article IV herein.

34.    <u>Distribution Address</u> means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).  If no proof of claim is or has been filed in respect of a particular Claim, "Distribution Address" means the address set forth in the applicable Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

35.    <u>Distribution Date</u> means any date on which the Plan Administrator determines that a Distribution, under or in accordance with the Plan, should be made to holders of Allowed Claims (or to a particular holder of an Allowed Claim) in light of, inter alia, resolutions of Disputed Claims, liquidation of Assets (including aggregate recoveries on account of Causes of Action), and the administrative costs of such a distribution.

36.    <u>District Court</u> means the United States District Court for the Southern District of New York.

37.    <u>Effective Date</u> means a Business Day, selected by the Plan Proponent, on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Plan Proponent, and on which no stay of the Confirmation Order shall be pending.

38.    <u>Effective Date Creditor Distributions</u> means the amount to be distributed on the Effective Date to holders of Allowed Class 2 Secured Claims and Allowed Class 3 General Unsecured Claims.

39.    <u>Equity Interest</u> means any equity interest or proxy related thereto, direct or indirect, in any of the Debtors, and represented by duly authorized, validly issued and outstanding shares of preferred stock or common stock, stock appreciation rights, membership interests, partnership interests, or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in any of the Debtors, or right to convert into such an equity interest or acquire any equity interest of the Debtors, whether or not transferable, or an option, warrant or right, contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Petition Date.

40.    <u>Equity Owners</u> means collectively, Lehman Brothers Holdings, Inc., Lehman ALI Inc., and PAMI ALI LLC.

41.    <u>Estate</u> means the estate of each Debtor as created under section 541 of the Bankruptcy Code.

6

42.     <u>Excluded Assets</u> shall have the meaning ascribed to such term in the Purchase Agreement.

43.     <u>Exhibit Filing Date</u> means the last date by which forms of the exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be not later than fourteen (14) days prior to the date of commencement of the Confirmation Hearing.

44.     <u>Expense Reserve</u> means a reserve to be established by the Debtors on the Effective Date to be utilized by the Plan Administrator to effectuate the liquidation of the remaining Assets hereunder, including, without limitation, to fund any necessary or appropriate litigation against third parties, in accordance with the Plan.  The Plan Administrator may replenish the Expense Reserve from Available Cash from time to time.

45.     <u>Face Amount</u> means (a) with respect to any Claim for which a proof of claim is filed, an amount equal to:  (i) the liquidated amount, if any, set forth therein;  and/or (ii) any other amount estimated by the Bankruptcy Court in accordance with section 502(c) of the Bankruptcy Code and the relevant provisions of the Plan; (b) if no proof of claim is filed and such Claim is scheduled in the applicable Debtor's Schedules, the amount of the Claim scheduled as undisputed, fixed, and liquidated;  or (c) if a proof of claim has been filed in an unliquidated amount, or the applicable Debtor's Schedules reflect a Claim in an unliquidated amount, the amount estimated by the Debtor or Plan Administrator to be the amount for which such claim may ultimately be Allowed.

46.     <u>Final Claims Resolution Date</u> means the date on which the last Disputed Claim has been resolved, either by consent, order of the Bankruptcy Court, or otherwise.

47.     <u>Final Order</u> means an order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired.

48.     <u>FL Spirits</u> means FL 6801 Spirits LLC, one of the Debtors.

49.     <u>General Unsecured Claim</u> means a Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Claim.

50.    <u>Impaired</u> means any Class of Claims or Equity Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

51.    <u>KM/Plaza</u> means Katz Meltzer Construction Company and Plaza Contracting Company d/b/a KM/Plaza.

52.    <u>KM Escrow Fund</u> means that certain escrow fund into which Collins North deposited $1,731,449.25 as security for the amount, if any, ultimately determined to be due in the Retained Lawsuit.

53.    <u>Lien</u> means any charge against, security interest in, encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

54.    <u>Litigation Claim</u> means any prepetition Claim against the Debtors relating to arbitrations, mediations, lawsuits, and other prosecutions.

55.    <u>PAMI ALI General Unsecured Claim</u> means the pre-petition General Unsecured Claim of PAMI ALI LLC.

56.    <u>Person</u> means an individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint venture, trust, estate, unincorporated organization, governmental authority, governmental unit or any agency or political subdivision thereof, or any entity of whatever nature.

57.    <u>Petition Date</u> means June 1, 2014, the date upon which the chapter 11 petitions of each of the Debtors were filed with the Bankruptcy Court.

58.    <u>Plan</u> means this liquidating plan under chapter 11 of the Bankruptcy Code, including, without limitation, the exhibits and schedules hereto, as such may be altered, amended, or otherwise modified from time to time.

59.    <u>Plan Administrator</u> means Lehman Brothers Holdings, Inc., or such other Person designated by Lehman Brothers Holdings, Inc., as the representative of the Debtors and the Estates for purposes of administering and consummating the Plan.

60.    <u>Plan Proponent</u> means the Debtors.

61.    <u>Prepetition Claim</u> means any Claim arising prior to the Petition Date.

62.    <u>Priority Claim</u> means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

8

63.    <u>Priority Tax Claim</u> means any Claim entitled to priority pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

64.    <u>Professional Fees</u> means any unpaid fees and expenses of Professionals, as such fees and expenses are allowed by the Bankruptcy Court.

65.    <u>Professional Fee Claim</u> means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Cases incurred on or after the Petition Date and prior to the Effective Date.

66.    <u>Professionals</u> mean the attorneys, accountants, financial advisors, and other professionals whose retention in the Chapter 11 Cases has been approved by the Bankruptcy Court.

67.    <u>Purchase Agreement</u> means that certain purchase and sale agreement between the Collins Subsidiaries and the Buyer annexed to the Disclosure Statement.

68.    <u>Released Party</u> means each of the following in its capacity as such: (a) the Equity Owners; (b) the Secured Lender; (c) the DIP Lender; and (d) with respect to each of the foregoing entities in clauses (a) through (c), such entity's current and former managed and controlled Affiliates as of the Confirmation Date, and such entity's and its current and former Affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (e) each the Debtors' current and former Affiliates, and each of Debtors' and its current and former Affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

69.    <u>Releasing Party</u> means each of the following in its capacity as such: (a) the Equity Owners; (b) the Secured Lender; (c) the DIP Lender; (d) those Holders of Claims and Interests that are deemed to accept the Plan; (e) all Holders of Claims and Interests who vote to accept the Plan; (f) with respect to each of the foregoing entities in clauses (a) through (e), such entity's current and former managed and controlled Affiliates, and such entity's and its Affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys,  accountants, investment bankers, consultants, representatives, and other professionals; and (g) each of the Debtors' current and former Affiliates, and each of the Debtors' and its current and former Affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

70.    <u>Retained Lawsuit</u> means *KM/PLAZA, a joint venture comprised of Katz Meltzer Construction Company, a Florida corporation, and Plaza Contracting Company, a*

9

*Delaware limited liability company, Plaintiff, v. FL 6801 COLLINS NORTH, LLC, Defendant, KM/Plaza, Third Party Plaintiff, v. BCI, INCORPORATED, a Florida corporation; BAKER CONCRETE CONSTRUCTION, INC., an Ohio corporation; DELTA PAINTING, INC., a Florida corporation; J.D. WATERPROOFING, INC., a dissolved Florida corporation; DECKTIGHT ROOFING SERVICES, INC., a Florida corporation; and MIAMI DRYWALL & STUCCO, INC., a Florida corporation, Third Party Defendants*, Case No. 10-31272 CA 01 (25) (General Jurisdiction Division), pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

71.    <u>Sale</u> means the Sale Transaction approved by the Sale Order.

72.    <u>Sale Order</u> means the order of the Bankruptcy Court approving the Sale Transaction, dated November 24, 2014 [Docket No. 218].

73.    <u>Sale Proceeds</u> means the proceeds received by the Debtors from the Sale Transaction.

74.    <u>Sale Transaction</u> means the transaction between the Collins Subsidiaries and the Buyer pursuant to which the Collins Subsidiaries shall sell certain of their Assets to the Buyer free and clear of all Liens, Claims, Interests, and encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code, as set forth in the Purchase Agreement and the Sale Order.

75.    <u>Schedules</u> means, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

76.    <u>Secured Claim</u> means a Claim secured by a Lien on any Asset of the Debtors, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

77.    <u>Secured Lender</u> means PAMI ALI LLC.

78.    <u>Secured Lender Pre-Petition Claim</u> means the Debtors' pre-petition obligation to the Secured Lender in the amount of $1,684,220.67.

79.    <u>Tax Code</u> means the Internal Revenue Code of 1986, as amended from time to time.

80.    <u>U.S. Trustee</u> means the office of the United States Trustee for the Southern District of New York.

10

81.    <u>U.S. Trustee Fees</u> means all fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

B.    <u>Rules of Construction</u>.

1.    <u>Generally</u>.  For purposes of the Plan:  (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented;  (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan;  and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

2.    <u>Exhibits</u>.  All exhibits are incorporated into and are a part of the Plan as if set forth in full herein.  Copies of filed exhibits are available upon written request to Togut, Segal & Segal LLP, One Penn Plaza, New York, New York 10119 (Attn:  Frank A. Oswald, Esq.), counsel to the Debtors, or may be obtained from the Debtors' noticing agent, Prime Clerk on the website:  http://cases.primeclerk.com/flspirits.

3.    <u>Time Periods</u>.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

4.    <u>Miscellaneous Rules</u>.  (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine, and the neuter;  and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## <u>ARTICLE II - TREATMENT OF UNCLASSIFIED CLAIMS</u>

A.    <u>Administrative Claims</u>.

1.    <u>General</u>.  Subject to the Bar Date and other provisions herein and except to the extent the Debtors, or the Plan Administrator, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Plan Administrator shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is 30 calendar days after the date on which such

Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid (i) *first*, from the funds in the Administrative Claims Fund, and (ii) *second*, from Available Cash.

      B.    <u>Administrative Bar Date</u>.

      1.    <u>General Provisions</u>.  Except as provided below for (i) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (ii) U.S. Trustee Fees, requests for payment of Administrative Claims must be filed no later than 30 days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by Order of the Bankruptcy Court. **Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date, shall be forever barred from asserting such Claims against the Debtors or their property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.**

      2.    <u>Professionals</u>.  All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Cases) shall file an application for final allowance of compensation and reimbursement of expenses no later than 45 days after the Effective Date (the "Fee Claim Deadline").  Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than 21 days after any such application.  All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Plan Administrator to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are allowed.  Each Professional or other Person that intends to seek payment on account of a Professional Fee Claim shall provide the Debtors with a statement, by no later than the Confirmation Date, of the amount of estimated unpaid fees and expenses accrued by such Professional up to the date of such statement, the amount of fees and expenses that each such Professional expects to incur from such date through the Effective Date, and the amount of fees and expenses that each such Professional expects to incur from such date in connection with the preparation and prosecution of each such Professional's final fee application.

      3.    <u>U.S. Trustee Fees</u>.  The Debtors or the Plan Administrator (as applicable) shall pay all U.S. Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters a final decree closing the Chapter 11 Cases.

      C.    <u>Priority Tax Claims</u>.  Except to the extent the Debtors or the Plan Administrator, as applicable, and the holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Plan Administrator shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash, in

an amount equal to such Allowed Priority Tax Claim, on the later of: (i) the Effective Date and (ii) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

## ARTICLE III - CLASSIFICATION AND
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A. <u>General Notes on Classification and Treatment of Classified Claims and Equity Interests</u>.  Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests (other than Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code, which Claims do not require classification pursuant to section 1123(a) of the Bankruptcy Code and are receiving the treatment set forth in Article II) are classified for all purposes, including, without limitation, voting, confirmation, and distribution pursuant to the Plan, as set forth herein.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

B. <u>Classification and Treatment of Classified Claims and Equity Interests</u>

| Class | Treatment | Entitled to Vote |
|---|---|---|
| Class 1 –Priority Claims | Unimpaired | No |
| Class 2 – Secured Claims | Unimpaired | No |
| Class 3 – General Unsecured Claims | Unimpaired | No |
| Class 4 – Equity Interests | Unimpaired | No |

1. <u>Class 1:  Priority Claims</u>.

(a) <u>Class 1 Treatment</u>.  Each holder of an Allowed Priority Claim shall receive Cash in an amount equal to the amount of such Allowed Priority Claim from the Administrative Claims Fund on the later of (i) the Effective Date, and (ii) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, immediately following the date upon which such Claims became Allowed Priority Claims, or as soon thereafter as is practicable.

(b) <u>Class 1 Impairment</u>.  Holders of Allowed Priority Claims in Class 1 are not Impaired under the Plan.  Each holder of an Allowed Priority Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

13

2.    <u>Class 2:  Secured Claims</u>.

(a)    <u>Class 2 Treatment</u>.  Provided that the holder of a Class 2 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 2 that were Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive (a) Cash in an amount not to exceed the amount of such Allowed Secured Claim, (b) the Collateral securing such Allowed Secured Claim (in which case any deficiency claim shall become a Class 3 General Unsecured Claim), or (c) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed Secured Claim, or as may otherwise be provided in the Bankruptcy Code, provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim.

(b)    <u>Class 2 Impairment</u>.  Holders of Allowed Claims in Class 2 are not Impaired under the Plan.  Each holder of an Allowed Secured Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

3.    <u>Class 3:  General Unsecured Claims</u>.

(a)    <u>Class 3 Treatment</u>. Provided that the holder of a Class 3 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 3 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General Unsecured Claim shall receive (a) Cash in an amount not to exceed the amount of such Allowed General Unsecured Claim, plus post-petition interest provided by contract, or if no contract exists, at the statutory rate provided by 28 U.S.C § 1961, from the Petition Date through the Distribution Date, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed General Unsecured Claim.

(b)    <u>Allowance of PAMI ALI Unsecured Claim</u>.  On the Effective Date, the PAMI ALI Unsecured Claim will be allowed in the amount of $1,249,812.

(c)    <u>Class 3 Impairment</u>. Holders of General Unsecured Claims are not Impaired under the Plan.  Each holder of General Unsecured Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(d)    <u>Class 3 Priority of Payment</u>.  Notwithstanding any other provision of the Plan, holders of Allowed General Unsecured Claims shall not be

entitled to receive any payment of Cash on account of Allowed General Unsecured Claims until the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority Claims have received payment in full on account of such Allowed Claims or such Allowed Claims have been reserved for in accordance with the Plan, and any Disputed Claims have been reserved for in accordance with the Plan.

      4.    <u>Class 4:  Equity Interests</u>.

      (a)    <u>Class 4 Treatment</u>.  Beginning on the Effective Date, PAMI ALI LLC as the holder of the Equity Interests, shall receive Distributions on account of its Class 4 Equity Interests in the Debtors, as provided herein.  PAMI ALI LLC will be paid, on account of its equity interest in the Debtors, the greater of (a) the difference between the Available Cash on the Effective Date and the Effective Date Creditor Distributions, and (b) $3 million.  As soon as practicable after any subsequent Distribution Date, Available Cash, if any, shall be paid to PAMI ALI LLC.  Upon receipt of the final Distribution to PAMI ALI LLC on account of its Equity Interests, such Equity Interests will be canceled.

      (b)    <u>Class 4 Impairment</u>.  The holder of the Equity Interests is not Impaired under the Plan, and in conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Equity Interests.

## ARTICLE IV — VOTING AND DISTRIBUTIONS UNDER THE PLAN

      A.    <u>Voting of Claims and Interests</u>.  No Class is impaired under the Plan. Unimpaired Classes are presumed to have accepted the Plan.  All classes of Claims and Equity Interests are permitted to object to the Plan or the adequacy of the Disclosure Statement.  Objections to the Plan and to the adequacy of the Disclosure Statement must be filed no later than May [13], 2015, at 4:00 p.m. (Eastern Time).

      B.    <u>Distributions Under the Plan</u>.  Whenever any Distribution to be made pursuant to the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distribution of Available Cash.  The Debtors and the Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

      C.    <u>Distribution Deadlines</u>.  Any Distribution to be made by the Plan Administrator pursuant to the Plan shall be deemed to have been timely made if made within 30 days after the time therefor specified in the Plan or such other agreements. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the date specified therefor herein.

15

D.    Manner of Payment Under the Plan.  Unless the Person receiving a payment agrees otherwise, any payment in Cash to be made by the Plan Administrator shall be made by check drawn on a domestic bank or by automated clearing house transfer.

E.    De Minimis Distributions. The Plan Administrator shall not be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Plan Administrator on or before 60 days after the Effective Date.  Any de minimis Distributions not subject to a timely request for payment shall revert to the Debtors and be treated as Available Cash.

F.    Unclaimed Property.  All Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtors and/or the Plan Administrator, as applicable, have been notified in writing of a change of address.  If any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then current address, at which time all eligible missed Distributions shall be made to such holder, without interest.  All demands for undeliverable Distributions shall be made on or before 60 days after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Debtors and be treated as Available Cash.   Any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

G.    Time Bar to Cash Payments.  Checks issued by the Plan Administrator in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof.  Requests for reissuance of any check shall be in writing to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.  Any such written claim in respect of such a voided check must be received by the Plan Administrator on or before 60 days after the expiration of the 60 day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtors and be treated as Available Cash.  Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtors, the Estates, or the Plan Administrator.

## ARTICLE V - IMPLEMENTATION OF PLAN

A.                                          Implementation.  The Plan Administrator will implement the Plan in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.  On and after the Effective Date, except as otherwise provided in the Plan, the Debtors may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

B.     <u>Substantive Consolidation of the Debtors for Plan Purposes Only</u>.  On the Effective Date:  (a) all Assets (and all proceeds thereof) and liabilities of each Debtor shall be merged or treated as though they were merged into and with the Assets and liabilities of the other Debtors, (b) no Distributions shall be made under the Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished so that any Claim against any Debtor and guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed against any Debtor shall be filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be setoff against the debts of the other Debtors. Such substantive consolidation shall not (other than for purposes related to the Plan) affect the legal and corporate structures of the Debtors.  Notwithstanding anything in this section to the contrary, all post-Effective Date U.S. Trustee Fees shall be calculated on a separate legal entity basis for each Debtor.  Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for Plan purposes.

C.     <u>Funding for the Plan</u>.  The Plan will be funded from the Sale Proceeds, as well as the proceeds from the Debtors' share of any litigation proceeds recovered in the Retained Lawsuit, and any other Assets available to fund the Plan.

D.     <u>Establishment of Reserves</u>.  At least 3 days prior to the Confirmation Hearing, the Debtors shall file with the Bankruptcy Court a notice that reflects the proposed amounts of the Administrative Claims Fund, the Disputed Claims Reserve, and the Expense Reserve.

E.     <u>Vesting of Assets in the Debtors</u>.  As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all Assets shall vest in the Debtors free and clear of all Claims, Liens, encumbrances, charges, Equity Interests, and other interests, except as otherwise expressly provided in the Plan or the Confirmation Order, and subject to the terms and conditions of the Plan and the Confirmation Order.

F.     <u>General Settlement of Claims</u>.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

G.     <u>Continuing Existence</u>.  From and after the Effective Date, the Debtors shall continue in existence for the purposes of (i) winding up their affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, of any

17

remaining Assets, including, without limitation, the Retained Lawsuit, open receivables and payment refunds, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights, and privileges of the Debtors including, without limitation, prosecuting Causes of Action, (iv) resolving Disputed Claims, (v) administering the Plan, (vi) filing appropriate tax returns and refund requests, and (vii) performing all such other acts and conditions required by and consistent with consummation of the Plan.

H.    <u>Closing of the Chapter 11 Cases</u>.  After all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets that have been or may be abandoned), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Plan Administrator deems appropriate, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

I.    <u>Corporate Action</u>.  The Plan will be administered by the Plan Administrator and all actions taken under the Plan in the name of the Debtors shall be taken through the Plan Administrator.  Upon the distribution of all Assets pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith, *provided, however*, that the Debtors may, but will not be required to, take appropriate action to dissolve under applicable law.

J.    <u>Winding Down Affairs</u>.  Following the Effective Date, the Debtors shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down their affairs.  On and after the Effective Date, the Plan Administrator may, in the name of the Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

K.    <u>Powers and Duties of the Plan Administrator</u>.  The Plan Administrator will act for the Debtors in a fiduciary capacity as applicable to a board of directors or trustees, subject to the provisions of the Plan.  The powers and duties of the Plan Administrator shall include, without limitation:

(a)    investing Cash in accordance with section 345 of the Bankruptcy Code, and withdrawing and making Distributions of Cash to holders of Allowed Claims and paying taxes and other obligations owed by the Debtors or incurred by the Plan Administrator in connection with winding down the Estates, from the Expense Reserve, the Administrative Claims Fund, and Available Cash in accordance with the Plan;

(b)    engaging attorneys, consultants, agents, employees, and any other professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(c)    executing and delivering all documents and taking all actions necessary to consummate the Plan and wind up the Debtors' business;

(d)    coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained assets;

(e)    coordinating the collection of outstanding accounts receivable not sold to Buyer;

(f)    coordinating the storage and maintenance of the Debtors' books and records;

(g)    overseeing compliance with the Debtors' accounting, finance, and reporting obligations;

(h)    preparing financial statements and U.S. Trustee post-confirmation quarterly reports, until such time a final decree has been entered;

(i)    overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

(j)    performing any additional corporate actions as necessary to carry out the wind up and liquidation of the Debtors;

(k)    paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional persons engaged by the Debtors and the Plan Administrator and to pay all other expenses for winding down the affairs of the Debtors, subject to the terms of the Plan;

(l)    disposing of, and delivering title to others of, or otherwise realizing the value of, all the remaining Assets, including, without limitation, the Excluded Assets;

(m)    objecting to, compromising, and settling Claims;

(n)    acting on behalf of the Debtors in all adversary proceedings and contested matters (including, without limitation, any Causes of Action and the Retained Lawsuit), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any claim and otherwise pursue actions involving the Debtors' Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(o)    implementing and/or enforcing all provisions of the Plan; and

(p)    such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

L.    <u>Retention of Professionals</u>.  The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other Professionals that are necessary to assist the Plan Administrator in the performance of its duties as Plan Administrator or otherwise under this Plan.  The reasonable fees and expenses of such professionals and the additional expenses of the Plan Administrator incurred in the performance of its duties as Plan Administrator under this Plan shall be paid by the Plan Administrator from Available Cash, and shall not be subject to the approval of the Bankruptcy Court.

M.    <u>Appointment of the Plan Administrator</u>.  The Confirmation Order shall provide for the appointment of Lehman Brothers Holdings, Inc., as the Plan Administrator.  The Plan Administrator shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.

N.    <u>Distributions to Holders of Claims and Equity Interests</u>.

1.    <u>Estimation of Claims</u>.  The Plan Administrator may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtors may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim.  If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable).  The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

2.    <u>No Recourse</u>.  Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value

20

to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtors, the Estates, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

**THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

3.       Automatic Disallowance and Expungement of Certain Claims.  On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed in advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

4.       Distributions on Account of Equity Interests.  To the extent Allowed Class 3 Claims are paid in full or reserved, the Plan Administrator shall make Distributions of Available Cash to PAMI ALI LLC in respect of its Class 4 Equity Interests.

O.       Disputed Claims Reserve Account.

1.       Objections to Claims.  Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest.  Subject to further extension by the Bankruptcy Court, the Plan Administrator shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to occur of:  (i) 60 days after the Effective Date, (ii) 30 days after a request for payment or proof of claim is timely filed and properly served upon the Plan Administrator, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Administrator effects service in any of the following manners (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first-class mail, postage prepaid, on the signatory of the proof of Claim or other representative identified in the proof of claim or any attachment thereto at the address of the creditor set forth therein;  or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases.  From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed

21

Claim, Cause of Action, or the Retained Lawsuit pursuant to the terms of the Plan without further order of the Bankruptcy Court.

2.    Resolution of Disputed Claims.  No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

3.    Establishment of Disputed Claims Reserve Account.  On or before the Effective Date, the Debtors shall establish and fund the Disputed Claims Reserve Account, which shall be administered by the Plan Administrator.

4.    Duties in Connection with Disputed Claims.  The Plan Administrator shall (i) deposit in the Disputed Claims Account Cash in an amount required by order of the Bankruptcy Court or the District Court, if applicable, (including any order estimating the maximum liability of a Disputed Claim) or, in the absence of such order, Cash equal to the Distributions that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date (ii) object to, settle or otherwise resolve Disputed Claims, (iii) make Distributions to holders of Disputed Claims that subsequently become Allowed Claims in accordance with the Plan, and (iv) distribute any remaining assets of the Disputed Claims Reserve Accounts, after resolving all Disputed Claims, to PAMI ALI LLC in respect of its Class 4 Equity Interests in accordance with the Plan.

5.    Distributions when Disputed Claim Is Resolved.  On the next Distribution Date following the date upon which a Disputed Claim is ultimately Allowed, the holder of such Claim shall receive from the Disputed Claims Reserve Account any amounts attributable to such Claim, in accordance with the Plan.  Any Cash Distributions held in the Disputed Claims Reserve Account for the benefit of a holder of a Disputed Claim, which is subsequently disallowed, in whole or in part, shall become Available Cash available for distribution to PAMI ALI LLC in respect of its Class 4 Equity Interests.

P.    Release of KM Escrow Fund.  To the extent that any amounts remain in the KM Escrow Fund after resolution of the Retained Lawsuit and after any required payments are made to KM/Plaza from the KM Escrow Fund, such amounts shall become Available Cash.

Q.    Miscellaneous Distribution Provisions.

1.    Method of Cash Distributions.  All Distributions shall be made by the Plan Administrator or a duly-appointed disbursing agent to the holders of Allowed Claims.  Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator; *provided, however*, that Cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Plan Administrator in such

22

funds and by such means as are necessary or customary in a particular foreign jurisdiction.

      2.    <u>No Distribution in Excess of Allowed Amount of Claim</u>. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

      R.    <u>Allocation of Payments</u>. Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to any interest that has accrued on such Claims but remains unpaid.

      S.    <u>Setoffs</u>. The Plan Administrator is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Plan Administrator may hold against the holder of such Allowed Claim; *provided*, that the Plan Administrator gives the holder of such Allowed Claim no fewer than 5 days' notice, in writing (including by email), of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within 30 days of receiving such notice. If an objection is timely raised to a proposed setoff, the Plan Administrator may seek relief from the Bankruptcy Court to effectuate the setoff. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Plan Administrator of any such claims, rights, and Causes of Action the Debtors may have against such holder.

      T.    <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security, under the Plan, including any deeds, bills of sale, or assignments executed in connection with the Sale Transaction or any other disposition of assets contemplated by the Plan or the Sale Order, shall not be subject to any stamp, real estate transfer, mortgage, recording, or other similar tax to the maximum extent covered by section 1146 of the Bankruptcy Code.

      U.    <u>Record Date for Distributions to Holders of Claims</u>. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distribution of Available Cash. The Debtors and the Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date for purposes of the Distribution of Available Cash.

      V.    <u>Disputed Payments</u>. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator may, in lieu of making such Distribution to such Person, make such Distribution into an escrow

account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtors or the Estates. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

W.    <u>Withholding Taxes</u>. The Plan Administrator shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Plan Administrator will issue an IRS Form 1099.

X.    <u>Resignation of Directors and Officers</u>. Upon the Effective Date, the Debtors' respective boards of directors and officers shall be deemed to have resigned.

Y.    <u>Resignation or Removal of Plan Administrator</u>. If the Plan Administrator resigns or is removed, dies, dissolves, or is incapacitated, the Bankruptcy Court shall designate another Person to become the Plan Administrator and thereupon the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, with the compensation of the successor Plan Administrator. No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

Z.    <u>No Agency Relationship</u>. The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estates against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may rely upon information previously generated by the Debtors and such additional information provided to him by former employees of the Debtors.

## ARTICLE VI - EFFECT OF PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION

A.    <u>Binding Effect</u>. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtors who held such Claim at any time during

the Chapter 11 Cases and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

B.  **Term of Injunctions or Stays.  Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed**.

C.  <u>Retention of Rights and Causes of Action</u>.  Except as provided in the Plan, all present or future rights, claims, or Causes of Action against any Person that existed and have not been released or sold on or prior to the Effective Date are preserved for the Debtors and the Estates.  On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtors shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or Causes of Action against any Person and with respect to any rights of the Debtors that arose before or after the Petition Date.  The Debtors and the Estates have, retain, reserve, and shall be entitled to assert and pursue all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtors not expressly released under the Plan may be asserted after the Confirmation Date.  The Plan Administrator may abandon, settle or release any or all such claims, rights or Causes of Action, as it deems appropriate without further Order of the Bankruptcy Court.  In pursuing any claim, right, or Cause of Action, the Plan Administrator, as the representative of the Estates, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code.  Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

D.  **Releases by the Debtors.  Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Sale**

25

Order, the Purchase Agreement or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence, relating to the Debtors taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release claims for gross negligence, willful misconduct and fraud.

E.   **Releases by Holders of Claims and Interests.**   As of the Effective Date, except as otherwise provided in the Plan, the Releasing Parties are deemed to have released the Debtors, their Estates, and the Equity Owners from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any direct claims held by any of the Releasing Parties against the Debtors, their Estates, and/or the Equity Owners or derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Debtors' restructuring, the Chapter 11 Cases, the Sale Transaction, the subject matter of, or the transactions or events giving rise to, any claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Sale Order, the Purchase Agreement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date.   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release claims for gross negligence, willful misconduct and fraud, or any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.   **Injunction.**

1.   **Satisfaction of Claims.**   The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claims.

2.   **Scope of Injunction.**   Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtors, the Equity Owners, the Plan Administrator, or any present and former directors, officers, trustees, agents, attorneys, advisors, members, or employees of the Debtors, the Equity Owners, or the Plan Administrator, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment,

award, decree or order with respect to a Claim; (iii) creating, perfecting or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim, the assets or other property of the Estates; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Cases are closed, from seeking discovery in actions against third parties or from pursuing third-party insurance that does not cover Claims against the Debtors. For the avoidance of doubt, nothing in this Injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

3.    <u>Release of Collateral</u>.  Except as expressly provided herein, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (i) each holder of (a) an Allowed Secured Claim; and/or (b) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtors any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Plan Administrator requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title, and interest in such property shall revert to the Debtors, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind.  No Distribution shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Plan Administrator such release of Liens.  Any such holder that fails to execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder.  Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.

4.    **Cause of Action Injunction.  On and after the Effective Date, all Persons other than the Plan Administrator will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan.**

G.    **Exculpation.  Except as otherwise set forth in the Plan, neither the Debtors, nor any Released Party, nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, attorneys, nor representatives of any professional employed by any of them shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Sale Order, the Purchase Agreement or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the**

**Plan or property to be distributed pursuant to the Plan, the Sale Transaction, and actions taken or omitted to be taken in connection with the Chapter 11 Cases or the operations, monitoring, or administration of the Debtors during the Chapter 11 Cases, and the Plan Administrator shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estates, except for (i) intentional fraud, gross negligence, or willful misconduct, and (ii) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).**

H.    <u>Preservation and Application of Insurance</u>.  The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtors, any directors, trustees, or officers of the Debtors, or any other Person, including, without limitation, insurance for the Debtors' directors and officers.

I.    <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

J.    <u>Post-Confirmation Activity</u>.  As of the Effective Date, the Plan Administrator may conclude the winding down of the Debtors' affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Plan Administrator may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

K.    <u>Avoidance Actions</u>. On the Effective Date, the Debtors shall be deemed to release any and all rights, claims, and causes of action that a trustee, debtor in possession or other appropriate party in interest would be able to assert on behalf of any of the Debtors under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code sections 506 and, 542 through 551.

28

## <u>ARTICLE VII - EXECUTORY CONTRACTS</u>

A.    <u>Executory Contract and Unexpired Leases</u>.  To the extent not previously rejected, on the Confirmation Date, but subject to the occurrence of the Effective Date, all of the Debtors' executory contracts and unexpired leases entered into prior to the Petition Date that have not previously been assumed or rejected, and have not been assumed and assigned to the Buyer, shall be deemed rejected by the Debtors pursuant to the provisions of section 365 of the Bankruptcy Code.

B.    <u>Rejection Damages Bar Date</u>.  If rejection, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors or their property or the Plan Administrator unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtors and/or Plan Administrator, as applicable, not later than 30 days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

C.    <u>Effect of Post-Confirmation Rejection</u>.  The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## <u>ARTICLE VIII - CONDITIONS TO CONFIRMATION<br>AND OCCURRENCE OF EFFECTIVE DATE</u>

A.    <u>Conditions to Confirmation</u>.  The Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Plan Proponent.

B.    <u>Conditions to Occurrence of Effective Date</u>.  The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied.  Any one or more of the following conditions may be waived in whole or in part at any time by the Plan Proponent:

(a)    The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order.

(b)    The Confirmation Order shall provide for the releases, injunctions and exculpation of the Persons provided for the Plan.

(c)    Lehman Brothers Holding, Inc. or its designee shall have been appointed as Plan Administrator and shall have accepted to act in such capacity in accordance with the terms and conditions of the Plan.

C.    <u>Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date</u>.  If each of the conditions to the occurrence of the Effective Date has not been satisfied or

29

duly waived on or before the date which is no later than the first Business Day after 14 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; *provided, however*, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or against the Debtors, or (ii) prejudice in any manner the rights of the Debtors or of any other party in interest.

D.      Closing of the Chapter 11 Cases.  On the Effective Date, pursuant to the Confirmation Order, the Chapter 11 Cases of the Debtors other than Collins North shall be closed.  Any Claims against the Collins Subsidiaries that are not satisfied in accordance with this Plan on the Effective Date shall be treated as Claims against Collins North and shall be administered by the Plan Administrator in the Chapter 11 Case of Collins North in accordance with this Plan.  Until entry of a final decree closing all of the Chapter 11 Cases, the closing of the Chapter 11 Cases of FL Spirits, Collins Central, and Collins South pursuant to the Confirmation Order shall be for procedural purposes and for purposes of calculating fees payable under 28 U.S.C. § 1930 only, and shall not prejudice the rights of any creditor with respect to such Debtors or their estates.

## ARTICLE IX - CONFIRMABILITY AND SEVERABILITY OF THE PLAN

The Plan Proponent reserves the right to alter, amend, modify, revoke, or withdraw the Plan.  If the Plan Proponent revokes or withdraws from the Plan, then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, or to prejudice in any manner the rights of the Plan Proponent or any persons in any further proceedings involving the Plan Proponent.  A determination by the Bankruptcy Court that the Plan, as it applies to the Debtors, is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Plan Proponent's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.  Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

The Plan Proponent shall have the right to request the Bankruptcy Court to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE X - ADMINISTRATIVE PROVISIONS

A.      Retention of Jurisdiction.  Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, the following purposes:

(a)      To determine any motion, adversary proceeding, avoidance action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)      To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)      To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)      To hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)      To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f)      To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)      To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other Order of the Bankruptcy Court;

(h)      To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)      To hear and determine all Professional Fee Claims;

31

(j)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)    To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(l)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)    To enter a final decree closing the Chapter 11 Cases;

(o)    To recover all assets of the Debtors and property of the Estates, wherever located;

(p)    To hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior Orders; and

(q)    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

B.    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

C.    <u>Continuing Effect of Sale Order</u>.  Notwithstanding anything in the Plan to the contrary, the Sale Order and any and all related documents shall not be modified, limited, or amended by the Plan.

D.    <u>Effectuating Documents and Further Transactions</u>.  The Debtors or the Plan Administrator, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

E.    <u>Waiver of Bankruptcy Rule 7062</u>.  The Plan Proponent may request the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to

32

the Confirmation Order; and (ii) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

F.      <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

G.      <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date.  Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan.

H.      <u>Disposal of Books and Records</u>.  The Debtors' and the Plan Administrator's rights to seek authorization from the Bankruptcy Court for the destruction of books and records prior to the expiration of any statutory period requiring that such records be maintained are preserved.

I.      <u>Amendments</u>.

1.      <u>Pre-Confirmation Amendment</u>.  The Plan Proponent may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

2.      <u>Post-Confirmation Amendment Not Requiring Resolicitation</u>. After the entry of the Confirmation Order, the Plan Proponent may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Plan Proponent obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.

3.      <u>Post-Confirmation Amendment Requiring Resolicitation</u>.  After the Confirmation Date and before the Effective Date of the Plan, the Plan Proponent may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims provided:  (i) the modified Plan meets applicable Bankruptcy Code requirements;  (ii) the Plan Proponent obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Plan Proponent complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

J.      Successors and Assigns.  The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

K.      Confirmation Order and Plan Control.  To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order controls the Plan.

L.      Notices.  Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

For the Debtors and the Equity Owners:

c/o LEHMAN BROTHERS HOLDINGS, INC.
1271 Avenue of the Americas
New York, New York 10020
Attn:  Anthony Barsanti

with copies to:

TOGUT, SEGAL & SEGAL LLP
Attorneys for the Debtors and Debtors in
Possession
One Penn Plaza, Suite 3335
New York, New York  10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Attn:   Frank A. Oswald, Esq.
        Steven S. Flores, Esq.

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Equity Owners
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Attn:  Jacqueline Marcus, Esq.
       Doron Kenter, Esq.


M.      Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

     N.     <u>Deemed Acts</u>.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

[SIGNATURE PAGES IMMEDIATELY TO FOLLOW]

Dated:   New York, New York
         April 13, 2015                     Respectfully Submitted,


                                            FL 6801 SPIRITS LLC
                                            Debtor and Debtor in Possession

                                            By:      /s/ Anthony Barsanti
                                                     Anthony Barsanti
                                                     Authorized Signatory


                                            FL 6801 COLLINS CENTRAL LLC
                                            Debtor and Debtor in Possession

                                            By:      /s/ Anthony Barsanti
                                                     Anthony Barsanti
                                                     Authorized Signatory


                                            FL 6801 COLLINS NORTH LLC
                                            Debtor and Debtor in Possession

                                            By:      /s/ Anthony Barsanti
                                                     Anthony Barsanti
                                                     Authorized Signatory


                                            FL 6801 COLLINS SOUTH LLC
                                            Debtor and Debtor in Possession

                                            By:      /s/ Anthony Barsanti
                                                     Anthony Barsanti
                                                     Authorized Signatory